UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

WISCONSIN GAS LLC,

        Plaintiff,

    v.                                          Case No. 2:20-cv-1334

AMERICAN NATURAL RESOURCES
COMPANY,

        Defendant.

---

**FED. R. CIV. P. 26(f) JOINT REPORT**

---

Pursuant to Fed. R. Civ. P. 16(b) and Rule 26(f), and in advance of the October 26, 2020 Rule 16 scheduling conference, counsel for Plaintiff Wisconsin Gas LLC ("Wisconsin Gas") and counsel for Defendant American Natural Resources Company ("ANR") conducted telephonic conferences on October 5, 2020 and October 12, 2020, and submit this Joint Report pursuant to such conferences. The October 26, 2020 Rule 16 scheduling conference will be attended by Joseph Cancila and James Goldschmidt on behalf of Wisconsin Gas and Jamie Thompson and Mitchell Engel on behalf of ANR.

**(1) Nature of the case.**

    **a.**    <u>Plaintiff's Statement</u>

This Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") action relates to ANR's responsibility for costs and damages arising out of the contamination of the former Milwaukee Solvay Coke & Gas Superfund Site located at 311 East Greenfield Avenue in Milwaukee, Wisconsin (the "Solvay Site"). Wisconsin Gas has incurred

and will incur substantial response costs relating to the cleanup of the Solvay Site. By this action, Wisconsin Gas seeks to allocate the equitable shares of the cleanup costs associated with the Solvay Site by and between itself and ANR and to require ANR to pay for past and future remedial work in accordance with its allocated share.

As detailed more fully in the complaint [Dkt. 1], ANR controlled the operations of the coke and manufactured gas facilities at the Solvay Site over a span of at least 35 years, primarily through direct ownership of the Milwaukee Coke & Gas Company ("MCGC"), later known as the Milwaukee Solvay Coke Company ("MSCC"), and control over the operations of the coke and manufactured gas facilities at the Solvay Site. ANR's involvement began in 1928, when its predecessor purchased MCGC, and ended in 1962, when MCGC (renamed MSC Corporation) sold all of its assets to another entity and dissolved, with ANR's predecessor assuming certain liabilities of MSC Corporation up to approximately $5 million in 1962 dollars.

The threshold question in this action is ANR's liability, by virtue of its predecessors' role in operations and/or its predecessor's 1962 assumption of liability, for contamination at the Solvay Site. Wisconsin Gas submits that ANR will be found liable. Wisconsin Gas further seeks an equitable allocation of response costs as between Wisconsin Gas and ANR. Wisconsin Gas also seeks a declaration that ANR is responsible for future response costs at the Solvay Site.

There are two other potentially responsible parties ("PRPs") in respect to the Solvay Site with whom Wisconsin Gas has tolling agreements. If Wisconsin Gas is unable to resolve its contribution claims with respect to those PRPs during the pendency of the tolling agreements, it may seek later to join them in this action.

ANR raises in its statement below various contentions in respect to Wisconsin Gas's performance under the 2007 ASAOC that Wisconsin Gas believes are not pertinent to ANR's

liability or its allocable share of contribution. Wisconsin Gas disputes those characterizations and contentions by ANR.

  **b.** <u>Defendant's Statement</u>

There is no legal or equitable basis for Wisconsin Gas to recover from ANR any portion of the past or future remedial costs Wisconsin Gas claims it has incurred or may incur associated with the Solvay Site. Because there is no allocable share that may be properly attributed to it, ANR anticipates bringing a motion for summary judgment at the earliest opportunity.

As a fundamental principle of corporate law, ANR is not subject to suit based on its role as a former shareholder of Milwaukee Solvay Coke Company (formerly Milwaukee Coke & Gas Company), a corporation that has been legally dissolved for almost sixty years. Nothing in CERCLA has supplanted the bedrock principle that shareholders (such as ANR) do not incur liability based solely on their investment in former subsidiaries (such as Milwaukee Solvay Coke). Contrary to Wisconsin Gas's allegation, there is no indication that ANR ever "controlled the operations of the coke and manufactured gas facilities" at the Solvay Site, much less that ANR caused any pollution or engaged in activities that exceeded corporate norms incident to its status as a parent company. Nor did ANR assume any inchoate cleanup liabilities of Milwaukee Solvay Coke upon the dissolution of that company in 1962—some seventeen years before CERCLA was even enacted.

