IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Wisconsin Gas LLC,<br><br>    Plaintiff,<br><br>v.<br><br>American Natural Resources Company and Honeywell International Inc.,<br><br>    Defendants. | Case No. 2:20-cv-1334 |

## AMENDED COMPLAINT

Plaintiff Wisconsin Gas LLC (d/b/a "We Energies") (referred to interchangeably hereafter as "Plaintiff" or "Wisconsin Gas"), by and through its undersigned counsel, hereby files this Amended Complaint against Defendant American Natural Resources Company ("ANR") and Defendant Honeywell International Inc. ("Honeywell") and alleges as follows:

### Nature of the Action and Jurisdiction

1. This civil action is brought pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9601, *et seq.* ("CERCLA"). The Action relates to certain parties' responsibilities for costs and damages arising out of the contamination of the former Milwaukee Solvay Coke & Gas Superfund Site located at 311 East Greenfield Avenue in Milwaukee, Wisconsin (the "Solvay Site").

2. Wisconsin Gas is and has been participating in an investigation and remediation of hazardous substances in the subsurface of the Solvay Site under the oversight of the United States Environmental Protection Agency ("EPA") since 2007. On August 31, 2017, Wisconsin Gas

entered into an Administrative Settlement Agreement and Order on Consent with EPA ("2017 ASAOC"). Both in connection with the 2017 ASAOC and outside of it, Wisconsin Gas has incurred and will incur substantial response costs relating to the cleanup of the Solvay Site. The amounts Wisconsin Gas has been required to spend on these activities is well in excess of its responsibility for this work.

3. By this action, Wisconsin Gas seeks to allocate the equitable shares of the cleanup costs associated with the Solvay Site by and between itself, Defendant ANR, and Defendant Honeywell to require ANR and Honeywell to pay for past and future remedial work in accordance with their allocated shares.

4. This Court has jurisdiction over this matter pursuant to Section 113(b) of CERCLA and 28 U.S.C. § 1331, as this case arises under the laws of the United States.

5. Pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), venue is proper in this Court because the events giving rise to the claims stated in this Complaint, including the alleged releases of hazardous substances, occurred in this District and the Solvay Site is located entirely within this District. Additionally, both ANR and Honeywell conducted business or operations within this District at times relevant to the events described in this Complaint.

## Parties

6. Wisconsin Gas is a Wisconsin limited liability company with its principal place of business in Wisconsin. Wisconsin Gas is wholly-owned by WEC Energy Group, a Wisconsin citizen.

7. Defendant Honeywell is a Delaware corporation with its principal place of business in Charlotte, North Carolina.

8. Defendant ANR is a Delaware corporation. ANR is a subsidiary of TransCanada American Investments Limited, which is a subsidiary of TC Energy Corporation.

**General Allegations**

**A. The Solvay Site**

9. The Solvay Site covers approximately 45 acres in a primarily industrial and commercial area just south of downtown Milwaukee, north of and adjacent to the Kinnickinnic River and west of Lincoln Memorial Harbor at Lake Michigan. The Site is bordered to the north by East Greenfield Avenue, to the northeast by railroad tracks and a former coal storage area, to the east and south by the Kinnickinnic River, and to the west by railroad tracks.

10. The Solvay Site is comprised of a number of adjacent lots where various industrial activities have occurred since at least 1900. According to EPA, operations included coke and manufactured gas production; recovery of saleable by-products, including light oil (*i.e.*, benzol, toluol, xylol, and solvent naptha) and ammonia by-products (*i.e.*, strong ammonia liquor, ammonium sulfate); and the collection of tar waste product for removal.

11. Historical manufacturing activities ceased in 1983 with the closing of the by-product coke and manufactured gas plant. Beginning then in 1983, the property transitioned under land contract with Wisconsin Wrecking Company, which operated a scrap and salvage operation on the northern portion of the Solvay Site until around 2003.

**B. Defendant Honeywell's Connection to the Solvay Site**

12. Defendant Honeywell, through its predecessor, the Semet-Solvay Company ("Semet-Solvay"), controlled the operations of the coke plant at the Solvay Site for over a decade.

