# EXHIBIT 2



**CSX**
TRANSPORTATION

EPA Region 5 Records Ctr.

256488
937742

Law Department
500 Water Street (J150)
Jacksonville, FL 32202
Phone: (904) 359-1894
Personal FAX: (904) 245-2857
E-Mail: peggy_rounds@csx.com

Peggy L. Rounds
Paralegal

September 23, 2004

*Via* Airborne Express

Mr. Craig Melodia,
Associate Regional Counsel
U.S. Environmental Protection Agency Region 5
Office of Regional Counsel (C-14J)
77 West Jackson Blvd
Chicago, IL 60604

      Re:    Information Request - 311 East Green Avenue, Milwaukee, Milwaukee County, Wisconsin

Dear Mr. Melodia:

This responds to the Request for Information pursuant to Section 104 of CERCLA for 311 East Green Avenue, Milwaukee, Milwaukee County, Wisconsin, dated August 26, 2004. Enclosed please find the response to EPA's Information Request, which is provided on behalf of CSXT.

CSXT has made reasonable inquiry and conducted a diligent search of currently available company records. The responses provided pursuant to the Information Request are not intended and should not be construed as an admission of liability by CSXT for the release or threatened release of hazardous substances at this site, or for any removal or response costs or damages attributable to hazardous substances at this site. CSXT continues to specifically deny any liability under CERCLA or any other statute, regulation or common law for the release or threatened release of hazardous substances at this site.

As explained more thoroughly in the attached response, CSXT has been unable to find any evidence that it or one of its predecessors is a responsible person as defined by CERCLA. We have, however, provided all available information regarding the Site that we were able to locate.

Please call with any questions regarding the enclosed.

Sincerely,

*Peggy L. Rounds*
Peggy L. Rounds

cc:    Paul Kurzanski
       Jeff Styron

WG-ANR-00000299

## General Objections

Although the investigation does not reveal whether CSXT or its predecessors (collectively "the Railroad") transported materials to a business located at 311 East Green Avenue, Milwaukee, Milwaukee County, Wisconsin, such transportation would have been pursuant to federal common carrier rules for the provision of routine rail transportation services for third parties. CERCLA expressly shields common carriers from liability for such shipments. Section 107(a)(4) provides that a transporter is not liable if it did not select the Site; by definition, the shipper, and not the railroad, selects the destination for common carrier rail shipments, and the common carrier is obliged by federal law to provide that service.

In addition, the third party defense for liability is available to a common carrier notwithstanding a contractual relationship between the common carrier and the shipper when "the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail." Section 107(b)(3). Accordingly, for any such shipments, the Railroad would not be liable.

## ANSWERS

The following individuals were consulted in the preparation of these answers.

> Tony Tuchek, VP Region- North
> Scott Gordon, Director Hazardous Materials
> Jim Marks, AVP General Claims, Risk Management
> H.R. Elliott, General Manager Environmental Hazardous Materials Systems
> Carl Gerhardstein, Senior Director-Environment
> Kim Vaughn, Manager Environmental Projects
> Paul Kurzanski, Environmental Specialist
> Kathy Wilson, Assistant Vice President Load Engineering and Design Services
> Ray Wilkins, Director Accounts Payable
> Steve P. Smith, General Manager customer Accounting
> Fritz Horn, Senior Procurement Manager
> Kevin Hurley, - CSX RPI - Director Real Estate Services
> Karen Mohler, Director Real Estate Engineering
> Romano De Simone, Director Chemical Safety
> Brock Lucas, Director Dispatching & Net Performance

If you need further information regarding these questions please contact Jeffrey W. Styron, Counsel, CSX Transportation, Inc., 500 Water Street J-150, Jacksonville, FL 32202; 904-366-4058.

1. Did you ever use, purchase, store, treat, dispose, transport or otherwise handle any materials, including hazardous substances, at the Site? If the answer to the preceding question is anything but an unqualified "no", identify: **No.**

    a)     the chemical composition, characteristics, physical state (e.g., solid, liquid) of each material;

    b)     who supplied you with such material;

WG-ANR-00000300

c)      how such materials were used, purchased, generated, stored, treated, transported, disposed of or otherwise handled by you;

d)      when such materials were used, purchased, generated, stored, treated, transported, disposed of or otherwise handled by you;

e)      where such materials were used, purchased, generated, stored, treated, transported, disposed of or otherwise handles by you;

f)      the quantity of such materials used, purchased, generated, stored, tr4eated, transported, disposed of or otherwise handled by you.

2.      State the dates during which you owned, operated, or leased the Site and provide copies of all documents evidencing or relating to such ownership, operation, or lease arrangement (e. g., deeds, leases, etc.).

**Pere Marquette Railway Co. ("PMRC") appears to have bought portions of this Site from June 13, 1903 to February 10, 1944 as follows:**

- **On June 13, 1903 PMRC bought parcels of land from Henry Newcombe of Boston, MA that appear to be part of the Site in question (4 pages);**
- **On October 26, 1936 the Milwaukee Electric Railway and Light Co. conveyed a portion of the Site to the PMRC (3 pages);**
- **On October 29, 1936 the City of Milwaukee conveyed a portion of the Site to the PMRC (5 pages);**
- **On February 10, 1944 a portion of lots one and two of the Site were conveyed to PMRC by Walter A. Zinn and Toni Zinn (his wife). Copies of a proposed Agreement, proposed Lease and two letters dated December 31, 1943 and January 3, 1944 are enclosed for your perusal (9 pages); and**
- **A Quit Claim Deed wherein the City of Milwaukee conveyed part of the Site to the Chesapeake and Ohio Railway Co. on July 1, 1948 (5 pages).** *All the above attached as exhibit 1.*

**The PMRC leased a portion of the site to the flowing entity:**
- **C. J. Meyer doing business as Forelle Fish Company (2 pages),** *Enclosed as Exhibit No. 2*

**It appears that over the time period of September 24 through 27th of 1968 the railroad that owned the property mentioned above, then known as the Chesapeake and Ohio Railway Co. ("C&O"), conveyed their property located south of the Chicago and Northwestern rail corridor to Pickands Mather & Co. At the same time, Pickands Mather & Co. conveyed their property located North of the Chicago and Northwestern rail corridor to the C&O, as evidenced by the following deeds:**

- **C& O to Pickands Mather Co., deed dated September 24, 1968, (4 pages) and**
- **Pickands Mather Co. to the C&O, deed dated September 27, 1968, (4 pages).** *Enclosed as exhibit 3.*

**The C&O Railway had the following leases affecting the property to the north of the Chicago and Northwestern rail corridor and north of the Site:**

WG-ANR-00000301

- **O'Connell Distribution Co., Inc., 2 leases**
  - **Lease dated April 15, 1974 (5 pages, including map);and**
  - **Lease dated May 15, 1975 (5 pages, including map).**
- **Janke Industrial Marine Corp. June 20, 1973 (5 pages, including map).** *Enclosed as exhibit 4.*

**The C&O conveyed the interest in their property to Chessie Resources, Inc. on February 21, 1975 (7 pages including map). My understanding is this property is located North of the Site in question, please refer to map enclosed with deed.** *Enclosed as exhibit 5.*

**Chessie Resources, Inc. in turn, deeded the above referenced property to the City of Milwaukee on December 19, 1980, (4 pages including map).** *Enclosed as exhibit 6.*

3.      Identify all persons having knowledge or information about the generation, transportation, treatment, disposal, or other handling of hazardous substances by you, your contractors, lessors, or by prior owners or operators at the Site. **None known.**

4.      Identify the prior owners of the Site. For each prior owner, further identify: **See response to question No. 2 above.**
   a)    the dates of ownership;
   b)    all evidence showing that they controlled access to the Site; and,
   c)    all evidence that a hazardous substance, pollutant, or contaminant, was released or threatened to be released at the Site during the period that they owned the Site.

5.      Identify the prior operators, including lessors, of the Site.
- **To C. J. Meyer doing business as Forelle Fish Company (2 pages),** *Enclosed as Exhibit No. 2*

**The C&O had the following leases affecting property to the north of the Chicago and Northwestern Railroad corridor and north of the Site:**
- **O'Connell Distribution Co., Inc., 2 leases**
  - **Lease dated April 15, 1974 (5 pages, including map);and**
  - **Lease dated May 15, 1975 (5 pages, including map).**
- **Janke Industrial Marine Corp. June 20, 1973 (5 pages, including map).** *Enclosed as exhibit 4.*

For each operator, further identify:
   a)    the dates of operation; **Please see above referenced documents.**
   b)    the nature of prior operations at the Site; **Unknown.**
   c)    all evidence that they controlled access to the Site; **Unknown.**
   d)    all evidence that a hazardous substance, pollutant, or contaminant was released or threatened to be released at or from the Site and/or its solid waste units during the period that they were operating the Site. **Unknown.**

WG-ANR-00000302

6.     Have you or any other person working with you or on your behalf ever accepted waste materials, including hazardous substances, for transportation to the Site from any person? If the answer to this question is anything but an unequivocal "no", identify: **No.**

    a)     The person from whom you or such other persons accepted waste materials for transport to the Site;

    b)     Every date on which waste materials were so accepted or transported;

    c)     For each transaction, the nature of the waste materials accepted or transported, including the chemical content, characteristics, physical state (e.g., solid, liquid), and the process for which the material was used or the process which generated the material;

    d)     For each material, describe any warnings given to you with respect to its handling'

    e)     The owner of the materials so accepted or transported;

    f)     The quantity of the material involved (weight or volume) in each transaction and the total quantity for all transactions;

7.     Identify all persons, including yourself, who may have arranged for disposal or treatment or arranged for transportation for disposal or treatment of waste materials, including hazardous substances, at the Site. In addition, identify the following: **None known.**

    a)     The persons with whom you or such other persons made such arrangements;

    b)     Every date on which such arrangements took place;

    c)     For each transaction, the nature of the waste material or hazardous substance; including the chemical content, characteristics, physical state (e.g., solid, liquid) and the process for which the substance was used or the process which generated the substance;

    d)     The owner of the waste materials or hazardous substances so accepted or transported;

    e)     The quantity of the waste materials or hazardous substances involved (weight or volume) in each transaction and the total quantity for all transactions;

    f)     The person(s) who selected the Site as the place to which the waste materials or hazardous substances were to be transported;

    g)     Where the person identified in (f) above intended to have such hazardous substances or waste materials transported and all evidence of this intent;

    h)     What was actually done to the waste materials or hazardous substances once they were brought to the Site;

    i)     The final disposition of each of the waste materials or hazardous substances involved in such transactions;

    j)     The measures taken by you to determine the actual methods, means, and site of treatment or disposal of the waste material and hazardous substances involved in each transaction;

    k)     The type and number of containers in which the waste materials or hazardous substances were contained when they were accepted for transport, and subsequently until they were deposited at the Site, and all marking on such containers;

    l)     The price paid for (i) transport or (ii) disposal of (iii) or both, of each waste material or hazardous substance;

    m)     All documents containing information responsive to a) – l) above, or in lieu of identification of all relevant documents, provide copies of all such documents;

    n)     All person with knowledge, information, or documents responsive to a0 – l) above.

8.      Identify the acts or omissions of any person, other than your employees, contractors, or agents, that my have caused the release or threat of release of hazardous substances, pollutants, or contaminants, and damages resulting therefrom.

> **CSXT knows of no other person whose acts or omissions may have caused the release or threat of release of hazardous substances, pollutants, or contaminants, or of damages resulting therefrom.**

9.      If you have reason to believe that there may be persons able to provide a more detailed or complete response to any Information Requests or who may be able to provide additional responsive documents, identify such persons.   **None known.**

10.     Provide copies of all local, state, and federal environmental permits ever granted for the Facility or any part thereof (e.g., RCRA permits, NPDES permits, etc.).

> **CSXT knows of no other documents or information responsive to this Information Request, whether in our possession or not.**

> **In preparation of CSXT's response to EPA's Information Request, various members of the Environmental Operations, Environmental Remediation, Hazardous Material Systems, Purchasing and Materials, and Transportation and Logistics departments of CSXT conducted the investigation and document searches in their respective departments and furnished the basis of the responses to the Information Request.  Both files and computerized records were checked to respond to this Information Request.  True and accurate copies of deeds and leases have been attached.**

I certify under a penalty of law that this document and all Enclosures were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gathered and evaluated the information submitted. Based upon my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  There are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Respectfully submitted,


Peggy L. Rounds
Paralegal

WG-ANR-00000304

THIS DEED, made this 19th day of December, 1980, by and between CHESSIE RESOURCES, INC., a corporation of the Commonwealth of Virginia, whose post office address is 1225 Terminal Tower, Cleveland, Ohio 44113, hereinafter called Grantor, and THE CITY OF MILWAUKEE, a political subdivision of the State of Wisconsin, whose post office address is 2040 W. Wisconsin Avenue, Milwaukee, Wisconsin 53233, hereinafter called Grantee, witnesseth:

That, for and in consideration of payment of the sum of TEN DOLLARS ($10.00) and other good and valuable considerations, the receipt whereof is hereby acknowledged, Grantor does hereby give, grant and convey unto Grantee, Grantee's successors and assigns, that certain land situate in the County of Milwaukee, State of Wisconsin, and more particularly described as follows:

That part of Lot 1 in the Partition of that part of the NW 1/4 of Section 4, T6N, R22E, in City of Milwaukee, Milwaukee County, Wisconsin, which lies West of the 1/4 Section line, bounded and described as follows: Commencing at a point in the North line of said 1/4 Section 405.45 feet North 89° 56' 29" East, of the Northwest corner of said 1/4 Section, thence South 00° 46' 58" West and parallel to the West line of said 1/4 Section 16.00 feet to the POINT OF BEGINNING of the land to be described, said point being in the intersection of the East line of the Chicago and North Western Railway Company right-of-way and the South line of East Greenfield Avenue; running thence North 89° 56' 29" East and parallel to the North line of said 1/4 Section 1,164.53 feet to a point in the westerly dock line of the Kinnickinnic River; thence South 21° 32' 49" West along the westerly dock line of the Kinnickinnic River 825.49 feet to a point; thence South 89° 25' 22" West 359.42 feet to a point in the northeasterly line of the Chicago and North Western Railway Company right-of-way, said point being 770.75 feet South of the South line of East Greenfield Avenue; thence northwesterly along the arc of a curve on the easterly line of said right-of-way 923.11 feet to the point of beginning; containing an area of 13.83 acres, more or less.

Being a portion of the premises acquired by Chessie Resources, Inc. from The Chesapeake and Ohio Railway Company by deed dated February 21, 1975, recorded in the Office of the Register of Deeds for Milwaukee County, Wisconsin, on June 16, 1975, in Microfilm Reel 858, Images 1085 to 1090, inclusive, as Document No. 4922997.

WG-ANR-00000305

TOGETHER with the buildings and improvements thereupon erected, made or being, and all and every of the rights, alleys, ways, waters privileges, appurtenances and advantages to the same belonging, or in anywise appertaining.

TO HAVE AND TO HOLD the premises aforesaid, with the privileges and appurtenances thereunto belonging, to Grantee, Grantee's successors and assigns forever.

AND GRANTOR, as to the premises aforesaid, does hereby covenant that it, its successors or assigns, will forever warrant and defend the said premises and every part thereof unto Grantee, Grantee's successors or assigns, against the lawful claims and demands of Grantor and all persons claiming or to claim by, through, or under it; subject however, to reservations, exceptions and restrictions of record, to zoning ordinances and to subdi- vision regulations and laws, if any, to taxes and assessments both general and special which become due and payable after the date of this instrument and which Grantee assumes and agrees to pay, to all encroachments or other matters which might be revealed from an inspection and/or survey of the premises, aforesaid, and to all existing ways and servitudes, howsoever created.

AND FOR THE CONSIDERATION AFORESAID, Grantor does hereby remise, release and forever quitclaim unto Grantee, its successors or assigns, all of Grantor's right, title and in- terest in and to that certain land situate in the County of Milwaukee, State of Wisconsin, and more particularly described as follows:

All that land in the Northwest one quarter (NW 1/4) of Section Four (4), Township Six (6) North, Range Twenty-two (22) East, lying between the easterly line of the aforedescribed 13.83-acre property, and the centerline of the Kinnickinnic River.

Being a portion of the premises acquired by Chessie Resources, Inc. from The Chesapeake and Ohio Railway Company by deed dated February 21, 1975, recorded in the Office of Register of Deeds for Milwaukee County, Wisconsin on June 16, 1975, in

WG-ANR-00000306

Microfilm Reel 636, Images 1089 to 1090, Inclusive, as Document No. 4922997.

