# EXHIBIT 4-A



Secretary's Record

C

MILWAUKEE
GAS LIGHT
CO.

VOL. III

LWAUKEE
AS LIGHT
CO.



LOOSE LEAF LEDGERS.

TYPEWRITER

# H. H. WEST COMPANY,
## STATIONERS,
### BLANK BOOK MAKERS, BOOK BINDERS,

389 East Water Street,          MILWAUKEE, WIS.

Please give No. **40447**

WHEN ORDERING A DUPLICATE OF THIS BOOK.

SUPPLIES.

CARD INDEX CABINETS AND SUPPLIES.

Case 2:20-cv-01234-SGD   Filed 03/27/23   Page 3 of 89   Document 50-5

WG-ANR-00080668



WG-ANR-00080669

WG-ANR-00080670

Special Meeting of Board of Directors, Monday, April 14, 1902, at 9:30 A. M., due notice of meeting having been given.

Present: Messrs. Cowdery, Luedke, Smith, Murphy and Bigelow, also Judge Noyes of Counsel.

Vice President Cowdery in the chair.

Minutes of previous meeting read and approved.

General Manager's report for month of March submitted and ordered placed on file.

The Secretary reported having renewed the notes of the Company held by the First National Bank of Milwaukee amounting to $65,000.00, said renewal having been caused by reason of the check upon the Central Trust Company of New York, issued in payment of the original notes, having been refused by the Trust Company, and on motion of Mr. Murphy, duly seconded, the action of the officers in renewing these notes to the amount of $65,000.00 was ratified and confirmed.

A letter from Mr. Southut in regard to the transfer of property standing in the name of E. G. Cowdery, and also in regard to transfer of the Milwaukee Office Company property, to The Milwaukee Gas Light Company, was read, and upon motion of Mr. Smith, duly seconded, the following resolutions were adopted:

Resolved that Edward G. Cowdery be and he is hereby requested to convey to this company the premises conveyed to him by the Chicago, Milwaukee & St. Paul Railway Company by deed dated December 17, 1901, recorded January 6, 1902, in the register's office for Milwaukee County, Wisconsin, in volume 433 of Deeds, pages 353 et seq., and that such instrument of conveyance when duly executed by said Edward G. Cowdery and his wife be filed for record in the office of the register of Deeds for Milwaukee County.

Resolved that the Milwaukee Office Company be and it is hereby requested to convey to this company the property known as No. 18 Wisconsin Street in the city of Milwaukee, Wisconsin, described as follows, to

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 6 of 89   Document 50-5

Special Meeting Board of Directors April 14th, 1902

Ward of the city of Milwaukee, the consideration for such conveyance being the assumption by this company of the trust deed to the Milwaukee Trust Company securing bonds to the amount of $8,000, and that the instrument of conveyance, when duly executed be filed for record in the office of the register of deeds of Milwaukee County.

Resolved that the proper officers of this company, to wit: its president and secretary, after the delivery of the deeds of Edward G. Cowdery and of the Milwaukee Office Company, be and they are hereby authorized and directed to execute and deliver the supplemental indenture to be given by this company to the Central Trust Company of New York pursuant to the provisions in the mortgage of this company to said Trust Company dated February 28, 1902, and recorded in the office of the register of Deeds for Milwaukee County, Wisconsin, in volume 403 of mortgages on page 19, such supplemental indenture to be in the form and of the tenor and effect following.

I Supplemental Indenture made this _____ day of April, one thousand nine hundred and two, by and between Milwaukee Gas Light Company, a corporation organized created and existing under and by virtue of the laws of the State of Wisconsin (hereinafter called the Gas Company), party of the first part, and Central Trust Company of New York, a corporation created and existing under and by virtue of the laws of the State of New York (hereinafter called the Trustee), party of the second part;

The Gas Company heretofore executed and delivered to the Trustee a certain a certain indenture of mortgage and deed of trust dated the twenty eighth day of February, 1902, to secure the payment of the principal and interest of first mortgage bonds of the Gas

WG-ANR-00080672

Special Meeting Board of Directors, April 14th, 1902.

company to the aggregate principal of 10,000,000, mentioned and described therein. Said indenture of mortgage is of record in the office of the Register of Deeds for Milwaukee County, Wisconsin, in Book 483 of Mortgages at page 410. Said indenture of mortgage is hereinafter called the first mortgage, and said bonds are hereinafter called the first mortgage bonds.

The first mortgage provides in sub-division (a) of the second article thereof as follows:

The Gas Company covenants that prior to May 1, 1902, it will cause to be transferred to it and by proper deed vested in it the following property, situated in the City of Milwaukee in the County of Milwaukee and State of Wisconsin, subject only to a mortgage made by the Chicago, Milwaukee & St. Paul Railway Company to Levi P. Morton and Russell Sage, Trustees, dated February 14, 1874, to secure an issue of the bonds of said Railway Company aggregating $6,775,500 and maturing Jan. 1, 1904, of which bonds to the amount of $5,000 and no more are outstanding unpaid in the hands of the public and bonds to the amount of $850,000 and no more are held by the Farmers' Loan and Trust Company, as Trustee, under said Railway Company's mortgage dated June 15th 1895 all the remainder of said bonds having been paid and cancelled and said Trust Company having released said premises from the lien of said mortgage under which said Trust Company is Trustee and that the Gas Company will, prior to said May 1, 1902, by proper supplemental indenture, convey said property to the Trustee upon the trusts of this indenture.

That part of the east seventy (70) acres of the southwest quarter (S.W. ¼) of section thirty (30), town seven (7), north, of range numbered twenty-two (22) east, in the Sixteenth Ward of the City of Milwaukee, described as follows, to-wit:

Case 2:20-cv-01334-SCD Filed 01/27/23 Page 8 of 89 Document 50-5

WG-ANR-00080673

*Special Meeting Board of Directors. April 14th, 1902.*

line of the said seventy (70) acres of said southwest
quarter of section thirty (30) with the centre line of the
North Menomonee canal, as the same was established
and platted by F. E. Winkler, J. S. Blodgett and A. J.
Whittemore, Canal Commissioners, under an act
of the legislature of the State of Wisconsin provi-
ding for a system of canals in the Menomonee
Valley, passed March first, eighteen sixty nine
(March 1st, 1869); thence running east along the cen-
tre line of said North Menomonee Canal nine
hundred ninety and one tenth (990 1/10) ft. more or
less, to a point one hundred and sixty-five (165)
feet west of the east line of said southwest quarter
of section thirty (30); thence north, parallel to the
quarter line of said section thirty (30), three hundred
ninety eight (398) feet to a point which is three
hundred twenty eight (328) feet north from the
established north dock line of the North Meno-
monee Canal; thence in a westerly direction
in a straight line seven hundred and eighty
(780) feet to a point which is three hundred and
thirty three (333) feet north of said established
north dock line; thence westerly in a straight
line two hundred and nine and six tenths (209 6/10)
feet more or less to a point on the west line of
said east seventy (70) acres of the southwest quar-
ter of said section thirty (30), distant three hundred
and nineteen feet north from the said established
north dock line of said canal; thence south in the
west line of said east seventy (70) acres three hundred
and eighty nine (389) feet to the point of beginning,
containing nine and seven hundredths (9.07) acres
more or less, of which one and fifty nine hundredths
(1.59) acres lies within the boundaries of the North
Menomonee Canal, and as to said one and fifty nine
hundredths (1.59) acres the same is conveyed sub-
ject to the rights of the public therein, being the
same premises conveyed by the Chicago, Milwaukee

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 9 of 89   Document 50-5

WG-ANR-00080674

Special Meeting Board of Directors. April 14th 1902.

and St. Paul Railway Company to E. G. Cowdery of Milwaukee, Wisconsin, by deed dated December 12th, 1901 and recorded January 6th 1902 in the Register's Office for Milwaukee County, Wisconsin, in volume four hundred and thirty-three (433) of deeds, page three hundred and fifty-three (353) et seq.

The first mortgage also provides in subdivision (L) of said second article thereof as follows:

"(L) The property known as No. 18, Wisconsin street in the City of Milwaukee, and now occupied by the Gas Company as an office, is the property of the Milwaukee Office Company, hereinafter called the Office Company. The Office Company has issued its bonds to the amount of $80,000, secured as a first charge on said office property by a mortgage dated August 1, 1900. Said bonds bear interest at the rate of five per cent. per annum, and are payable July 2, 1940. The Gas Company has guaranteed, by endorsement, the principal and interest of said bonds of the Office Company. The Gas Company will, on or before May 1, 1902, acquire title in fee to said office building property, subject only to the lien of said $80,000 bonds of the Office Company, and execute and deliver to the Trustee a proper supplemental indenture conveying the same to the Trustee upon the trusts of this indenture."

The Gas Company since the execution and delivery of the first mortgage has acquired title to both said parcels of real estate, and desires to convey the same to the Trustee in accordance with the provisions of the first mortgage.

Now, therefore, this Indenture Witnesseth that the Gas Company, the party hereto of the first part, in consideration of the premises and of the sum of one dollar,

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 10 of 89   Document 50-5

WG-ANR-00080675

Special Meeting Board of Directors. April 14th, 1902

hand paid by the Trustee, the party hereto of the second part, the receipt whereof is hereby acknowledged, has granted, bargained, sold, and conveyed, and by these presents does grant, bargain, sell, and convey unto the Trustee all and singular, the following property, namely:

1.

All that part of the east seventy (70) acres of the southwest quarter (S.W. ¼) of section thirty (30), town seven (7), north, of range numbered twenty-two (22) east, in the Sixteenth Ward of the City of Milwaukee, described as follows, to-wit:

Beginning at the intersection of the west line of the said east seventy (70) acres of said southwest quarter of section thirty (30) with the centre line of the North Menomonee canal, as the same was established and platted by F.C. Winkler, F.S. Blodgett, and Fj. Whittemore, Canal Commissioners, under an act of the Legislature of the State of Wisconsin providing for a system of canals in the Menomonee Valley, passed March first eighteen sixty-nine (March 1st 1869); thence running east along the centre line of said North Menomonee canal nine hundred ninety and one tenth (990 1/10) feet, more or less, to a point one hundred and sixty-five (165) feet west of the east line of said southwest quarter of section thirty (30); thence north, parallel to the quarter line of said section thirty (30), three hundred ninety-eight (398) feet to a point which is three hundred twenty-eight (328) feet north from the established north dock line of the North Menomonee Canal; thence in a westerly direction in a straight line seven hundred and eighty (780) feet to a point which is three hundred and thirty three (333) feet north of said established north dock line; thence westerly in a straight line two hundred and nine and six tenths (209.6) ft more or less to a point on the west line of

WG-ANR-00080676

Special Meeting Board of Directors. April 14th, 1902

said east seventy (70) acres of the southwest quarter of said section thirty (30), distant three hundred and nineteen feet north from the said established north dock line of said canal; thence south in the west line of said east seventy (70) acres three hundred and eighty-nine (389) feet to the point of beginning, containing nine and seven-hundredths (9.07) acres more or less, of which one and fifty-nine hundredths (1.59) acres lie within the boundaries of the North Menomonee Canal, and as to said one and fifty-nine hundredths (1.59) acres the same is conveyed subject to the rights of the public therein, being the same premises conveyed by the Chicago, Milwaukee and St Paul Railway Company to E. G. Cowdery, of Milwaukee, Wisconsin, by deed dated December 17th, 1901, and recorded January 6th, 1907, in the Register's office for Milwaukee County, Wisconsin, in volume four hundred and thirty-three (433) of deeds, page three hundred and fifty-three (353) et seq.

2nd.

The property known as No. 18x Wisconsin Street in the City of Milwaukee, occupied by the Gas Company as an office, to wit: the east one-half (½) of lots seven (7) and eight (8) in block twenty-nine (29) in the Seventh ward in the city of Milwaukee, Wisconsin.

Together with all and singular the tenements, hereditaments and appurtenances unto each of said parcels of property belonging or in anywise appertaining, and the rents, issues, incomes and profits thereof, and all the estate, right, title and interest, as well at law as in equity, of the Gas Company of, in and to the same and every part and parcel thereof and of each thereof, with the appurtenances and all improvements thereon;

Subject, however, as to the first described tract, to said mortgage made by the Chicago, Milwaukee

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 12 of 89   Document 50-5

WG-ANR-00080677

Special Meeting Board of Directors. April 14th, 1902

and Russell Sage, Trustees, dated February 14, 1894,
to secure an issue of the bonds of said Railway
Company aggregating $26,225,500 and maturing
January 1, 1904, of which bonds to the amount of
$56,000 and no more are outstanding unpaid in the
hands of the public, and bonds to the amount of
$50,000 and no more are held by the Farmers Loan
and Trust Company, as trustee under said Rail-
way Company's mortgage, dated June 15, 1875, all
the remainder of said bonds having been paid
and cancelled and said Trust Company having
released said premises from the lien of said mort-
gage under which said Trust Company is trustee;
and subject, as to the second described tract, to
said first mortgage of the Milwaukee Office
Company, dated August 1, 1900, securing said $16,000
face amount, of the five per cent. first mortgage
bonds of said Office Company maturing July
2, 1920, in the first mortgage of the Gas Company
described and herein above recited;

To have and to hold all and singular the
above-granted premises and property unto
Central Trust Company of New York, the party
hereto of the second part as Trustee under said
first mortgage dated February 28th 1902, made
by the Gas Company to said Trust Company, here-
in above recited, and to its successors in said
trust and its assigns forever;

In trust, nevertheless, for the equal and pro-
portionate benefit and security of all holders
of the first mortgage bonds and coupons, without
preference of any of said bonds or coupons over
any other bond or coupon by reason of priority in
the time of issue or negotiation thereof, or otherwise,
and on the trusts, for the uses and purposes, and
upon the conditions expressed and declared in the

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 13 of 89   Document 50-5

WG-ANR-00080678

Special Meeting Board of Directors. April 14th. 1902

first mortgage, which are hereby made part hereof as fully and with the same force and effect as if incorporated and set out at length herein.

All the recitals and representations contained in this indenture are made by the Gas Company alone, and the Trustee does not in any manner join therein, nor certify to the verity or correctness of the same.

In Witness Whereof, the Gas Company has caused its corporate seal to be hereunto affixed and this indenture to be signed by its president and countersigned by its secretary, and the party of the second party has caused its corporate seal to be hereunto affixed and this indenture to be signed by its second vice president and countersigned by its secretary, the day and year first above written.

                    Milwaukee Gas Light Company
                         by          President
    Countersigned by
              Secretary
    Executed by Milwaukee Gas Light Company in
    presence of          Witnesses

                    Central Trust Company of New York,
                         by     Second Vice President
    Countersigned by
              Secretary
    Executed by Central Trust Company
    of New York in the presence of        Witnesses

There being no further business to be brought before the Board, the meeting adjourned
                    S. J. Geary
                         Secretary.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 14 of 89   Document 50-5

WG-ANR-00080679

Regular Meeting Board of Directors Monday May
19th 1902 - 9:30 A. M.
Pursuant to By Laws.
Adjourned by Secretary no quorum being present.

Secretary

Adjourned Directors' Meeting.
Milwaukee, Wisconsin, May 26, 1902.

Pursuant to adjournment, the regular monthly
meeting of the Board of Directors of the Milwaukee Gas
Light Company was held at the office of the Company.
No. 182 Wisconsin Street, Milwaukee, Wisconsin, this
26th day of May, 1902, at 3 o'clock, P. M.

There were present Messrs. Cowdery, Bigelow, Ludka,
Murphey and Sawtsict, being a quorum of the Board.

First Vice President Cowdery was in the chair.

The minutes of the meeting held April 14, 1902,
were read and approved.

The General Manager's report for the month of
April, 1902, was submitted, approved and ordered filed.

The minutes of the adjourned meeting of the
Board held February 21, 1902, were laid before the Board.

Referring to the minutes of the adjourned
meeting held February 21, 1902, the Secretary reported that
the dividend of $62.50 per share, ordered to be paid May 1,
1902, to the stockholders of record at the close of business on
April 25, 1902, had been duly paid on said May 1, 1902, by
the Central Trust Company of New York, in accordance
with a certified list of the stockholders of record on April 25,
1902, which list he had filed with said Trust Company,
in accordance with the order of the Board.