There are, however, parties potentially responsibility for the contamination at the Solvay Site not presently joined to this action. For example, Wisconsin Electric Power Company, an affiliate of Wisconsin Gas, previously owned a substantial portion of the Solvay Site for forty years, from 1896 to 1936, and used it for a coal yard. In addition, both Wisconsin Gas (which was the direct parent of Milwaukee Solvay Coke for more than a decade) and Wisconsin Electric

Power Company previously agreed, along with Cliffs Mining Company, ANR, and others, to perform a Remedial Investigation and Feasibility Study under an Administrative Settlement and Order on Consent the U.S. EPA issued back in 2007 (the "2007 ASAOC"). Although ANR has absolute defenses to liability, it entered into the 2007 ASAOC without admitting any liability in an effort to resolve U.S. EPA's claims against it in exchange for statutory protection from contribution claims, like the claims Wisconsin Gas has now filed, related to that work. The 2007 ASAOC did not obligate ANR or any other party to perform any actual cleanup of the Solvay Site.

Before work under the 2007 ASAOC was complete, Wisconsin Gas purchased the Solvay Site out of the bankruptcy estate of Golden Marina Causeway LLC. In connection with that acquisition, Wisconsin Gas negotiated a side agreement with U.S. EPA under which Wisconsin Gas committed to take over and assume sole responsibility and control of the remedy to facilitate the ultimate sale and development of the Solvay Site as a corporate headquarters complex for Komatsu Corporation. In doing so, Wisconsin Gas derailed the 2007 ASAOC and the normal Feasibility Study process contemplated in the National Contingency Plan, which requires detailed evaluation of the cost effectiveness of remedial alternatives prior to remedy selection. These issues are directly relevant to Wisconsin Gas's claims as they inform whether Wisconsin Gas's alleged damages are, among other things, necessary, appropriate, or consistent with the National Contingency Plan as required under CERCLA § 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B). Wisconsin Gas also violated its separate agreement with ANR, Cliffs Mining, and others with respect to the 2007 ASAOC and Remedial Investigation/Feasibility Study work they agreed to perform.

**(2) Court's subject matter jurisdiction.**

The Court has subject matter over this case pursuant to 28 U.S.C. § 1331 because Wisconsin Gas's CERCLA claims arise under the laws of the United States.

**(3) Contemplated motions.**

ANR has answered the complaint [Dkt. 13], and no immediate motions are contemplated at this time. ANR anticipates bringing a motion for summary judgment at the earliest opportunity. Wisconsin Gas may submit a cross-motion on the same issues.

**(4) Proposed deadline to join parties and amend pleadings.**

Wisconsin Gas has tolling agreements with two PRPs, Cliffs Mining Company ("Cliffs") and Honeywell International Inc. ("Honeywell"), which currently prevent Wisconsin Gas from naming Cliffs or Honeywell as defendants in this action. Those tolling agreements run through July 1, 2021 in respect to Cliffs and March 1, 2021 in respect to Honeywell. Accordingly, the parties suggest setting a deadline for amendment and joinder of **July 30, 2021**.

**(5) Proposed discovery plan.**

    a. **Changes in timing, form, or requirement to Rule 26(a); deadline for initial disclosures.**

The parties do not propose any changes to Rule 26(a). The parties have agreed to an initial disclosure deadline of **November 9, 2020**.

    b. **Subjects on which discovery may be needed and statement as to whether discovery should be conducted in phases or limited to particular issues.**

The parties propose limiting discovery to written fact discovery until the deadline for amendment and joinder. Until then, the parties propose moving forward with written discovery to advance this litigation toward resolution, if possible, without deposition practice, or expert discovery. Particularly in light of the current COVID-19 pandemic, the parties believe it would

be most prudent and efficient to wait until after the joinder deadline to pursue depositions and expert discovery, if any is necessary, so that every interested party will have a chance to ask questions and the deponent will not face the prospect of being called back for additional questioning later.