13. Semet-Solvay was founded in 1895 in Pennsylvania, and later reorganized in New York. In multiple locations throughout the United States, Semet-Solvay operated numerous coke

3

Case 2:20-cv-01334-SCD   Filed 08/27/21   Page 3 of 17   Document 25

and gas plants similar to the former coke plant located at the Solvay Site, specifically including the coke ovens and byproduct gas works at those plants.

14. The northern portion of the Solvay Site operated as a coke and manufactured gas plant from approximately 1903 to 1983.

15. Semet-Solvay brought its coking technology to Milwaukee and the Solvay site. In fact, using its own resources and coking technology, Semet-Solvay constructed the coke plant at the Solvay Site and operated the facility on its own or as part of a joint venture from at least 1903 until at least 1915, if not later. Many of Semet-Solvay's ovens remained at the coke plant for the duration of its operation and thereafter.

16. According to EPA, Semet-Solvay "built and managed a byproduct coke and gas manufacturing facility in the [Coke and Gas Production Area]. The facility was built in 1903 and operated as a joint venture between Semet-Solvay and Milwaukee Coke and Gas in the early 1900s."[1]

17. In 1920, the Allied Chemical and Dye Corporation was organized in New York and acquired Semet-Solvay's common stock.

18. In 1958, the Allied Chemical & Dye Corporation changed its name to Allied Chemical Corporation.

19. In 1981, the Allied Chemical Corporation changed its name to Allied Corporation.

20. In 1985, through a series of corporate transactions, Allied Corporation became a wholly-owned subsidiary of Allied-Signal Inc., a newly formed Delaware corporation.

---

[1] United States Environmental Protection Agency, Region 5, *ENFORCEMENT ACTION MEMORANDUM – Determination of Threat to Public Health or Welfare at the Solvay Coke and Gas Company Superfund Site, Milwaukee, Wisconsin (Site ID #B51Q)*, (May 17, 2019).

4

21. In 1987, Allied Corporation merged with and into Allied-Signal Inc. As the surviving corporation, Allied-Signal Inc. expressly assumed all liabilities of Allied Corporation.

22. In 1993, Allied-Signal Inc. changed its name to AlliedSignal Inc.

23. In 1999, in connection with its acquisition of Honeywell Inc., AlliedSignal Inc. changed its name to Honeywell International Inc.

### C. Defendant ANR's Connection to the Solvay Site

24. Defendant ANR, through its myriad predecessor entities, controlled the operations of the coke and manufactured gas facilities at the Solvay Site over a span of at least 35 years.

25. In doing so, ANR, through its myriad predecessor entities, had control over operations relating to the contamination of the Solvay Site.

26. The coke and gas plant located at the Solvay Site was owned at least in part and for some time by MCGC.

27. On or about July 6, 1928, American Light and Traction Company ("ALT"), one of ANR's several predecessors, purchased MCGC.

28. In or around 1942, MCGC changed its name to Milwaukee Solvay Coke Company ("Milwaukee Solvay").

29. ANR predecessor ALT remained the direct corporate parent of MCGC for two decades. Then, around 1947, ALT reorganized its subsidiaries, making itself an indirect parent company of MCGC.

30. In or around 1948, ANR predecessor ALT changed its name to American Natural Gas Company ("ANG").

31. In or around 1956, ANG again reorganized its subsidiaries, and ANR's predecessor, ANG, again made itself the direct corporate parent of Milwaukee Solvay.

32. Between 1928 and 1962, ANR, through its predecessors ALT and ANG, had control over operations of the coke and manufactured gas facility, including control over operations relating to the contamination of the Solvay Site.

33. In or about June of 1962, Milwaukee Solvay (still controlled by ANR predecessor, ANG) sold all of its assets to Wisconsin Coke Company, Inc., a wholly-owned subsidiary of Pickands Mather & Company.

34. As a part of a series of 1962 transactions, Milwaukee Solvay changed its name to MSC Corporation. ANR predecessor, ANG, assumed certain liabilities of MSC Corporation up to approximately $5 million (in 1962 dollars) and subsequently dissolved MSC Corporation.

35. In or about 1976, ANG changed its name to ANR.

36. On or about January 31, 2007, EPA, ANR, Wisconsin Gas and multiple other entities entered into an Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study relating to the Solvay Site ("2007 ASAOC").