IN WITNESS WHEREOF, CHESSIE RESOURCES, INC., pursuant to due corporate authority has caused its name to be signed hereto by its officer hereunto duly authorized and its corporate seal, duly attested, to be hereunto affixed.

WITNESS:                          CHESSIE RESOURCES, INC.

_Linda L Kelly_                   By _R C McGowan_ _____

                                  Attest:

                                  _Will V Melby_ _____

STATE OF OHIO        )
                     ) SS.
COUNTY OF CUYAHOGA   )

I,   H. Thomas Dunck          , a Notary Public of said City, do certify that on December **19**, 1980, before me in said State and County personally came   R. C. McGowan    , to me know, and known to me to be one of the persons whose name is subscribed to the above instrument dated December **19**, 1980, who, being by me first duly sworn, did depose, acknowledge and say that he resides at ███non-responsive███               ; that he is       President        of Chessie Resources, Inc., the corporation described in and which executed said in- strument; that he knows the seal of said corporation; that the seal affixed to said instrument is such seal; that it was so affixed by authority of the Board of Directors of said corpora- tion; that he signed his name thereto for said corporation pur- suant to such authority; and that said instrument is the free act and deed of said corporation.

In witness whereof, I hereunto set my hand and official seal, the day and year first above written.

My Commission expires on   H. THOMAS DUNCK, Attorney At Law
                            Notary Public - State of Ohio
                            My commission has no expiration date,
                            Section 147.03 R. C.

_H Thomas Dunck_ _____
        Notary Public

WG-ANR-00000307



MILWAUKEE, WISCONSIN
MILWAUKEE COUNTY

SALE OF
CRI PROPERTY
13.83 Ac.

E. GREENFIELD AVE.

SEC. 33  T7N  R22E
SEC. 4  T6N  R22E

N 89° 56' 29" E    1164.53'

EASEMENT

CHICAGO AND NORTHWESTERN RAILWAY COMPANY

50'

425.71'

20'

825.49'

S 21° 32' 49" W

KINNICKINNIC RIVER

S 89° 25' 22" W    359.42'

N

CHESSIE RESOURCES, INC.

PROPOSED SALE TO
THE CITY OF MILWAUKEE

SCALE 1": 200'         8-13-80

DRAWING NO. CRI-1                    TMC

WG-ANR-00000308

WG-ANR-00000309

THIS DEED, made FEB 2 1 1975 , by and between

THE CHESAPEAKE AND OHIO RAILWAY COMPANY, a corporation of the Commonwealth
of Virginia, whose post office address is 2 North Charles Street, Baltimore,
Maryland 21201, hereinafter called Grantor, and CHESSIE RESOURCES, INC., a
corporation of the Commonwealth of Virginia, whose post office address is
2 North Charles Street, Baltimore, Maryland 21201, hereinafter called
Grantee, witnesseth:

That, for and in consideration of payment of the sum of TEN DOLLARS
($10.00) and other good and valuable considerations, the receipt whereof is
hereby acknowledged, Grantor does hereby give, grant and convey unto Grantee,
Grantee's successors and assigns, that certain land situate in the County of
Milwaukee, State of Wisconsin, and more particularly described as follows:

> That part of Lot 1 in the Partition of that part of the
> NW 1/4 of Section 4, T6N, R22E, in City of Milwaukee, Milwaukee
> County, Wisconsin, which lies West of the 1/4 Section line,
> bounded and described as follows: Commencing at a point in
> the North line of said 1/4 Section 405.45 feet North 89° 56'
> 29" East of the Northwest corner of said 1/4 Section, thence
> South 00° 46' 58" West and parallel to the West line of said
> 1/4 Section 16.00 feet to the POINT OF BEGINNING of the land
> to be described, said point being in the intersection of the
> East line of the Chicago and North Western Railway Company
> right-of-way and the South line of East Greenfield Avenue;
> running thence North 89° 56' 29" East and parallel to the
> North line of said 1/4 Section 1,164.53 feet to a point in
> the westerly dock line of the Kinnickinnic River; thence
> South 21° 32' 49" West along the westerly dock line of the
> Kinnickinnic River 825.49 feet to a point; thence South 89°
> 25' 22" West 359.42 feet to a point in the northeasterly line
> of the Chicago and North Western Railway Company right-of-way,
> said point being 770.75 feet South of the South line of East
> Greenfield Avenue; thence northwesterly along the arc of a
> curve on the easterly line of said right-of-way 923.11 feet
> to the point of beginning; containing an area of 13.83 acres,
> more or less.

> BEING all premises acquired by The Chesapeake and Ohio
> Railway Company from Pickands Mather & Co. by deed dated
> September 27, 1968, recorded in the Office of the Register
> of Deeds for Milwaukee County, Wisconsin, on October 2, 1968,
> in Microfilm Reel 443, Images 1102 to 1104 inclusive, as
> Document No. 4421151.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 13 of 74   Document 50-3

WG-ANR-00000310

TOGETHER with the buildings and improvements thereupon erected, made or being, and all and every of the rights, alleys, ways, waters privileges, appurtenances and advantages to the same belonging, or in anywise appertaining.

TO HAVE AND TO HOLD the premises aforesaid, with the privileges and appurtenances thereunto belonging, to Grantee, Grantee's successors and assigns forever.

AND GRANTOR, as to the premises aforesaid, does hereby covenant that it, its successors or assigns, will forever warrant and defend the said premises and every part thereof unto Grantee, Grantee's successors or assigns, against the lawful claims and demands of Grantor and all persons claiming or to claim by, through, or under it; subject however, to reservations, exceptions and restrictions of record, to zoning ordinances and to subdivision regulations and laws, if any, to taxes and assessments both general and special which become due and payable after the date of this instrument and which Grantee assumes and agrees to pay, to all encroachments or other matters which might be revealed from an inspection and/or survey of the premises, aforesaid, and to all existing ways and servitudes, howsoever created.

(END OF THIS PAGE)

- 2 -

WG-ANR-00000311

AND FOR THE CONSIDERATION AFORESAID, Grantor does hereby remise, release and forever quitclaim unto Grantee, its successors or assigns, all of Grantor's right, title and interest in and to that certain land situate in the County of Milwaukee, State of Wisconsin, and more particularly described as follows:

> All that land in the Northwest one quarter (NW 1/4) of Section Four (4), Township Six (6) North, Range Twenty-two (22) East, lying between the easterly line of the afore-described 13.83-acre property, and the centerline of the Kinnickinnic River.

> BEING premises acquired by The Chesapeake and Ohio Railway Company from Pickands Mather & Co. by deed dated September 27, 1968, recorded as aforesaid on October 2, 1968, in Microfilm Reel 443, Images 1105 and 1106, as Document No. 4421152.

AND THIS DEED FURTHER WITNESSETH that Bankers Trust Company and S. Burg, as Trustees under the First Mortgage and Deed of Trust of Pere Marquette Railway Company, dated July 1, 1916, as amended and supplemented, do hereby remise, release and forever quitclaim unto Grantee, its successors or assigns, any and all of their right, title and interest in and to the property herein conveyed; but this quitclaim is subject to any and all of the same rights, reservations, exceptions, limitations and agreements herein specified on behalf of the Grantor, and is without covenant or warranty, express or implied, without recourse against said Trustees in any event, and without affecting or in any way impairing the lien and operation of said mortgage and supplements thereto on and in respect of the remaining premises mortgaged thereunder.

IN WITNESS WHEREOF, THE CHESAPEAKE AND OHIO RAILWAY COMPANY and BANKERS TRUST COMPANY (as corporate Trustee), pursuant to due corporate

WG-ANR-00000312

authority, have caused their names to be signed hereto by their officers
hereunto duly authorized and their corporate seals, duly attested, to be
hereunto affixed; and S. Burg (as individual Trustee) has hereunto set his
hand and seal; each as of the day and year first above written.

WITNESS:                              THE CHESAPEAKE AND OHIO RAILWAY COMPANY

_____     By_____
    Albert W. Clements, Jr.              Assistant Vice President-General Manager
                                         J. R. Hickman
                                      Attest:

                                      _____
                                      R. S. Sullivan        Assistant Secretary


WITNESS:                              BANKERS TRUST COMPANY, as Trustee

_____     By_____
    J. E. Fulwood                        T. J. Moskie    Assistant Vice President
                                      Attest:

                                      _____
                                      R. J. Noblett         Assistant Secretary


WITNESS:

_____     _____
    Christine Gerace                  S. Burg                      S. Burg, Trustee


- 4 -

WG-ANR-00000313

State of Maryland)
            ) ss.
City of Baltimore)

     I,   Robert P. DeBoy         , a Notary Public of said City,
do certify that on   FEB 2 1 1975         , before me in said City
personally came     J. R. Hickman       , to me known, and known
to me to be one of the persons whose name is subscribed to the above instrument
dated    FEB 2 1 1975         , who, being by me first duly sworn,
did depose, acknowledge and say that he resides at non-responsive

non-responsive                             ; that he is
Assistant Vice President-General Manager
~~the General Manager — Real Estate~~ of The Chesapeake and Ohio Railway Company,
one of the corporations described in and which executed said instrument; that
he knows the seal of said corporation; that the seal affixed to said instru-
ment is such seal; that it was so affixed by authority of the Board of Directors
of said corporation; that he signed his name thereto for said corporation pur-
suant to such authority; and that said instrument is the free act and deed of
said corporation.

     In witness whereof, I hereunto set my hand and official seal, the
day and year first above written.

     My Commission expires on   JUL 1   1978

                                         _____
                                  Notary Public  Robert P. DeBoy


State of New York       )
                    ) ss.
City and County of New York)

     I,    Phyllis Bucchieri     , a Notary Public of said City
and County, do certify that on  MARCH 14, 1975      , before me in
said City and County personally came  G. J. MOSKIE    , to
me known, and known to me to be one of the persons whose name is subscribed to
the above instrument dated  FEBRUARY 21, 1975    , who being by me
first duly sworn, did depose, acknowledge and say that he resides at no

non-responsive
non-responsive                                       ;
            ASSISTANT
that he is a Vice President of Bankers Trust Company, P. O. Box 318, Church
Street Station, New York 10015, one of the corporations described in and which
executed said instrument; that said corporation is a Trustee under the First

                                - 5 -

Case 2:20-cv-01334-SCD  Filed 01/27/23  Page 17 of 74  Document 50-3

WG-ANR-00000314

Mortgage and Deed of Trust of Pere Marquette Railway Company dated July 1, 1916, as amended and supplemented; that he knows the seal of said corporation; that the seal affixed to said instrument is such seal; that it was so affixed by authority of the Board of Directors of said corporation; that he signed his name thereto for said corporation pursuant to such authority; and that said instrument is the free act and deed of said corporation as such Trustee.

In witness whereof, I hereunto set my hand and official seal, the day and year first above written.

My Commission expires on

_Phyllis Bucchieri_
_____
Notary Public

PHYLLIS BUCCHIERI
Notary Public, State of New York
No. 24-0473715
Qualified in Kings County
Certificate filed in New York County
Commission Expires March 30, 1975

State of New York          )
                           )ss.
City and County of New York)

I,          Phyllis Bucchieri          , a Notary Public of said City and County, do certify that on _MARCH 14, 1975_ , before me in said City and County personally came S. Burg, to me known, and known to me to be the person whose name, as a Trustee under the First Mortgage and Deed of Trust of Pere Marquette Railway Company dated July 1, 1916, as amended and supplemented, is subscribed to the above instrument dated _FEBRUARY 21, 1975_, who, being by me first duly sworn, did depose, acknowledge and say that he resides at ███████ non-responsive ███████████████████████; that he is a Trustee under the First Mortgage and Deed of Trust of Pere Marquette Railway Company dated July 1, 1916, as amended and supplemented; and that he executed said instrument as his free act and deed as such Trustee.

In witness whereof, I hereunto set my hand and official seal, the day and year first above written.

My Commission expires on

_Phyllis Bucchieri_
_____
Notary Public

This 6-page instrument prepared by:

_John J. Taylor_
_____
Attorney for Grantor
Business Address:
2 North Charles Street
Baltimore, Maryland 21201

PHYLLIS BUCCHIERI
Notary Public, State of New York
No. 24-0473715
Qualified in Kings County
Certificate filed in New York County
Commission Expires March 30, 1975

- 6 -

WG-ANR-00000315



PROPERTY TO BE CONVEYED ⌐ ⌐ ⌐⌐

Chessie System
ENGINEERING DEPARTMENT
PROPERTY TO BE CONVEYED TO
CHESSIE RESOURCES, INC.
MILWAUKEE

MILWAUKEE COUNTY          WISCONSIN

SAGINAW DIVISION

1"=200'
4-15-74
M.E.M

27258-1

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 19 of 74   Document 90-3

WG-ANR-00000316

WG-ANR-00000317

730630

**PARTIES**    *This Lease,* made this <u>20th</u> day of <u>June</u> 19<u>73</u>

between <u>THE CHESAPEAKE AND OHIO RAILWAY COMPANY</u>

whose address is <u>Baltimore, Maryland 21201</u>, **Lessor,**

and <u>JANKE INDUSTRIAL MARINE CORPORATION</u>

whose address is <u>Athens, Wisconsin 54411</u>, **Lessee:**

**PREMISES**    *Witnesseth:* That in consideration of covenants herein specified and the hereinafter mentioned rental to be paid by Lessee, Lessor does hereby lease unto Lessee certain <u>land</u>

at <u>Milwaukee, Wisconsin</u>

hereinafter called "the premises," as shown on plan ~~numbered~~ <u>Exhibit "A"</u> attached hereto and hereby made a part hereof, described as follows:

**DESCRIPTION**    Being a parcel of land fronting 200-feet along East Greenfield Avenue with a depth of 400-feet as indicated in green on aforesaid plan.

Dec

It is agreed between the parties hereto:

**USE**    1. Lessee shall use and occupy the premises solely for the purpose of <u>temporary storage of pipe and construction materials</u> and for no other purpose.

**RENT**    2. Lessee will pay to Lessor as rental for the premises the sum of <u>ONE THOUSAND --------</u> <u>--------------------------------------------</u> DOLLARS ($<u>1,000.00</u>) per <u>month</u> payable <u>monthly</u> in advance from the date hereof, and reimburse Lessor, as additional rental, for all <u>                   </u> charges for water, sewer, electricity and heat levied against the premises within one month after presentation of bills therefor. The payment hereunder by Lessee of any sum or sums in advance shall not be held to create an irrevocable lease for period for which the same is paid. Upon termination of this lease as hereinafter provided, Lessee will accept a prorata refund of such rental and of any land taxes paid by it in advance in full settlement, satisfaction and discharge of the remainder of the term or period; provided, however, Lessee shall not be entitled to such refund when the amount involved is less than Fifty Dollars ($50.00).

**DISTRAIN FOR**    3. Lessor shall have at all times the right to distrain for rent due, and shall have a valid and first lien
**RENT DUE**    upon all property of Lessee situated on the premises as security for the payment of rent herein reserved

**APPROVAL OF PLANS**   4. Lessee, prior to erecting any structure on the premises, shall submit plans therefor in writing of, Lessor and Lessee shall not erect or place or allow to be erected or maintained any buildings, structures, fixtures or obstructions of any kind, either temporary or permanent, within eighteen (18) feet of the centerline of nearest track over which Lessor operates, unless a lesser clearance is provided for on said attached plan or the written consent of Lessor shall hereafter be obtained, provided nothing in the foregoing shall be construed to permit any clearance less than the minimum required by any applicable law or regulation.

**FIRE PREVENTION**   5. Lessee shall cooperate with the Safety and Fire Prevention Department of Lessor and shall promptly comply with fire prevention measures requested by said Department. Lessee shall make no electrical installations or alterations in and to the improvements located on the premises except by an authorized electrician; no electric wiring or drop cords shall be hung from nails or other uninsulated metal supports; no incandescent lights shall be allowed to come in contact with any combustible material; and no connections shall be made to electric lighting circuits for power, heating or cooking purposes without the prior written approval of Lessor's Safety and Fire Prevention Department.

**ORDINANCES**   Lessee, at Lessee's sole cost and expense, shall comply with all applicable ordinances, rules, regulations, requirements and laws of any Governmental authority having jurisdiction. Lessee shall also comply with all applicable requirements of Lessor and with the rules and regulations of the National Fire Codes established by the National Fire Prevention Association, so far as the same may affect the premises or the use thereof.

**MAINTENANCE AND REPAIRS**   6. Lessee will not create or permit any nuisance in, on or about the premises, and Lessee shall maintain the premises in a neat and clean condition. Buildings and other structures of Lessee shall be erected and/or maintained on the premises by Lessee to the satisfaction of Lessor's Superintendent having jurisdiction.