The following was then introduced:

Resolved that the action of the Central Trust
Company of New York in paying the said dividend

WG-ANR-00080680

Adjourned Directors' Meeting. May 26, 1902.

of $163.50 per share on May 1, 1902, as reported by the Secretary, be and the same hereby is in all things ratified, approved and confirmed.

The question being upon the adoption of the foregoing resolution, the same was unanimously adopted by the affirmative votes of all the Directors present.

Referring to the minutes of the adjourned meeting held February 21, 1902, the Secretary reported that together with the President he had executed, acknowledged and delivered this company's first mortgage dated February 28, 1902, to the Central Trust Company of New York, which said mortgage is set out in full in the minutes of said adjourned meeting held February 21, 1902, and that said mortgage had also been executed, acknowledged and delivered by said Trust Company, and duly filed for record.

The following was then introduced:

Resolved that the action of the President and Secretary, and of the Central Trust Company of New York, in executing, acknowledging and delivering this company's said first mortgage, dated February 28, 1902, be and the same hereby is in all things ratified, approved and confirmed.

The question being upon the adoption of the foregoing resolution, the same was unanimously adopted by the affirmative votes of all the Directors present.

Referring to the minutes of said adjourned meeting held February 21, 1902, the Secretary reported that he and Vice-President Green had executed the Company's bonds in the form and of the tenor and effect set forth in said first mortgage to the amount of $6,000,000.00 face value of said bonds, to-wit: bonds Nos. 1 to 6000 for $1,000.00 each, and that said bonds had been delivered to the Central Trust Company of New York for authentication in accordance with the provisions of said first mortgage.

The following was then introduced.

Resolved, that the action of Vice-President Green and the Secretary in executing this Company's

WG-ANR-00080681

Adjourned Directors' Meeting, May, 26, 1902.

meeting, and in delivering the same to the Central Trust Company of New York for authentication, be and the same hereby is in all things ratified, approved and confirmed.

The question being upon the adoption of the foregoing resolution, the same was unanimously adopted by the affirmative votes of all the Directors present.

Referring to the minutes of the adjourned meeting held February 21, 1902, the Secretary reported that he and the President had executed, acknowledged, and delivered the agreement dated February 18, 1902, between this Company and Messrs. J. & W. Seligman & Company and Vermilye & Company, which agreement is set forth in full in the minutes of said adjourned meeting held February 21, 1902.

The following was then introduced.

Resolved that the action of the President and Secretary in executing, acknowledging and delivering this Company's said agreement dated February 18, 1902, with Messrs. J. & W. Seligman & Company and Vermilye & Company, as reported by the Secretary at this meeting, be and the same hereby is in all things, ratified, approved and confirmed.

The question being upon the adoption of the foregoing resolution, the same was unanimously adopted by the affirmative votes of all the Directors present.

Referring to the minutes of said adjourned meeting held February 21, 1902, the Secretary reported that the agreement dated February 18, 1902, between this Company and Messrs. J. & W. Seligman & Company and Vermilye & Company, had been fully and completely performed by both parties; that the said Bankers had paid as provided in the said agreement, to the Central Trust Company of New York, the purchase price of $6,000,000.00 par value of this Company's first mortgage bonds, and that said bonds had been, in accordance with the terms of said agreement, and in accordance with the resolutions of the Board adopted at said adjourned meeting authen-

Adjourned Directors' Meeting. May 26, 1902

ticated by said Trust Company and delivered to said Bankers; and further that the proceeds of the sale of said bonds had been by said Trust Company applied in all respects to the purposes and uses set forth in the said agreement, and in the said resolutions of the Board.

The following was then introduced:

Resolved that the action of Central Trust Company of New York in authenticating and delivering this Company's first mortgage bonds to the amount of $6,000,000.00, and in receiving the purchase price thereof from Messrs. J. & W. Seligman & Company and Vermilye & Company, all as provided in this Company's agreement dated February 28, 1902, with said Bankers, and said Trust Company's application of the purchase price of said bonds in accordance with the terms of the said agreement, and in accordance with the resolutions adopted by this Board at its adjourned meeting held February 21, 1902, be and the same hereby are in all respects fully ratified, approved and confirmed.

The question being upon the adoption of the foregoing resolution, the same was unanimously adopted by the affirmative votes of all the Directors present.

Referring to the minutes of the adjourned meeting held February 21, 1902, the Secretary reported that out of the funds arising from the sale of $6,000,000.00 of this Company's first mortgage bonds to Messrs. J. & W. Seligman & Company and Vermilye & Company, there had been paid off and discharged all the indebtedness of this Company of every character, other than current indebtedness incident to operation and consumers deposits, and the Secretary submitted to the Board a condensed balance sheet from the books of the Company as of May 1, 1902, as follows:

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 18 of 89   Document 50-5

WG-ANR-00080683

# Milwaukee Gas Light Company

## Condensed Balance Sheet - May 1st 1902

| | |
|---|---:|
| Plant and Investment, January 1st, 1902 | $ 9,810,088.48 |
| Construction and investment January 1st 1902 to date. | 744,576.49 |
| Storehouse and Supply Accounts | 124,572.30 |
| Expenses paid in advance | 11,978.37 |
| Gas Bills, current. | 99,893.94 |
| Gas Bills, arrears | 5,367.70 |
| City of Milwaukee | 9,022.19 |
| Bills Receivable | 3,921.08 |
| Accounts Receivable | 70,261.50 |
| Cash | 376,158.16 |
| All other assets | 55,833.75 |
| | $ 10,740,644.96 |

| | |
|---|---:|
| Capital Stock, | $ 1,380,150.00 |
| Milwaukee Gas Light Company 1st Mortgage 4% Bonds, | 6,000,000.00 |
| Milwaukee Office Company 1st Mortgage 5% Bonds, | 80,000.00 |
| Consumers Deposits, | 47,447.03 |
| Interest Accrued on Consumers' Deposits, | 4,395.90 |
| Accounts Payable (Payable May 10th, 1902) | 69,810.71 |
| Unpaid Wages and Salaries (Payable May 10, 1902) | 18,470.13 |
| Unpaid Rent, (Payable May 10, 1902 ) | 261.66 |
| Unpaid Taxes (Payable January 1903) | 10,795.45 |
| Surplus and Undivided profits | 3,131,419.08 |
| | $ 10,740,644.96 |

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 19 of 89   Document 50-5

WG-ANR-00080684

Adjourned Directors' Meeting. May 26, 1902

The following was then introduced:

Resolved that the action of the officers of the Company in paying and discharging out of the proceeds of the sale of $6,000,000.00 of this Company's first mortgage bonds, all this Company's indebtedness of every character, except current indebtedness incident to operation and consumers' deposits, be and the same hereby is in all respects ratified, approved and confirmed.

The question being upon the adoption of the resolution, the same was unanimously adopted by the affirmative votes of all the Directors present.

Referring to the minutes of the adjourned meeting held February 21, 1902, the Secretary reported that he and the President had executed, acknowledged and delivered on behalf of this company the agreement between this company, Western Gas Company and Central Trust Company of New York, a copy of which is set forth in said minutes, and further that the said agreement had been fully performed on the part of this Company, and also as he is advised on the part of the other companies parties thereto.

The following was then introduced:

Resolved that the action of the President and Secretary in executing, acknowledging and delivering on behalf of this Company, the said agreement between this Company, Western Gas Company and Central Trust Company of New York, as reported by the Secretary at this meeting, be and the same hereby is in all respects ratified, approved and confirmed.

The question being upon the adoption of the resolution, the same was unanimously adopted by the affirmative votes of all the Directors present.

Referring to the minutes of the adjourned meeting held February 21, 1902, the Secretary reported that the special meeting of the Stockholders as called by the Board, had been held at the office of the Company on the 21st day of February, 1902, to act upon the execution and delivery of the first mortgage bonds of the Company, and

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 20 of 89   Document 50-5

WG-ANR-00080685

Adjourned Directors' Meeting. May 26, 1902.

contract between this Company, Western Gas Company and Central Trust Company of New York, and upon all other proceedings had by the Board at said adjourned meeting held February 21, 1902, and that at said meeting of the stockholders all of them matters and things aforesaid had been duly authorized and approved by the stockholders, by the unanimous vote of all of the issued and outstanding stock of the Company.

Referring to the minutes of the adjourned meeting held February 21, 1902, the Secretary reported that as directed by the Board he had adjusted the account "Plant and Equipment" on the books of the Company so as to provide for the payment of the dividend declared at said adjourned meeting, and leave a balance of $6,000,000.00 to the credit of "Undivided Profits".

The following was then introduced:

Resolved that the action of the Secretary in adjusting the account "Plant and Equipment" on the books of the Company, as ordered by this Board at the adjourned meeting held February 21, 1902, and as reported by the Secretary at this meeting, be and the same hereby is in all respects ratified, approved and confirmed:

The question being upon the adoption of the foregoing resolution, the same was unanimously adopted by the affirmative votes of all the Directors present.

Referring to the minutes of the meeting held April 11, 1902, which minutes have been read and approved at this meeting, the Secretary reported that Edw. and G. Cowdry had executed and delivered to this Company a proper conveyance, approved by this Company's counsel, conveying to this Company the property theretofore held by him as trustee for this Company; and further that the Milwaukee Office Company had by virtue of proper proceedings under the direction of this Company's counsel, executed a conveyance, approved by this Company's counsel,

WG-ANR-00080686

Adjourned Directors Meeting May 26, 1902.

conveying to this company the office building premises now occupied by this company and known as No. 18 Wisconsin Street; and further that, pursuant to the terms of this company's first mortgage dated February 28, 1901, the Secretary, together with the President, had executed, acknowledged and delivered to Central Trust Company of New York, this Company's supplemental indenture dated April 14, 1901, in the form and of the tenor and effect set out in full in the minutes of said meeting of the Board held April 14, 1901.

The following was then introduced:

Resolved that the action of the President and Secretary in executing, acknowledging and delivering to Central Trust Company of New York this Company's supplemental indenture as ordered by this Board at its meeting held April 14, 1901, and as reported by the Secretary at this meeting, be and the same hereby is in all things ratified, approved and confirmed

The question being upon the adoption of the resolution, the same was unanimously adopted by the affirmative votes of all the Directors present.

The Secretary reported having arranged with the First National Bank of Milwaukee to pay interest upon deposits at the rate of 2½ % per annum on the amount of deposit in excess of $25,000.00.

Upon motion it was

Resolved that the action of the Secretary in depositing the proceeds of bonds with the First National Bank, at interest as reported, be ratified, approved and confirmed.

On Motion duly seconded the Board adjourned.

S. J. Glass
Secretary

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 22 of 89   Document 50-5

WG-ANR-00080687

## Special Stockholder's Meeting.

Milwaukee, Wisconsin, May 16th 1902.

Pursuant to Waiver of Notice hereinafter set forth, a Special Meeting of the stockholders of The Milwaukee Gas Light Company was held at the office of the Company, No. 182 Wisconsin Street, in the City of Milwaukee, Wis., this 16th day of May, 1902, at 3:30 o'clock, P. M.

The holders of the entire issued and outstanding capital stock of the Company were present in person or by proxy, as follows:

In Person:

| Name: | | No. of Shares: |
|---|---|---|
| W. F. Douthit, | | 1 |
| Frank G. Bigelow, | | 1 |
| John T. Murphy, | | 1 |
| H. August Lueske, | | 1 |
| E. G. Cowdery, | | 1 |

By Proxy:

| | | |
|---|---|---|
| Emerson McMillin | by W. F. Douthit, | 1 |
| Henry C. Payne, | by W. F. Douthit, | 1 |
| S. M. Green, | by W. F. Douthit, | 1 |
| A. C. Smith, | by E. G. Cowdery, | 1 |
| Central Trust Company of New York, Trustee, | | |
| | by Wm. H. Fain, | 27,594 |
| | Total | 27,603 |

being the entire issued and outstanding stock of the Company.

In the absence of the President, the meeting was called to order by Mr. E. G. Cowdery, the First Vice President.

Mr. S. J. Glase, Secretary of the Company, acted as secretary of the meeting.

The chairman appointed Messrs. John T. Murphy and H. Aug. Lueske, tellers to canvass the powers of attorney presented at the meeting and to report to the meeting what stockholders were present in person or by proxy.

The tellers thereupon canvassed the powers of attorney and compared the same with the list of stockholders, and reported that the holders of the entire capital stock of

Special Stockholders' Meeting, May, 26 1902

the Company were present in person or by proxy as above set
forth.

The written powers of attorney of the stockholders present
by proxy were thereupon directed to be filed in the office of the
Company, and are now on file in said office.

Thereupon, all the stockholders of the Company being
present either in person or by proxy, they did each execute a
written Waiver of Notice of this meeting, the original whereof
was thereupon filed in the office of the Company and is now on
file in said office, and a copy whereof is as follows:

Milwaukee Gas Light Company.
Waiver of Notice of Special Stockholders'
Meeting held May 26th 1902.

The undersigned, being holders of record of the several
numbers of shares of the capital stock of The Milwaukee Gas
Light Company set opposite their respective signatures below,
the same constituting the entire issued capital stock of said
Company, and being all this day present, either in person or by
proxy at a special meeting of the stockholders of the said Com-
pany held at its office No. 18 Wisconsin Street, in the City of
Milwaukee, Wisconsin, this 26th day of May, 1902, at 3:30 o'clock,
P.M. do hereby in writing waive notice of such meeting, in con-
formity with Section 1761 Annotated Statutes of Wisconsin, 1898,
and do consent that such meeting be held at the time and place
aforesaid.

| Name: | No. of Shares. |
|---|---|
| N. F. Douthitt, | 1 |
| S. M. Greene, by N. F. Douthitt, Atty. | 1 |
| Emerson McMillin, by N. F. Douthitt, Atty. | 1 |
| Henry C. Payne, by N. F. Douthitt, Atty. | 1 |
| Frank G. Bigelow, | 1 |
| John T. Murphy, | 1 |
| H. Aug. Luedke | 1 |
| E. G. Cowdery, | 1 |
| A. E. Smith, by E. G. Cowdery, Atty | 1 |
| Central Trust Company of New York, Trustee, by | 27,591 |
| | Total 27,603 |

Case 2:20-cv-01334-SGD  Filed 01/27/23  Page 24 of 89  Document 50-5

WG-ANR-00080689

Special Stock holders' Meeting, May 26th 1902.

The minutes of the special meeting of the stock holders held February 21st, 1902, were read, and upon motion duly seconded, said minutes were in all things approved.

The Secretary laid before the meeting the minutes of the adjourned meeting of the Board of Directors held on the 21st day of February, 1902.

The Chairman thereupon appointed Messrs. John P. Murphy and W. August Luecke, inspectors to canvass all votes cast by the stock holders on any and all matters and questions arising at this meeting.

The Secretary reported that pursuant to the resolutions adopted by the stockholders and by the Board of Directors at their meeting held on February 21, 1902, a dividend of $163.50 per share had been paid to the stock holders of the Company.

The following resolution was offered and duly seconded:

Resolved that the action of the Board of Directors in declaring and paying a dividend of $163.50 per share to the stock holders of this Company be and the same hereby is in all things approved, ratified and confirmed.

The vote on said resolution was taken by shares and the polls were kept open for the reception of votes until all votes of holders of stock present in person or by proxy had been cast. The inspectors having canvassed the votes reported that said resolution had been adopted by the unanimous vote of the entire capital stock of the Company.

Said report of the inspectors was duly accepted.