The parties anticipate seeking written discovery on at least the following subjects, reserving the right to explore other topics and each party reserving the right to object:

- The current and historical ownership and operation of the Solvay Site,
- Other involvement in and benefit from the operations of the Solvay Site,
- The causes, liability, and cost for the remediation of the Solvay Site,
- The corporate relationships and history related to operations at the Solvay Site,
- The negotiations, execution, and administration of various agreements relating to the remediation of the Solvay Site,
- The investigation and remediation of the Solvay Site,
- The costs incurred by Wisconsin Gas related to the remediation of the Solvay Site for which it seeks contribution in this litigation, and
- Wisconsin Gas's purchase and sale of the Solvay Site.

    **c. Proposed means for disclosure or discovery of electronically stored information ("ESI") and a statement of any disputes regarding the disclosure or discovery of ESI.**

The parties agree to take reasonable measures to preserve ESI in accordance with the parties' respective document retention plans. To the extent possible, ESI should be produced in searchable PDF format via electronic share file, e-mail or CD. No dispute related to the disclosure of ESI presently exists.

    **d. Any proposals regarding the handling and protection of privileged or trial-preparation material that should be reflected in a Court order.**

The inadvertent disclosure or production of documents subject to protection by the attorney-client privilege and/or protected by the work-product doctrine, or other legal privilege, shall not constitute waiver of any privilege or other protection, provided that the producing party making the claim notifies the receiving party of the privilege claim and the basis for it. After being notified, the receiving party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the Court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved. This paragraph shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502.

Nothing contained herein is intended to, or shall serve to, limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation or privileged and/or protected information before production.

e. **Any changes requested in the limitations on discovery imposed under the federal or local rules.**

None at this time.

f. **Any other orders that the Court should issue under Rule 16(b) or (c) or Rule 26(c).**

The parties agree that a Confidentiality and Protective Order may be necessary to govern the disclosure and use of confidential materials. As such, the parties agree to work jointly and in good faith to develop a stipulated proposed protective order, if necessary.

**(6) Status of Settlement Discussions.**

The parties have been unable to reach agreement on settlement and do not request a settlement conference at this time.

**(7) Any other scheduling proposals.**

The parties propose to submit a further scheduling proposal shortly after the proposed July 30, 2021 deadline for amendment and joinder, as discussed above.

Dated: October 16, 2020.

| | |
|---|---|
| /s/ Joseph A. Cancila | /s/ James F. Thompson |
| Joseph A. Cancila | James F. Thompson |
| Deborah Bone | Mitchell F. Engel |
| RILEY SAFER HOLMES & CANCILA LLP | SHOOK, HARDY & BACON LLP |
| 70 West Madison Street | 2555 Grand Boulevard |
| Suite 2900 | Kansas City, MO 64108 |
| Chicago, IL 60602 | (816) 474-6550 |
| (312) 471-8700 | jfthompson@shb.com |
| (312) 471-8701 (fax) | mengel@shb.com |
| jcancila@rshc-law.com | |
| dbone@rshc-law.com | *Attorneys for American Natural Resources Company* |
| James Goldschmidt | |
| QUARLES & BRADY LLP | |
| 411 E. Wisconsin Avenue | |
| Suite 2400 | |
| Milwaukee, WI 53202 | |
| (414) 277-5663 | |
| james.goldschmidt@quarles.com | |
| | |
| *Attorneys for Wisconsin Gas LLC* | |

# CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2020 I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System, which will send notice of the filing to counsel for all parties having appeared of record.

s/ Joseph A. Cancila
Joseph A. Cancila
RILEY SAFER HOLMES & CANCILA LLP
70 W Madison Street
Suite 2900
Chicago, IL 60602
(312) 471-8750
jcancila@rshc-law.com