37. In the 2007 ASAOC, EPA alleged that ANR was a responsible party for the Solvay Site under CERCLA. Specifically, EPA alleged that ANR, or its predecessors in interest, was an owner and/or operator of the Solvay Site at the time of the disposal of hazardous substances.

38. In accordance with the 2007 ASAOC, ANR participated in the development of the Remedial Investigation/Feasibility Study relating to the Solvay Site, which was submitted to EPA on or about August 22, 2016.

**D. Defendant Honeywell's CERCLA Liability**

39. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), makes liable, among others: (i) the current owner or operator of a facility; (ii) the owner or operator, at the time of disposal of hazardous substances, of a facility at which such hazardous substances were disposed of; and (iii)

any person who, by contract, agreement or otherwise, arranged for disposal or treatment of hazardous substances at any facility containing such hazardous substances.

40. Pursuant to Section 101(21) of CERCLA, 42 U.S.C. § 9601(21), a "person" means, among others, "an individual, firm, corporation, partnership, consortium, joint venture, commercial entity," and federal, state, and municipal governmental entities.

41. An operator, for purposes of CERCLA, is "someone who directs the workings of, manages, or conducts the affairs of a facility." *United States v. Bestfoods*, 524 U.S. 51, 66 (1998).

42. A corporation is liable for contribution costs as an operator under CERCLA when it "manage[s], direct[s], or conduct[s] operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *Id*.

43. "As a general rule, parties to a joint venture are mutually and vicariously liable for injuries or harms caused by their venture." *U.S. v. South Carolina Recycling & Disposal, Inc.*, 653 F.Supp. 984, 1005 (D.S.C. 1984) (finding CERCLA liability within the joint venture context), *aff'd in part and vacated in part and on other grounds*, *United States v. Monsanto Co.*, 858 F.2d 160 (4th Cir. 1988).

44. Historical documents relating to the operations at the Solvay Site demonstrate that Honeywell, through its predecessors, operated and/or jointly operated at the Solvay Site from 1903 until at least 1915, if not later.

45. In 1903, Semet-Solvay built and managed a byproduct coke and gas manufacturing plant located at the present-day Solvay Site.

46. Initially, Semet-Solvay independently managed and operated the plant at the Solvay Site; the plant was considered to be practically a branch of the Semet-Solvay Company.

7

47. Semet-Solvay, using its own resources and coking technology, constructed, installed, operated, and directly controlled the coke ovens at the plant. Eighty coke ovens became operational in 1904, and an additional 80 became operational by 1906.

48. Indeed, Semet-Solvay's financial contribution to the construction and operation of the coke plant was significant. By 1904, Semet-Solvay had expended approximately $1,000,000.00 in constructing the plant at the Solvay Site; by January of 1906, it had spent another $2,000,000.00 in building additional facilities at the plant.

49. At the time of the plant's construction, Semet-Solvay controlled all of the rights to the various coke and gas processes used at the plant.

50. During Semet-Solvay's involvement at the coke plant, operations at the plant eventually continued as a joint venture between Semet-Solvay and MCGC. Semet-Solvay and MCGC entered into an agreement whereby Semet-Solvay would sell MCGC the gas manufactured as a byproduct of the coking process.

51. Semet-Solvay also paid MCGC fees related to the operation of the plant in exchange for Semet-Solvay's rights to byproducts produced at the plant.

52. As the joint venture developed and evolved, Semet-Solvay continued to control and direct its own operations at the plant, as well as supervise and direct MCGC's operations at the plant, as this was the common practice of Semet-Solvay at coke plants around the country. It was Semet-Solvay's standard practice to operate the coke ovens it constructed at byproduct coke plants and sell the plants' products and byproducts to the various industrial owners the plants were built to serve.

53. Semet-Solvay's identity was publicly indistinguishable from the Milwaukee coke plant. Numerous contemporary secondary sources report that the public, media, and local and

8
Case 2:20-cv-01334-SCD   Filed 08/27/21   Page 8 of 17   Document 25

state governments referred to the coke plant as a Semet-Solvay facility and documented Semet-Solvay's operations at and management of the coke plant.