In the event Lessee occupies under this lease building(s) owned by Lessor, Lessee accepts said building(s) as is, and Lessor shall be under no obligation with respect to the condition or maintenance of said building(s). When Lessee occupies the entire building(s), Lessee, at Lessee's cost and expense, shall keep said building(s) in good condition and repair, including, but not limited to, the roof(s). When Lessee occupies less than the entire building(s), Lessee, at Lessee's cost and expense, shall construct and maintain partitions separating the premises used by Lessee from the remainder of said building(s) and shall keep the interiors thereof in good condition and repair, including, but not limited to, windows and doors. All work performed by Lessee pursuant to this paragraph shall be satisfactory to and subject to the approval of Lessor's Superintendent having jurisdiction. Lessee will not make, or permit to be made, any improvements, alterations or additions to the premises without the written consent of Lessor.

Approval by Lessor of any electrical or other repairs, or of any replacements, improvements or installations, whether electrical or otherwise, made by Lessee, or failure of Lessor to object to any work done or material used, or the method of repair, construction, installation or maintenance, shall not be construed as an admission of responsibility by Lessor or as a waiver of any of Lessee's obligations under this lease.

**SERVICES**   7. Lessor will not be responsible for burst or leaking pipes and will be under no obligation to furnish the premises with water, gas, sewage disposal facilities, electricity, heat or janitorial and other services and supplies that may be necessary or desirable in connection with Lessee's use and occupancy of the premises.

**DAMAGE BY FIRE**   8. In the event the premises shall be destroyed by fire or by the elements, or shall be damaged thereby to such an extent as to be wholly untenantable, in the sole opinion of Lessor, Lessor shall have the option of repairing or reconstructing the premises or of terminating this lease. Lessor shall give prompt notice to Lessee of its election in this regard and, if the Lessor elects to repair or reconstruct, the rental shall be abated proportionately until such repair or reconstruction is completed.

**PIPE AND WIRE LINES**   9. Lessor shall at all times have the right to maintain and/or construct, and to permit others to maintain and/or construct, overhead and/or underground pipe and/or wire lines now or hereafter installed upon or across the premises, and to use, repair and remove the same.

**UTILITIES TO SERVE PREMISES**   10. Except as provided in Section 11 hereafter, Lessee shall not use, for utility lines or otherwise, any property of Lessor other than the premises herein leased without first obtaining Lessor's prior written consent and complying with all requirements of Lessor applicable thereto.

WG-ANR-00000319

**INGRESS AND EGRESS**

11. Lessee shall have the right to use, in common with Lessor and others authorized by Lessor, existing driveway or other property designated by Lessor as means of ingress to and egress from the premises. Lessor shall be under no obligation with respect to the condition or maintenance of said driveway or other property and Lessee's use of same shall be subject to all of the covenants, terms and conditions of this lease.

**CLAIM OF TITLE**

12. Lessee shall not at any time own or claim any right, title or interest in or to the premises, nor shall the exercise of this lease for any length of time give rise to any right, title or interest in or to the premises.

Lessee understands and agrees that Lessor shall in no manner be obligated to reimburse Lessee for all or any part of any expenditures made by Lessee during its occupancy of the premises, under this or other agreements, for any repairs, replacements, renovations, remodeling or any other work on or about the premises.

**TERMINATION**

13. This lease may be terminated by either party at any time upon not less than thirty (30) days notice in writing sent by registered or certified mail to the other party, provided, however, in the event of a breach of any of the covenants, terms and conditions hereof by Lessee, Lessor shall have the right to terminate this lease immediately. All notices and communications concerning this lease shall be addressed to Lessor or to Lessee at their respective addresses hereinabove set forth, or at such other address as either party may designate in writing to the other party.

In the event of termination of this lease, Lessee shall, within the period specified in said notice, remove all structures and other property on or about the premises except those owned by Lessor, restore the premises to a condition satisfactory to Lessor, remove, if requested by Lessor, all foundation walls and structures below the surface of the ground and fill in all excavations and vacate the premises, provided, however, that no structure or other property shall be removed from the premises until all money due Lessor under this lease shall have been paid.

If Lessee shall fail to remove said structures or other property on the premises or fail to pay all money due Lessor under this lease, or if this lease shall be terminated by the Lessor on account of the breach of any of the covenants, terms and conditions hereof, all right, title and interest of Lessee in and to said structures and other property on or about the premises shall, if Lessor so elects, be forfeited and title thereto shall vest absolutely in Lessor, without the necessity of any legal process by Lessor; and if Lessor shall notify Lessee to remove said structures or other property and the same are not so removed Lessor may remove the same at the cost and expense of Lessee.

Failure or neglect of Lessor to act upon a breach of one or more of the covenants, terms and conditions of this lease shall not constitute or be construed as a waiver of such breach or any subsequent breach of any right created thereby.

**LIABILITY**

14. Lessee hereby assumes, and releases and waives any right to ask for or demand damages for or on account of, any loss of or damage to property of Lessee or any part thereof on or about the premises and upon any roadway leading to or from the premises and located upon adjoining lands of Lessor, including loss of or interference with any use or service thereof, whether caused by, arising out of or resulting in any manner from the fault, failure or negligence of Lessor or otherwise.

Lessee hereby assumes, and releases and agrees to protect, save harmless, defend and indemnify Lessor from and against (1) all loss of and damage to any property whatsoever, other than said of Lessee, but including property of Lessor and of all other persons whomsoever and the loss of or service with any use or service thereof; (2) all loss and damage on account of injury to or death of any person whomsoever, including, but not limited to employees and patrons of the parties hereto and all persons whomsoever; and (3) all claims and liability for such loss and damage and cost and expense caused by, arising out of or resulting in any manner from the condition, existence, use or occupancy of premises when not solely caused by, arising out of or resulting in any manner from the fault, failure or negligence of Lessor.

**LIABILITY FOR FIRE**

15. Notwithstanding anything to the contrary in Section 14 hereof, the use of the premises involves the risk of loss and damage by fire. Lessee hereby assumes all risk of loss and damage by fire to Lessee's property and agrees to protect, save harmless and indemnify Lessor from all claims of third parties arising by reason of any loss of or damage to property of others now situated or which may hereafter be placed upon the premises.

**CONDEMNATION**

16. Should the premises or any part thereof be condemned, appropriated and/or required for public use, then this lease, at the option of Lessor, shall terminate upon the date when the premises or any part thereof shall be taken. No part of any damages or award shall belong to Lessee, except to the extent of any specific award for improvements and/or facilities of Lessee. Improvements and/or facilities of Lessee not condemned, appropriated and/or required as aforementioned shall be removed in accordance with Section 13 hereof.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 23 of 74   Document 50-3

WG-ANR-00000320

**SUCCESSORS AND ASSIGNS**  17. The terms, covenants and provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of Lessor and the heirs, personal representatives, successors and assigns of Lessee; provided, however, Lessee shall not assign, encumber or sublet this lease or any part of the premises or any rights and privileges herein granted without written consent of Lessor. This covenant shall also apply to any assignment for the benefit of creditors and to any unauthorized sale or transfer of this lease, or of any rights and privileges hereunder, whether made by Lessee or in any proceeding, whether at law or in equity, or otherwise, to which Lessee may be a party, whereby any of the rights, duties and obligations of Lessee shall or may be transferred, encumbered, abrogated or in any manner altered without the consent of Lessor first had and obtained in the manner hereinabove provided, it being expressly understood and agreed that, in the event of any such assignment for the benefit of creditors or unauthorized sale or transfer of this lease, or any of the other rights and privileges hereunder, or in the event a petition in bankruptcy shall be filed by Lessee, or if Lessee shall be adjudged bankrupt or insolvent by any court, or if a trustee in bankruptcy or a receiver of Lessee shall be appointed in any suit or proceeding brought by or against Lessee, then and in each and every such event Lessor may, at its option, terminate this lease immediately by giving Lessee or any such assignee for the benefit of creditors, trustee in bankruptcy or receiver written notice of such termination and Lessor may enter upon and take possession of the premises.

**LESSOR**  18. The term "Lessor" as used in Sections 14 and 15 hereof, shall include any other company or companies whose property at the aforesaid location may be leased or operated by Lessor. Said term also shall include any parent company or companies, subsidiaries, lessees or licensees of Lessor other than Lessee.

19.  It is understood and agreed that all pipe will be stored on the demised premises in a safe manner in accordance with the requirements of the Lessor and subject to the approval of its Superintendent or other proper officer, and the Lessee covenants and agrees, at its sole risk, cost and expense to construct and maintain a substantial barricade around the demised premises, if deemed necessary by the Superintendent or other proper officer of the Lessor to prevent the stored pipe from rolling therefrom.

*In Witness Whereof,* the parties hereto have caused this lease to be executed, in duplicate, as of the day and year first above written.

THE CHESAPEAKE AND OHIO RAILWAY COMPANY

By _[signed] C. C. Tubby_____
                    Manager-Real Estate

JANKE INDUSTRIAL MARINE CORPORATION

ATTEST:

_____
                    Secretary

By _____
                    President

WG-ANR-00000321



Exhibit "A"

WG-ANR-00000322

*PML 180.57*
*CANCELLED 01/15/77*

B&O-C&O FORM V4
REV. 10-71
MADE IN U.S.A.

SHEET 1 OF 4

**PARTIES**  *This Lease*, made this ___15th___ day of ___May___, 19__75__,

between  THE CHESAPEAKE AND OHIO RAILWAY COMPANY _____

_____

_____

whose address is  Baltimore, Maryland  21201 _____, Lessor,

and  O'CONNELL DISTRIBUTING CO., INC. _____

whose address is  1551 S. Carferry Drive, Milwaukee, Wisconsin  53203 ___, Lessee:

**PREMISES**  *Witnesseth:* That in consideration of covenants herein specified and the hereinafter mentioned rental

to be paid by Lessee, Lessor does hereby lease unto Lessee certain ___land___

_____ at  Milwaukee, Wisconsin

revised 5/2/75,

hereinafter called "the premises," as shown on plan numbered ___27258-B - last/___ attached hereto

and hereby made a part hereof, described as follows:

**DESCRIPTION**  Being a parcel of land containing approximately two acres as
indicated in green on aforesaid plan.

It is agreed between the parties hereto:

**USE**  1. Lessee shall use and occupy the premises solely for the purpose of  storing salt

_____ and for no other purpose.

**RENT**  2. Lessee will pay to Lessor as rental for the premises the sum of -------------------

----------EIGHT HUNDRED THIRTY FIVE----------------- DOLLARS ($ 835.00____)

per __month___ payable ___monthly___ in advance from the date hereof, and reimburse
levied, and
Lessor, as additional rental, for all  taxes and assessments/____ charges for water, sewer, elec-
tricity and heat levied against the premises within one month after presentation of bills therefor. The
payment hereunder by Lessee of any sum or sums in advance shall not be held to create an irrevocable
lease for period for which the same is paid. Upon termination of this lease as hereinafter provided,
Lessee will accept a prorata refund of such rental and of any land taxes paid by it in advance in full settle-
ment, satisfaction and discharge of the remainder of the term or period; provided, however, Lessee shall not
be entitled to such refund when the amount involved is less than Fifty Dollars ($50.00).

**DISTRAIN FOR**  3. Lessor shall have at all times the right to distrain for rent due, and shall have a valid and first lien
**RENT DUE**  upon all property of Lessee situated on the premises as security for the payment of rent herein reserved.

1

WG-ANR-00000323

**APPROVAL OF PLANS**   4. Lessee, prior to erecting any structure on the premises, shall submit plans to, and secure approval in writing of, Lessor and Lessee shall not erect or place or allow to be erected or placed on the premises any buildings, structures, fixtures or obstructions of any kind, either temporary or permanent, within eighteen (18) feet of the centerline of nearest track over which Lessor operates, unless a lesser clearance is provided for on said attached plan or the written consent of Lessor shall hereafter be obtained, provided nothing in the foregoing shall be construed to permit any clearance less than the minimum required by any applicable law or regulation.

**FIRE PREVENTION**   5. Lessee shall cooperate with the Safety and Fire Prevention Department of Lessor and shall promptly comply with fire prevention measures requested by said Department. Lessee shall make no electrical installations or alterations in and to the improvements located on the premises except by an authorized electrician; no electric wiring or drop cords shall be hung from nails or other uninsulated metal supports; no incandescent lights shall be allowed to come in contact with any combustible material; and no connections shall be made to electric lighting circuits for power, heating or cooking purposes without the prior written approval of Lessor's Safety and Fire Prevention Department.

**ORDINANCES**   Lessee, at Lessee's sole cost and expense, shall comply with all applicable ordinances, rules, regulations, requirements and laws of any Governmental authority having jurisdiction. Lessee shall also comply with all applicable requirements of Lessor and with the rules and regulations of the National Fire Codes established by the National Fire Prevention Association, so far as the same may affect the premises or the use thereof.

**MAINTENANCE AND REPAIRS**   6. Lessee will not create or permit any nuisance in, on or about the premises, and Lessee shall maintain the premises in a neat and clean condition. Buildings and other structures of Lessee shall be erected and/or maintained on the premises by Lessee to the satisfaction of Lessor's Superintendent having jurisdiction.

In the event Lessee occupies under this lease building(s) owned by Lessor, Lessee accepts said building(s) as is, and Lessor shall be under no obligation with respect to the condition or maintenance of said building(s). When Lessee occupies the entire building(s), Lessee, at Lessee's cost and expense, shall keep said building(s) in good condition and repair, including, but not limited to, the roof(s). When Lessee occupies less than the entire building(s), Lessee, at Lessee's cost and expense, shall construct and maintain partitions separating the premises used by Lessee from the remainder of said building(s) and shall keep the interiors thereof in good condition and repair, including, but not limited to, windows and doors. All work performed by Lessee pursuant to this paragraph shall be satisfactory to and subject to the approval of Lessor's Superintendent having jurisdiction. Lessee will not make, or permit to be made, any improvements, alterations or additions to the premises without the written consent of Lessor.

Approval by Lessor of any electrical or other repairs, or of any replacements, improvements or installations, whether electrical or otherwise, made by Lessee, or failure of Lessor to object to any work done or material used, or the method of repair, construction, installation or maintenance, shall not be construed as an admission of responsibility by Lessor or as a waiver of any of Lessee's obligations under this lease.

**SERVICES**   7. Lessor will not be responsible for burst or leaking pipes and will be under no obligation to furnish the premises with water, gas, sewage disposal facilities, electricity, heat or janitorial and other services and supplies that may be necessary or desirable in connection with Lessee's use and occupancy of the premises.

**DAMAGE BY FIRE**   8. In the event the premises shall be destroyed by fire or by the elements, or shall be damaged thereby to such an extent as to be wholly untenantable, in the sole opinion of Lessor, Lessor shall have the option of repairing or reconstructing the premises or of terminating this lease. Lessor shall give prompt notice to Lessee of its election in this regard and, if the Lessor elects to repair or reconstruct, the rental shall be abated proportionately until such repair or reconstruction is completed.

**PIPE AND WIRE LINES**   9. Lessor shall at all times have the right to maintain and/or construct, and to permit others to maintain and/or construct, overhead and/or underground pipe and/or wire lines now or hereafter installed upon or across the premises, and to use, repair and remove the same.

**UTILITIES TO SERVE PREMISES**   10. Except as provided in Section 11 hereafter, Lessee shall not use, for utility lines or otherwise, any property of Lessor other than the premises herein leased without first obtaining Lessor's prior written consent and complying with all requirements of Lessor applicable thereto.

WG-ANR-00000324

**INGRESS AND EGRESS** 11. Lessee shall have the right to use, in common with Lessor and others authorized by Lessor, existing driveway or other property designated by Lessor as means of ingress to and egress from the premises. Lessor shall be under no obligation with respect to the condition or maintenance of said driveway or other property and Lessee's use of same shall be subject to all of the covenants, terms and conditions of this lease.

**CLAIM OF TITLE** 12. Lessee shall not at any time own or claim any right, title or interest in or to the premises, nor shall the exercise of this lease for any length of time give rise to any right, title or interest in or to the premises.

Lessee understands and agrees that Lessor shall in no manner be obligated to reimburse Lessee for all or any part of any expenditures made by Lessee during its occupancy of the premises, under this or prior agreements, for any repairs, replacements, renovations, remodeling or any other work on or about the premises.

**TERMINATION** 13. This lease may be terminated by either party at any time upon not less than one (1) month's notice in writing sent by registered or certified mail to the other party, provided, however, in the event of a breach of any of the covenants, terms and conditions hereof by Lessee, Lessor shall have the right to terminate this lease immediately. All notices and communications concerning this lease shall be addressed to Lessor or to Lessee at their respective addresses hereinabove set forth, or at such other address as either party may designate in writing to the other party.