The Secretary reported that in pursuance of the action of the stock holders and of the Board of Directors at said meetings, held on February 21, 1902, the Company had duly executed and delivered to Central Trust Company of New York, its first mortgage a deed of trust in the following form:

Case 2:20-cv-01334-SCD    Filed 01/27/23    Page 25 of 89    Document 50-5

WG-ANR-00080690

Special Stockholders Meeting. May 26th 1902

An Indenture made this twenty eighth day of February, one thousand nine hundred and two, by and between Milwaukee Gas Light Company, (hereinafter called the Gas Company) party of the first part, and Central Trust Company of New York, a corporation created and existing under and by virtue of the laws of the State of New York (hereinafter called the Trustee) party of the second part:

Whereas the Gas Company has been duly organized and created under the laws of the State of Wisconsin, and, by its act of incorporation, is authorized and fully empowered in its corporate capacity to borrow any sum or sums of money from any person or persons, corporations or body politic of any kind, and make and execute in its corporate name all necessary writings, notes, bonds or other papers and make and execute and deliver such securities in amount and kind as may be deemed expedient by it for all purposes in carrying out the objects of the Gas Company; and

Whereas, for its corporate purposes, it is necessary that the Gas Company borrow money; and

Whereas the Gas Company, in pursuance of proper resolutions of its board of directors and of its stockholders, has determined to issue its bonds, of the tenor and effect hereinafter set forth, limited to the aggregate principal amount of $10,000,000.00, to be known as its first mortgage bonds, to be payable the first day of May, 1927, at the office or agency of the Gas Company in the City of New York, in gold coin of the United States of or equal to the present standard of weight and fineness, with interest from the first day of May, 1902, at the rate of four per cent per annum, payable semi-annually on the first days of November and May in each year, in like gold coin, at the office or agency of the Gas Company in the City of New York, according to the tenor of the coupons thereto annexed, and on ... ... ... ... ture; and

WG-ANR-00080691

Special Stockholders' Meeting. May 26th 1902.

Whereas, for the purposes aforesaid, and in further pursuance of said resolutions of its board of directors and of its stockholders, the Gas Company, in order to secure the payment of said first mortgage gold bonds, has determined to execute and deliver to Central Trust Company of New York, as trustee, a mortgage and deed of trust of its property and franchises hereinafter described; and

Whereas said bonds (which are hereinafter called the first mortgage bonds) and the coupons attached thereto, and the trustee's certificate thereon endorsed, are substantially in the following form, to wit:

(Form of Bond)

No................................                                    $1,000.

United States of America,
State of Wisconsin.

Milwaukee Gas Light Company.
First Mortgage 25 Year Four Per Cent. Gold Bond.
Due May 1, 1927.

For value received, Milwaukee Gas Light Company, a corporation of the State of Wisconsin, hereinafter called the Gas Company, hereby promises to pay to the bearer, or, if registered, to the registered holder of this bond, one thousand dollars ($1,000) in gold coin of the United States of America, of or equal to the present standard of weight and fineness, on the first day of May, in the year 1927, at its office or agency in the City of New York; and to pay interest thereon from May 1, 1902, at the rate of four per cent. per annum, payable at its said office or agency, in like gold coin, semi-annually, on the first days of November and May in each year, upon presentation and surrender of the annexed coupons as they severally mature. Both the principal and interest of this bond are payable without deduction for any tax or taxes which the Gas Company may be required to pay thereon or to retain therefrom under any present or future law of the United States, or of any state, county or municipality therein

WG-ANR-00080692

Special Stockholders' Meeting, May 26th 1902.

This bond is one of a series of 10,000 bonds of the Gas Company, known as its First Mortgage 25-Ye ar Four Per Cent Gold Bonds, all of the same tenor, date and amount, and numbered from one consecutively upward, issued and to be issued under, and all equally secured by a mortgage and deed of trust dated February 28th, 1902, executed by the Gas Company to Central Trust Company of New York, as Trustee. For a description of the properties and franchises mortgaged, the nature and extent of the security, the rights of the holders of the bonds and the terms and conditions upon which the bonds may be issued and are secured, reference is made to said mortgage and deed of trust.

This bond shall pass by delivery unless registered in the name of the owner on the books of the Gas Company, such registry being noted on the bond. After such registry no transfer shall be valid unless made on said books by the registered holder, in person or by his attorney duly authorized, and such transfer similarly noted on the bond, but the same may be discharged from registry by a transfer thereon to bearer and thereupon transferability by delivery shall be restored, but this bond may again, from time to time, be registered or transferred to bearer as before. Such registration, however, shall not affect the negotiability of the coupons, which shall continue to be transferable by delivery.

The bonds of this issue are subject to redemption at ten per cent premium and accrued interest, on any interest day, at the option of the Gas Company, upon two months' notice, as provided in said mortgage and deed of trust.

No recourse shall be had for the payment of the principal or interest of this bond or for any claim based thereon or otherwise in any manner in respect thereof or of said mortgage and deed of trust, to any stockholder, officer or director, present or future, of the Gas Company, either directly or through the Gas Company, whether by virtue of any statute or by the enforcement of any penalty or otherwise.

This bond shall not become valid or obligatory for any purpose unless and until it shall have been authenticated by the certificate of said Central Trust Company of New York, hereon en-

WG-ANR-00080693

Special Stockholders Meeting, May 26th 1902

In Witness Whereof, the Gas Company has caused this bond to be signed on its behalf by its president or a vice-president and its corporate seal to be hereunto affixed and attested by its Secretary or an assistant Secretary, and coupons for interest thereon, with the engraved signature of its Treasurer, to be hereunto attached the twenty-eighth day of February, 1902.

Milwaukee Gas Light Company

by

President

Attest:

Secretary.

(Form of Coupon.)

$20.    No._____

Milwaukee Gas Light Company will pay to bearer, in the City of New York, on the first day of _____ 19__, twenty dollars in United States gold coin, being six-months' interest then due on its First Mortgage 25-Year Four Per Cent. Gold Bond No.

Treasurer.

(Form of Trustee's Certificate)

This bond is one of the series of bonds described in the within mentioned mortgage and deed of Trust.

Central Trust Company of New York, Trustee

by

Vice President.

Now, therefore, this Indenture Witnesseth that the Gas Company, the party hereto of the first part, in consideration of the premises and of the sum of one dollar, lawful money of the United States of America, to it in hand paid by the Trustee, the party hereto of the second part, the receipt whereof is hereby acknowledged, and in consideration of the premises

WG-ANR-00080694

Special Stockholders' Meeting, May 26, th 1902.

and of the acceptance of said first mortgage bonds, has granted, bargained, sold, conveyed, assigned and transferred and by these presents does grant, bargain, sell, convey, assign and transfer unto the Trustee and its successors in the trust hereby created, all and singular, the following property, namely:

### I

Lots numbered one (1) and twelve (12) in block numbered one hundred and sixteen (116), lots numbered two (2), three (3), four (4), five (5), six (6), seven (7), eight (8), nine (9), ten (10), eleven (11), (12) twelve and thirteen (13) in block numbered one hundred and fifty-seven (157); lots numbered eight (8), nine (9), ten (10) and eleven (11), and the north twenty five (25) feet of lot numbered seven (7) in block numbered one hundred and fifty-eight (158); lots numbered one (1), two (2), four (4), five (5), six (6), seven (7), eight (8), nine (9) and ten (10) in block numbered one hundred and sixty-four (164); lots numbered one (1), two (2), three (3), four (4), five (5), six (6), seven (7), eight (8), nine (9), ten (10), in block numbered one hundred and sixty-six (166), all in the Third Ward of the City of Milwaukee, in the County of Milwaukee and State of Wisconsin.

### II

That part of the east forty-five (45) acres of the west ninety (90) acres of the southwest quarter (S.W.¼) of section numbered thirty (30), in township numbered seven (7) north, of range numbered twenty two (22) east, in the Sixteenth Ward of the City of Milwaukee, in the County of Milwaukee and State of Wisconsin, bounded on the north by the centre line of St. Paul Avenue extended east, and on the south by the North Menomonee Canal, excepting therefrom the right of way of the Chicago, Milwaukee & St. Paul Railway Company.

### III

That part of the southwest quarter of section thirty (30), township seven (7) north, of range twenty two (22) east, in the Sixteenth Ward of the City of Milwaukee, in the County of Milwaukee, and State of Wisconsin, which is bounded and described as follows, to wit:

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 30 of 89   Document 50-5

WG-ANR-00080695

*Special Stockholders' Meeting, May 26th 1902.*

River where it is intersected by the east line of said quarter section, and running thence north to the grounds of the Chicago, Milwaukee & St. Paul Railway Company, thence west along said Company's grounds two and one-half (2½) chains to a point, thence south, parallel with the east line of said quarter section, to a point in the centre of the Menomonee River, thence along the centre of said river down stream to the point of beginning, being the same premises conveyed by William Mariner and Jessie M. Mariner, his wife, to Edward G. Bordery by deed dated October 1st, 1901, and recorded January 6th, 1902, in the Register's Office for Milwaukee County, Wisconsin, in volume four hundred and fifty three (453) of Deeds, on page four hundred and twenty eighth (428).

Together with all and singular the tenements, hereditaments and appurtenances unto each of said parcels of property belonging or in any wise appertaining and the rents, issues, incomes and profits thereof, and all the estate, right, title and interest as well at law as in equity, of the Gas Company of, in and to the same and every part and parcel thereof and of each thereof, with the appurtenances and all improvements thereon.

**IV**

Also all other property of the Gas Company, real, personal or mixed, now owned or hereafter in any wise acquired by it, including its gas works, structures, plants, mains, pipes, apparatus, furniture, fixtures, engines, boilers, machinery, tools, implements, drawings, supplies, appurtenances, leases, licenses, contracts, agreements, and patented or other processes for making and distributing gas, or in any wise relating to gas and including also all extensions and additions, improvements or replacements, made or to be made of or to any or all of the said plants and property, or any part thereof, and including also all and every estate, right and interest, privilege, authority and franchise, corporate or otherwise, and of every

WG-ANR-00080696

Special Stockholders' Meeting. May 26th 1902.

nature and description whatsoever. claim and demand, which the Gas Company now owns, enjoys or holds, or may or shall hereafter acquire, with the expenses of the proceeds of any of the bonds hereby secured or otherwise in any manner, and including also the earnings, rents, issues, income and profits of the Gas Company and of its plant, distributing system and property; it being expressly declared that the particular description of real and personal property herein contained shall not be construed to include any other property which is now owned or may hereafter be acquired by the Gas Company.

To have and to hold all and singular the above granted premises, property, authority and franchises unto said Central Trust Company of New York, as Trustee, its successors and assigns forever.

In trust, nevertheless, as to all the mortgaged premises for the equal and proportionate benefit and security of all holders of the first mortgage bonds and coupons, without preference of any of said bonds or coupons over any other bond or coupon by reason of priority; in the time of issue or negotiation thereof, or otherwise; and for the uses and purposes and upon the conditions hereinafter expressed and declared.

First — The first mortgage bonds shall forthwith be executed on behalf of the Gas Company, and delivered to the Trustee, for authentication by it. In case the officers who shall have signed and sealed any of said bonds shall cease to be such officers of the Gas Company before the bonds so signed and sealed shall have been actually authenticated and delivered by the Trustee, such bonds may, nevertheless, be adopted by the Gas Company, and be issued, authenticated and delivered, as though the persons who signed and sealed such bonds had not ceased to be officers of the Gas Company. The coupons to be attached to such bonds shall be authenticated by the engraved signature of the present treasurer or of any future treasurer of the Gas Company, and the Gas Company may adopt and use for that purpose, the engraved signature of any person who shall have been such treasurer notwithstanding the fact that he may have ceased

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 32 of 89   Document 50-5

WG-ANR-00080697

*Special Stock holders' Meeting, May 26th 1902.*

tually authenticated and delivered. Only such bonds as shall bear thereon endorsed a certificate substantially in the form hereinbefore recited, executed by the Trustee, shall be secured by this indenture or entitled to any lien, right or benefit hereunder, and such certificate of the Trustee upon any such bond executed on behalf of the Gas Company, shall be conclusive evidence that the holder of the bond so authenticated is entitled to the benefit of the trust hereby created. Before authenticating or delivering any first mortgage bond, all coupons thereon then matured, shall be cut off, cancelled and delivered to the Gas Company. The Gas Company and the Trustee may deem and treat the bearer of any first mortgage bond which shall not at the time be registered as hereinafter authorized, and the bearer of any coupon for interest on any first mortgage bond, whether such bond shall be registered or not, as the absolute owner of such bond or coupon for the purpose of receiving payment thereof and for all other purposes whatsoever, and the Gas Company and the Trustee shall not be affected by any notice to the contrary.

The Gas Company will keep, as an office or agency to be maintained by it in the city of New York, or at some bank or trust company in said city, a sufficient register or registers of the first mortgage bonds, which shall at all reasonable times be open for inspection by the Trustee and any holders of said bonds; and upon presentation for such purpose, the Gas Company will, under such reasonable regulations as it may prescribe, register or cause to be registered therein any first mortgage bonds. The holder of any first mortgage bond may have the ownership thereof registered on said books, such registry being noted on the bond, after which no transfer shall be valid, unless made on said books by the registered holder in person, or by his attorney duly authorized in writing, and noted on the bond, but the same may be discharged from registry by being in like manner transferred thereon to bearer, after which it shall be transferable by delivery, but said bond may again from time to time be registered or transferred

WG-ANR-00080698

*Special Stockholders' Meeting, May 26th 1902.*

to bearer as before. Such registration shall not affect the nego-
tiability of the coupons belonging to any bond, but every such
coupon shall continue to pass by delivery, and shall remain
payable to bearer.

Until the first mortgage bonds can be engraved and
prepared, the Gas Company may execute and deliver tempo-
rary bonds, negotiable by delivery, and substantially of
the tenor of the bonds hereinbefore recited, except that no coupons
shall be attached to said bonds, and the same may be for
the payment of one thousand dollars ($1,000) or any multiple
thereof, as the Gas Company may determine. All such tempora-
ry bonds shall bear upon their face the words "Tempo-ary
First Mortgage 25 Year Four Per Cent. Gold Bond, due 1927,
Exchangeable for Engraved Bonds," and shall be duly au-
thenticated by the Trustee in the same manner as the bonds here-
inbefore described, and such certificate shall be conclusive evi-
dence that the bond so authenticated has been duly delivered here-
under, and that the holder is entitled to the benefit of the trust
hereby created. Such temporary bonds duly issued and authen-
ticated hereunder shall be exchangeable for engraved bonds
to be issued hereunder; and, upon any such exchange, said
temporary bonds shall be forthwith cancelled by the Trustee
and delivered to the Gas Company. Until so exchanged, said
temporary bonds shall, in all respects, be entitled to the lien and
security of this indenture, as bonds issued and certified
hereunder; and interest when and as payable, shall be paid
and endorsed thereon.

In case any first mortgage bond, with the coupons
thereto appertaining, shall become mutilated or be destroyed
or lost, the Gas Company, in its discretion, may issue, and
thereupon the Trustee shall authenticate and deliver, a new
bond of like tenor and date, bearing the same serial number,
in exchange and substitution for, and upon cancellation
of, the mutilated bond and its coupons, or in lieu of and
substitution for the bond and its coupons so destroyed or
lost. The applicant for such substituted bond shall
furnish to the Gas Company and the Trustee evidence of the
de_____ destroyed

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 34 of 89   Document 50-5

WG-ANR-00080699

Special Stockholders' Meeting, May 26th 1902.

or loss, which evidence shall be satisfactory to the Gas Company and the Trustee in their discretion; and said applicant shall also furnish indemnity satisfactory to both of them in their discretion.

Second.—The Trustee shall authenticate the first mortgage bonds and deliver the same as follows:

(a) $6,000,000 of the first mortgage bonds, shall be authenticated and delivered to the Gas Company or on its order, on filing with the Trustee a copy of a resolution of the board of directors of the Gas Company, certified under the corporate seal thereof, by the secretary thereof, requesting such delivery.