54. Semet-Solvay held itself out to the public as the operator and face of the coke plant.

55. Semet-Solvay directly managed, investigated, and responded to environmental contamination and nuisance claims arising from the release of coke byproduct contaminants into the environment. In 1911, Semet-Solvay directed the plant's investigation of and public response to local residents' complaints arising from the plant's soot, noxious gas, and other public health concerns stemming from the coking operations.

**E. Defendant ANR's CERCLA Liability**

56. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), makes liable, among others: (i) the current owner and operator of a facility; (ii) the owner or operator, at the time of disposal of hazardous substances, of a facility at which such hazardous substances were disposed of; and (iii) any person who, by contract, agreement or otherwise, arranged for disposal or treatment of hazardous substances at any facility containing such hazardous substances.

57. A parent company is liable for the acts of its subsidiary under CERCLA where it had some level of control over the operations of the subsidiary relating to the contamination or where reasons exist to pierce the corporate veil. *U.S. v. Bestfoods*, 524 U.S. 51, 63-64, 66-67 (1998).

58. Historical documents relating to the operation and management of the coke and gas plant demonstrate that ANR's predecessor companies, ALT and ANG, asserted direct control over the operations relating to contamination at the Solvay Site over a span of at least 35 years.

59. As one example, a 1959 study commissioned by ANG to evaluate the effectiveness of operations at the Solvay Site demonstrates that ANG had control over the operations relating to

9
Case 2:20-cv-01334-SCD   Filed 08/27/21   Page 9 of 17   Document 25

contamination, including the coke and gas plant's methods of operation, nature of fuels and equipment used, equipment maintenance strategies, volume of production and decisions relating to the recovery or waste of production by-products.

60. ANR, through its myriad predecessors, also financially benefitted from those same operations relating to contamination.

61. ANR, through its myriad predecessors, further used the Solvay Site and Milwaukee Solvay's operations to procure and store equipment relating to its own operations and the operations of its other subsidiary companies.

62. Wisconsin Public Service Commission documents further illustrate that ANG had responsibility for Milwaukee Solvay's operation and management when it once again made itself Milwaukee Solvay's direct parent in or around 1956.

63. ANR's predecessors and MCGC/Milwaukee Solvay also had significant overlap in officers and directors.

64. In or about 1962, when MSC Corporation was dissolved, ANG further assumed and agreed to pay any and all debts, obligations and liabilities of MSC Corporation, up to almost $5 million (in *1962* dollars).

F. **Cleanup Actions and Plaintiff's Response Costs**

65. In or about May of 2017, Wisconsin Gas acquired the Solvay Site.

66. On or about August 31, 2017, Wisconsin Gas entered into the 2017 ASAOC with EPA, under which it agreed to perform a Non-Time Critical Removal cleanup on the property.

67. EPA determined hazardous substances, pollutants, and/or contaminants to be present in soils at the Solvay Site, namely carcinogenic polyaromatic hydrocarbons, benzene,

10
Case 2:20-cv-01334-SCD   Filed 08/27/21   Page 10 of 17   Document 25

cyanide, and arsenic and coal tar, which, according to EPA, may pose an imminent and substantial endangerment to public health, welfare, or the environment.

68. Both in connection with the 2017 ASAOC and outside of it, Wisconsin Gas has incurred and will incur substantial response costs relating to the cleanup of the Solvay Site. To date, Wisconsin Gas has been required to expend millions of dollars on response costs relating to the cleanup of the Solvay Site and anticipates spending millions more during the pendency of this litigation.

69. Pursuant to paragraph 27 of the 2017 ASAOC, these response costs were incurred by Wisconsin Gas consistent with the National Contingency Plan.

### COUNT I – CERCLA SECTION 113
**(Directed against Honeywell International Inc.)**

70. Plaintiff realleges and incorporates by reference paragraphs 1 through 69 above as if fully set forth herein.

71. Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), authorizes any person to seek contribution from any other person who is liable or potentially liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

72. Pursuant to Section 107(a)(4)(B) and 107(a)(4)(C) of CERCLA, 42 U.S.C. §§ 9607(a)(4)(B) and 9607(a)(4)(C), any person who is liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), shall be liable for necessary response costs incurred by any other person consistent with the National Contingency Plan and for natural resource damages.

73. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), makes liable, among others: (i) the current owner or operator of a facility; (ii) the owner or operator, at the time of disposal of hazardous substances, of a facility at which such hazardous substances were disposed of; and (iii)

any person who, by contract, agreement or otherwise, arranged for disposal or treatment of hazardous substances at any facility containing such hazardous substances.

74. The Solvay Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

75. Defendant Honeywell is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

76. Wisconsin Gas is a "person" within the meaning of Section 101(21) and 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9601(21) and 9607(a)(4)(B).

77. Defendant Honeywell, through its predecessors, operated and/or jointly operated a portion of the Solvay Site.

78. Defendant Honeywell, through its predecessors, controlled or jointly controlled the coke and gas manufacturing plant operations at the Solvay Site, including, but not limited to, operations relating to the contamination of the Solvay Site.

79. Defendant Honeywell, through its predecessors, was responsible for hazardous substances generated, disposed of, and/or arranged for disposal at the Solvay Site.

80. At least some of the hazardous substances that were the subject of the 2017 ASAOC and other cleanup efforts undertaken by Wisconsin Gas to date and those that will be the subject of further cleanup efforts in the future were released at the Solvay Site during Defendant Honeywell's period of operation.

81. The response costs and other damages that Wisconsin Gas has incurred or will incur in connection with investigating and remediating releases and/or threatened releases of hazardous substances at the Solvay Site are necessary and consistent with the National Contingency Plan.

82. In connection with these releases from the facilities identified above, Wisconsin Gas has paid and will continue to pay costs for necessary response actions at the Solvay Site consistent with the National Contingency Plan, within the meaning of Section 101(31) of CERCLA, 42 U.S.C. § 9601(31) ("Solvay Costs"), and natural resource damages.

83. Wisconsin Gas requests that the Court determine the parties' proper allocable shares with respect to Solvay Costs and damages and determine that Defendant Honeywell is liable to Wisconsin Gas for those Solvay Costs and damages paid by Wisconsin Gas that are in excess of Wisconsin Gas's allocable share and that are properly attributable to Defendant Honeywell.

84. Pursuant to Section 113(l) of CERCLA, 42 U.S.C. § 9613(1), Wisconsin Gas has provided a copy of this Amended Complaint to the Attorney General of the United States and the Administrator of the United States Environmental Protection Agency.

## COUNT II – CERCLA SECTION 113
**(Directed against American Natural Resources Company)**

85. Plaintiff realleges and incorporates by reference paragraphs 1 through 84 above as if fully set forth herein.

86. Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), authorizes any person to seek contribution from any other person who is liable or potentially liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

87. Pursuant to Section 107(a)(4)(B) and 107(a)(4)(C) of CERCLA, 42 U.S.C. §§ 9607(a)(4)(B) and 9607(a)(4)(C), any person who is liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), shall be liable for necessary response costs incurred by any other person consistent with the National Contingency Plan and for natural resource damages.

88. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), makes liable, among others: (i) the current owner and operator of a facility; (ii) the owner or operator, at the time of disposal of

hazardous substances, of a facility at which such hazardous substances were disposed of; and (iii) any person who, by contract, agreement or otherwise, arranged for disposal or treatment of hazardous substances at any facility containing such hazardous substances.

89. The Solvay Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

90. Defendant ANR is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

91. Wisconsin Gas is a "person" within the meaning of Section 101(21) and 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9601(21) and 9607(a)(4)(B).

92. Defendant ANR, through its predecessors, owned and/or operated a portion of the Solvay Site.

93. Defendant ANR, through its predecessors, controlled the coke and gas manufacturing plant operations at the Solvay Site, including operations relating to the contamination of the Solvay Site.

94. Defendant ANR, through its predecessors, was responsible for hazardous substances generated, disposed of, and/or arranged for disposal at the Solvay Site.

95. At least some of the hazardous substances that were the subject of the 2017 ASAOC and other cleanup efforts undertaken by Wisconsin Gas to date and those that will be the subject of further cleanup efforts in the future were released at the Solvay Site during Defendant ANR's period of ownership/operation.

96. The response costs and other damages that Wisconsin Gas has incurred or will incur in connection with investigating and remediating releases and/or threatened releases of hazardous substances at the Solvay Site are necessary and consistent with the National Contingency Plan.