In the event of termination of this lease, Lessee shall, within the period specified in said notice, remove all structures and other property on or about the premises except those owned by Lessor, restore the premises to a condition satisfactory to Lessor, remove, if requested by Lessor, all foundation walls and structures below the surface of the ground and fill in all excavations and vacate the premises, provided, however, that no structure or other property shall be removed from the premises until all money due Lessor under this lease shall have been paid.

If Lessee shall fail to remove said structures or other property on the premises or fail to pay all money due Lessor under this lease, or if this lease shall be terminated by the Lessor on account of the breach of any of the covenants, terms and conditions hereof, all right, title and interest of Lessee in and to said structures and other property on or about the premises shall, if Lessor so elects, be forfeited and title thereto shall vest absolutely in Lessor, without the necessity of any legal process by Lessor; and if Lessor shall notify Lessee to remove said structures or other property and the same are not so removed, Lessor may remove the same at the cost and expense of Lessee.

Failure or neglect of Lessor to act upon a breach of one or more of the covenants, terms and conditions of this lease shall not constitute or be construed as a waiver of such breach or any subsequent breach or of any right created thereby.

**LIABILITY** 14. Lessee hereby assumes, and releases and waives any right to ask for or demand damages for or on account of, any loss of or damage to property of Lessee or any part thereof on or about the premises and upon any roadway leading to or from the premises and located upon adjoining lands of Lessor, including loss of or interference with any use or service thereof, whether caused by, arising out of or resulting in any manner from the fault, failure or negligence of Lessor or otherwise.

Lessee hereby assumes, and releases and agrees to protect, save harmless, defend and indemnify Lessor from and against (1) all loss of and damage to any property whatsoever, other than said property of Lessee, but including property of Lessor and of all other persons whomsoever and the loss of or interference with any use or service thereof; (2) all loss and damage on account of injury to or death of any person whomsoever, including, but not limited to employees and patrons of the parties hereto and all other persons whomsoever; and (3) all claims and liability for such loss and damage and cost and expenses thereof, caused by, arising out of or resulting in any manner from the condition, existence, use or occupancy of the premises when not solely caused by, arising out of or resulting in any manner from the fault, failure or negligence of Lessor.

**LIABILITY FOR FIRE** 15. Notwithstanding anything to the contrary in Section 14 hereof, the use of the premises involves risk of loss and damage by fire. Lessee hereby assumes all risk of loss and damage by fire to Lessee's property and agrees to protect, save harmless and indemnify Lessor from all claims of third parties arising by reason of any loss of or damage to property of others now situated or which may hereafter be placed upon the premises.

**CONDEMNATION** 16. Should the premises or any part thereof be condemned, appropriated and/or required for public use, then this lease, at the option of Lessor, shall terminate upon the date when the premises or any part thereof shall be taken. No part of any damages or award shall belong to Lessee, except to the extent of any specific award for improvements and/or facilities of Lessee. Improvements and/or facilities of Lessee not condemned, appropriated and/or required as aforementioned shall be removed in accordance with Section 13 hereof.

3

WG-ANR-00000325

**SUCCESSORS AND ASSIGNS**   17. The terms, covenants and provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of Lessor and the heirs, personal representatives, successors and assigns of Lessee; provided, however, Lessee shall not assign, encumber or sublet this lease or any part of the premises or any rights and privileges herein granted without written consent of Lessor. This covenant shall also apply to any assignment for the benefit of creditors and to any unauthorized sale or transfer of this lease, or of any rights and privileges hereunder, whether made by Lessee or in any proceeding, whether at law or in equity, or otherwise, to which Lessee may be a party, whereby any of the rights, duties and obligations of Lessee shall or may be transferred, encumbered, abrogated or in any manner altered without the consent of Lessor first had and obtained in the manner hereinabove provided, it being expressly understood and agreed that, in the event of any such assignment for the benefit of creditors or unauthorized sale or transfer of this lease, or any of the other rights and privileges hereunder, or in the event a petition in bankruptcy shall be filed by Lessee, or if Lessee shall be adjudged bankrupt or insolvent by any court, or if a trustee in bankruptcy or a receiver of Lessee shall be appointed in any suit or proceeding brought by or against Lessee, then and in each and every such event Lessor may, at its option, terminate this lease immediately by giving Lessee or any such assignee for the benefit of creditors, trustee in bankruptcy or receiver written notice of such termination and Lessor may enter upon and take possession of the premises.

**LESSOR**   18. The term "Lessor" as used in Sections 14 and 15 hereof, shall include any other company or companies whose property at the aforesaid location may be leased or operated by Lessor. Said term also shall include any parent company or companies, subsidiaries, lessees or licensees of Lessor other than Lessee.

19. Lessee further covenants and agrees to store, stack or pile salt on the demised premises in such a manner so as not to extend or roll beyond the confines of the leased area and so that salt will not leach into said land nor wash into adjoining body of water.

*In Witness Whereof,* the parties hereto have caused this lease to be executed, in duplicate, as of the day and year first above written.

THE CHESAPEAKE AND OHIO RAILWAY COMPANY,

By _____
   Assistant Vice President - General Manager
   Real Estate and Industrial Development

O'CONNELL DISTRIBUTING CO., INC.,

By _____

ATTEST:

_____
                                    Secretary

                                    President

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 29 of 74   Document 50-3

WG-ANR-00000326



N

DEED #15-C

17.21'

2 Ac±

3 Ac±

CHESAPEAKE AND OHIO RY. CO.
DEED #15-B 9-27-69
№ 8

360'

360'

242'

1° 32'49" W 825.49'

S89° 25'50"E

E. GREENFIELD AVE.

METAL BLDG.

MASONRY BLDG.

20' EASEMENT

923.11'

CHICAGO AND NORTH - WESTERN RAILWAY

| REVISIONS | THE CHESAPEAKE AND OHIO RAILWAY COMPANY |
|---|---|
| 5/2/75 | ENGINEERING DEPARTMENT |

PROPOSED LEASE TO

O'CONNELL DISTRIBUTING COMPANY

MILWAUKEE

MILWAUKEE COUNTY    WISCONSIN

SAGINAW DIVISION

| SCALE: 1"=200' | VAL. SEC. | DRAWING NO. |
|---|---|---|
| DATE:- 4-16-70 | 4. | |
| DRAWN: G. A. H. | W15. | 27258-B |
| CHECKED: C.L.T. | | SHEET 1 OF |

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 30 of 74   Document 50-3

WG-ANR-00000327

PML17438
CANC 07/5/77

B&O-C&O FORM 74
REV. 10-71
MADE IN U.S.A.

SHEET 1 OF 4

**PARTIES**   *This Lease,* made this _____15th_____ day of ___April_____, 19_74_,

between   THE CHESAPEAKE AND OHIO RAILWAY COMPANY

whose address is   Baltimore, Maryland  21201 _____, Lessor,

and   O'CONNELL DISTRIBUTING CO., INC.

whose address is   1551 S. Carferry Drive, Milwaukee, Wisconsin 53207 ___, Lessee:

**PREMISES**   *Witnesseth:* That in consideration of covenants herein specified and the hereinafter mentioned rental

to be paid by Lessee, Lessor does hereby lease unto Lessee certain ___land_____

_____ at __Milwaukee, Wisconsin__,

hereinafter called "the premises," as shown on plan numbered ___27258-B_____ attached hereto

and hereby made a part hereof, described as follows:

**DESCRIPTION**   Being a parcel of land containing approximately three acres as indicated in green on aforesaid plan.

It is agreed between the parties hereto:

**USE**   1. Lessee shall use and occupy the premises solely for the purpose of _storing salt_____ and for no other purpose.

**RENT**   2. Lessee will pay to Lessor as rental for the premises the sum of ONE THOUSAND TWO-HUNDRED FIFTY------------------------------------ DOLLARS ($ _1,250.00_ )

per __month__ payable __monthly_____ in advance from the date hereof, and reimburse Lessor, as additional rental, for all _taxes and assessments levied_ and charges for water, sewer, electricity and heat levied against the premises within one month after presentation of bills therefor. The payment hereunder by Lessee of any sum or sums in advance shall not be held to create an irrevocable lease for period for which the same is paid. Upon termination of this lease as hereinafter provided, Lessee will accept a prorata refund of such rental and of any land taxes paid by it in advance in full settlement, satisfaction and discharge of the remainder of the term or period; provided, however, Lessee shall not be entitled to such refund when the amount involved is less than Fifty Dollars ($50.00).

**DISTRAIN FOR**   3. Lessor shall have at all times the right to distrain for rent due, and shall have a valid and first lien
**RENT DUE** upon ... the ... interest ... Lessee ... the ... lease ... herein ... reserved.

WG-ANR-00000328

APPROVAL OF PLANS
4. Lessee, prior to erecting any structure on the premises, shall submit plans to, and secure approval in writing of, Lessor and Lessee shall not erect or place or allow to be erected or placed on the premises any buildings, structures, fixtures or obstructions of any kind, either temporary or permanent, within eighteen (18) feet of the centerline of nearest track over which Lessor operates, unless a lesser clearance is provided for on said attached plan or the written consent of Lessor shall hereafter be obtained, provided nothing in the foregoing shall be construed to permit any clearance less than the minimum required by any applicable law or regulation.

FIRE PREVENTION
5. Lessee shall cooperate with the Safety and Fire Prevention Department of Lessor and shall promptly comply with fire prevention measures requested by said Department. Lessee shall make no electrical installations or alterations in and to the improvements located on the premises except by an authorized electrician; no electric wiring or drop cords shall be hung from nails or other uninsulated metal supports; no incandescent lights shall be allowed to come in contact with any combustible material; and no connections shall be made to electric lighting circuits for power, heating or cooking purposes without the prior written approval of Lessor's Safety and Fire Prevention Department.

ORDINANCES
Lessee, at Lessee's sole cost and expense, shall comply with all applicable ordinances, rules, regulations, requirements and laws of any Governmental authority having jurisdiction. Lessee shall also comply with all applicable requirements of Lessor and with the rules and regulations of the National Fire Codes established by the National Fire Prevention Association, so far as the same may affect the premises or the use thereof.

MAINTENANCE AND REPAIRS
6. Lessee will not create or permit any nuisance in, on or about the premises, and Lessee shall maintain the premises in a neat and clean condition. Buildings and other structures of Lessee shall be erected and/or maintained on the premises by Lessee to the satisfaction of Lessor's Superintendent having jurisdiction.

In the event Lessee occupies under this lease building(s) owned by Lessor, Lessee accepts said building(s) as is, and Lessor shall be under no obligation with respect to the condition or maintenance of said building(s). When Lessee occupies the entire building(s), Lessee, at Lessee's cost and expense, shall keep said building(s) in good condition and repair, including, but not limited to, the roof(s). When Lessee occupies less than the entire building(s), Lessee, at Lessee's cost and expense, shall construct and maintain partitions separating the premises used by Lessee from the remainder of said building(s) and shall keep the interiors thereof in good condition and repair, including, but not limited to, windows and doors. All work performed by Lessee pursuant to this paragraph shall be satisfactory to and subject to the approval of Lessor's Superintendent having jurisdiction. Lessee will not make, or permit to be made, any improvements, alterations or additions to the premises without the written consent of Lessor.

Approval by Lessor of any electrical or other repairs, or of any replacements, improvements or installations, whether electrical or otherwise, made by Lessee, or failure of Lessor to object to any work done or material used, or the method of repair, construction, installation or maintenance, shall not be construed as an admission of responsibility by Lessor or as a waiver of any of Lessee's obligations under this lease.

SERVICES
7. Lessor will not be responsible for burst or leaking pipes and will be under no obligation to furnish the premises with water, gas, sewage disposal facilities, electricity, heat or janitorial and other services and supplies that may be necessary or desirable in connection with Lessee's use and occupancy of the premises.

DAMAGE BY FIRE
8. In the event the premises shall be destroyed by fire or by the elements, or shall be damaged thereby to such an extent as to be wholly untenantable, in the sole opinion of Lessor, Lessor shall have the option of repairing or reconstructing the premises or of terminating this lease. Lessor shall give prompt notice to Lessee of its election in this regard and, if the Lessor elects to repair or reconstruct, the rental shall be abated proportionately until such repair or reconstruction is completed.

PIPE AND WIRE LINES
9. Lessor shall at all times have the right to maintain and/or construct, and to permit others to maintain and/or construct, overhead and/or underground pipe and/or wire lines now or hereafter installed upon or across the premises, and to use, repair and remove the same.

UTILITIES TO SERVE PREMISES
10. Except as provided in Section 11 hereafter, Lessee shall not use, for utility lines or otherwise, any property of Lessor other than the premises herein leased without first obtaining Lessor's prior written consent and complying with all requirements of Lessor applicable thereto.

INGRESS AND EGRESS
11. Lessee shall have the right to use, in common with Lessor and others authorized by Lessor, existing driveway or other property designated by Lessor as means of ingress to and egress from the premises. Lessor shall be under no obligation with respect to the condition or maintenance of said driveway or other property and Lessee's use of same shall be subject to all of the covenants, terms and conditions of this lease.

CLAIM OF TITLE
12. Lessee shall not at any time own or claim any right, title or interest in or to the premises, nor shall the exercise of this lease for any length of time give rise to any right, title or interest in or to the premises.

Lessee understands and agrees that Lessor shall in no manner be obligated to reimburse Lessee for all or any part of any expenditures made by Lessee during its occupancy of the premises, under this or prior agreements, for any repairs, replacements, renovations, remodeling or any other work on or about the premises.

TERMINATION
13. This lease may be terminated by either party at any time upon not less than one (1) month's notice in writing sent by registered or certified mail to the other party, provided, however, in the event of a breach of any of the covenants, terms and conditions hereof by Lessee, Lessor shall have the right to terminate this lease immediately. All notices and communications concerning this lease shall be addressed to Lessor or to Lessee at their respective addresses hereinabove set forth, or at such other address as either party may designate in writing to the other party.

In the event of termination of this lease, Lessee shall, within the period specified in said notice, remove all structures and other property on or about the premises except those owned by Lessor, restore the premises to a condition satisfactory to Lessor, remove, if requested by Lessor, all foundation walls and structures below the surface of the ground and fill in all excavations and vacate the premises, provided, however, that no structure or other property shall be removed from the premises until all money due Lessor under this lease shall have been paid.

If Lessee shall fail to remove said structures or other property on the premises or fail to pay all money due Lessor under this lease, or if this lease shall be terminated by the Lessor on account of the breach of any of the covenants, terms and conditions hereof, all right, title and interest of Lessee in and to said structures and other property on or about the premises shall, if Lessor so elects, be forfeited and title thereto shall vest absolutely in Lessor, without the necessity of any legal process by Lessor; and if Lessor shall notify Lessee to remove said structures or other property and the same are not so removed, Lessor may remove the same at the cost and expense of Lessee.

Failure or neglect of Lessor to act upon a breach of one or more of the covenants, terms and conditions of this lease shall not constitute or be construed as a waiver of such breach or any subsequent breach or of any right created thereby.

LIABILITY
14. Lessee hereby assumes, and releases and waives any right to ask for or demand damages for or on account of, any loss of or damage to property of Lessee or any part thereof on or about the premises and upon any roadway leading to or from the premises and located upon adjoining lands of Lessor, including loss of or interference with any use or service thereof, whether caused by, arising out of or resulting in any manner from the fault, failure or negligence of Lessor or otherwise.

Lessee hereby assumes, and releases and agrees to protect, save harmless, defend and indemnify Lessor from and against (1) all loss of and damage to any property whatsoever, other than said property of Lessee, but including property of Lessor and of all other persons whomsoever and the loss of or interference with any use or service thereof; (2) all loss and damage on account of injury to or death of any person whomsoever, including, but not limited to employees and patrons of the parties hereto and all other persons whomsoever; and (3) all claims and liability for such loss and damage and cost and expenses thereof, caused by, arising out of or resulting in any manner from the condition, existence, use or occupancy of the premises when not solely caused by, arising out of or resulting in any manner from the fault, failure or negligence of Lessor.

LIABILITY FOR FIRE
15. Notwithstanding anything to the contrary in Section 14 hereof, the use of the premises involves risk of loss and damage by fire. Lessee hereby assumes all risk of loss and damage by fire to Lessee's property and agrees to protect, save harmless and indemnify Lessor from all claims of third parties arising by reason of any loss of or damage to property of others now situated or which may hereafter be placed upon the premises.

CONDEMNATION
16. Should the premises or any part thereof be condemned, appropriated and/or required for public use, then this lease, at the option of Lessor, shall terminate upon the date when the premises or any part thereof shall be taken. No part of any damages or award shall belong to Lessee, except to the extent of any specific award for improvements and/or facilities of Lessee. Improvements and/or facilities of Lessee not condemned, appropriated and/or required as aforementioned shall be removed in accordance with Section 13 hereof.