The Gas Company covenants that prior to May 1, 1902, it will cause to be transferred to it and by proper deed vested in it the following property, situated in the City of Milwaukee in the County of Milwaukee and State of Wisconsin, subject only to a mortgage made by the Chicago, Milwaukee and St. Paul Railway Company to Levi P. Morton and Russell Sage, Trustee, dated February 14, 1874, to secure an issue of the bonds of said Railway Company aggregating $76,225,500 and maturing January 1, 1904, of which bonds to the amount of $56,000 and no more are outstanding unpaid in the hands of the public and bonds to the amount of $50,000 and no more are held by the Farmers' Loan and Trust Company, as trustee, under said Railway Company's mortgage dated June 15th 1875, all the remainder of said bonds having been paid and cancelled and said Trust Company having released said premises from the lien of said mortgage under which said Trust Company is trustee and that the Gas Company will, prior to said May 1, 1902, by proper supplemental indenture, convey said property to the Trustee upon the trusts of this indenture:

All that parcel the east seventy (70) acres of the southwest quarter (S.W.¼) of section thirty (30), town seven (7), north, of range numbered twenty-two (22) east, in the Sixteenth Ward of the City of Milwaukee,

WG-ANR-00080700

Special Stockholders' Meeting, May 26th 1902.

described as follows, to wit:

Beginning at the intersection of the west line of the said east seventy (70) acres of said southwest quarter of section thirty (30) with the centre line of the Rock Menomonee canal, as the same was established and platted by F. C. Winkler, F. S. Blodgett and D. J. Whitman, Canal Commissioners, under an act of the legislature of the State of Wisconsin providing for a system of canals in the Menomonee Valley passed March first, eighteen sixty nine (March 1st 1869); thence running east along the center line of said Rock Menomonee Canal nine hundred ninety and one tenth (990 1/10) feet, more or less, to a point one hundred and sixty five (165) feet west of the east line of said southwest quarter of section thirty (30); thence north, parallel to the quarter line of said section thirty (30), three hundred ninety eight (398) feet to a point which is three hundred twenty eight (328) feet north from the established north dock line of the Rock Menomonee Canal, thence in a westerly direction in a straight line seven hundred and eighty (780) feet to a point which is (333) three hundred and thirty three feet north of said established north dock line, thence westerly in a straight line two hundred and nine and six tenths (209.6) feet more or less to a point on the west line of said east seventy (70) acres of the southwest quarter of said section thirty (30), distant three hundred and nineteen feet north from the said established north dock line of said canal, thence south in the west line of said east seventy (70) acres three hundred and eighty nine (389) feet to the point of beginning, containing nine and seven hundredths (9.07) acres more or less, of which one and fifty nine hundredths (1.59) acres lie within the boundaries of the Rock Menomonee Canal, and as to said one and fifty-nine hundredths (1.59) acres the same is conveyed subject to the rights of the public therein, being the same premises conveyed by the Chicago, Milwaukee and St. Paul Railway Company to E. G. Cowdery, of Milwaukee, Wisconsin, by deed dated December 2d, 1901, and recorded January 6th, 1902, in the Register's office for Milwaukee County, Wisconsin, in volume four hundred and thirty three (433) of deeds, page three hundred and

WG-ANR-00080701

*Special Stockholders' Meeting May 26th 1902.*

4) The property known as No. 18 Wisconsin Street in the city of Milwaukee, and now occupied by the Gas Company as an office, is the property of the Milwaukee Office Company, hereinafter called the Office Company. The Office Company has issued its bonds to the amount of $80,000, secured as a first charge on said office property by a mortgage dated August 1, 1900. Said bonds bear interest at the rate of five per cent. per annum, and are payable July 2, 1920. The Gas Company has guaranteed, by endorsement, the principal and interest of said bonds of the Office Company. The Gas Company will, on or before May 1, 1902 acquire title in fee to said office building property, subject only to the lien of said $80,000 bonds of the Office Company, and execute and deliver to the Trustee a proper supplemental indenture conveying the same to the Trustee upon the trusts of this indenture and, pending such conveyance and the execution and delivery of said supplemental indenture, will transfer to the Trustee the entire capital stock of said Office Company.

$100,000 of the first mortgage bonds shall be reserved to be issued and delivered in exchange for or to take up at or before maturity said $80,000, in principal amount, of first mortgage bonds of the Office Company.

Whenever the Gas Company shall tender, or cause to be tendered, to the Trustee, and whether before or after the maturity thereof, or the payment thereof, any of said outstanding first mortgage bonds of said Office Company with all the unmatured coupons thereunto belonging, the Trustee shall, in exchange therefor, authenticate and deliver to the Gas Company, or on its order, first mortgage bonds at the rate of $1,250 face amount of first mortgage bonds for each $1,000 face amount of first mortgage bonds of said Office Company so delivered to the Trustee.

(c) $3,900,000 of the first mortgage bonds shall be reserved to be issued, and shall be authenticated and

WG-ANR-00080702

Special Stockholders' Meeting. May 26th 1902

delivered only in partial reimbursement to the Gas Company
for the actual cost of future extensions or improvements of or
additions to the plants and system for the manufacture
and distribution of gas at any time owned by the Gas
Company and subject to the lien of this indenture, and said
bonds shall be so issued, authenticated and delivered
from time to time only to an amount, at the face value there-
of, equal to eighty per cent. of the actual cost of such exten-
sions, additions or improvements. The bonds so reserved
shall be authenticated and delivered from time to time on
presentation to the Trustee of a copy of a resolution of the
board of Directors of the Gas Company, certified under its
corporate seal by its secretary, calling for the authentica-
tion and delivery of such bonds, and accompanied by a
certificate under the corporate seal of the Gas Company
and the hands of the president or a vice president, of the
treasurer or an assistant treasurer and of the engineer or,
if there be no engineer, of the general manager of the Gas
Company, and verified by their respective oaths, setting
forth that the extensions, improvements or additions for
the partial reimbursement of the cost of which said bonds
are required and will be used, have been fully completed
and paid for, the general nature thereof and the cost there-
of, and that such cost is fair and reasonable and no part
thereof is properly chargeable to expenses of operation or
maintenance.

Any such certificates may be received by the Trustee as con-
clusive evidence of any of the facts therein set forth, and shall be
full warrant and authority to the Trustee for any action on
the faith thereof.

At any time, or times, the Gas Company may sell, and the
Trustee upon delivery to the Trustee of a copy of a resolution of the
board of directors of the Gas Company, certified under its
corporate seal, calling for such delivery, shall deliver upon
the order of the Gas Company, first mortgage bonds reserv-
ed under this subdivision, provided that the net proceeds
of the bonds so sold shall simultaneously be deposited

WG-ANR-00080703

Special Stockholders' Meeting, May 26th 1902.

A certificate under the corporate seal of the Gas Company, signed or purporting to be signed by the president or a vice president and by the treasurer or an assistant treasurer of the Gas Company, shall be conclusive evidence, to the Trustee as to the price at which any such bonds have been sold, and as to the amount of net proceeds to be received therefor. Whenever the Trustee shall hold any proceeds of bonds sold, or other cash, under the provisions of this subdivision, the Trustee shall pay over to the Gas Company, or upon its order, from time to time, upon certificates and statements to be furnished to the Trustee, as hereinabove provided, sums equal to the proceeds at the rate at which such sale shall have been made, of the first mortgage bonds which would otherwise have been deliverable in respect of the cash expenditures in such certificates stated to have been made for any of the purposes hereinabove set forth.

Third — If the said sums of money in the first mortgage bonds mentioned, as well the principal as the interest thereof, shall be well and truly paid at the times and in the manner therein expressed, according to the tenor and effect thereof, then and in such case, the estate, right, title and interest of the Trustee, its successors in the trust, and its assigns, shall cease, determine and become void; and upon proof being given to the reasonable satisfaction of the Trustee, that all said bonds have been paid off or satisfied, and upon payment of all costs, charges and expenses incurred by the Trustee in relation thereto, the Trustee shall cancel and satisfy this indenture of record and assign and deliver to the Gas Company or its assigns all securities pledged or assigned to the Trustee hereunder; provided, however, that the Gas Company shall have the right, upon the maturity of the first mortgage bonds, to deposit with the Trustee to the credit of the holder or holders of any bonds which shall not be presented for payment, the amount due thereon for principal and interest, and thereupon

WG-ANR-00080704

*Special Stockholders' Meeting. May 26th 1902.*

the Trustee shall satisfy this indenture, and cancel the same of record, and in case the owner of any such bond shall not, within two years after such deposit, claim the amount so deposited for payment thereof, the Trustee shall, upon demand, pay over the amount so deposited to the Gas Company.

Fourth.— The entire issue of first mortgage bonds may be redeemed at the election of the Gas Company, on any half-yearly interest day, at ten per cent. premium and accrued interest, provided that notice of such election of the Gas Company shall have been given in two daily newspapers of general circulation in the Borough of Manhattan, in the City of New York, N.Y., twice a week for eight successive weeks, commencing not more than three calender months nor less than two calender months prior to the half-yearly interest day on which such redemption is to be made, stating such election on the part of the Gas Company, and that the interest on the first mortgage bonds shall cease on said next ensuing half-yearly interest day, and requiring that the same be presented for redemption. Notice having been so given, interest on the first mortgage bonds shall cease on such half-yearly interest day, and on presentation thereof in accordance with said notice, said bonds, with accrued interest to such half-yearly interest day, shall be paid by the Gas Company at the rate aforesaid. If not so paid on presentation thereof, said bonds shall continue to bear interest at the rate aforesaid until payment.

On the deposit with the Trustee of the amount necessary so to redeem all said bonds, the Trustee shall satisfy this indenture and discharge the same of record.

Fifth. The Trustee shall hold, during the term of this indenture, all first mortgage bonds of said Milwaukee Office Company received by the Trustee, and, subject as in this indenture provided, the Trustee may in its discretion, in respect of the first mortgage bonds of said Office Company held by the Trustee, exercise any and every right conferred upon the holders thereof by said bonds, or by the mortgage, in its discretion

WG-ANR-00080705

Special Stockholders' Meeting May 26th. 1902.

but without prejudice to the general authority hereinbefore conferred, may resort to any proceedings, legal or equitable, in its judgment, necessary or expedient, for the enforcement or realization of the security afforded by said mortgage or trust deed.

Whenever all said first mortgage bonds of said Office Company shall have been delivered to the Trustee, or shall have been paid, or otherwise satisfied, except such lost or destroyed bonds, for which satisfactory indemnity may have been given, the Trustee shall, at the request and expense of the Gas Company, cancel all said first mortgage bonds, and shall cause the mortgage or deed of trust securing the same, to be cancelled and discharged of record, and the mortgaged premises and property embraced therein, to be released from such mortgage or trust deed. The Trustee shall, at the request and expense of the Gas Company, also cancel all said first mortgage bonds of said Office Company, at anytime held by the Trustee, although not constituting the entire outstanding issue of said bonds.

Until cancelled, all said first mortgage bonds of said Office Company delivered to the Trustee, shall be held by the Trustee without impairment of lien, as additional security subject to the lien of this indenture and upon the trusts herein declared.

Unless the Gas Company shall be in default in the payment of the principal or interest of some of the first mortgage bonds or some part of such principal or interest, or unless a receiver of the mortgaged premises shall have been appointed and be in possession thereof, or unless the Trustee shall be in possession thereof under the power of entry herein conferred or by the voluntary action of the Gas Company, the Trustee shall, as they mature, cancel the coupons on the first mortgage bonds of said Office Company held by the Trustee and surrender the same so cancelled, to the Gas Company.

Sixth. — Until the happening of one or more of the

WG-ANR-00080706

Special Stockholders' Meeting, May 26th, 1902.

events of default hereinafter specified, the Gas Company, its successors and assigns, shall be entitled to retain possession of the mortgaged premises, and to operate and use the same and receive and enjoy the earnings, income and profits thereof.

Seventh — If one or more of the following events, hereinafter called the events of default, shall happen, that is to say:

(a) default shall be made in the payment of any installment of interest on any of the first mortgage bonds when and as the same shall become payable, as therein and herein expressed, and such default shall continue for the space of ninety days, or default shall be made in the payment of the principal of any of said bonds when the same shall become due and payable, by their terms, or by declaration or otherwise:

(b) default shall be made by the Gas Company in the observance or performance of any other of the covenants, conditions and agreements in the first mortgage bonds or in this indenture expressed, and the Gas Company shall not remedy such default within sixty days after written notice of such default and requiring the Gas Company to comply with the covenant or condition so in default, shall have been served upon the Gas Company by the Trustee;

(c) default shall be made in the payment of the interest on any of the first mortgage bonds of said Milwaukee Office Company and by reason of such default, proper proceedings shall be instituted for the enforcement of the indenture of mortgage or deed of trust securing said bonds, or the Gas Company shall fail, on the maturity of said bonds and on presentation in accordance with terms thereof, either to pay or to purchase any of said bonds not then held by the Trustee hereunder and deliv-

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 42 of 89   Document 50-5

WG-ANR-00080707

*Special Stockholders' Meeting, May 26th, 1902.*

ered to the Trustee in exchange for first mortgage
bonds;

(d) an order shall be made for the appoint
ment of a receiver of the Gas Company or of the
mortgaged premises, or for the winding up or li-
quidation of the business and affairs of the Gas
Company, or appropriate corporate action shall
be taken by the Gas Company for any of the pur-
poses aforesaid;

(e) the Gas Company shall at any time,
until all the first mortgage bonds are paid or sat-
isfied, create or suffer or permit to arise any lien,
having priority over this indenture, on the mortgaged
premises or any part thereof, or without the previous
consent of the holders of two-thirds in amount of its
capital stock then outstanding, create or authorize
any lien by mortgage or deed of trust on the mort-
gaged premises or any part thereof, although subse-
quent to the lien of this indenture, or incur or create,
or suffer or permit to arise indebtedness, obligations
or liabilities unsecured by mortgage, and whether
fixed or contingent, to an amount in excess of $50,000.
exclusive of (1) ordinary current indebtedness incident
to operation against which the Gas Company shall
at all times hold at least an equivalent amount
of quick assets, which term shall, for the purposes
of this indenture and whenever used herein, be
deemed to include resi due als, but not to include
coal or other operating supplies, and (2) consu-
mers deposits;

the Trustee, personally or by its attorneys or agents,
may, and upon a requisition in writing, signed and
duly acknowledged by the owners of one-third in amount
of the first mortgage bonds then outstanding, or upon
such requisition thereunto, signed, duly acknowledged
and verified by the agents of such owners, thereunto duly
authorized in writing, the ownership of said bonds to be
verified by affidavit, and upon receiving a proper in-

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 43 of 89   Document 50-5

WG-ANR-00080708

*Special Stockholders' Meeting. May 26th, 1902*

demnity against all costs, expenses and charges, shall enter into and upon all and singular the mortgaged premises and each and every part thereof, and shall, until the same be sold or surrendered to the Gas Company, its successors or assigns, as hereinafter provided, possess, use, manage and operate the same by its superintendents, managers and servants or other attorneys or agents, making from time to time all repairs and replacements as may seem to the Trustee judicious, and collect and receive all earnings, rents, issues and profits of the same and every part thereof, and after deducting these from the expenses of operating the mortgaged premises and conducting the business thereof, and of the said repairs and replacements, and all demands which may be made for taxes, assessments, charges or other liens prior to the lien of this indenture upon the mortgaged premises, as well as just compensation for its own services, and for the services of such attorney, counsel and agents as may have been by it employed, shall apply the moneys arising as aforesaid:

First. In case the principal of the first mortgage bonds shall not have become due, to the payment of the interest in default in the order of the maturity of the installments of such interest, with interest thereon at the rate of four per cent. per annum, such payments to be made ratably to the persons entitled thereto without any discrimination or preference;

Second. In case the principal of the first mortgage bonds shall have become due, by declaration or otherwise, first, to the payment of the accrued interest (with interest at the rate of four per cent. per annum on the overdue installments thereof) in the order of the maturity of the installments; and next, any surplus towards the payment of the principal of all the first mortgage bonds, ratably, to the persons entitled thereto, without any discrimination or preference.

After the payment of all interest due, and the fulfillment, as aforesaid, of all said covenants, conditions, provisions and agreements then found

WG-ANR-00080709

*Special Stockholders' Meeting, May 26th, 1902.*

ing for the foreclosure or sale of the mortgaged premises, relinquish and restore the mortgaged plant and distributing system to the Gas Company, its successors or assigns, to be held subject to the terms and conditions of this indenture, which shall, in like manner, apply in respect to all subsequent defaults.