97. In connection with these releases from the facilities identified above, Wisconsin Gas has paid and will continue to pay costs for necessary response actions at the Solvay Site consistent with the National Contingency Plan, within the meaning of Section 101(31) of CERCLA, 42 U.S.C. § 9601(31) ("Solvay Costs"), and natural resource damages.

98. Wisconsin Gas requests that the Court determine the parties' proper allocable shares with respect to Solvay Costs and damages and determine that Defendant ANR is liable to Wisconsin Gas for those Solvay Costs and damages paid by Wisconsin Gas that are in excess of Wisconsin Gas's allocable share and that are properly attributable to Defendant.

99. Pursuant to Section 113(l) of CERCLA, 42 U.S.C. § 9613(1), Wisconsin Gas has provided a copy of this Amended Complaint to the Attorney General of the United States and the Administrator of the United States Environmental Protection Agency.

### COUNT III – DECLARATORY JUDGMENT FOR FUTURE COSTS
(Directed against Honeywell International Inc.)

100. Plaintiff realleges and incorporates by reference paragraphs 1 through 99 above as if fully set forth herein.

101. An actual, substantial, and legal controversy has arisen and now exists between Wisconsin Gas and Defendant Honeywell with regard to responsibility for the current and future costs and damages relating to the Solvay Site and how these should be allocated between Wisconsin Gas and Defendant Honeywell. The controversy is of sufficient immediacy to warrant the issuance of declaratory judgment.

102. Until such time as remediation of the Solvay Site is complete, Wisconsin Gas will continue to incur additional response costs relating to the Solvay Site.

103. Absent a judicial determination setting forth the parties' rights and obligations, including the appropriate allocable shares under CERCLA, Wisconsin Gas may be obligated in

the future to pay costs and damages that, under CERCLA, are in fact the responsibility of Defendant Honeywell.

104. For these reasons, Wisconsin Gas seeks declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 113(g)(2), and 28 § U.S.C. 2201, allocating future Solvay Costs between Wisconsin Gas and Defendant Honeywell, and holding Defendant Honeywell liable for the share of future Solvay Costs as allocated to it.

### COUNT IV – DECLARATORY JUDGMENT FOR FUTURE COSTS
**(Directed against American Natural Resources Company)**

105. Plaintiff realleges and incorporates by reference paragraphs 1 through 104 above as if fully set forth herein.

106. An actual, substantial, and legal controversy has arisen and now exists between Wisconsin Gas and Defendant ANR with regard to responsibility for the current and future costs and damages relating to the Solvay Site and how these should be allocated between Wisconsin Gas and Defendant ANR. The controversy is of sufficient immediacy to warrant the issuance of declaratory judgment.

107. Until such time as remediation of the Solvay Site is complete, Wisconsin Gas will continue to incur additional response costs relating to the Solvay Site.

108. Absent a judicial determination setting forth the parties' rights and obligations, including the appropriate allocable shares under CERCLA, Wisconsin Gas may be obligated in the future to pay costs and damages that, under CERCLA, are in fact the responsibility of Defendant ANR.

109. For these reasons, Wisconsin Gas seeks declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 113(g)(2), and 28 § U.S.C. 2201, allocating future Solvay

Costs between Wisconsin Gas and Defendant ANR, and holding Defendant ANR liable for the share of future Solvay Costs as allocated to it.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Wisconsin Gas LLC respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendants as follows:

(1) Awarding Wisconsin Gas a declaratory judgment determining Defendants' allocable shares for Solvay Costs and damages, determining that Defendants are liable for those costs and damages that are allocable to Defendants, and holding that these determinations shall be binding on any subsequent action or actions to recover further response costs or damages;

(2) Awarding Wisconsin Gas contribution against Defendants for Solvay Costs and damages paid by Wisconsin Gas that are allocable to Defendants, with interest; and

(3) Granting Wisconsin Gas such other legal and equitable relief as the Court deems just, proper, or necessary.

Dated: August 27, 2021

Respectfully submitted,

/s/ *Joseph A. Cancila*
Joseph A. Cancila
Matthew Kennison
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700
(312) 471-8701 (fax)
jcancila@rshc-law.com
mkennison@rshc-law.com

James Goldschmidt
QUARLES & BRADY LLP
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202
(414) 277-5663
james.goldschmidt@quarles.com

*Counsel for Plaintiff*