WG-ANR-00000330

SUCCESSORS AND ASSIGNS

17. The terms, covenants and provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of Lessor and the heirs, personal representatives, successors and assigns of Lessee; provided, however, Lessee shall not assign, encumber or sublet this lease or any part of the premises or any rights and privileges herein granted without written consent of Lessor. This covenant shall also apply to any assignment for the benefit of creditors and to any unauthorized sale or transfer of this lease, or of any rights and privileges hereunder, whether made by Lessee or in any proceeding, whether at law or in equity, or otherwise, to which Lessee may be a party, whereby any of the rights, duties and obligations of Lessee shall or may be transferred, encumbered, abrogated or in any manner altered without the consent of Lessor first had and obtained in the manner hereinabove provided, it being expressly understood and agreed that, in the event of any such assignment for the benefit of creditors or unauthorized sale or transfer of this lease, or any of the other rights and privileges hereunder, or in the event a petition in bankruptcy shall be filed by Lessee, or if Lessee shall be adjudged bankrupt or insolvent by any court, or if a trustee in bankruptcy or a receiver of Lessee shall be appointed in any suit or proceeding brought by or against Lessee, then and in each and every such event Lessor may, at its option, terminate this lease immediately by giving Lessee or any such assignee for the benefit of creditors, trustee in bankruptcy or receiver written notice of such termination and Lessor may enter upon and take possession of the premises.

LESSOR

18. The term "Lessor" as used in Sections 14 and 15 hereof, shall include any other company or companies whose property at the aforesaid location may be leased or operated by Lessor. Said term also shall include any parent company or companies, subsidiaries, lessees or licensees of Lessor other than Lessee.

19. Lessor further covenants and agrees to store, stack or pile salt on the demised premises in such a manner so as not to extend or roll beyond the confines of the leased area and so that salt will not leach into said land nor wash into adjoining body of water.

*In Witness Whereof*, the parties hereto have caused this lease to be executed, in duplicate, as of the day and year first above written.

THE CHESAPEAKE AND OHIO RAILWAY COMPANY,

By _____
    General Manager - Real Estate

O'CONNELL DISTRIBUTING CO., INC.,

By _____
               President

ATTEST:

_____
               Secretary

WG-ANR-00000331



WG-ANR-00000332

WG-ANR-00000333

## WARRANTY DEED

THIS INDENTURE, made this ___ day of ___September_____, 1968,

between PICKANDS MATHER & CO., a Corporation duly organized and existing

under and by virtue of the laws of the State of Delaware, located at

Cleveland, Ohio, party of the first part, and THE CHESAPEAKE AND OHIO

RAILWAY COMPANY, a Virginia Corporation, whose post office address is

General Motors Building, 3044 West Grand Boulevard, Detroit, Michigan 48202,

party of the second part.

WITNESSETH, that the said party of the first part, for and in

consideration of the sum of One Dollar ($1.00) and other good and valuable

consideration to it paid by the said party of the second part, the receipt

whereof is hereby confessed and acknowledged, has given, granted, bargained,

sold, remised, released, aliened, conveyed and confirmed, and by these pre-

sents does give, grant, bargain, sell, remise, release, alien, convey and

confirm unto the said party of the second part, its successors and assigns

forever, the following described real estate situated in the County of

Milwaukee and State of Wisconsin, to-wit:

That part of Lot 1 in the Partition of that part of the
NW¼ of Section 4, T 6 N, R 22 E, in City of Milwaukee,
Milwaukee County, Wisconsin, which lies West of the ¼
Section line, bounded and described as follows: Com-
mencing at a point in the North line of said ¼ Section
405.45 ft. North 89°56'29" East of the Northwest corner
of said ¼ Section, thence South 00°46'58" West and parallel
to the West line of said ¼ Section 16.00 ft. to the point
of beginning of the land to be described, said point being
in the intersection of the East line of the Chicago and
North Western Railway Company right-of-way and the South
line of East Greenfield Avenue; running thence North 89°
56'29" East and parallel to the North line of said ¼ Section
1164.53 ft. to a point in the Westerly dock line of the
Kinnickinnic River; thence South 21°32'49" West along the
Westerly dock line of the Kinnickinnic River 825.49 ft.
to a point; thence South 89°25'22" West 359.42 ft. to a
point in the Northeasterly line of the Chicago and North
Western Railway Company right-of-way, said point being
770.75 ft. South of the South line of East Greenfield
Avenue; thence Northwesterly along the arc of a curve on
the Easterly line of said right-of-way 923.11 ft. to the
point of beginning; containing an area of 13.83 acres,
more or less.

Grantor hereby reserves unto itself, its successors and assigns,
an easement for Grantor's sewer line as it presently exists over
and across the above described premises, with the right of ingress
and egress for repairs and replacements. The location of the
center line of said sewer line is more particularly described
as follows:

Commencing at the Southwest corner of the Southwest ¼ of
Section 33, T 7 N, R 22 E, thence N 89°56'29" E along the
North line of the N.W.¼ of Section 4 T 6 N, R 22 E 1460.58
feet to the established dock line of the Kinnickinnic River,

4421151

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 37 of 74   Document 50-3

WG-ANR-00000334

thence S 21°32'49" W. along said dock line 311.45 feet to a point, thence S 89°28'09" W 7.26 feet to the East end of said 36" concrete pipe storm sewer, thence continuing S 89°28'09" W along said centerline of 36" concrete pipe 315.03 feet to a point; thence N 89°59'58" W along the centerline of said 36" concrete pipe 481.01 feet to a point; thence S 29°03'10" W along the centerline of a concrete box sewer 35.29 feet to a point; thence S 14°35'05" W along the centerline of a concrete box sewer 25.20 feet to the centerline of a manhole (the centerline of said manhole being located as follows, commencing at the S.W. corner of the S.W.¼ Section 33, T 7 N, R 22 E, thence N 89°56'29" E along the North line of the N.W.¼ of Section 4, T 6 N, R 22 E, 519.07 feet; thence S. 0°03'31" E 346.95 feet to the centerline of said manhole); thence N 89° 17'01" W 53.15 feet to a point on the Easterly line of the Chicago and North Western Railway Company Right-of-way.

Said easement may be terminated by Grantee, its successors and assigns, at any time, and within one hundred twenty (120) days after receipt of notice of termination, Grantor, its successors and assigns shall abandon the use of such sewer line and easement.

TOGETHER with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining; and all the estate, right, title, interest, claim or demand whatsoever, of the said party of the first part, either in law or equity, either in possession or expectancy of, in and to the above bargained premises, and their hereditaments and appurtenances.

TO HAVE AND TO HOLD the said premises as above described with the hereditaments and appurtenances, unto the said party of the second party, and to its successors and assigns FOREVER.

AND THE SAID Pickands Mather & Co., party of the first part, for itself and its successors, does covenant, grant, bargain and agree to and with the said party of the second part, its successors and assigns, that at the time of the ensealing and delivery of these presents it is well seized of the premises above described, as of a good, sure, perfect, absolute and indefeasible estate of inheritance in the law,in fee simple, and that the same are free and clear from all incumbrances whatever, excepting:

(i) taxes and assessments, general or special, levied or to be levied from and after January 1, 1968;

(ii) municipal and zoning ordinances and other laws, rules and regulations promulgated by duly constituted authority regulating or restricting the use or enjoyment of said premises and appurtenances thereto;

(iii) right of the public and any public authority in and to that portion of said premises lying within the limits of public highways and navigable streams abutting on or adjacent to said premises;

(iv) rights and easements, if any, in and to any and all railroad switches, sidetracks, spur tracks and rights-of-way located upon or appurtenant to said premises; and

-2-

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 38 of 74   Document 50-3

WG-ANR-00000335

(v) rights, easements and grants to third parties to use or enjoy portions of said premises as rights-of-way or for the location or maintenance of facilities or of appurtenances to other premises, or for other purposes therein granted, existing as of the date hereof, and arising pursuant to instruments of record, or referred to of record, or under instruments assigned by the Grantor to the Grantee named herein;

and that, except as aforesaid, the above bargained premises in the quiet and peaceable possession of the said party of the second part, its successors and assigns, against all and every person or persons lawfully claiming the whole or any part thereof, it will forever WARRANT AND DEFEND.

IN WITNESS WHEREOF, the said Pickands Mather & Co., party of the first part, has caused these presents to be signed by ___D. M. Chisholm___ a Vice President, and countersigned by ___G. L. Johnson___, an Assistant Secretary, at Cleveland, Ohio, and its corporate seal to be hereunto affixed the ___ day of _____, 1968.

SIGNED, AND SEALED IN PRESENCE OF:                PICKANDS MATHER & CO.

_____                  _____
Linda J. McChesney                                D. M. Chisholm, Vice President

                                                  COUNTERSIGNED:

_____                  _____
Judith Kempf                                      G. L. Johnson, Assistant Secretary

STATE OF OHIO    )
                 :  SS.
CUYAHOGA COUNTY  )

        Personally came before me, this ___ day of _____, 1968
_____, a Vice President, and _____ an
Assistant Secretary of the above named Corporation, to me known to be the persons who executed the foregoing instrument, and to be known to be such Vice President and Assistant Secretary of said Corporation, and acknowledged that they executed the foregoing instrument as such officers as the deed of said Corporation, by its authority.

_____
LEON R. KNIGHT, JR., Attorney-at-Law
NOTARY PUBLIC - STATE OF OHIO
My Commission Has No Expiration Date
Section 147.03 Ohio Revised Code
Notary Public

                                                  This instrument was drafted by

                                                  Robert J. Norwick
                                                  Attorney-at-Law

                                                  Business Address:

                                                  2000 Union Commerce Building
                                                  Cleveland, Ohio   44115

-3-

WG-ANR-00000336

Milwaukee, Wisc.

Pickands Mather
+ Co.
to
C + C

Vol. 5 15-4/8

WG-ANR-00000337

15

C + O
to
Pickands Mather

)

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 41 of 74   Document 50-3

WG-ANR-00000338

## WARRANTY DEED

THIS INDENTURE, made this ___24th___ day of ____September____, 1968, between THE CHESAPEAKE AND OHIO RAILWAY COMPANY, a Virginia corporation, whose post office address is General Motors Building, 3044 West Grand Boulevard, Detroit, Michigan 48202, party of the first part, and PICKANDS MATHER & CO., a Delaware corporation, located at Cleveland, Ohio, party of the second part.

WITNESSETH, that the said party of the first part, for and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration to it paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged, has given, granted, bargained, sold, remised, released, aliened, conveyed, and confirmed, and by these presents does give, grant, bargain, sell, remise, release, alien, convey, and confirm unto the said party of the second part, its successors and assigns forever, the following described real estate situated in the County of Milwaukee and State of Wisconsin, to-wit:

That part of the Northwest One-quarter (1/4) and the Southwest One-quarter (1/4) of Section Four (4), in Township Six (6) North, Range Twenty-two (22) East, in the City of Milwaukee, which is bounded and described as follows: Commencing at a point in the South line of the Northwest 1/4 of said Section 40.00 feet South 89° 47' 45" East of the Southwest corner of the Northwest 1/4 of said Section; running thence North 00° 46' 58" East on a line which is 40.00 feet East of and parallel to the West line of the Northwest 1/4 of said Section 333.35 feet to the Southwest corner of Lot 14 in partition of that part of the Northwest 1/4 of Section 4, in Township 6 North, Range 22 East, which lies West of the 1/4 Section line; thence South 89° 47' 45" East along the South line of Lot 14 aforesaid 50.00 feet to a point; thence North 00° 46' 58" East along the East line of Lot 14 aforesaid 151.42 feet to the Northeast corner of said Lot 14; thence South 89° 47' 45" East along the South line of Lot 7 in said Subdivision 26.00 feet to a point; thence North 00° 46' 58" East along a line which is 116.00 feet East of and parallel to the West line of the Northwest 1/4 of said Section 455.75 feet to a point which lies 200.00 feet North 00° 46' 58" East of the South line of Lot 5 in said Subdivision; thence South 56° 39' 10" East 365.79 feet to a point in the South line of said Lot 5 which is 424.30 feet East of the Southwest corner of said Lot 5; thence South 74° 49' 58" East 464.11 feet to a point in the dock line of the Kinnickinnic River; thence South 20° 59' 55" West along the dock line of the Kinnickinnic River 3.93 feet to a point; thence South 16° 11' 31" West along the dock line of the Kinnickinnic River 296.93 feet to a point; thence South 20° 45' 27" West along the dock line of the Kinnickinnic River 354.07 feet to a point in the South line of the Northwest 1/4 of said Section, said point being 672.66 feet South 89° 47' 45" East of the Southwest corner of the Northwest 1/4 of said Section; thence South 17° 29' 34" West along the dock line of the Kinnickinnic River 343.01 feet to a point; thence South 60° 49' 25" West along the dock line of the Kinnickinnic River 42.79 feet to a point in the North line of the South 50.00 feet of Lot 1 in the Subdivision of the West 1/2 of the Southwest 1/4 of Section 4, in Township 6 North, Range 22 East, Milwaukee County, Wisconsin; thence South 89° 47' 45" East along the North line of the South 50.00 feet of Lot 1 aforesaid 30.75 feet to a point in the old established dock line of the Kinnickinnic River; thence South 17° 29' 34" West along the old established dock line of the Kinnickinnic River 6.00 feet to a point; thence South 55° 44' 25" West along the old established dock line of the Kinnickinnic River 427.24 feet to a point; thence North 21° 28' 30" West along a line which is 44.00 feet Northeasterly of and parallel to the Northeasterly line of South Kinnickinnic Avenue 57.58 feet to a point in the dock line of the Kinnickinnic River; thence South 60° 49' 25" West along the dock line of the Kinnickinnic River 44.40 feet to a point in

WG-ANR-00000339

the Northeasterly line of South Kinnickinnic Avenue; thence
North 21° 28' 30" West along the Northeasterly line of South
Kinnickinnic Avenue 232.30 feet to a point in the North Line
of the South 50.00 feet of Lot 1 in the Subdivision of the
West 1/2 of the Southwest 1/4 of Section 4; thence South 89°
47' 45" East along the North line of the South 50.00 feet of
Lot 1 aforesaid 47.35 feet to a point; thence North 21° 28' 30"
West along a line which is 44.00 feet Northeasterly of and
parallel to the Northeasterly line of South Kinnickinnic Avenue
199.62 feet to a point which is 40.00 feet East of the West line
of the Southwest 1/4 of said Section; thence North 00° 53' 55"
East along a line which is 40.00 feet East of and parallel to
the West line of the Southwest 1/4 of said Section 163.01 feet
to the point of commencement; containing an area of 18.3076 acres,
more or less.

Being Lots Thirteen (13) and Seventeen (17) and part of Lots Five
(5), Seven (7), Eight (8), Nine (9), Ten (10), Eleven (11), and
Twelve (12) in Partition of that part of the Northwest One-quarter
(1/4) of Section Four (4), in Township Six (6) North, Range Twenty-
two (22) East, which lies West of the One-quarter Section line; and
part of Lots One (1) and Two (2) in Subdivision into Lots of the
West One-half (1/2) of the Southwest One-quarter (1/4) of Section
Four (4), in Township Six (6) North, Range Twenty-two (22) East,
in the City of Milwaukee.

TOGETHER with all and singular the hereditaments and appurtenances there-
unto belonging or in any wise appertaining; and all the estate, right, title,
interest, claim or demand whatsoever, of the said party of the first part,
either in law or equity, either in possession or expectancy of, in and to the
above bargained premises, and their hereditaments and appurtenances.

TO HAVE AND TO HOLD the said premises as above described with the here-
ditaments and appurtenances, unto the said party of the second part, and to
its successors and assigns FOREVER.

AND THE SAID The Chesapeake and Ohio Railway Company, party of the first
part, for itself and its successors, does covenant, grant, bargain and agree
to and with the said party of the second part, its successors and assigns, that
at the time of the ensealing and delivery of these presents it is well seized
of the premises above described, as of a good, sure, perfect, absolute and
indefeasible estate of inheritance in the law, in fee simple, and that the same
are free and clear from all incumbrances whatever, excepting:

   (i)   taxes and assessments, general or special, levied or
       to be levied from and after January 1, 1968;

   (ii)  municipal and zoning ordinances and other laws, rules
       and regulations promulgated by duly constituted authority
       regulating or restricting the use or enjoyment of said
       premises and appurtenances thereto;

  (iii)  right of the public and any public authority in and to
       that portion of said premises lying within the limits
       of public highways and navigable streams abutting on or
       adjacent to said premises;

   (iv)  rights and easements, if any, in and to any and all
       railroad switches, sidetracks, spur tracks and rights
       of way located upon or appurtenant to said premises; and

   (v)   rights, easements and grants to third parties to use or
       enjoy portions of said premises as rights of way or for
       the location or maintenance of facilities or of appurten-
       ances to other premises, or for other purposes therein
       granted, existing as of the date hereof, and arising pur-
       suant to instruments of record, or referred to of record,
       or under instruments assigned by the Grantor to the Grantee
       named herein;

2

WG-ANR-00000340

and that, except as aforesaid, the above bargained premises in the quiet and peaceable possession of the said party of the second part, its successors and assigns, against all and every person or persons lawfully claiming the whole or any part thereof, it will forever WARRANT AND DEFEND.