The Gas Company, its successors and assigns, upon the happening of one or more of the events of default, shall and will immediately, upon demand made, deliver, surrender and yield up the mortgaged premises to the Trustee, which is hereby constituted its and their irrevocable attorney, with power to enter upon and take possession of the mortgaged premises immediately upon the happening of such event or events of default as aforesaid; such entry by the Trustee into the mortgaged premises shall be by the full license of the Gas Company, its successors and assigns, and the Trustee is hereby authorized to use all necessary and reasonable force and means to obtain and hold such possession without being compelled to resort to any writ of entry or action of forcible detainer or other legal proceedings.

Eighth. If any of the events of default shall happen, the Trustee may, and upon the written request of the holders of one third in amount of the first mortgage bonds then outstanding shall, by notice to the Gas Company, declare the principal of all the first mortgage bonds then outstanding to be due and payable immediately, and upon any declaration, the same shall become and be immediately due and payable, anything in this indenture or in said first mortgage bonds contained to the contrary notwithstanding. The holders of three fourths in amount of the first mortgage bonds then outstanding, may, by written notice to the Gas Company and to the Trustee, waive such default and its consequences, and obtain from the Trustee a rescission of such declaration of the maturity of the principal; but no such waiver shall extend to or affect any subsequent default or impair any right consequent

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 45 of 89   Document 50-5

WG-ANR-00080710

Special Stockholders' Meeting. May 26th, 1902.

thereon.

Ninth. If any one of the events of default shall happen, then and in each and every such case, the Trustee shall be forthwith entitled, with or without entry, personally or by attorney, in its discretion, to sell to the highest bidder all and singular the mortgaged premises, and all right, title, interest, estate, claims and demands therein, and right of redemption thereof. Such sale shall be at public auction in the city of Milwaukee, and at such time and upon such terms as the Trustee may fix, and the Gas Company shall and will join in any deed of conveyance or other writing evidencing such sale.

Notice of any such sale shall state the time when and place where the same is to be made and shall contain a brief general description of the property to be sold, and shall be published once in each week for four successive weeks prior to such sale, in a newspaper published in the city of Milwaukee, Wisconsin, and in a newspaper published in the city of New York, New York; and such notice shall also comply with all requirements of statute and rules or orders of court. The Trustee may adjourn any such sale or cause the same to be adjourned from time to time by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, without further notice or publication, such sale may be made at the time and place to which the same shall be so adjourned.

Upon the completion of any sale or sales, and compliance with all the conditions thereof, the Trustee shall convey the mortgaged premises sold, to the purchaser, free from all the trusts hereby declared, and upon any sale of the mortgaged premises, whether by the Trustee or in proceedings for the enforcement of this indenture, the principal of all the first mortgage bonds shall forthwith become due and payable.

Any such sale or sales made under or by virtue of this indenture, either under the power of sale hereby granted or under or by virtue of judicial proceedings,

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 46 of 89   Document 50-5

WG-ANR-00080711

*Special Stockholders' Meeting. May 26th, 1902.*

shall be an absolute and final bar to the Gas Company, its successors and assigns, of and to all right and equity of redemption, either at law or in equity, in and to the property sold, and every portion thereof, and to all persons claiming or to claim the same under the Gas Company.

Tenth. The purchase money, proceeds or avails of any sale of the mortgaged premises, together with any other sums which may then be held by the Trustee or be payable to it under any of the provisions of this indenture or otherwise as part of the trust estate, shall be applied as follows:

First. To the payment of any costs, expenses and charges of said sale reasonably incurred by the Trustee, of a reasonable compensation to the Trustee for its services and the services of its attorneys, agents, servants and counsel, and of any reasonable disbursements by the Trustee, and then to the payment of all taxes, assessments and liens on the mortgaged premises prior to the lien of this indenture, except any charge subject to which said sale may have been made.

Second. Any surplus then remaining, to the payment of the whole amount owing or unpaid on the first mortgage bonds for principal and interest, with interest on arrears of interest at the rate of four per cent per annum; and in case such proceeds shall be insufficient to pay in full the whole amount so due, then to the payment of such principal and interest, and interest on arrears of interest, without preference of interest over principal or of principal over interest, or of any one installment of interest over any other, but ratably according to the aggregate of such principal and interest and interest on arrears of interest.

Third. The remainder shall be paid to the Gas Company or to whomsoever shall be lawfully

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 47 of 89   Document 50-5

WG-ANR-00080712

Special Stockholders' Meeting, May 26th, 1902.

entitled to receive the same.

In case of sale of the mortgaged premises or any part thereof, the purchaser, for the purpose of making settlement or payment for the property purchased, shall be entitled to apply towards the payment of the purchase price, any first mortgage bonds, and any matured and unpaid coupons, to the extent of the value of such bonds and coupons upon a distribution among the bondholders of the net proceeds of such sale after making the prescribed deductions. But such bonds and coupons so applied in payment by the purchaser, shall be deemed to be paid only to the extent so applied and credited. At any such sale, the Trustee or any bondholders or their agents may bid for and purchase the property so sold. The receipt of the Trustee conducting such sale shall be a sufficient discharge for the purchase money to any purchaser of the mortgaged premises, or any part thereof, sold as aforesaid, and no such purchaser, after receiving such receipt, shall be bound to see to the application of the purchase money to or upon any trust or purpose of this indenture.

Eleventh. If any of the events of default shall happen, then and in each and every such case, the Trustee may forthwith proceed to protect and enforce its rights and the rights of bondholders under this indenture, by a suit or suits at law or in equity, either for the specific performance of any covenant or agreement in this indenture contained, or in aid of the execution of any power herein granted, or for the foreclosure of this indenture for interest or for principal or for both, or for the enforcement of any other appropriate legal or equitable remedy, as the Trustee shall deem most effectual.

Upon filing a complaint in equity or upon other commencement of judicial proceedings by the Trustee to enforce any right under this indenture, the Trustee shall be entitled to exercise any and all rights and powers by this indenture conferred; and, as matter of right, shall be entitled to the appointment of a receiver of the mortgaged premises and of the earnings and other income thereof, with such powers as the court making such appointment shall confer, and shall be entitled to the

WG-ANR-00080713

*Special Stockholders' Meeting May 26th, 1902*

benefit of the holders of the first mortgage bonds, in accordance with the trusts herein declared.

Except as herein expressly provided to the contrary, no remedy herein conferred upon or reserved to the Trustee is intended to be exclusive of any other remedy, but every remedy herein provided shall be cumulative; and every power and remedy given by this indenture to the Trustee or holders of the first mortgage bonds, may be exercised from time to time and as often as may be deemed expedient. No delay or omission of the Trustee or of any holder of first mortgage bonds to exercise any right or power arising from any default, and no discontinuance or abandonment of any proceeding brought upon any such default, shall impair any such right or power or shall be construed to be a waiver of any such default or an acquiescence therein.

Twelfth. The Gas Company at any time before the full payment of the first mortgage bonds, although there be then no default entitling the Trustee to enter into possession, may surrender and deliver to the Trustee, with its consent, full possession of the whole or any part of the mortgaged premises. Upon any such voluntary surrender of the mortgaged premises, or of any part thereof, the Trustee, from the time of its entry, shall have the same powers and duties in regard to the mortgaged premises, as is provided in case of entry by the Trustee under the power of entry given under this indenture or prescribed in Article Seventh hereof. The action of the Trustee in accepting such a surrender shall be without prejudice to any other rights and remedies it may have under this indenture.

Thirteenth. Upon the written request of the Gas Company, approved by resolution of its board of directors, the Trustee may, from time to time in its discretion, release from the lien and operation of this indenture any part of the mortgaged premises then subject thereto, provided that no part of the mortgaged mains or pipes within the corporate limits of the City of Milwaukee as now or hereafter constituted or within the suburbs adjacent to

Special Stockholders' Meeting, May 26th, 1902.

said City, shall be so released unless in the opinion of the Trustee, and of this the Trustee shall be the sole and final judge, it shall be beneficial and to the best interests of the holders of the first mortgage bonds, and that none of the mortgaged franchises shall be so released, and provided, further, that no part of the mortgaged premises shall be so released unless at the time of such release, it shall no longer be necessary or expedient to retain the same for the operation, maintenance or use of the Gas Company's gas works or distributing system or for use in conducting the business thereof and such property shall have ceased to be used for any of the purposes aforesaid. No such release shall be made unless the Gas Company shall have sold the property sought to be released, or shall have contracted to sell or exchange the same for other property.

The proceeds of any and all such sales and all money received as compensation for any part of the mortgaged premises taken by exercise of the power of eminent domain, shall be paid to the Trustee, and applied by the Gas Company, with the approval and in the discretion of the Trustee receiving the same, to the purchase of other property, real or personal, in renewal or replacement of or in additions to or extensions or improvements of the plants or distributing system of the Gas Company and which shall be made subject to this indenture as a first lien, or pending such application thereof, be invested by the Trustee in the first mortgage bonds of the Gas Company, or be invested and reinvested by the Trustee, as may be directed by the board of directors of the Gas Company, in such securities as are or may then be authorized by law in the state of New York for the investment of trust funds. So long as the Gas Company shall not be in default hereunder, the interest from all securities so purchased shall be paid to it. In case the mortgaged premises shall be in the possession of a receiver lawfully appointed, the powers in and by this article conferred upon the Gas Company may be exercised by such receiver with the approval of the Trustee, and if the Trustee shall be in possession of the mortgaged premises under any provision of this indenture, then all the powers conferred by this a........ by the Trustee

WG-ANR-00080715

Special Stockholders' Meeting, May 26th, 1902.

in its discretion.

A certificate signed by the president or a vice-president and by the engineer or, if there be no engineer, by the general manager of the Gas Company, verified by their respective oaths, and approved by a vote of its board of directors, may be received by the Trustee, save, as hereinabove provided, in case of the release of part of the mortgaged mains or pipes, as conclusive evidence of any of the facts mentioned in this article, and shall be full warrant and protection to the Trustee for its action on the faith thereof.

The Trustee shall not be responsible, in any event, for its action in consenting to the release of any part of the mortgaged mains or pipes within the corporate limits of the city of Milwaukee as now or hereafter constituted, or within the suburbs adjacent to said city, if its action be based on a written certificate from two disinterested persons (selected by it with due care for the purpose) that the proposed release will be beneficial and to the best interests of the holders of the first mortgage bonds.

Fourteenth. Any amounts which may be received by the Trustee, and which may, under any of the provisions of this indenture, be applicable to the redemption of the first mortgage bonds, shall be applied by the Trustee toward such redemption by the purchase of said bonds in the open market.

Fifteenth. The Gas Company, for itself, its successors and assigns, covenants, promises and agrees to and with the Trustee as hereinafter in this article set forth, namely,

The Gas Company will well and truly pay into the hands of owners and holders thereof, the interest and principal of the first mortgage bonds, when and as the same shall become due and payable, according to the tenor and effect of said bonds and coupons, and all coupons when paid, shall forthwith be cancelled.

In order to prevent any accumulation of

WG-ANR-00080716

Special Stockholders' Meeting, May 26th, 1902.

coupons after maturity, the Gas Company will not, directly or indirectly, extend, or assent to the extension of, the time for payment of any coupon upon any first mortgage bonds; and the Gas Company will not, directly or indirectly, be a party to or approve any such arrangement by purchasing or funding said coupons over any other manner.

The Gas Company, as they mature and on presentation in accordance with the terms thereof, will either pay and discharge and, on payment thereof by the Gas Company, deliver to the Trustee, all the first mortgage bonds of said Milwaukee Office Company not then held by the Trustee subject to this indenture, or will cause such bonds to be taken up and delivered to the Trustee in exchange for first mortgage bonds of the Gas Company.

The Gas Company shall, until all the first mortgage bonds are fully paid or satisfied, pay or cause to be paid, when the same shall become due and payable, all taxes and assessments, which may be lawfully imposed on the mortgaged premises or upon any part thereof or upon the income or profits thereof. The Gas Company will also pay and discharge all taxes, assessments and governmental charges lawfully imposed upon the interest of the Trustee or of the holder of any first mortgage bond or bonds in the mortgaged premises. Provided, however, that the Gas Company shall not be considered in default in respect of the payment of any such tax or assessment so long as the Gas Company shall in good faith and by appropriate legal proceedings contest the validity thereof. Should the Gas Company fail to pay any such tax or assessment, the Trustee may, without prejudice to any of its rights under this indenture by reason of such default, pay and discharge the same and have a lien upon the mortgaged premises for its advances for that purpose.

The Gas Company shall properly maintain the mortgaged premises from time to time subject to the lien of this indenture, repairing, renewing and replacing the same as may be necessary, and shall properly preserve the franchises, rights and all buildings

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 52 of 89   Document 50-5

WG-ANR-00080717

Special Stockholders' Meeting, May 26th, 1902.

at any time subject to this indenture, properly insured against loss or damage by fire in the manner and to the extent customary among gas companies. Should the Gas Company fail to effect such insurance, the Trustee may insure such property in like manner. The proceeds of any policy of insurance shall be paid to the Trustee and be applied, by the Gas Company with the approval of the Trustee to the replacement or reconstruction of the destroyed or damaged property or otherwise for the benefit of the mortgaged premises, or toward the redemption of the first mortgage bonds.

The Gas Company, its successors and assigns, shall and will, from time to time, and at all times hereafter, upon the reasonable request of the Trustee and its successors in the trust appointed according to the provisions hereof, make, do, execute, acknowledge and deliver all such further acts, deeds, conveyances and assurances in the law for the better and more effectually conveying, assuring and confirming unto the Trustee, and its successors in the trust by this indenture created, for the further security and satisfaction of the first mortgage bonds, upon the trusts, and for the uses and purposes herein expressed or intended, all and singular the premises, property, authority and franchises hereby mortgaged, as by the Trustee or its successors in the trust, under the advice of counsel, shall be reasonably advised or required.

The Gas Company at the time of the execution and delivery of this indenture is lawfully seized of an absolute and indefeasible estate of inheritance in fee simple of, in and to the mortgaged premises and each and every part thereof; the mortgaged premises are free, except as hereinabove set forth, from liens or incumbrances of what nature or kind soever; the Gas Company has not made, done, committed, executed, or suffered any act or acts, thing or things whatsoever, whereby or by means whereof, the mortgaged premises or any part or parcel thereof, now are, or at any time hereafter shall or may be impeached, charged or incumbered in any manner or way whatsoever; and the Gas Company

WG-ANR-00080718

Special Stockholders Meeting. May. 26th 1902.

shall and will forever warrant and defend the mortgaged premises and every part and parcel thereof with the appurtenances thereof, unto the Trustee, its successors and assigns, against all and every person and persons whomsoever lawfully claiming and or to claim the same.

The Gas Company, its successors and assigns, will indemnify and save harmless the Trustee and its successors in the trust against all loss and damage to which it and they may be subjected by the execution of this trust or by the operation or management of the mortgaged premises, not caused by the personal misconduct of the Trustee, or its successors in the trust.

Until all the first mortgage bonds shall have been paid or otherwise satisfied, the Gas Company shall not make or create, or suffer or permit the making or creation of, or to arise, any lien upon its property or any part thereof having priority over the lien of this indenture, or without the previous consent of the holders of two-thirds in amount of the capital stock of the Gas Company at the time outstanding, create or authorize any lien by mortgage or deed of trust on the mortgaged premises or any part thereof, although subsequent to the lien of this indenture, or incur or create or suffer or permit to arise or be incurred any indebtedness or liabilities on the part of the Gas Company, insecured by mortgage and whether fixed or contingent, to an amount in excess of $250,000, exclusive of (a) ordinary current indebtedness incident to operation, against which the Gas Company shall at all times hold at least an equivalent amount of quick assets and (b) consumers' deposits.

Until all the first mortgage bonds, shall be fully paid and satisfied, the Gas Company shall and will fully and faithfully perform its corporate duties to whomsoever owed, and use and exercise its corporate authority and franchises, and shall not permit or suffer any disuser or non-user of its corporate authority or franchises whereby said corporate authority or franchises may be or become in any wise forfeitable, or forfeited, or both.