IN WITNESS WHEREOF, the said The Chesapeake and Ohio Railway Company, party of the first part, has caused these presents to be signed by M. C. Mulligan, an Assistant Vice President, and countersigned by C. P. Muendlein, an Assistant Secretary, at Baltimore, Maryland, and its corporate seal to be hereunto affixed the ___24th___ day of ___September___, 1968.

Signed and sealed in the presence of:   THE CHESAPEAKE AND OHIO RAILWAY COMPANY

_____   _____
Albert W. Clements, Jr.                M. C. Mulligan, Assistant Vice President

                                       COUNTERSIGNED:

_____   _____
E. C. Martin                           C. P. Muendlein, Assistant Secretary


STATE OF MARYLAND )
                 ) ss.
City of Baltimore )

Personally came before me, this ___ day of _____, 1968, M. C. Mulligan, an Assistant Vice President, and C. P. Muendlein, an Assistant Secretary of the above named corporation, to me known to be the persons who executed the foregoing instrument, and to me known to be such Assistant Vice President and Assistant Secretary of said corporation, and acknowledged that they executed the foregoing instrument as such officers as the deed of said corporation, by its authority.

                                       _____
                                       George J. Voith
                                       Notary Public, City of Baltimore, Maryland

                                       My commission expires


This instrument was drafted by:
  Thomas W. Godfrey
  Attorney at Law
  Business address:
    312 East Wisconsin Avenue
    Milwaukee, Wisconsin 53202

3

APPROVED AS TO FORM

WG-ANR-00000341

2

WG-ANR-00000342

## LEASE

Lease No. 11778
File No. M-699

THIS AGREEMENT, made this 19th day of February, 1944, between PERE MARQUETTE RAILWAY COMPANY, a Michigan corporation, party of the first part, hereinafter called the "Lessor", and C. J. MEYER, of 1952 South Kinnickinnic Avenue, Milwaukee, Wisconsin, doing business as "Forelle Fish Company", party of the second part, hereinafter called the "Lessee",

WITNESSETH:-

1. In consideration of the rents and covenants herein specified, the lessor hereby lets and leases to the lessee, and the lessee hereby hires the following described premises of the lessor, situate and being in the City of Milwaukee, County of Milwaukee and State of Wisconsin, to-wit:-

> The lessor's two-story frame building numbered 1952 South Kinnickinnic Avenue; together with the use in common with the lessor and its other lessees, licensees and patrons, of the lessor's private driveway over its property from Kinnickinnic Avenue to the rear of said building.

for the term beginning on the date hereof and ending on the 30th day of June, 1944, and thereafter from month to month until terminated by either party upon thirty (30) days' written notice to the other of election so to do, and upon the expiration of such thirty (30) days this agreement shall thereupon cease and terminate.

2. The lessee hereby covenants and promises to pay to the lessor, as rental for said premises, the sum of Thirty Five Dollars ($35.00) per month, in advance, commencing on the 1st day of March, 1944, and continuing thereafter for each month in each year so long as this agreement shall remain in force.

3. The lessee will at his sole expense during the occupancy of said premises, keep the same and every part thereof in good repair, and at the termination of this agreement, yield and deliver up the same in as good condition as when taken, reasonable wear thereof and damage by the elements excepted; also furnish his own heat, electric current, gas, water, and janitor service. At any time before the termination of this agreement, the lessee shall have the right to remove from said premises all personal property, whether attached thereto or thereon, belonging to the lessee, except such personal property the taking of which would prevent the return of the premises to the lessor in as good condition as when taken. If the lessee shall not remove such personal property before the termination of this agreement as aforesaid, the same shall become the property of and belong to the lessor, without the right of the lessee to have compensation therefor in any form. It is understood and agreed that until all personal property of the lessee shall be removed from the lessor's premises, the provisions of Paragraph Four (4) hereof shall apply.

4. The use of the premises herein demised involves risk of loss and damage by fire. The lessee hereby assumes all risk of loss and damage by fire to his property and agrees to protect, save harmless and indemnify the lessor, from all claims of third parties arising by reason of any loss and damage to property of others now situated or which may hereafter be placed upon the herein demised premises.

5. The lessee agrees to pay all taxes which may be levied or assessed upon any of its personal property now situated or which may hereafter be placed

-1-

WG-ANR-00000343

in or on the demised premises, during the time this agreement remains in force; and in case such personal property shall be assessed with property owned by the lessor, the lessee agrees to pay to the lessor, on demand, his equitable proportion of the taxes so assessed, and the lessee hereby authorizes the lessor to determine the proper proportion and amount of such taxes to be paid by the lessee.

6. The use of the premises hereby leased shall be limited to the production, purchase and sale of fish and fish products, also fisherman's supplies, and the lessee agrees that the demised premises or any part thereof shall not be used for any other purpose.

7. It is agreed that the lessee shall not transfer, assign or encumber this lease or any of the rights or privileges herein given, without the written consent of the lessor, and that the lessee shall not let or sublet or permit any portion of said premises, or any building or structure thereon, or any part of the same, to be used by any other party or parties, without the written consent of the lessor.

8. In case of non-payment of rent herein provided to be paid, or any part thereof, at the time and in the manner provided for the payment thereof, or in case of non-performance or breach of any of the covenants herein made by the lessee, the lessor may re-enter into and repossess the said premises and the said lessee and each and every other occupant, remove and put out, and from and after such re-entry is made this agreement shall cease and be absolutely void in respect to the covenants to be performed by the lessor.

This agreement and all of the terms and conditions hereof, shall inure to the benefit of, and be binding upon, the heirs, legal representatives, successors and assigns of the parties.

IN WITNESS WHEREOF, the parties hereto have executed this agreement, in duplicate, as of the day and year first above written.

PERE MARQUETTE RAILWAY COMPANY

By _R. J. Bowman_

R. J. Bowman, Its President

Witnesses to the signature of the "Lessee":

_Marie Drewniac_

_J. F. Bowles_

_C. J. Meyer_ (L.S.)

C. J. Meyer

-2-

WG-ANR-00000344

WG-ANR-00000345

ORIGINAL  *14*

CITY OF MILWAUKEE,
A Municipal Corporation of the
State of Wisconsin

To

THE CHESAPEAKE AND OHIO RAILWAY
COMPANY, A Virginia Corporation

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

QUIT  CLAIM

DEED

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REGISTER'S OFFICE } SS.
Milwaukee County, Wis. }

RECEIVED

for record AUG - 9 1948 at *905*
A. M., and recorded in vol. *2525* Deeds
Page ____ *247*

_R.C. STER DEEDS_

*Chesapeake & Ohio Ry. Co.*
*General Motors Bldg.*

WG-ANR-00000346

ORIGINAL

THIS INDENTURE, Made this 1st day of ___July___, A.D.,
1948, between City of Milwaukee, a municipal corporation duly organized
and existing under and by virtue of the laws of the State of Wisconsin,
located at Milwaukee, Wisconsin, party of the first part, and The
Chesapeake and Ohio Railway Company, a Virginia corporation, with a
principal office in the General Motors Building, Detroit 2, Michigan,
party of the second part.

W I T N E S S E T H, That the said party of the first part,
for and in consideration of the sum of ONE and NO ONE-HUNDREDTHS
DOLLARS ($1.00) to it paid by the said party of the second part, the
receipt whereof is hereby confessed and acknowledged, has given,
granted, bargained, sold, remised, released and quitclaimed, and by
these presents does give, grant, bargain, sell, remise, release and
quitclaim unto the said party of the second part, and to its suc-
cessors and assigns forever, the following described real estate,
situated in the City of Milwaukee and County of Milwaukee, State of
Wisconsin, to-wit:

### Parcel No. 1

"That part of the south fifty-six one-hundredths (0.56)
acre of Lot One (1) in the Subdivision of the West half of
the Southwest quarter of Section 4 in the Southwest quarter
of Section 4, T. 6 N., R. 22 E., more particularly described
as follows, to-wit:

"Commencing at a point in the north line of the south
fifty-six one-hundredths (0.56) acre of Lot One (1) in the
Subdivision of the West half of the Southwest quarter of
Section 4 in the Southwest quarter of Section 4, T. 6 N.,
R. 22 E. said point lying four hundred thirty-eight and
fifty one-hundredths (438.50) feet east of a stone monument
placed at the northeasterly line of South Kinnickinnic Avenue
one hundred seventy-eight and eighty-two one-hundredths (178.82)
feet south ~~of a point~~ ~~easterly line~~
~~the west line of said one-quarter~~ section,
said point of commencement also being a point in the new
established dock line of the Kinnickinnic River; running thence
East along the north line of said south fifty-six one-hundredths
(0.56) acre, fifty-nine and eighty-eight one-hundredths (59.88)
feet to a point in the old established dock line of said Kinnic-
kinnic River; thence southwesterly along said old established dock
line six and no one-hundredths (6.00) feet to a point; thence

WG-ANR-00000347

south fifty-five degrees (55°) west along said old established
dock line seventy-seven and seventeen-hundredths (77.17) feet
to a point in the south line of said Lot One (1); thence West
along the south line of Lot One (1) aforesaid fifty-two and
twenty-four one-hundredths (52.24) feet to a point in the new
established dock line of said Kinnickinnic River; thence north
Sixty-one degrees five minutes (61°5') east twenty-two and
fifty-five one-hundredths (22.55) feet to a point; thence
north forty-four degrees fifty-four minutes thirty-seven
seconds (44°54'37") east fifty-four and forty one-hundredths
(54.40) feet to said point of commencement."

## Parcel No. 2

"That part of Lot Two (2) in the Subdivision of the West
half of the Southwest quarter of Section 4 in the Southwest
quarter of Section 4, T. 6 N., R. 22 E., more particularly
described as follows, to-wit:-- Commencing at a point in
the new established dock line of the Kinnickinnic River where
the north line of Lot Two (2) in the Subdivision of the West
half of the Southwest quarter of Section 4 in the Southwest
quarter of Section 4, T. 6 N., R. 22 E. intersects said new
established dock line, said point also being three hundred
sixty and four one-hundredths (360.04) feet east of the north-
easterly line of South Kinnickinnic Avenue; running thence
east along the north line of Lot Two (2) aforesaid fifty-two
and twenty-four one-hundredths (52.24) feet to a point in
the old established dock line of the Kinnickinnic River;
thence south fifty-five degrees (55°) west along said old
established dock line three hundred seventy-five and no one-
hundredths (375.00) feet to a point; thence westerly along
said old established dock line seventeen and thirty-nine
one-hundredths (17.39) feet to a point in said northeasterly
line of South Kinnickinnic Avenue; thence northwesterly
along said northeasterly line of South Kinnickinnic Avenue
fifty-seven and thirty-nine one-hundredths (57.39) feet to
a point in the new established dock line of the Kinnickinnic
River; thence north sixty-one degrees five minutes (61°5')
East three hundred thirty-seven and forty-five one-hundredths
(337.45) feet to the point of commencement."

Excepting from the above described property all that part
lying southwesterly of a line drawn parallel to and forty-four
and no one-hundredths (44.00) feet northeasterly of and measured
at right angles from the northeasterly line of South Kinnic-
kinnic Avenue which is excepted for widening South Kinnickinnic
Avenue.

Reserving, however, insofar as Parcel No. 2 above
described is concerned, the right, privilege and authority
to construct, reconstruct, maintain and use a viaduct
including the construction, reconstruction and maintenance
of the foundation, piers, supports or any other structures
necessary for said viaduct over and across any portion of the
aforesaid described Parcel No. 2. In the event the City
of Milwaukee, grantor, through the Common Council does not

approve and authorize a renewal of this reservation whenever
renewal is requested within a period of two years from the
conveyance of the aforesaid property by the City of Milwaukee,
a Municipal Corporation, to the Chesapeake and Ohio Railway
Company, grantee, then the aforesaid reservation shall be
null and void.

-2-

WG-ANR-00000348

The Chesapeake and Ohio Railway Company by accepting conveyance of parcels numbers 1 and 2, as above described, for the sum of One and No One-Hundredths ($1.00), with the reservation on parcel number 2, as above described, does not waive its right to protest or object in any manner whatsoever to the development of the viaduct above mentioned, or to the construction of the so-called Inner Drive Project, nor does The Chesapeake and Ohio Railway Company in any manner whatsoever consent to the construction, reconstruction or maintenance of the foundations, piers, supports or any other structures necessary for said viaduct on, over and across other property owned by it in the City of Milwaukee.

Subject to all taxes, general or special, levied or assessed against said property from and after January 1, 1947, and subject to all zoning ordinances, easements and restrictions of record.

pursuant to the resolution adopted by the Common Council of the City and as amended on May 24, 1948. of Milwaukee on __July 7, 1947/__ . (File Number 47-529).

TO HAVE AND TO HOLD the same, together with all and singular the appurtenances and privileges thereunto belonging or in any wise thereunto appertaining, and all the estate, right, title, interest and claim whatsoever of the said party of the first part, either in law or equity, either in possession or expectancy of, to the only proper use, benefit and behoof of the said party of the second part, its successors and assigns forever.

IN WITNESS WHEREOF, the said City of Milwaukee, party of the first part, has caused these presents to be signed by

__Frank F. Zeidler__ , its Mayor, and by

__Emil F. Allee, its Deputy City__ xxitx Clerk, and countersigned

by __Virgil H. Hurless, its Deputy City__ xxitx Comptroller, at Milwaukee, Wisconsin, and its corporate seal to be hereunto affixed, this __1st__ day of __July__ , A.D., 1948.

Signed and sealed in presence of

CITY OF MILWAUKEE

By _Frank P. Zeidler_ , _____ Mayor

_____ Clerk

Countersigned:

Virgil H. Hurless Deputy/Comptroller City

-3-

WG-ANR-00000349

STATE OF WISCONSIN )
                  ) SS.
MILWAUKEE COUNTY )

       Personally came before me this <u>1st</u> day of <u>  July  </u>,A.D.,

1948, <u> Frank P. Zeidler, </u>, Mayor, and <u>Emil F. Allee, Deputy City</u>,

Clerk, and <u>Virgil W. Hurless, Deputy</u>/ City Comptroller, of the above named

corporation, to me known to be the persons who executed the foregoing

                              deputy city         deputy city
instrument and to me known to be such mayor,/ clerk, and/ comptroller

of said municipal corporation, and acknowledged that they executed

the foregoing instrument as such officers as the deed of said

municipal corporation, by its authority.

                       *Mildred Rehorst*

                       Mildred Rehorst
               Notary Public, Milwaukee County, Wis.

               My commission expires: *August 1-1948*

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 53 of 74   Document 50-3

WG-ANR-00000350

No. **13**
No. 2472006

TO

# Warranty Deed

REGISTER'S OFFICE,
State of Wisconsin,

................................................ County.

Received for Record this................day of
................................A. D., 19........
at 3²⁰ o'clock P M., and recorded in
Vol. 1984 of Deeds on page 483

_____
Register of Deeds

_____
Deputy

When recorded mail to
W.S. Bake
General Real Estate Agent
Pere Marquette Railway Co.,
General Motors Building
Detroit (2), Michigan.

---

DEED 1984 PAGE 484

part, **its** successors **heirs** and assigns, against all and every person or persons lawfully claiming the whole or any
part thereof, **they** will forever WARRANT AND DEFEND.

**In Witness Whereof,** the said part ies of the first part ha ve hereunto set their hands and seal s.
this ............ day of ............ February ............ A. D. 1944

**SIGNED AND SEALED IN PRESENCE OF**

Clara F. Ketter

State of Wisconsin,
............ Milwaukee ............ County, } ss.

Personally came before me, this ............ TENTH ............ day of ............ FEBRUARY ............ A. D., 194....
the above named
Walter A. Zinn and Toni Zinn, his wife,

to me known to be the person s who executed the foregoing instrument and acknowledged the same.

............................................ Notary Public.
............................................ County, Wis.
mission expires ............................................ A. D. 19....