Sixteenth. The Trustee, or any trustee hereafter appointed

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 54 of 89   Document 50-5

WG-ANR-00080719

*Special Stockholders Meeting, May 26th, 1902.*

indenture, by giving notice thereof to the Gas Company and also to the holders of the first mortgage bonds by publication at least once a week, for four successive weeks in a newspaper of general circulation published in the borough of Manhattan, in the City of New York, and by due execution of the conveyance hereinafter required. In case the Trustee, or any trustee hereafter appointed, shall at any time resign or otherwise become incapable of acting, or should for any cause, a vacancy exist in the trusteeship under this indenture, a successor or successors may be appointed by the holders of a majority in amount of the first mortgage bonds then outstanding, by an instrument or concurrent instruments or counterparts signed by such bondholders or their attorneys in fact and duly acknowledged. Until a new trustee shall be appointed by the bondholders as hereinabove authorized, the Gas Company, however, may, by an instrument in writing, under its corporate seal, executed by order of its board of directors, appoint a trustee to fill such vacancy. The Gas Company shall thereupon publish notice of such appointment by it once a week for four successive weeks in a newspaper of general circulation published in the borough of Manhattan, in the city of New York, but any new trustee so appointed by the Gas Company shall immediately and without further act be superseded by a trustee, appointed in the manner above provided by the holders of a majority in amount of the bonds hereby secured, if such appointment be made by the bondholders within six months after the first publication of such notice of appointment by the Gas Company, otherwise the trustee so appointed by the Gas Company shall continue to act hereunder. Every new trustee appointed in place of the Trustee, or any successor in the trust, and whether appointed by the bondholders or by the Gas Company, shall always be a trust company in good standing authorized to accept such trust, and doing business in the city of New York, and having a capital of at least $1,000,000, if there be such a trust company willing and able to accept the

WG-ANR-00080720

Special Stockholders' Meeting. May 26th, 1902.

trust upon reasonable and customary terms. Any new trustee appointed hereunder shall execute, acknowledge and deliver to the Gas Company an instrument accepting such appointment hereunder, and thereupon such new trustee shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers and trusts of its predecessor in the trust, with like effect as if originally named as trustee herein; but the trustee retiring shall, nevertheless, on the written demand of the new trustee, execute and deliver an instrument conveying and transferring to such new trustee, upon the trusts herein expressed, all the estates, properties, rights, powers and trusts of the trustee so retiring, and shall duly assign, transfer and deliver to the new trustee so appointed in its place, all properties and moneys held by it. Should any deed, conveyance or instrument in writing from the Gas Company be required by any new trustee for more fully and certainly vesting in it and confirming to it the said estates, properties, rights, powers, trusts and duties, then any and all such deeds, conveyances and instruments in writing shall, on request of such new trustee, be made, executed, acknowledged and delivered by the Gas Company. All the conveyances hereinbefore provided shall be at the cost of the Gas Company.

Seventeenth. The Trustee shall not be required to take or give notice of any default hereunder unless notified in writing of such default by the holders of at least five per cent in amount of the first mortgage bonds then outstanding; nor shall it be required to effect any insurance or take any action involving expense or liability unless so requested by the holders of not less than five per cent in amount of the first mortgage bonds then outstanding, such request to be in writing and signed by said holders, and unless tendered reasonable security and indemnity against any expense and liability which may be incurred by it by reason of such requested action. This requirement for notice or request, shall not affect any discretion herein given to the Trustee to determine whether or not it sh

Upon the

WG-ANR-00080721

Special Stockholders' Meeting, May 26th, 1902

written request of the holders of five per cent. in amount
of the first mortgage bonds then outstanding, in case
of any default as aforesaid, it shall be the duty of the
Trustee, upon being indemnified as herein above pro-
vided, to take all needful steps for the protection and
enforcement of its rights and the rights of the holders
of the first mortgage bonds, as the Trustee shall deem most
expedient in the interest of the holders of the first mortgage
bonds. The holders of a majority in amount of the first
mortgage bonds then outstanding, shall have the right
from time to time, by an instrument in writing sig-
ned by them and delivered to the Trustee, to direct and
control the method and place of conducting any and
all proceedings for any sale of the mortgaged premises.

The Trustee shall not be bound to see to the recording,
filing, or renewal of this indenture or of any instrument
of further assurance, or to the proper stamping thereof
or of any such instrument of further assurance, or to see
to the insurance of the mortgaged premises. The Trustee
shall be entitled to reasonable compensation for all ser-
vices rendered by it in the execution of this trust hereby
created, which compensation, as well as all its reasonable
expenses necessarily incurred and actually disbursed
hereunder, the Gas Company agrees to pay, and the
Trustee shall have a prior lien therefor upon the mortgaged
premises. The Trustee shall be under no obligation to
see to the application of any of the first mortgage bonds
or their proceeds and shall not be answerable for the de-
fault or misconduct of any agent or attorney appointed
by it in pursuance hereof, if such agent or attorney
shall have been selected with reasonable care, or for any
thing whatever in connection with this trust, except
willful misconduct or gross negligence. The Trustee
shall not be personally liable for any debts contracted
by it, nor for damages to persons or property injured,
nor for salaries or non fulfillment of contracts during
any period during which the Trustee shall manage
the mortgaged premises upon entry or surrender as a-

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 57 of 89   Document 50-5

WG-ANR-00080722

Special Stockholders' Meeting, May 26th 1902.

foresaid.

Eighteenth. No holder of any first mortgage bond or coupon shall have any right to institute any suit, action or proceeding at law or in equity upon or in respect of this indenture, or for the execution of any trust or power hereof, or for any other remedy under or upon this indenture, unless such holder shall previously have given to the Trustee written notice of an existing default as hereinbefore provided, nor unless also the holders of five per cent. in amount of the first mortgage bonds then outstanding shall have made written request to the Trustee and shall have afforded to it reasonable opportunity to proceed itself to exercise the powers hereinbefore granted, nor unless also such holder or holders shall have offered to the Trustee reasonable security and indemnity against the costs, expenses and liabilities to be incurred therein. Such notification, request and offer of indemnity are hereby declared, in every such case, at the option of the Trustee, to be conditions precedent to the execution of any of the powers and trusts and rights and remedies given under this indenture. No one or more holders of first mortgage bonds or coupons thereon shall have any right in any manner whatever to affect, disturb or prejudice the lien of this indenture by his or their action, or to enforce any right hereunder, except in the manner herein provided, and all proceedings hereunder, at law or in equity, shall be instituted, had and maintained in the manner herein provided and for the equal and pro rata benefit of all holders of such outstanding bonds and coupons.

Any request or other instrument required by any provision of this indenture to be signed by bond holders may be in counterparts of similar tenor, and may be signed by such bondholders in person, or by agent or attorney appointed in writing.

Nineteenth. No recourse under or upon any obligation, covenant or agreement of this indenture, or under or upon any first mortgage bond or coupon, or for any claim based on

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 58 of 89   Document 50-5

WG-ANR-00080723

Special Stockholders' Meeting. May 26th, 1902

wise, in any manner, in respect thereof, shall, by reason
of the execution and delivery of this indenture or of the
first mortgage bonds and coupons, be had against any
incorporator, stockholder, officer or director, present or fu-
ture, of the Gas Company, or of any successor corpora-
tion, by consolidation, merger, or otherwise, either directly
or through the Gas Company, or otherwise, whether by the
enforcement of any assessment or penalty, or by any
legal or equitable proceeding by virtue of any constitu-
tional provision or of any statute, or otherwise in any
manner whatever, it being expressly agreed that this
indenture and the obligations hereby secured are solely
corporate obligations and that this is a condition of the
execution and delivery of this indenture and of the issue
of the first mortgage bonds and coupons.

Twentieth. All the covenants, stipulations, promi-
ses and agreements in this indenture contained by or
on behalf of the Gas Company shall be for the sole and
exclusive benefit of the parties hereto and of the holders of the
first mortgage bonds and coupons, and shall bind and
apply to the successors and assigns of the Gas Company,
whether so expressed or not.

Nothing contained in this indenture, or in any first
mortgage bond, shall prevent any consolidation or mer-
ger of the Gas Company with any other corporation, or any
conveyance and transfer, subject to the continuing lien
of this indenture and to all the provisions thereof, of all the
mortgaged premises as an entirety to a corporation entitled
to acquire the same. Provided, however, that such consolidation,
merger or sale shall be upon such terms as not to impair the
lien and security of this indenture, or any of the rights
and powers of the Trustee or of the bondholders hereunder,
that the Trustee shall be satisfied of the lawful right
and power of the Gas Company to make such consolidation,
merger or sale and shall be satisfied that, upon such con-
solidation, merger or sale, the mortgaged property,
authority and franchises will become vested without

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 59 of 89   Document 50-5

WG-ANR-00080724

Special Stockholders' Meeting, May 26th, 1902.

impairment in such successor or purchasing corporation, and provided further that, by and as a condition of such consolidation or merger or sale, such consolidated or merging corporation, or corporation acquiring the mortgaged premises, shall duly assume to the satisfaction of the Trustee, the payment of the principal and interest of the first mortgage bonds, and the performance of all the covenants and obligations in this indenture contained on the part of the Gas Company to be kept and performed.

Seventy first. The Gas Company, for itself and its successors, waives and hereby relinquishes and covenants and agrees that it will not, at anytime, insist upon, or plead, or in any manner whatever claim, or take the benefit or advantage of, any stay or extension law now or at any time hereafter in force, nor of any law now or hereafter in force providing for the valuation or appraisement of the mortgaged premises prior to any sale or sales thereof, and the Gas Company hereby expressly waives all right, under any statute now or hereafter enacted, to redeem the mortgaged premises sold, or any part thereof, and waives all benefit or advantage under any such law, and covenants that it will not hinder, delay or impede the execution of any power herein granted or delegated to the Trustee.

In Witness Whereof, the Gas Company has caused its corporate seal to be hereunto affixed and this indenture to be signed by its president and countersigned by its secretary, and the party of the second part has caused its corporate seal to be hereunto affixed and this indenture to be signed by its second vice-president and countersigned by its secretary, the day and year first above written.

Milwaukee Gas Light Company

by

Emerson McMillin

President

Seal.

WG-ANR-00080725

Special Stockholders' Meeting, May 26th, 1902.

Countersigned by
    S. J. Glass
        Secretary

Executed by Milwaukee Gas Light }
Company in presence of
            Felix M. Gensheim
            E. E. Henderson
                    Witnesses


                Central Trust Company of New York
                    by
                    E. Francis Hyde
Seal.           Second Vice President.


Countersigned by
    Geo. Fortune
        Secretary.
Executed by Central Trust Company }
    of New York in the presence of
                Jay R. Young
                Felix M. Gensheim
                    Witnesses

WG-ANR-00080726

Special Stockholders' Meeting, May 26th, 1902

State of New York {
County of New York } ss:

On this twenty-eight day of February, in the year one thousand nine hundred and two, before me personally came Emerson McMillin, president of the Milwaukee Gas Light Company and Sheldon J. Glass, secretary of said Milwaukee Gas Light Company, to me personally known, and known by me to be such president and secretary and the persons who on behalf of said Company executed the foregoing instrument, and the said Emerson McMillin and Sheldon J. Glass, being by me severally duly sworn, did each for himself depose and say, that said Emerson McMillin resided in the Borough of Manhattan, in the City of New York, in the State of New York, that said Sheldon J. Glass resided in the City of Milwaukee, Wisconsin; that said Emerson McMillin is the president and said Sheldon J. Glass is the secretary of said Milwaukee Gas Light Company, one of the corporations described in and which by themselves said president and secretary executed the foregoing instrument; that they each knew the seal of said corporation; that the seal affixed to said instrument was such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that each signed his name thereto by like order, and that said instrument was signed and sealed on behalf of said corporation by like order and authority of the board of directors of said corporation; and said Emerson McMillin and Sheldon J. Glass, severally acknowledged the said instrument to be his free act and deed and the free act and deed of said corporation.

Felix M. Gernsheim
Notary Public
New York County

Seal.

WG-ANR-00080727

Special Stockholders' Meeting. May 26th. 1902.

State of New York,
County of New York, } ss.:

On this twenty eighth day of February, in the year one thousand nine hundred and two, before me personally came E. Francis Hyde, second vice-president of Central Trust of New York, and George Pertine, secretary of said Central Trust Company of New York, to me personally known, and known by me to be such second vice-president and secretary and the persons who on behalf of said Company executed the foregoing instrument, and the said E. Francis Hyde and George Pertine, being by me severally duly sworn, did each for himself depose and say, that the said E. Francis Hyde and said George Pertine, each resides in the city of New York, in the State of New York; that the said E. Francis Hyde is the second vice president and the said George Pertine is the secretary of said Central Trust Company of New York, one of the corporations described in and which by them its said second vice president and secretary executed the foregoing instrument, that they each knew the seal of said corporation, that the seal affixed to said instrument was such corporate seal; that it was so affixed by authority of the board of trustees of said corporation; and that each signed his name thereto by like authority, and that said instrument was signed and sealed on behalf of said corporation by like order and authority; and said E. Francis Hyde and George Pertine, severally acknowledged the said instrument to be his free act and deed and the free act and deed of said corporation.

Felix M. Gunskein
[Seal.]
Notary Public,
New York County.

County Clerk's Certificate]

WG-ANR-00080728

Special Stockholders' Meeting.  May 26th, 1902.

The following resolution was offered and duly seconded:

Resolved that the execution and delivery of said mortgage or deed of trust to Central Trust Company of New York be and the same hereby is in all things approved, ratified and confirmed, and that all action taken by the Board of Directors and by the officers of this Company in and about the execution and delivery thereof and in carrying the same into effect be and the same hereby is in all things approved, ratified and confirmed.

The vote on said resolution was taken by shares and the polls were kept open for the reception of votes until all votes of holders of stock present in person or by proxy had been cast. The inspectors having canvassed the votes reported that said resolution had been adopted by the unanimous vote of the entire capital stock of the Company.

Said report of inspectors was duly accepted.

The Secretary stated that first mortgage bonds of the Company to the face amount of $6,000,000 had been duly executed by the officers of the Company delivered to the Trustee under said first mortgage and authenticated by the Trustee, and had been delivered to Messrs. J. and W. Seligman and Company and Messrs. Vermilye and Company, in pursuance of the agreement between this Company and said Bankers, which is spread in full on the minutes of the adjourned meeting of the Board of Directors held on February 21, 1902, which minutes have been submitted to this meeting.

The following resolutions were offered and duly seconded:

Resolved that the execution and delivery by this Company of said agreement, dated February 28, 1902, between this Company of the first part and Messrs. J. W. Seligman and Company and Messrs. Vermilye & Company, of the second part, be and the same hereby is in all things approved, ratified and confirmed:

Resolved that the execution and delivery of said mort-

Case 2:20-cv-01334-SCD  Filed 01/27/23  Page 64 of 89  Document 50-5

WG-ANR-00080729

*Special Stockholders' Meeting, May 26th, 1902.*

gage to the Central Trust Company of New York bearing date February 28, 1902 to the face amount of six million dollars, and sale and delivery thereof be and the same hereby is in all things approved, ratified, and confirmed.

Resolved that the Board of Directors of this company be and said Board hereby is authorized to take any and all action necessary, or which in its judgment may be deemed expedient in order to carry said agreement fully into effect, and that all action heretofore taken or authorized to be taken by the Board of Directors, or which may hereafter be taken or authorized to be taken by the Board of Directors in and about the execution and delivery of said agreement or in carrying the same into effect be and the same hereby is in all things, approved, ratified, and confirmed.

Resolved that each and every action of the Board of Directors of this company, as shown and set forth in the minutes of the adjourned meeting of said Board held in the City of Milwaukee, Wisconsin, on the 21st day of February 1902, be and the same hereby are in all respects approved, ratified and confirmed.