Detroit,  January 3, 1944.  PC

Mr. W. S. Bake:

Referring to your letter of December 31st,
File 2139, enclosing copy of agreement with Walter A. Zinn and
wife, concerning property at Milwaukee, I would suggest that a
local surveyor be engaged to make the survey of this property,
in view of the amount of work which our engineering forces have
on hand and the time it would take them to go to Milwaukee and
make this survey.

If this is agreeable to you, will you please
arrange accordingly.

**Chief Engineer.**

"Title shall have passed to it in the meantime,

possess to the purchaser, or at the time the title passes, whichever comes

to the purchaser.

5. The sellers agree to insure the buildings situated on the premises
for their full insurable value, with loss payable to the parties as their
respective interests shall appear.

-1-

and that the above bargained premises in the quiet and peaceable possession of the said party of the second

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 55 of 74   Document 50-3

WG-ANR-00000352

Detroit, December 31, 1943.

File: 2139.

Mr. H. A. Cassil:

There is enclosed copy of Agreement of Purchase
and Sale between the Railway Company and Walter A. Zinn
and wife, respecting property adjoining our car ferry
terminal at Milwaukee. The original and duplicate of
this agreement have been sent to Mr. Zinn for execution.

Before we are called upon to complete this transac-
tion, a survey of the property should be made to estab-
lish the boundary lines as described in the agreement,
locate all buildings, driveways and other uses of the pro-
perty, and determine whether or not tenants or users of
the City's river front property are encroaching upon the
Zinn property. We know that they are using the Zinn pro-
perty for driveway purposes, and it may be that some of
their buildings or other structures may be encroaching.
All corners and points of angle in the boundary line
should be marked, so that they can be permanently monu-
mented after we have acquired title to the property.

*W. S. Baker*

General Real Estate Agent.

WSB/K.

CC/ Mr. R. J. Bowman
    Mr. John C. Shields.

*RC                12/31
To note and confer
JO AB*

title shall have passed to it in the meantime, ...
all rents, insurance premiums and taxes shall be prorated as of the day posses-
sion passes to the purchaser, or at the time the title passes, whichever comes
first. All ................................................. the ...... shall ......
.................................................................. purchaser.

5. The sellers agree to insure the buildings situated on the premises
for their full insurable value, with loss payable to the parties as their
respective interests shall appear.

-1-

WG-ANR-00000353

THIS AGREEMENT, made this _____ day of _____, 1944, between WALTER A. ZINN and TONI ZINN, husband and wife, of Milwaukee, Wisconsin, parties of the first part, hereinafter called the "Sellers", and PERE MARQUETTE RAILWAY COMPANY, a Michigan corporation, of Detroit, Michigan, party of the second part, hereinafter called the "Purchaser",

WITNESSETH:-

That the sellers agree to sell and convey to the purchaser, and the purchaser agrees to purchase, land in the City of Milwaukee, County of Milwaukee, and State of Wisconsin, described as follows, to-wit:-

Bounded Northerly by lands of Pere Marquette Railway Company; Southeasterly by a parcel of land conveyed by the City of Milwaukee to the United States of America by deed dated November 2, 1908, recorded February 2, 1909, in Volume 562 of Deeds at Pages 369-373, Milwaukee County, Wisconsin, records, and re-conveyed by the United States of America to the City of Milwaukee by deed dated March 21, 1940, recorded June 3, 1940, in Volume _____ of Deeds at Pages _____, Milwaukee County, Wisconsin, records; Southwesterly by the northeasterly line of Kinnickinnic Avenue; and more particularly described as part of the south fifty feet of Lot One and part of Lot Two, in the Subdivision of the West half of the Southwest Quarter of Section 4, T. 6 N., R. 22 E.; beginning at the point of intersection of the northeasterly line of Kinnickinnic Avenue with the north line of the south fifty feet of said Lot One; thence east on and along the north line of the south fifty feet of said Lot One, 438.5 feet to a point; thence south 44 degrees 54 minutes 37 seconds west, 54.40 feet to a point; thence south 61 degrees 05 minutes west, 360 feet to a point in the northeasterly line of Kinnickinnic Avenue; thence northwesterly on and along the northeasterly line of Kinnickinnic Avenue, 232.48 feet, more or less, to the place of beginning; containing an area of 1.14 acre, more or less.

TOGETHER with all of the hereditaments and appurtenances thereunto belonging, for the sum of THIRTY THOUSAND DOLLARS ($30,000.00), on the following terms and conditions, to-wit:-

1. As part of the purchase price, the purchaser has paid to the sellers the sum of THREE THOUSAND DOLLARS ($3,000.00), the receipt of which is hereby acknowledged.

2. The premises are presently occupied and used by sundry and divers persons and corporations. The sellers agree that they will remove such persons and corporations from the premises by due process of law; or enter into duly executed leases with them in the form hereto attached; or obtain affidavits of disclaimer, releases, or other instruments, in manner and form approved by counsel for the purchaser, whereby they disclaim any right or title to the premises, or any part thereof, or to the use thereof.

3. The sellers agree that they will, on or before tendering the deed provided for in Paragraph 7 hereof, duly assign the leases required by Paragraph 2 to the purchaser.

4. The sellers shall have possession of the premises for the period of one hundred eighty (180) consecutive days, from and after the date of this agreement, and at the expiration of this period the purchaser shall, unless title shall have passed to it in the meantime, have possession of said premises. All rents, insurance premiums and taxes shall be prorated as of the day possession passes to the purchaser, except the time title passes, whichever comes ████████████████████████████████████████ before the time title passes to the purchaser.

5. The sellers agree to insure the buildings situated on the premises for their full insurable value, with loss payable to the parties as their respective interests shall appear.

-1-

6. The sellers will furnish the purchaser with a complete Abstract of Title and Tax History, certified to the proximate date of the deed.

7. The purchaser agrees that whenever the sellers deliver unto it, a Warranty Deed conveying title to the purchaser of the property covered by this agreement, in fee simple, free from all liens and encumbrances, together with the leases or disclaimers, releases or other instruments hereinbefore described, it will pay unto the sellers the sum of TWENTY-SEVEN THOUSAND DOLLARS ($27,000.00), which sum shall be in addition to the THREE THOUSAND DOLLARS ($3,000.00) heretofore paid, and shall be without interest.

8. The sellers agree that they will not transfer, assign or encumber this agreement, or any interest therein, without the written consent of the purchaser, endorsed or affixed hereon.

9. The covenants, conditions, and agreements herein contained, shall run with the land and shall bind the heirs, legal representatives, successors and assigns of the respective parties hereto.

10. Toni Zinn, wife of Walter A. Zinn, by executing this agreement, agrees to join in the execution of the deed to be made in fulfillment hereof.

IN WITNESS WHEREOF, the parties hereto have executed this agreement, in duplicate, the day and year first above written.

in presence of:

_____        _____(L.S.)
                                         Walter A. Zinn

                                         _____(L.S.)
_____          Toni Zinn

In presence of:                          THE MILWAUKEE RAILWAY COMPANY

                                         By_____
_____            R. J. Bowman, Its President



STATE OF WISCONSIN   )
COUNTY OF MILWAUKEE  ) SS.

On this_____day of_____, 1944, before me, a Notary Public in and for the county aforesaid, personally appeared Walter A. Zinn and Toni Zinn, husband and wife, to me known to be the same persons described in and who executed the within instrument as sellers, and severally acknowledged the same to be their free act and deed.

                        _____
                        Notary Public, Milwaukee County, Wisconsin.

My commission expires_____.

On this_____day of_____, 1944, before me, a Notary Public in and for county aforesaid, appeared R. J. Bowman, to me personally known,

-2-

WG-ANR-00000355

who being by me duly sworn, did say that he is President of Pere Marquette
Railway Company, the corporation named in and which executed the within instru-
ment as purchaser, and that said instrument was signed by him in behalf of said
corporation by authority of its Board of Directors, and the said R. J. Bowman
acknowledged said instrument to be the free act and deed of said corporation.

_____
Notary Public, Wayne County, Michigan.

My commission expires_____.

-3-

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 59 of 74   Document 56-3

WG-ANR-00000356

# L E A S E

THIS AGREEMENT, made this_____day of_____1944, between WALTER A. ZINN, of Milwaukee, Wisconsin, party of the first part, hereinafter called the "Lessor", and

party of the second part, hereinafter called the "Lessee",

W I T N E S S E T H:-

1.  In consideration of the rents and covenants herein specified, the lessor hereby lets and leases to the lessee, and the lessee hereby hires the following described premises of the lessor, situate and being in the City of Milwaukee, County of Milwaukee and State of Wisconsin, to-wit:-

for the term beginning on the date hereof and continuing thereafter from month to month until terminated by either party upon thirty days' written notice to the other of election so to do, and upon the expiration of such thirty days this agreement shall thereupon cease and terminate.

2.  The lessee hereby covenants and promises to pay to the lessor, his heirs or assigns, as rental for said premises, the sum of_____Dollars ($_____) per month, in advance, commencing on the_____day of_____1946, and continuing thereafter for each month in each year so long as this agreement shall remain in force.

3.  The lessee will at_____sole expense during the occupancy of said premises, keep the same and every part thereof in good repair, and at the termination of this agreement, yield and deliver up the same in as good condition as when taken, reasonable wear thereof and damage by the elements excepted; also furnish_____own heat, electric current, gas, water, and janitor service. At any time before the termination of this agreement, the lessee shall have the right to remove from said premises all personal property thereon belonging to the lessee, except such personal property the taking of which would prevent the return of the premises to the lessor in as good condition as when taken. If the lessee shall not remove such personal property before the termination of this agreement as aforesaid, the same shall become the property of and belong to the lessor, without the right of the lessee to have compensation therefor in any form. It is understood and agreed that until all personal property of the lessee shall be removed from the lessor's premises, the provisions of Paragraph Four (4) hereof shall apply.

4.  The use of the premises herein demised involves risk of loss and damage by fire. The lessee hereby assumes all risk of loss and damage by fire to_____property and agrees to protect, save harmless and indemnify the lessor, his heirs and assigns, from all claims of third parties arising by reason of any loss and damage to property of others now situated or which may hereafter be placed upon the herein demised premises.

personal property now situated or hereafter be placed in or on the demised premises, during the time this agreement remains

-1-

Case 2:20-cv-01534-SCD   Filed 01/27/23   Page 60 of 74   Document 50-3

WG-ANR-00000357

in force; and in case such personal property shall be assessed with property owned by the lessor, the lessee agrees to pay to the lessor, his heirs or assigns, on demand, _____ equitable proportion of the taxes so assessed, and the lessee hereby authorizes the lessor, his heirs or assigns, to determine the proper proportion and amount of such taxes to be paid by the lessee.

6. The use of the premises hereby leased shall be limited to


and the lessee agrees that the demised premises or any part thereof shall not be used for any other purpose.

7. It is agreed that the lessee shall not transfer, assign or encumber this agreement or any of the rights or privileges herein given, without the written consent of the lessor, his heirs or assigns, and that the lessee shall not let or sublet or permit any portion of said premises, or any building or structure thereon, or any part of the same, to be used by any other party or parties, without the written consent of the lessor, his heirs or assigns.

8. In case of non-payment of rent herein provided to be paid, or any part thereof, at the time and in the manner provided for the payment thereof, or in case of the non-performance or breach of any of the covenants herein made by the lessee, the lessor, his heirs, legal representatives, or assigns, may re-enter into and repossess the said premises and the said lessee and each and every other occupant, remove and put out, and from and after such re-entry is made this agreement shall cease and be absolutely void in respect to the covenants to be performed by the lessor, his heirs or assigns.

This agreement and all of the terms and conditions hereof, shall inure to the benefit of, and be binding upon, the heirs, legal representatives, successors and assigns of the parties.

IN WITNESS WHEREOF, the parties hereto have executed this agreement, in duplicate, as of the day and year first above written.


Witnesses to the signature
of the "Lessor":

_____        _____(L.S.)
                                Walter A. Zinn

_____


Witnesses to the signature
of the "Lessee":

_____        _____
                                Signature of the "Lessee"

_____

-2-

WG-ANR-00000358

**This indenture,** Made this **TENTH** day of **FEBRUARY**, A.D., 19**44**,

between WALTER A. ZINN and TONI ZINN, his wife, of Milwaukee, Wisconsin

part **ies** of the first part,

and PERE MARQUETTE RAILWAY COMPANY, a Michigan corporation, of General Motors Building, Detroit (2), Michigan,

part **y** of the second part.

**Witnesseth,** That the said part **ies** of the first part, for and in consideration of the sum of ONE DOLLAR ($1.00) and other good and valuable considerations,

to **them** in hand paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged, ha **ve** given, granted, bargained, sold, remised, released, aliened, conveyed and confirmed, and by these presents do give, grant, bargain, sell, remise, release, alien, convey and confirm unto the said party of the second part, **its** ~~heirs~~ **successors** and assigns forever, the following described real estate, situated in the County of **Milwaukee** and State of Wisconsin, to-wit:

A parcel of land in the City of Milwaukee, bounded Northerly by lands of Pere Marquette Railway Company; Southeasterly by a parcel of land conveyed by the City of Milwaukee to the United States of America by deed dated November 2, 1908, recorded February 2, 1909, in Volume 562 of Deeds at Pages 369-373, Milwaukee County, Wisconsin, records, and re-conveyed by the United State of America to the City of Milwaukee by deed dated March 21, 1940, recorded June 3, 1940, in Volume 1640 of Deeds at Pages 682/8 incl., (Doc.No.2264437), Milwaukee County, Wisconsin, records; Southwesterly by the north-easterly line of Kinnickinnic Avenue; and more particularly described as part of the south fifty feet of Lot One and part of Lot Two, in the Subdivision of the West half of the Southwest Quarter of Section 4, T. 6 N., R. 22 E.; beginning at the point of intersection of the northeasterly line of Kinnickinnic Avenue with the north line of the south fifty feet of said Lot One; thence east on and along the north line of the south fifty feet of said Lot One, 438.5 feet to a point; thence south 44 degrees 54 minutes 37 seconds west, 54.40 feet to a point; thence south 61 degrees 05 minutes west, 360 feet to a point in the northeasterly line of Kinnickinnic Avenue; thence northwesterly on and along the northeasterly line of Kinnickinnic Avenue, 232.48 feet, more or less, to the place of beginning; containing an area of 1.14 acre, more or less.

**Together** with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining; and all the estate, right, title, interest, claim or demand whatsoever, of the said part **ies** of the first part, either in law or equity, either in possession or expectancy of, in and to the above bargained premises, and their hereditaments and appurtenances.

**To have and to hold** the said premises as above described with the hereditaments and appurtenances, unto the said party of the second part, and to **its** ~~heirs~~ **successors** and assigns FOREVER.

**And the said** WALTER A. ZINN and TONI ZINN, his wife,

for **themselves, their** heirs, executors and administrators, do covenant, grant, bargain and agree to and with the said party of the second part **its** ~~heirs~~ **successors** and assigns, that at the time of the ensealing and delivery of these presents **they were** well seized of the premises above described, as of a good, sure, ~~[illegible]~~ clear from all incumbrances whatever.

and that the above bargained premises in the quiet and peaceable possession of the said party of the second

WG-ANR-00000359



City of Milwaukee
to
Pere Marquette Ry Co.

10-29-36

WG-ANR-00000360

**THIS INDENTURE, Made this** 29th **day of** October **, A. D. 19** 36 **,**

between City of Milwaukee, a municipal corporation,

a **Corporation** duly organized and existing under and by virtue of the laws of the State of Wisconsin, located at Milwaukee , Wisconsin, party of the first part. and Pere Marquette Railway Company, a corporation duly organized and existing under and by virtue of the laws of the State of Michigan,

..................................................................................................................... part y.......... of the second part.