The vote on said resolutions was taken by shares and the polls were kept open for the reception of votes until all votes of holders of stock present in person or by proxy had been cast. The inspectors having canvassed the votes reported that said resolutions had been adopted by the unanimous vote of the entire capital stock of the Company.

Said report of the inspectors was duly accepted.

The Secretary reported that in pursuance of the terms and provisions of the first mortgage of this company to the Central Trust Company of New York, bearing date February 28th 1902, a copy whereof had already been laid before this meeting, this Company has duly executed and delivered to the Central Trust Company of New York a supplemental indenture, in the following form:

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 65 of 89   Document 50-5

WG-ANR-00080730

Special Stockholders' Meeting, May 26th, 1902.

A Supplemental Indenture made this fourteenth day of April, one thousand nine hundred and two, by and between Milwaukee Gas Light Company, a corporation organized created and existing under and by virtue of the laws of the State of Wisconsin (hereinafter called the Gas Company) party of the first part and Central Trust Company of New York, a corporation created and existing under and by virtue of the laws of the State of New York (hereinafter called the Trustee) party of the second part:

The Gas Company heretofore executed and delivered to the Trustee a certain indenture of mortgage and deed of trust dated the twenty-eighth day of February, 1902, to secure the payment of the principal and interest of first mortgage bonds of the Gas Company to the aggregate principal of $10,000,000, mentioned and described therein. Said indenture of mortgage is of record in the office of the Register of Deeds for Milwaukee County, Wisconsin, in Book 483 of Mortgages at page 49. Said indenture of mortgage is hereinafter called the first mortgage, and said bonds are hereinafter called the first mortgage bonds.

The first mortgage provides in subdivision "a" of the second article thereof as follows:

"The Gas Company covenants that prior to May 1, 1902, it will cause to be transferred to it and by proper deed vested in it the following property, situated in the City of Milwaukee in the County of Milwaukee and State of Wisconsin, subject only to a mortgage made by the Chicago, Milwaukee and St. Paul Railway Company to Levi P. Morton and Russell Sage, Trustees, dated February 14, 1894, to secure an issue of the bonds of said Railway Company aggregating $6,275,500 and maturing January 1, 1904, of which bonds to the amount of $56,000 and no more are outstan-

WG-ANR-00080731

Special Stockholders' Meeting, May 26th, 1902

and bonds to the amount of $50,000 and no more are held by the Farmers' Loan and Trust Company, as trustee, under said Railway Company's mortgage dated June 15th 1895, all the remainder of said bonds having been paid and cancelled and said Trust Company having released said premises from the lien of said mortgage under which said Trust Company is trustee and that the Gas Company will, prior to said May 1, 1902, by proper supplemental indenture, convey said property to the Trustee upon the trusts of this indenture:

"All that part of the east seventy (70) acres of the southwest quarter (S.W. ¼) of section thirty (30), town seven (7), north, of range numbered twenty-two (22) east, in the Sixteenth Ward of the City of Milwaukee, described as follows, to-wit:

"Beginning at the intersection of the west line of the said east seventy (70) acres of said southwest quarter of section thirty (30) with the centre line of the North Menomonee canal, as the same was established and platted by F. C. Winkler, F. S. Blodgett and D. J. Whittemore, Canal Commissioners, under an act of the legislature of the State of Wisconsin providing for a system of canals in the Menomonee Valley, passed March first, eighteen sixty nine (March 1st 1869), thence running east along the centre line of said North Menomonee Canal nine hundred ninety and one tenth (990 1/10) feet, more or less, to a point one hundred and sixty-five (165) feet west of the east line of said southwest quarter of section thirty (30); thence north, parallel to the quarter line of said section thirty (30), three hundred ninety-eight (398) feet to a point which is three hundred twenty-eight (328) feet north from the established north dock

WG-ANR-00080732

Special Stockholders' Meeting. May 26th, 1902.

line of the North Menomonee Canal; thence in a westerly direction in a straight line seven hundred and eighty (780) feet to a point which is three hundred and thirty-three (333) feet north of said established north dock line, thence westerly in a straight line two hundred and nine and six-tenths (209.6) feet more or less to a point on the west line of said east seventy (70) acres of the south-west quarter of said section thirty (30), distant three hundred and nineteen feet north from the said established north dock line of said canal; thence south in the west line of said east seventy (70) acres three hundred and eighty nine (389) feet to the point of beginning containing nine and seven-hundredths (9.07) acres more or less, of which one and fifty nine hundredths (1.59) acres lies within the boundaries of the North Menomonee Canal, and as to said one and fifty nine hundredths (1.59) acres the same is conveyed subject to the rights of the public therein, being the same premises conveyed by the Chicago, Milwaukee and St. Paul Railway Company to E. G. Cowdery, of Milwaukee, Wisconsin by deed dated December 12, 1901, and recorded January 6th 1902 in the Register of Deeds office for Milwaukee County, Wisconsin, in volume four hundred and thirty-three (433) of Deeds, page three hundred and fifty three (353) et seq.

The first mortgage also provides in subdivision (b) of said second article thereof as follows:

(b) The property known as No. 182 Wisconsin Street in the City of Milwaukee, and now occupied by the Gas Company as an office, is the property of the Milwaukee Office Company, hereinafter called the Office Company. The Office Company has issued its bonds to the amount of $80,000, secured by a first (mortgage) charge on said property by a mortgage dated August 1, 1900. Said bonds bear interest at the rate

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 68 of 89   Document 50-5

WG-ANR-00080733

Special Stockholders' Meeting, May 26th, 1902.

July 2, 1920. The Gas Company has guaranteed, by endorsement, the principal and interest of said bonds of the Office Company. The Gas company will, on or before May 1, 1902, acquire title in fee to said office building property, subject only to the lien of said $80,000 bonds of the Office Company, and execute and deliver to the Trustee a proper supplemental indenture conveying the same to the Trustee upon the trusts of this indenture."

The Gas Company since the execution and delivery of the first mortgage has acquired title to both said parcels of real estate, and desires to convey the same to the Trustee, in accordance with the provisions of the first mortgage.

Now therefore, this Indenture Witnesseth that the Gas Company, the party hereto of the first part, in consideration of the premises and of the sum of one dollar, lawful money of the United States of America, to it in hand paid by the Trustee, the party hereto of the second part, the receipt whereof is hereby acknowledged, has granted, bargained, sold, and conveyed, and by these presents does grant, bargain, sell and convey unto the Trustee all and singular, the following property, namely:

1.

All that part of the east seventy (70) acres of the southwest quarter (S.W. 1/4) of section thirty (30), town seven (7), north, of range numbered twenty two (22) east, in the Sixteenth Ward of the City of Milwaukee, described as follows, to wit:

Beginning at the intersection of the west line of the said east seventy (70) acres of said southwest quarter of section thirty (30) with the centre line of the North Menomonee canal, as the same was established and platted by T. C. Winkler, F. S. Blodgett, and D. J. Whittemore, Canal Commissioners, under an act of the legislature of the State of Wisconsin providing for a system of canals in the

WG-ANR-00080734

Special Stockholders' Meeting, May 26th, 1902.

Menomonee Valley, passed March first eighteen sixty nine (March 1st 1869). thence running east along the centre line of said North Menomonee Canal nine hundred ninety and one-tenth (990 1/10) feet, more or less, to a point one hundred and sixty five (165) feet west of the east line of said southwest quarter of section thirty (30), thence north parallel to the quarter line of said section thirty (30). three hundred ninety eight (398) feet to a point which is three hundred twenty eight (328) ft. north from the established north dock line of the North Menomonee Canal; thence in a westerly direction in a straight line seven hundred and eighty (780) feet to a point which is three hundred and thirty three feet (333) north of said established north dock line; thence westerly in a straight line two hundred and nine and six-tenths (209.6) feet more or less to a point on the west line of said east seventy (70) acres of the southwest quarter of said section thirty (30). distant three hundred and nineteen feet north from the said established north dock line of said canal; thence south in the west line of said east seventy (70) acres three hundred and eighty-nine (389) feet to the point of beginning, containing nine and seven-hundredths (9.07) acres more or less, of which one and fifty-nine hundredths (1.59) acres lies within the boundaries of the North Menomonee Canal, and as to said one and fifty-nine hundredths (1.59) acres the same is conveyed subject to the rights of the public therein, being the same premises conveyed by the Chicago, Milwaukee & St. Paul Railway Company to E. G. Cowdery of Milwaukee, Wisconsin, by deed dated December 12th, 1901, and recorded January 6th 1902, in the Register's office for Milwaukee County. Wisconsin, in volume four hundred and thirty-three (433) of deeds, page three hundred and fifty-three (353) et seq.

II

The property known as No. 182 Wisconsin Street in the City of Milwaukee, occupied by the Gas Company as an

WG-ANR-00080735

Special Stockholders' Meeting, May 26th, 1902.

(8) in block twentynine (29) in the Seventh ward in the city of Milwaukee, Wisconsin.

Together with all and singular the tenements, hereditaments and appurtenances unto each of said parcels of property belonging or in any wise appertaining, and the rents, issues, incomes and profits thereof, and all the estate, right, title and interest, as well at law as in equity, of the Gas Company of, in and to the same and every part and parcel thereof and each thereof, with the appurtenances and all improvements thereon;

Subject, however, as to the first described tract, to said mortgage made by the Chicago, Milwaukee and St. Paul Railway Company to Levi P. Morton and Russell Sage, Trustees, dated February 4, 1874, to secure an issue of the bonds of said Railway Company aggregating $26,275,500, and maturing January 1, 1904, of which bonds to the amount of $6,000 and no more are outstanding unpaid in the hands of the public, and bonds to the amount of $50,000 and no more are held by the Farmers Loan and Trust Company, as trustee under said Railway Company's mortgage, dated June 15, 1875, all the remainder of said bonds having been paid and cancelled and said Trust Company having released said premises from the lien of said mortgage under which said Trust Company is trustee; and subject, as to the second described tract, to said first mortgage of the Milwaukee Office Company, dated August 1, 1900, securing said $80,000, face amount, of the five per cent. first mortgage bonds of said Office Company maturing July 2, 1920, in the first mortgage of the Gas Company described and herein above recited;

To have and to hold all and singular the above-granted premises and property unto Central Trust Company of New York, the party hereto of the second

WG-ANR-00080736

Special Stockholders' Meeting. May 26th, 1902.

part. as Trustee under said first mortgage dated February 28th 1902, made by the Gas Company to said Trust Company, herein above recited, and to its successors in said trust and its assigns forever;

In trust, nevertheless, for the equal and proportionate benefit and security of all holders of the first mortgage bonds and coupons, without preference of any of said bonds or coupons over any other bond or coupon by reason of priority in the time of issue or negotiation thereof, or otherwise; and on the trusts, for the uses and purposes, and upon the conditions expressed and declared in the first mortgage, which are hereby made part hereof as fully and with the same force and effect as if incorporated and set out at length herein.

All the recitals and representations contained in this indenture are made by the Gas Company alone, and the Trustee does not in any manner join therein, nor certify to the verity or correctness of the same.

In Witness Whereof, the Gas Company has caused its corporate seal to be hereunto affixed and this indenture to be signed by its president and countersigned by its secretary, and the party of the second party has caused its corporate seal to be hereunto affixed and this indenture to be signed by its vice-president, and countersigned by its secretary, the day and year first above written.

Milwaukee Gas Light Company

by Emerson McMillinM

President.

Seal.

Countersigned by

S. J. Glass

Secretary.

Executed by Milwaukee Gas Light Company in the presence of

A Lincoln Eglington

A. N. Ostram

WG-ANR-00080737

Special Stockholders' Meeting, May 26th, 1902.

Central Trust Company of New York,

by

G. Sherman

Seal.                              Vice President.

Countersigned by

Geo. Perine

Secretary

Executed by Central Trust Company }

of New York in the presence of

Albert Rathbone

Chas. Flynn

Witnesses.

State of New York }

County of New York } ss.:

On this 22nd day of April, in the year one thousand nine hundred and two, before me personally came Emerson McMillin, president of the Milwaukee Gas Light Company, to me personally known, and known by me to be such president and one of the persons who on behalf of said Company executed the foregoing instrument; and the said Emerson McMillin being by me duly sworn, did depose and say, that he resided in the Borough of Manhattan, in the City of New York, in the State of New York, that he is the president of said Milwaukee Gas Light Company, one of the corporations described in and which executed the foregoing instrument; that he knew the seal of said corporation, that the seal affixed to said instrument was such corporate seal, that it was so affixed by order of the board of directors of said corporation, and that he signed his name thereto by like order, and that said instrument was signed and sealed on behalf of said corporation by like order and authority of the board of directors of said corporation; and said Emerson McMillin acknowledged the said in-

WG-ANR-00080738

Special Stockholders' Meeting. May 26th, 1902.

trument to be his free act and deed and the free act and deed
of said corporation.

Robt. E. J. Corcoran

[Seal] Notary Public, Kings County

Certificate filed in N. Y. Co.

Commission expires March 30th, 1904.

County Clerks Certificate.

State of Wisconsin } ss:
County of Milwaukee }

On this 14th day of April, in the year one thousand
nine hundred and two, before me personally came Shel-
don J. Glass, secretary of the Milwaukee Gas Light Company,
to me personally known, and known by me to be such sec-
retary and one of the persons who on behalf of said Company
executed the foregoing instrument; and the said Sheldon
J. Glass, being by me duly sworn, did depose and say,
that he resides in the City of Milwaukee, Wisconsin, that
he is secretary of said Milwaukee Gas Light Company, one
of the corporations described in and which executed the
foregoing instrument; that he knew the seal of said cor-
poration; that the seal affixed to said instrument was
such corporate seal; that it was so affixed by order of
the board of directors of said corporation, and that he
signed his name thereto by like order, and that said ins-
trument was signed and sealed on behalf of said cor-
poration by like order and authority of the board of directors
of said corporation; and said Sheldon J. Glass acknowledged
the said instrument to be his free act and deed and the
free act and deed of said corporation.

D. E. Knight
Notary Public
Milwaukee Co. Wis.

Seal.

Commission expires October 17, 1904.

WG-ANR-00080739

*Special Stockholders Meeting, May 26th, 1902*

State of New York }
County of New York } ss.

On this 23rd day of April, in the year one thousand nine hundred and two, before me personally came George Sherman, vice-president of Central Trust Company of New York, and George Bertine, secretary of said Central Trust Company of New York, to me personally known, and known by me to be such vice-president and secretary, and the persons who on behalf of said Company executed the foregoing instrument; and the said George Sherman and George Bertine, being by me severally duly sworn, did each for himself depose and say, that the said George Sherman and said George Bertine each reside in the City of New York, in the State of New York, that the said George Sherman is the vice-president and the said George Bertine is the secretary of said Central Trust Company of New York, one of the corporations described in and which by them its said vice-president and secretary executed the foregoing instrument; that they each knew the seal of said corporation, that the seal affixed to said instrument was such corporate seal; that it was so affixed by authority of the board of trustees of said corporation, and that each signed his name thereto by like authority, and that said instrument was signed and sealed on behalf of said corporation by like order and authority; and said George Sherman and George Bertine severally acknowledged the said instrument to be his free act and deed and the free act and deed of said corporation.

Chas. Flynn
Notary Public, N. Y. Co.

Seal.

(My commission expires March 30, 1904)

County Clerk's Certificate.

The following resolution was offered and duly seconded:

Resolved that the execution and delivery of said

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 75 of 89   Document 50-5

WG-ANR-00080740

Special Stockholders' Meeting, May 26th, 1902.

supplemental indenture to the Central Trust Company of New York be and the same hereby is in all things approved, ratified and confirmed; that the form thereof is hereby approved in all respects, and that all action taken by the Board of Directors and by the officers of this Company in or about the execution and delivery thereof be and the same hereby is in all things approved, ratified and confirmed.

The vote on said resolution was taken by shares and the polls were kept open for the reception of votes until all votes of holders of stock present in person or by proxy had been cast. The inspectors having canvassed the votes, reported that said resolution had been adopted by the unanimous vote of the entire capital stock of the Company.

Said report of the inspectors was duly accepted.