**Witnesseth,** That the said party of the first part, for and in consideration of the sum of Seventy-five Thousand ($75,000.00) Dollars -- -- -- -- -- -- -- -- -- -- -- -- -- --

to it paid by the said party.......... of the second part, the receipt whereof is hereby confessed and acknowledged, has given, granted, bargained, .............................................................................................

does give, grant, bargain, sell, remise, release, alien, convey and confirm unto the said party.......... of the second part. its ......./......~~heirs~~ and assigns forever, the following described real estate, situated in the City, and County of

successors

Milwaukee and State of Wisconsin, to-wit:

"All except the south fifty-six one-hundredths (56/100) acres and except right of way of Railway Company of Lot numbered One (1) in Subdivision of the west one-half (W.1/2) of the southwest one-quarter (S.W.1/4) of Section Four (4), and the south fifty (50) feet of that part west of the Kinnickinnic River of Lot numbered Nine (9) and the south one-half (S.1/2) except the west forty (40) feet of Lot numbered Ten (10) in Partition Lots in the northwest one-quarter (N.W.1/4) of Section Four (4), Township Six (6) north, Range twenty-two (22) east" excepting

"That part of Lot one (1) in the subdivision into Lots of the West one-half (W.1/2) of the Southwest one-quarter (S.W.1/4) of Section Four (4), Town six (6) north, Range twenty-two (22) east, more particularly described as follows, to-wit:

"Commencing at the point of intersection of the east line of the Chicago, Milwaukee, St. Paul & Pacific Railroad Company's right of way and the Northeasterly (N.E'y.) line of South Kinnickinnic Avenue, said point lying two hundred seventy-eight and sixty one-hundredths (278.60) feet south of the north line of the Southwest one-quarter (S.W.1/4) of Section Four (4), Town six (6) North, Range twenty-two (22) East; running thence Southeasterly along the Northeasterly line of South Kinnickinnic Avenue seventy-five and twenty-four one-hundredths (75.24) feet to a point; thence east and parallel to the north line of said one-quarter (1/4) section forty-seven and thirty-five one-hundredths (47.35) feet to a point; thence northwesterly along a line which is parallel to and forty-four and no/one-hundredths (44.00) feet northeasterly, measured at right angles from the Northeasterly line of South Kinnickinnic Avenue one hundred ninety-nine and sixty-two one-hundredths (199.62) feet to a point in the east line of said right of way; thence south along the east line of said right of way one hundred fifteen and fifty-nine one-hun- dredths (115.59) feet to the point of commencement." _.43/ Ac._

**Together** with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining; and all the estate, right, title, interest, claim or demand whatsoever, of the said party of the first part, either in law or equity, either in possession or expectancy of, in and to the above bargained premises, and their hereditaments and appurtenances.

**To have and to hold** the said premises as above described with the hereditaments and appurtenances, unto

successors

the said party.......... of the second part, and to its ......./.... ~~heirs~~ and assigns FOREVER.

**And the said** City of Milwaukee, a municipal corporation

party of the first part, for itself and its successors does ~~covenant~~, grant, bargain and agree to and with the said

successors

part y.......... of the second part, its ......./.... ~~heirs~~ and assigns, that at the time of the ensealing and delivery of these presents it is well seized of the premises above described, as of a good, sure, perfect, absolute and indefeasible estate of inheritance in the law, in fee simple, and that the same are free and clear from all incumbrances what- ever, .................................................................................................................................................

................................................................................................................................................................

................................................................................................................................................................

................................................................................................................................................................

and that the above bargained premises in the quiet and peaceable possession of the said party.......... of the second

WG-ANR-00000361

**This indenture,** Made this ....29th.... day of ....October...., A. D., 19.36.,

between ..City..of..Milwaukee,..a..municipal..corporation,.......... a corporation duly organized and existing under and by virtue of the laws of the State of Wisconsin, located at ...Milwaukee........ Wisconsin, party of the first part, and ..Pere..Marquette..Railway.. Company,..a..corporation..duly..organized..and..existing..under..and..by..virtue.. of..the..laws..of..the..State..of..Michigan,..............................................

.................................................................................................. part.y....of the second part.

**Witnesseth,** That the said party of the first part, for and in consideration of the sum of Seventy-five..Thousand..($75,000.00)..Dollars.. - - - - - - - - - - - - - - - -

to it paid by the said party.......... of the second part, the receipt whereof is hereby confessed and acknowledged, has given, granted, bargained, sold, remised, released, aliened, conveyed and confirmed, and by these presents does give, grant, bargain, sell, remise, release, alien, convey and confirm unto the said party.....of the second part, its / ~~heirs~~ and assigns forever, the following described real estate, situated in the/ County of ..Milwaukee...... and State of Wisconsin, to-wit:

"All except the south fifty-six one-hundredths (56/100) acres and except right of way of Railway Company of Lot numbered One (1) in Subdivision of the west one-half (W.1/2) of the southwest one-quarter (S.W.1/4) of Section four (4), and the south fifty (50) feet of that part west of the Kinnickinnic River of Lot numbered Nine (9) and the south one-half (S.1/2) except the west forty (40) feet of Lot numbered Ten (10) in Partition Lots in the northwest one-quarter (N.W.1/4) of Section four (4), Township Six (6) north, Range twenty-two (22) east" excepting

"That part of Lot one (1) in the Subdivision into Lots of the West one-half (W.1/2) of the Southwest one-quarter (S.W.1/4) of Section four (4), Town six (6) north, Range twenty-two (22) east, more particularly described as follows, to-wit:

"Commencing at the point of intersection of the east line of the Chicago, Milwaukee, St. Paul & Pacific Railroad Company's right of way and the Northeasterly (N.E'y.) line of South Kinnickinnic Avenue, said point lying two hundred seventy-eight and sixty one-hundredths (278.60) feet south of the north line of the Southwest one-quarter (S.W.1/4) of Section four (4), Town six (6) North, Range twenty-two (22) East; running thence Southeasterly along the Northeasterly line of South Kinnickinnic Avenue seventy-five and twenty-four one-hundredths (75.24) feet to a point; thence east and parallel to the north line of said one-quarter (1/4) section forty-seven and thirty-five one-hundredths (47.35) feet to a point; thence northwesterly along a line which is parallel to and forty-four and no/one-hundredths (44.00) feet northeasterly, measured at right angles from the Northeasterly line of South Kinnickinnic Avenue one hundred ninety-nine and sixty-two one-hundredths (199.62) feet to a point in the east line of said right of way; thence south along the east line of said right of way one hundred fifteen and fifty-nine one-hundredths (115.59) feet to the point of commencement." 1.31 AC.

**Together** with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining; and all the estate, right, title, interest, claim or demand whatsoever, of the said party of the first part, either in law or equity, either in possession or expectancy of, in and to the above bargained premises, and their hereditaments and appurtenances.

**To have and to hold** the said premises as above described with the hereditaments and appurtenances, unto the said party.......of the second part, and to its / ~~heirs~~ and assigns FOREVER.

**And the said** City of Milwaukee, a municipal corporation party of the first part, for itself and its successors, does covenant, grant, bargain and agree to and with the said party.......of the second part, its / ~~heirs~~ and assigns, that at the time of the ensealing and delivery of these presents it is well seized of the premises above described, as of a good, sure, perfect, absolute and indefeasible estate of inheritance in the law, in fee simple, and that the same are free and clear from all incumbrances whatsoever,

and that the above bargained premises in the quiet and peaceable possession of the said party.......of the second

No. 2108827

City of Milwaukee, a muni-
cipal corporation,

TO

Pere Marquette Railway Com-
pany, a corporation

# Warranty Deed

**REGISTER'S OFFICE,**
State of Wisconsin,
Milwaukee County.

Received for Record this _____ day of
_____ A. D., 19 _____
at 4 15 _____ o'clock _____ M., and recorded in
Vol. 1373 of Deeds on page 621

_Edmund V. Czaska_
Register of Deeds

_____ Deputy

Return to
_____
_____
Milwaukee, Wis

1:20
A RE DE
2108927
03561

State of Wisconsin,
MILWAUKEE County. ss.

Personally came before me, this 29th
day of October A. D., 19 36.
Daniel W. Hoan, Mayor, Earle C. Mueller, City Clerk,
of the above named Corporation, to me known to be the persons who executed the foregoing
instrument, and to me
known to be such Mayor, City Clerk and Comptroller
instrument as such officers as the deed of said Corporation, that they executed the foregoing
File No. 58461 adopted by the Common Council of the City of Milwaukee on
June 8, 1936.

_____
Notary Public,
Milwaukee County, Wis.
My commission expires: _____
A.D. 19 _____

CITY OF MILWAUKEE
Daniel W. Hoan
Mayor

_____
City Clerk

_____
Comptroller

Corporate Name

Corporate Seal

Case 2:20-ev-01334-SCD   Filed 01/27/23   Page 66 of 74   Document 50-3

WG-ANR-00000363



## PLAT OF SURVEY OF
PART OF LOT 1 IN SUBD. OF W½ OF SW¼
SEC. 4-6-22. AND PART OF LOTS 9 AND
10 IN PARTITION LOTS IN N.W.¼ SEC.
4-6-22.
CITY OWNED.

# CITY ENG'R. DEPT.— MILWAUKEE, WIS.

SURVEYED BY A.C. NELSON OCTOBER 11, 1934
DRAWN BY T.R.M.
APPROVED BY:

_E. C. Campbell_
CHIEF DRAFTSMAN

_J.K. Edwards_
CITY ENGINEER

<u>WARRANTY DEED</u>

THE MILWAUKEE ELECTRIC RAILWAY
AND LIGHT COMPANY

to

PERE MARQUETTE RAILWAY COMPANY

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 68 of 74   Document 50-3

WG-ANR-00000365

THIS INDENTURE Made by THE MILWAUKEE ELECTRIC RAILWAY AND
LIGHT COMPANY, a corporation duly organized and existing under and by
virtue of the laws of the State of Wisconsin, grantor, of the City of
Milwaukee, County of Milwaukee, and State of Wisconsin, hereby CONVEYS
AND WARRANTS to PERE MARQUETTE RAILWAY COMPANY, a corporation duly
organized and existing under and by virtue of the laws of the State
of Michigan, grantee, of the City of Detroit, County of Wayne and
State of Michigan, for the sum of One Dollar ($1.00) and other good
and valuable consideration, the following tract of land in the City
of Milwaukee, County of Milwaukee and State of Wisconsin, to-wit:

> All that part of Lot Nine (9) West of
> Kinnickinnic River, except a strip off the
> whole South part thereof Fifty (50) feet wide;
> all of the North One-half (1/2) of Lot Ten
> (10) except a strip off the West part thereof
> Forty (40) feet wide; all of Lot Eleven (11)
> except a strip off the West part thereof
> Forty (40) feet wide; all of Lot Twelve (12)
> except a strip off the West part thereof Forty
> (40) feet wide; and all of Lots Thirteen (13)
> and Seventeen (17); said Lots being in the
> Partition into lots of that part of the
> Northwest quarter of Section Four (4) in
> Township Six (6) North, Range Twenty-two (22)
> East, which lies West of the quarter Section
> line. The premises hereby conveyed containing
> an area of 4.8 acres, more or less.

This conveyance is made subject to the right of the Chicago,
Milwaukee, St. Paul and Pacific Railroad Company, its successors and
assigns, to maintain retaining wall footings under the westerly three
(3) feet of that portion of Lots Ten (10), Eleven (11) and Twelve (12)
conveyed hereby,- the grantee being hereby vested with the right to
use such footings for the support of the walls of any building or
other structure which it may erect.

The grantor hereby reserves the poles, wires and appurte-
nances comprising its electric distribution line now installed upon
and across the north part of the above described premises with the
right to remove the same from said premises and the obligation so to
do upon such request being made by the grantee, its successors or
assigns.

IN WITNESS WHEREOF the said grantor has caused these presents

WG-ANR-00000366

to be signed in its name by S. B. Way, its President, and counter-signed by F. J. Boehm, its Secretary, at Milwaukee, Wisconsin, and its corporate seal to be hereunto affixed this 26th day of _____October_____, A.D. 1936.

Signed and sealed in
the presence of:

_Urankieca_

_Edward L. Mishelow_ Countersigned:

THE MILWAUKEE ELECTRIC RAILWAY
AND LIGHT COMPANY

By _C. B. Way_

Its President

By _F. J. Boehm_

Its Secretary

STATE OF WISCONSIN )
                   ( SS.
COUNTY OF MILWAUKEE )

Personally came before me this 26th day of _____October_____ A. D. one thousand nine hundred and thirty-six (1936) S. B. Way, President and F. J. Boehm, Secretary, of The Milwaukee Electric Railway and Light Company, to me known to be the persons who executed the foregoing instrument, and to me known to be such President and Secretary of said corporation, and severally acknowledged that they executed the foregoing instrument as such officers, and as the deed of said corporation by its authority.

_Edward L. Mishelow_

Notary Public, Milwaukee County, Wis.

My commission expires _January 29th 1939_.

WG-ANR-00000367

No 10

Deed

Henry Newcomb

To

ere Marquette
Railroad Company

155
4__  Deeds Pages 263-
64+65 C. 19. 3

WG-ANR-00000368

This INDENTURE, made the *13th* day of June, A.D.1903,
Between HENRY NEWCOMB of Boston, Massachusetts, personally
and as trustee for the Detroit, Grand Rapids & Western Rail-
road Company and its assigns, party of the first part, and
the PERE-MARQUETTE RAILROAD COMPANY, a Michigan corporation,
party of the second part, WITNESSETH:

That the said party of the first part, for and in con-
sideration of the sum of one dollar and other considerations
to him in hand paid by the said party of the second part,
the receipt whereof is hereby confessed and acknowledged,
does by these presents grant, bargain, sell, remise, release
and forever QUITCLAIM unto the said party of the second part,
and to its successors and assigns, FOREVER. All of the fol-
lowing described real estate situated in the Twelfth (12)
Ward of the City of Milwaukee, County of Milwaukee and State
of Wisconsin, to-wit:

The following portion of Lot numbered seven (7) in par-
tition of that part of the Northwest quarter (1/4) of Section
numbered four (4) of Township numbered six (6) North, of
Range numbered twenty-two (22) East, which lies west of the
quarter (1/4) section line, which is bounded and described
as follows, to-wit: Commencing at the northwest corner of
said lot and running thence east nine hundred and fifteen
(915) feet, more or less, to the westerly dock line of the
Kinnickinnic River; thence south twenty (20) degrees west
along said dock line one hundred and three and 32/100
(103.32) feet to a point; thence south twenty-one (21) de-
grees and twenty-four (24) minutes west along said dock line
one hundred seventy-one and 77/100 (171.77) feet to a point
in the south line of said Lot seven (7); thence west on the
south line of said Lot seven (7) eight hundred sixty-two and
00/100 (862.00) feet more or less, to the southwest corner
of Lot seven (7) thence north along the west line of said Lot

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 72 of 74   Document 50-3

WG-ANR-00000369

seven (7) two hundred fifty-seven and 1/100 (257.01) feet
to the place of beginning; excepting therefrom that portion
of said Lot seven (7) conveyed to the Illinois Steel Company
by said Henry Newcomb, trustee, by deed dated December 13,
1887, and also excepting the west one hundred and sixteen
(116) feet of said real estate, which was deeded to the
Chicago, Milwaukee and St.Paul Railway Company for its right
of way by three separate deeds recorded in the office of the
Register of Deeds, Milwaukee County, Wisconsin, In Volume 122
page 472; Volume 180, page 505; Volume 179, page 252; said
property being conveyed subject to the conditions contained
in a grant to the Chicago & Northwestern Railway Company,
recorded in the office of the Register of Deeds of Milwaukee
County, Wisconsin, in Volume 391, page 7.

Also that portion of Lot numbered eight (8) which is
situated and lies west of the west line of the Kinnickinnic
River, as now established through said quarter (1/4) section.

Also the following portion of Lot No. Five (5) in parti-
tion of that part of the Northwest quarter of Section Four
(4), Township six (6) North of Range Twenty-two (22) East,
which lies west of the quarter section line, bounded and
more particularly described as follows; beginning at a point
on the south line of said Lot, one hundred sixteen (116) feet
east of the west line of said Section Four (4); thence north
two hundred (200) feet; thence southeasterly to a point on
the south line of said Lot Five (5), which point is three
hundred eight and three tenths (308.3) feet from the place
of beginning; thence west three hundred eight and three tenths
(308.3) feet to the place of beginning, containing thirty
thousand eight hundred and thirty (30,830) square feet, as
near as can be estimated.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 73 of 74   Document 50-3

WG-ANR-00000370

Together with all and singular the hereditaments and
appurtenances thereunto belonging or in any wise appertaining
To Have and to Hold the said land and premises to the said
party of the second part, and to its successors and assigns,
to the sole and only proper use, benefit and behoof, of
the said party of the second part, its successors and as-
signs, FOREVER.

IN WITNESS WHEREOF, the said party of the first part has
hereunto set his hand and seal the day and year first above
written.

Signed, Sealed and Delivered
in Presence of

*Frank Holden*

*S. E. Parker*

*Henry Newcomb*

*Henry Newcomb*
Trustee

STATE OF MASSACHUSETTS)
                        )ss:
   County of Suffolk.   )

On this 18th day of June A.D. 1902,
before the undersigned, a Notary Public within and for said
State, personally appeared Henry Newcomb, to me personally
known to be the same person whose name is subscribed to the
foregoing instrument of writing as party thereto and duly
acknowledged that he executed the same for the purposes
therein mentioned.

In Witness Whereof I have hereunto set my hand and af-
fixed my official seal the day and year first above written.

My commission will expire *February 15,* 1905.

*Frank Holden*
Notary Public.

WG-ANR-00000371