The following resolution was offered and duly seconded:

Resolved that the execution and delivery by this Company of the agreement dated February 18th 1902, between this Company, the Western Gas Company and the Central Trust Company of New York, a copy whereof is set out in the minutes of the adjourned meeting of the Board of Directors held on the 21st day of February, 1902, be and the same hereby is in all things approved, ratified and confirmed, and that all action heretofore taken or authorized to be taken, by the Board of Directors or which may hereafter be taken or authorized to be taken by the Board of Directors in or about the execution of said agreement or carrying the same into effect, be and the same hereby is in all things approved, ratified and confirmed.

The vote on said resolution was taken by shares and the polls were kept open for the reception of votes until all votes of holders of stock present in person or by proxy had been cast. The inspectors having canvassed the votes reported that said resolution had been adopted by the

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 76 of 89   Document 50-5

WG-ANR-00080741

72

<u>Special Stockholders' Meeting, May 26th, 1903.</u>

Said report of the inspectors was duly accepted.

On Motion duly seconded, the Stockholders Meeting adjourned.

S.J. Glass
Secretary.

WG-ANR-00080742

*Special Directors Meeting*

Milwaukee, Wisconsin, May 29th, 1902.

Pursuant to notice duly given, a special meeting of the Board of Directors of the Milwaukee Gas Light Company was held at the office of the Company, No. 187 Wisconsin Street, Milwaukee, Wisconsin, this 19th day of May, 1902, at eleven o'clock, A. M.

There were present Messrs. Cowdery, Murphy, Smith, Luedke, Bigelow and Douthirt.

First Vice President Cowdery was in the chair.

The following was introduced:

Whereas it appears by the books of this Company that this Company had on May 1, 1902, upwards of three million dollars surplus and undivided profits, which may be properly distributed to the stockholders in the way of a dividend, therefore

Resolved that a dividend of one hundred dollars per share on the outstanding capital stock of this Company, said dividend amounting in the aggregate to $ 1,760,300.00 be and the same hereby is declared, payable, unless otherwise ordered by this Board, on June 20, 1902, to the stockholders of record, on that date, in this Company's obligations or stock contracts, in the form and of the tenor and effect following:

No. _____ _____ Shares

Milwaukee Gas Light Company:

This Contract will entitle _____ to share of the par value of Fifty Dollars each of Preferred Capital Stock of the Milwaukee Gas Light Company, a corporation organized under the laws of the State of Wisconsin, for which Certificates in due form will be issued (upon surrender of this Contract) whenever the Company shall be authorized by law to issue such Preferred Stock, and in the meantime the holder of this Contract shall be entitled to all the benefits of a Preferred Stock holder, except the right to vote, and shall be paid interest at the rate of six per cent. per annum upon a sum equal to the face value of _____

WG-ANR-00080743

Special Directors' Meeting, May. 27. 1902

ally, on the dates and in the manner following.
viz:

This Contract is transferable only on the books of
the Company upon its surrender by the registered ow-
ner in person, or by attorney. at the office of the Com-
pany. Said books will be closed and no transfers
will be made thereon from the first to the fifteenth
days, both inclusive, of January and July in each
year. On the fifteenth day of each January interest
for the half year ended the thirty-first day of Decem-
ber last preceding. and on the fifteenth day of each
July interest for the half year ended the thirtieth day
of June last preceding, will be paid to the registered
owner.

The said Preferred stock when issued will en-
title the holders thereof to be paid dividends thereon
at the rate of six per centum per annum, from the
date to which interest was last paid under this
Contract, in preference and priority to any dividends
to be made to the holders of any other class of stock of
the Company, and this right to dividends shall be
cumulative.

In Witness Whereof, the said Company
has caused this Contract to be signed by
its President, or a Vice-President, and its
corporate seal to be hereto affixed and attes-
ted by its Secretary, or an Assistant Secretary,
at Milwaukee, Wisconsin, this ---- day of
------------, 190-.

President.

Attest

Secretary.

The question being upon the adoption of the fore-
going resolution, after full discussion, the same was
unanimously adopted by the affirmative votes of all
the Directors present.

WG-ANR-00080744

Special Directors Meeting. May 27, 1902.

The following was then introduced:

Whereas this Company's First Mortgage to Central Trust Company of New York, dated February 28th. 1902, provides in the First Article thereof that this Company shall keep at an office or agency to be maintained by it in the City of New York, or at some Bank or Trust Company in said City, a sufficient register or registers of this Company's First Mortgage bonds, which shall at all times be open for inspection by the Trustee and any holder of said bonds, and upon presentation for such purpose, this Company will, under such reasonable regulations as it may prescribe, register or cause to be registered therein any of said First Mortgage bonds, and that the holder of any First Mortgage bond may have the ownership thereof registered on said books, such registry being noted on the bond, after which no transfer shall be valid unless made on said books by the registered holder in person, or by his attorney duly authorized in writing and noted on the bond; but the same may be discharged from registry by being in like manner transferred thereon to bearer, after which it shall be transferable by delivery, and may again from time to time be registered or transferred to bearer as before:

Now Therefore, Resolved, that this Company until further order of the Board, establish and keep an agency for the above named purpose, at the office of Messrs. Emerson McMillin & Company, No. 40 Wall Street, New York City, and that said Emerson McMillin & Company be appointed Transfer Agents of said bonds; and authorized and instructed to procure the necessary books, and to proceed with the registration and transfer of bonds under the usual and customary conditions.

The question being upon the adoption of the foregoing resolution, the same was unanimously adopted by the affirmative votes of all the directors present.

On motion duly seconded, the Board adjourned

D.J. Glass
Secretary

WG-ANR-00080745

Regular Meeting of Board of Directors, Monday,
June 16, 1902, at 9:30 A. M.
(Pursuant to By-laws).

Adjourned by the Secretary no quorum being present.

S J Gass
Secretary

Adjourned Meeting of Board of Directors, Monday,
July 7.

(Due notice of meeting having been given.)

Present: Messrs. Cowdery, Green, Smith, Biglow,
Murphy and Luedke.

Vice-President Cowdery in the chair.

Minutes of Special meeting of Board of Directors
held May 27th, read and approved.

General Manager's report for the month of May
submitted and ordered placed on file.

The General Manager submitted a plan of pay-
ing an extra bonus to regular employes of the Com-
pany in addition to the regular bonus of 6% to be paid
July 20, and upon motion of Mr. Green, duly seconded,
it was

Resolved that the Treasurer of the Company be
authorized to pay to regular employes an extra
bonus of 4% upon their wages for the six months
ending June 30, 1902, as per proposition submitted
to the Board by the General Manager.

The General Manager also submitted propo-
sitions from different concerns proposing to furnish
the coal and coke handling apparatus for the new
plant. After discussion, it was upon motion of
Mr. Green,

Resolved that the proper officers of the Company
be authorized to enter into contract with the Brown
Hoisting & Conveying Machine Company of Cleveland,
Ohio, for the apparatus as per their bid, and specifica-
tions, for the sum of $67,500.00.

The following letter from Western Gas Company

WG-ANR-00080746

Regular Meeting of Board of Directors, Monday June 16, 1902    cont

was then read:

New York, June 30, 1902.

S. J. Glass, Secretary.

Milwaukee Gas Light Company,

Milwaukee, Wis.

Dear Sir —

As a meeting of the Board of Directors of the Milwaukee Gas Light Company held on June 26th, it was resolved that a dividend of three per cent. be declared on the stock of the Western Gas Company payable July 21st. In order to provide for this dividend, it was further resolved that the Milwaukee Gas Light Company be requested to declare such dividend as might be necessary to furnish, say $120,000. The amount was not made definite, as there was some uncertainty as to whether the preferred stock certificates would be issued by that date. Will you kindly bring this matter to the attention of your Board of Directors?

Yours truly

(Signed,)     Robert M. Murray.

Secy.

And upon motion of Mr. Bigelow, duly seconded, it was resolved that a dividend of 2½ % upon the capital stock of this Company, amounting to 34,503.75, be declared, payable in New York, July 15th.

Upon motion of Mr. Green, duly seconded, the action of the Secretary in paying to Directors present at meeting of June 16, the regular fee, (no quorum being present) was approved and confirmed.

There being no further business to be brought before the Board, the meeting adjourned.

S J Glass

Secretary.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 82 of 89   Document 50-5

WG-ANR-00080747

Annual meeting of Stockholders of The Milwaukee Gas Light Company, Monday, July 7, 1902, at ten o'clock, A. M., pursuant to by-laws of the Company and ten days notice published in The Milwaukee Sentinel and The Milwaukee Journal, as per receipts on file.

Present: Vice-Presidents Gowdey and Green, Secretary Glass, a quorum of the Board of Directors, and the holders of a majority of the capital stock of the Company either in person or by proxy.

The chair appointed Messrs. Murphy and Smith tellers, who reported that 27,600 shares of the capital stock of the Company, out of 27,603 shares, the total number of shares outstanding, (the same being a majority), was represented either in person or by proxy.

On motion of Mr. Smith, it was

Resolved that all the acts and proceedings of the Board of Directors and of the officers of the Company, for the year ending June 30, 1901, be and the same are hereby in all respects approved, ratified and confirmed.

On motion of Mr. Smith, seconded, it was resolved to proceed to the election of Directors for the ensuing year.

The following named gentlemen were proposed as Directors, viz:

| | |
|---|---|
| Emerson McMillin | of New York |
| W. J. Douthirt | " " |
| Edward G. Cowdery | " Milwaukee |
| Samuel M. Green | " " |
| Frank G. Bigelow | " " |
| Henry C. Payne | " " |
| John T. Murphy | " " |
| Albert E. Smith | " " |
| H. August Luedke | " " |

And upon motion of Mr. Smith, seconded, the Secretary was authorized to cast a ballot for the election of each of the gentlemen named. The Secretary having cast the ballot as instructed, the tellers reported that each of the gentlemen named had received the unanimous

Annual meeting of Stockholders of The Milwaukee Gas Light Company, Monday July 7. 1902 at ten oclock, A. M.

vote of 27,600 shares present, and they were thereupon declared by the chairman as duly elected Directors for the ensuing year.

There being no further business to be brought before the Stockholders, the meeting adjourned.

B.J. Glass
Secretary.

Annual Meeting of Board of Directors, Monday,
July 7, 1902, at 10:30 A. M.
(Pursuant to By-laws.)

Present: Messrs. Cowdery, Green, Murphy, Bigelow,
Smith, and Luedke.

Upon motion of Mr. Bigelow, Mr. Cowdery was elected
temporary chairman, and Mr. Glass Secretary.

On motion of Mr. Smith, seconded, Mr. Green was in-
structed to cast a ballot for the election of officers for the
ensuing year, as follows.

| | |
|---|---|
| President | Emerson McMillin |
| 1st Vice President and Genl. Manager | C. G. Cowdery. |
| 2nd Vice President, | S. M. Green. |
| Secretary and Treasurer | S. J. Glass |
| Assist. Secretary | W. J. Donahurst. |
| Counsel | Miller, Noyes and Miller. |

Mr. Green having cast the ballot as directed, the
chairman thereupon declared the gentlemen duly elected.

The President being absent, the first Vice President
took the chair.

On motion of Mr. Murphy the officer's salaries were
fixed as follows:

| | | |
|---|---|---|
| President | $4000.00 | per annum. |
| 1st Vice-President and Gen. Manager, | 10000.00 | " |
| 2nd Vice President, | 500.00 | " |
| Secretary and Treasurer, | 4200.00 | " |
| Counsel | 2500.00 | " |

Payable monthly.

On motion of Mr. Luedke, seconded, the bonds
of the General Manager, and Secretary and Treasurer
of the Company were fixed at $5000.00 each in the
National Surety Company, premium on same
to be paid by the Company.

There being no further business to be brought be-
fore the Board, the meeting adjourned.

S. J. Glass
Secretary

WG-ANR-00080750

(Note)  No regular Board Meetings held in July or August.

Regular Meeting Board of Directors Monday,
Sept. 15, 1902, at 9:30 A. M.

Pursuant to By-Laws.

Present Messrs. Cowdery, Smith, Bigelow, Smith and
Luedke.

Vice-President Cowdery in the chair.

Minutes of previous meeting read and approved.

General Manager submitted a letter received from Mr.
W. F. Douthirt, tendering his resignation as a Director
of the Company.

On motion of Mr. Luedke the same was accepted.

On motion of Mr. Bigelow  Mr. G. G. Pabst was
elected a Director to succeed Mr. Douthirt.

Mr. Pabst, being present, was duly qualified as a
Director.

The General Manager's report for the months of
July and August was submitted and ordered placed on file.

There being no further business to be brought before
the Board, the meeting adjourned.

S. J. Glass
Secretary

WG-ANR-00080751

Regular Meeting Board of Directors.
Monday, October 20, 1902, at 9:30 A. M.
(Pursuant to By Laws).

Adjourned by the Secretary, no quorum being present.

D. J. Glass Secy

Adjourned Meeting Board of Directors.
Friday, October 31, 1902, at 9:30 A. M.
(Due notice of meeting having been given.)

Present: Messrs. Cowdery, Bigelow, Murphy, Pabst and Luedke.

Vice-President Cowdery in chair.

Minutes of previous meeting read and approved.

General Manager's report for month of September submitted and ordered placed on file.

On motion of Mr. Bigelow, duly seconded, it was Resolved that the proper officers of the Company be authorized to notify the American Express Company of the intention of this company to cancel contract dated June 14, 1893 with the Express Company, for collection of gas bills, at the expiration of sixty days as provided in said contract.

On motion of Mr. Bigelow, duly seconded, it was Resolved that the proper officers of this Company be authorized to arrange for the collection of Gas Bills through branch agencies; the expense of such collections to be borne by the Gas Company.

There being no further business to be brought before the Board, the meeting adjourned.

D. J. Glass
Secretary.

WG-ANR-00080752

Regular Meeting of Board of Directors.
Monday Nov. 17th, 1902, 9:30 A.M.
(Pursuant to By Laws.)
Adjourned by Secretary, no quorum being present.

S. J. Glass, Secy

Adjourned Meeting of Board of Directors.
Wednesday Nov. 26th 1902, 9:30 A.M.
(Due notice of meeting having been given.)
Present. Messrs. Cowdery, Bigelow, Murphy and Luedke.
Owing to their being no quorum present, no formal
business was transacted. The General Manager, however,
outlined to the directors present a proposed contract with J.
R. Buell for sale of coke, and this matter, also the subject
of reduction in price of gas, was discussed at length.

S. J. Glass, Secy

Adjourned Meeting Board of Directors.
Monday, Dec. 8th 9:30 A.M.
(Due notice of meeting having been given)

Present. Messrs. Cowdery, Bigelow, Pabst, Murphy
and Luedke.
General Manager's reports for month of October
submitted and ordered placed on file.

The General Manager suggested the advisability
of paying an extra dividend of 4% to employees for the
last six months of the year, and upon motion of Mr. Bigelow,
seconded, it was Resolved, that an extra dividend of 4%
upon the wages of regular employees of the Company for
the six months ending December 31st, 1902, be paid in addition
to the usual dividend of 6%, payable January 20th, 1903.

On motion of Mr. Bigelow, seconded, the proper
officers of the Company were authorized to execute a contract
with J. R. Buell for sale of coke, the same having been sub-
mitted to the Board for its approval.

On motion of Mr. Luedke, seconded, the proper
officers of the Company were authorized to donate to the
University of Wisconsin the sum of Two Hundred

Case: 2:20-cv-01334-SCD  Filed 01/27/23  Page 88 of 89  Document 50-5

WG-ANR-00080753

Adjourned Meeting Board of Directors, Monday, Dec. 8th 1902, as per a letter of Mr. Kremers.

On motion of Mr. Bigelow, seconded, the salary of the Engineer, A. P. Brown, was increased to Five Thousand Dollars ($5,000.00) per year. the increase to date from July 1st. 1902.

On motion of Mr. Murphy, seconded, the action of the Secretary in paying fee to the directors present at the preceding meeting, was ratified and approved.

There being no further business to be brought before the Board,

Meeting Adjourned

S. Glass
Secretary.

WG-ANR-00080754