# EXHIBIT 5-D

amount of cash sufficient to effect the redemption of the bonds specified in such notice, or it may irrevocably direct the Trustee to apply to such purpose moneys theretofore deposited with or held by the Trustee and available for the purpose, and from and after the date of redemption designated in such notice (such cash having been deposited or directed to be applied as aforesaid) no further interest shall accrue upon any of the bonds so to be redeemed (or, in the case of registered bonds without coupons, only a portion of the principal amount of which is to be redeemed, on such portion thereof); and (such cash having been deposited or directed to be applied as aforesaid) any coupons for interest pertaining to any such bonds and maturing after such date shall become and be null and void, anything in such bonds or coupons or in this indenture to the contrary notwithstanding. If the Company shall fail so to deposit or direct the application of the money for the redemption of said bonds, such failure shall constitute an event of default under this indenture and the said bonds so called for redemption shall immediately become due and payable and the holders of said bonds shall be entitled to receive, and the Company shall be obligated to pay, the redemption price of said bonds and thereupon and without the lapse of any period of time all the remedies provided for in Article IX hereof with respect to a default in the payment of principal shall be available to, and enforcible by, the Trustee.

Notice of redemption having been given by publication and mailing as provided herein, the bonds so called, or the specified portions thereof shall, on the date designated in such notice, become due and payable at the principal office of the Trustee at their respective redemption prices payable on such date; and, upon the presentation and surrender thereof, with (in the case of coupon bonds) all interest coupons maturing on or subsequent to the redemption date, and (in the case of registered bonds or of coupon bonds which shall at the time be

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 2 of 111   Document 50-11

WG-ANR-00081617

registered as to principal) accompanied by duly executed assignments or transfer powers, such bonds, or the specified portions thereof, shall be paid and redeemed out of the funds so deposited with or directed to be applied by the Trustee, at their respective redemption prices then payable.

All bonds redeemed under this Section 3 shall be cancelled by the Trustee and shall be delivered to or upon the written order of the Company.

SECTION 4. The bonds of the 4½% Series due 1967 shall be coupon bonds and registered bonds without coupons.

The form of coupon bonds of the 4½% Series due 1967 and the coupons thereto attached and the Trustee's certificate endorsed thereon shall be substantially as follows:

[FORM OF COUPON BOND]

## UNITED STATES OF AMERICA

### STATE OF WISCONSIN

## MILWAUKEE GAS LIGHT COMPANY

### FIRST MORTGAGE GOLD BOND 4½% SERIES DUE 1967

No. .......... $..........

MILWAUKEE GAS LIGHT COMPANY, hereinafter called the Company, a corporation of the State of Wisconsin, for value received hereby promises to pay to bearer or, if this bond be registered, to the registered holder hereof on March 1, 1967, at the principal office of the Trustee, or at the option of the bearer or registered holder, at the office or agency of the Company in the Borough of Manhattan in the City of New York, the sum of                    Dollars in gold coin of the United States of America of or equal to the standard of weight and fineness as it existed on March 1, 1927, and to pay interest thereon from March 1, 1927, at the rate of Four and one-half per cent. per annum in like gold coin at said

WG-ANR-00081618

office of the Trustee, or at the option of the holder of the coupon evidencing such interest, at the aforesaid office or agency of the Company, on the first day of September and the first day of March in each year until the Company's obligation with respect to the payment of said principal sum shall have been discharged, but only upon presentation and surrender of the interest coupons therefor hereto attached as they severally mature.

This bond is one of an authorized issue known as First Mortgage Gold Bonds, issued and to be issued in one or more series under and all equally and ratably secured by an indenture of mortgage dated February 15, 1927, duly executed by the Company to The Union Trust Company of Pittsburgh, as Trustee, to which reference is hereby made for a description of the properties mortgaged, the nature and extent of the security and the rights of the holders of said bonds and of the Trustee in respect of such security. As provided in said indenture said bonds may be for various principal sums and are issuable in series, which may mature at different times, may bear interest at different rates and may otherwise vary as therein provided; and this bond is one of a series entitled "First Mortgage Gold Bonds 4½% Series due 1967," which have been authorized for an aggregate principal amount of $25,000,000 as provided for in Article III of said indenture.

The interest on this bond is payable without deduction for any income tax imposed thereon by the United States of America, except any excess of such income tax over two per cent. per annum, which the Company or the Trustee or any paying agent may be required or authorized to pay or retain from such interest by any present or future law of the United States of America; and in Article III, Section 5 of said indenture the Company has covenanted to reimburse to owners of bonds of this series, resident in the respective states, the amounts of the following taxes paid with respect to such bonds or the interest thereon: the so-called Four Mills tax in Pennsylvania and any Massachusetts income tax not exceeding six per cent. of the interest on the bonds in any year, but in each case only upon written request made as provided therein and subject to the terms and conditions therein set forth.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 4 of 111   Document 50-11

WG-ANR-00081619

This bond may at the option of the Company be redeemed at any time prior to and including March 1, 1966, upon payment of the principal and accrued interest to the date of redemption together with a premium which shall be as follows: Seven and one-half per cent. of the principal if the date of redemption be on or before March 1, 1937; Five per cent. if after March 1, 1937, and on or before March 1, 1947; Two and one-half per cent. if after March 1, 1947, and on or before March 1, 1966. After March 1, 1966, this bond may at the option of the Company be redeemed at any time upon payment of the principal and accrued interest to the date of redemption without any premium. Any such redemption shall be upon sixty days' prior notice and as fully set forth in Article III, Section 3 of said indenture which also sets out the manner, terms and conditions of redemption.

In case an event of default as defined in said indenture shall occur, the principal of this bond may become or be declared due and payable in the manner, with the effect and subject to the conditions provided in said indenture.

This bond is transferable by delivery, unless registered as to principal, at the principal office of the Trustee or at the office or agency of the Company in the Borough of Manhattan, in the City of New York, on books of the Company to be kept thereat for that purpose and such registry noted hereon. After such registration no transfer shall be valid unless made upon said books by the registered holder in person, or by attorney duly authorized, and similarly noted hereon; but this bond may be discharged from registration by being in like manner transferred to bearer, and thereupon transferability by delivery shall be restored, after which this bond may again from time to time be registered or made transferable to bearer as before. Such registration however shall not affect the negotiability of the coupons for interest hereto attached, which shall always be payable to bearer and transferable by delivery merely, and payment to the bearer thereof shall fully discharge the Company in respect of the interest therein mentioned, whether the principal of this bond be registered or not. The Company and the Trustee may deem and treat the bearer of this bond, or if this bond be registered as to principal as herein authorized, the

WG-ANR-00081620

person in whose name the same is registered, as the absolute owner hereof for the purpose of receiving payment hereof and on account hereof and for all other purposes.

In the manner and upon payment of the charges prescribed in said indenture coupon bonds of the 4½% Series due 1967 upon surrender thereof to the Trustee with all unmatured coupons attached are exchangeable for a like aggregate principal amount of coupon bonds of the same series in any other authorized denominations with all unmatured coupons attached or for a like aggregate principal amount of registered bonds without coupons of the same series of any authorized denominations; and in like manner registered bonds without coupons of the 4½% Series due 1967 upon surrender thereof to the Trustee together with a written instrument of transfer in form approved by the Company, duly executed by the registered holder are exchangeable for a like aggregate principal amount of registered bonds of the same series of any other authorized denominations or for a like aggregate principal amount of coupon bonds of the same series of any authorized denominations with all unmatured coupons attached.

No recourse shall be had for the payment of the principal of or interest on this bond or for any claim based hereon or otherwise in respect hereof, or for any claim based on said indenture, against any incorporator, or any past, present or future subscriber to capital stock, stockholder, director or officer of the Company, or of any predecessor or successor corporation, whether for amounts unpaid on stock subscriptions or by virtue of any constitution, statute or rule of law, or by the enforcement of any assessment or penalty or otherwise howsoever; all such liability being, by the acceptance hereof and as a part of the consideration of the issue hereof, expressly waived and released by every holder hereof, as more fully provided in said indenture.

This bond shall not become obligatory until the Trustee under said indenture, or its successor thereunder, shall have signed the form of certificate endorsed hereon.

IN WITNESS WHEREOF, MILWAUKEE GAS LIGHT COMPANY has caused this bond to be signed in its name by its President or one of its Vice-Presidents, and its corporate seal to be here-

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 6 of 111   Document 50-11

WG-ANR-00081621

unto affixed and attested by its Secretary or one of its Assistant Secretaries, and coupons for said interest bearing the facsimile signature of its Treasurer to be hereunto attached, as of March 1, 1927.

MILWAUKEE GAS LIGHT COMPANY,

By............................

Attest:                                        President

.................
Secretary.

[FORM OF INTEREST COUPON]

No.............                              $...........

On the            day of            , 19    , upon surrender of this coupon, MILWAUKEE GAS LIGHT COMPANY will pay to bearer, at the principal office of the Trustee, or, at the option of the holder, at the office or agency of the Company in the Borough of Manhattan, City of New York, Dollars in gold coin of the United States of America of or equal to the standard of weight and fineness as it existed on March 1, 1927, without deduction for any income tax imposed thereon by the United States of America up to but not in excess of two per cent. of said sum, being six months' interest then due on its First Mortgage Gold Bond 4½% Series due 1967, Number      , unless said bond shall have been called for previous redemption and payment duly provided therefor.

............................
Treasurer.

[FORM OF TRUSTEE'S CERTIFICATE]

This bond is one of the bonds of the series designated therein, described in the within-mentioned indenture.

THE UNION TRUST COMPANY OF PITTSBURGH
as Trustee

By......................

WG-ANR-00081622

43

Coupon bonds of the 4½% Series due 1967, shall be issued in denominations of $1,000, numbered consecutively from "M1" upward, but the Company may by an indenture supplemental to this indenture, provide for coupon bonds of other denominations.

The form of registered bonds without coupons of the 4½% Series due 1967 and the Trustee's Certificate endorsed thereon shall be substantially as follows:

[FORM OF REGISTERED BOND WITHOUT COUPONS]

## UNITED STATES OF AMERICA

### STATE OF WISCONSIN

Registered

## MILWAUKEE GAS LIGHT COMPANY

### FIRST MORTGAGE GOLD BOND 4½% SERIES DUE 1967

No. . . . . . . . . . .                    $. . . . . . . . . .

Milwaukee Gas Light Company, hereinafter called the Company, a corporation of the State of Wisconsin, for value received hereby promises to pay to                    or registered assigns, on March 1, 1967, at the principal office of the Trustee, or at the option of the then registered owner hereof at the office or agency of the Company in the Borough of Manhattan, in the City of New York, the sum of                    Dollars in gold coin of the United States of America of or equal to the standard of weight and fineness as it existed on March 1, 1927, and to pay interest thereon from the date hereof at the rate of four and one-half per cent. per annum in like gold coin at said office of the Trustee, or at the option of the registered owner at said office or agency of the Company, on the first day of September and the first day of March in each year until the Company's obligation with respect to the payment of said principal sum shall have been discharged.

This bond is one of an authorized issue known as First Mortgage Gold Bonds, issued and to be issued in one or more series

WG-ANR-00081623

under and all equally and ratably secured by an indenture of mortgage dated February 15, 1927, duly executed by the Company to The Union Trust Company of Pittsburgh, as Trustee, to which reference is hereby made for a description of the properties mortgaged, the nature and extent of the security and the rights of the holders of said bonds and of the Trustee in respect of such security. As provided in said indenture said bonds may be for various principal sums and are issuable in series, which may mature at different times, may bear interest at different rates and may otherwise vary as therein provided; and this bond is one of a series entitled "First Mortgage Gold Bonds 4½% Series due 1967", which have been authorized for an aggregate principal amount of $25,000,000 as provided for in Article III of said indenture.

The interest on this bond is payable without deduction for any income tax imposed thereon by the United States of America, except any excess of such income tax over two per cent. per annum, which the Company or the Trustee or any paying agent may be required or authorized to pay or retain from such interest by any present or future law of the United States of America; and in Article III, Section 5 of said indenture the Company has covenanted to reimburse to owners of bonds of this series, resident in the respective states, the amounts of the following taxes paid with respect to such bonds or the interest thereon: the so-called Four Mills tax in Pennsylvania and any Massachusetts income tax not exceeding six per cent. of the interest on the bonds in any year, but in each case only upon written request made as provided therein and subject to the terms and conditions therein set forth.

This bond may at the option of the Company be redeemed at any time prior to and including March 1, 1966, upon payment of the principal and accrued interest to the date of redemption together with a premium which shall be as follows: Seven and one-half per cent. of the principal if the date of redemption be on or before March 1, 1937; Five per cent. if after March 1, 1937 and on or before March 1, 1947; Two and one-half per cent. if after March 1, 1947 and on or before March 1, 1966. After March 1, 1966, this bond may at the option of the Company be redeemed at any time upon payment of the principal

WG-ANR-00081624

45

and accrued interest to the date of redemption without any premium. Any such redemption shall be upon sixty days' prior notice and as fully set forth in Article III, Section 3 of said indenture which also sets out the manner, terms and conditions of redemption.

In case an event of default, as defined in said indenture, shall occur, the principal of this bond may become or be declared due and payable in the manner, with the effect and subject to the conditions provided in said indenture.

This bond is transferable by the registered holder hereof in person, or by duly authorized attorney, at the principal office of the Trustee, or at the office or agency of the Company in the Borough of Manhattan in the City of New York, upon surrender and cancellation of this bond, and upon any such transfer a new registered bond without coupons of the same series, for the same aggregate principal amount will be issued to the transferee in exchange therefor. The Company and the Trustee may deem and treat the person in whose name this bond is registered as the absolute owner hereof for the purpose of receiving payment of or on account of the principal and interest due hereon and for all other purposes.

In the manner and upon payment of the charges prescribed in said indenture coupon bonds of the $4\frac{1}{2}\%$ Series due 1967 upon surrender thereof to the Trustee with all unmatured coupons attached are exchangeable for a like aggregate principal amount of coupon bonds of the same series in any other authorized denominations with all unmatured coupons attached or for a like aggregate principal amount of registered bonds without coupons of the same series of any authorized denominations; and in like manner registered bonds without coupons of the $4\frac{1}{2}\%$ Series due 1967 upon surrender thereof to the Trustee together with a written instrument of transfer in form approved by the Company, duly executed by the registered holder are exchangeable for a like aggregate principal amount of registered bonds of the same series of any other authorized denominations or for a like aggregate principal amount of coupon bonds of the same series of any authorized denominations with all unmatured coupons attached.

WG-ANR-00081625

No recourse shall be had for the payment of the principal of
or interest on this bond, or for any claim based hereon, or other-
wise in respect hereof, or for any claim based on said indenture,
against any incorporator, or any past, present or future sub-
scriber to capital stock, stockholder, director or officer of the
Company, or of any predecessor or successor corporation,
whether for amounts unpaid on stock subscriptions, or by virtue
of any constitution, statute or rule or law, or by the enforcement
of any assessment or penalty, or otherwise howsoever; all such
liability being, by the acceptance hereof and as a part of the con-
sideration hereof, expressly waived and released by every holder
hereof, as more fully provided in said indenture.

This bond shall not become obligatory until the Trustee under
said indenture, or its successor thereunder, shall have signed the
form of certificate endorsed hereon.

IN WITNESS WHEREOF, Milwaukee Gas Light Company has
caused this bond to be signed in its name by its President or one
of its Vice-Presidents, and its corporate seal to be hereunto
affixed, and attested by its Secretary or one of its Assistant
Secretaries as of

MILWAUKEE GAS LIGHT COMPANY

By......................
Attest:                                    President.

......................
Secretary.

[FORM OF TRUSTEE'S CERTIFICATE]

This bond is one of the bonds of the series designated therein,
described in the within mentioned indenture.

THE UNION TRUST COMPANY OF PITTSBURGH,
as Trustee,

By............................

WG-ANR-00081626

47

Every registered bond without coupons of said series shall be dated as of the interest payment date last preceding the authentication thereof by the Trustee, except that if any such bond shall be authenticated on an interest payment date it shall be dated as of that date; and every such registered bond shall bear interest from the date thereof as so fixed.

Registered bonds without coupons of the $4\frac{1}{2}\%$ Series due 1967 shall be in denominations of $1,000 and $5,000, and at the option of the Company in any other multiple of $1,000.

Bonds of the $4\frac{1}{2}\%$ Series due 1967 shall be exchangeable as follows:

(a) coupon bonds of said series may, at the option of the holders thereof, and upon the surrender thereof to the Trustee with all unmatured coupons attached, be exchanged for coupon bonds of the same series of the same aggregate principal amount, but of a different denomination or denominations; provided, however, that provision has previously been made for coupon bonds of one or more denominations other than $1,000 by the execution and delivery of a supplemental indenture as hereinbefore mentioned;

(b) registered bonds without coupons of said series may, at the option of the registered holders thereof and upon the surrender thereof to the Trustee, be exchanged for registered bonds without coupons of the same series, of the same aggregate principal amount, but of a different denomination or denominations;

(c) coupon bonds of said series may, at the option of the holders thereof and upon the surrender thereof to the Trustee with all unmatured coupons attached, be exchanged for registered bonds without coupons of the same series of the same aggregate principal amount, and of the same or a different denomination or denominations;

(d) registered bonds without coupons of said series may, at the option of the registered holders thereof and upon the surrender thereof to the Trustee, be exchanged

WG-ANR-00081627

for coupon bonds of the same series of the same aggregate principal amount, and of either the same or of a different denomination or denominations.

If any coupon bond so surrendered shall be registered as to principal it shall be accompanied by a proper transfer power duly executed by the registered owner transferring such registered principal to "bearer", and the signature to such transfer power shall be guaranteed to the satisfaction of the Trustee; and every registered bond without coupons so surrendered shall be accompanied by a proper transfer power duly executed by the registered owner transferring such bond to the Company, and the signature to such transfer power shall be guaranteed to the satisfaction of the Trustee.

All coupon bonds so surrendered and all coupon bonds delivered in exchange therefor shall be accompanied by all unmatured coupons appertaining thereto.

All bonds so surrendered shall be forthwith canceled and delivered to or upon the order of the Company; provided, however, that coupon bonds surrendered in exchange for registered bonds without coupons may be retained uncancelled by the Trustee for use in future exchanges of coupon bonds for registered bonds without coupons.

All bonds executed, authenticated and delivered in exchange for bonds so surrendered shall be the valid obligations of the Company, evidencing the same debt as the bonds surrendered, and shall be secured by the same liens and entitled to the same benefits and protection as the bonds in exchange for which they are executed, authenticated and delivered.

For any exchange of bonds of the $4\frac{1}{2}\%$ Series due 1967 as hereinbefore provided for, or for any transfer of registered bonds without coupons of said series, or for the registration as to principal of any coupon bond of said series, or for transferring or discharging such registration as to principal, the Company at its option may require the payment of a sum sufficient to reimburse it for any stamp tax or other governmental charge incident thereto, and in addition thereto, of a further sum not exceeding two dollars for each new bond, if any, issued upon any such exchange or transfer; and the Company shall

WG-ANR-00081628

not be required to make any such exchange or transfer during any period of fifteen days next preceding any interest payment date.

SECTION 5. The Company covenants and agrees that the interest on the bonds of the 4½% Series due 1967 will be payable without deduction for any income tax imposed thereon by the United States of America, except any excess of such income tax over two per cent per annum, which the Company or the Trustee may be required or authorized to pay or retain from such interest by any present or future law of the United States of America.

The Company further covenants and agrees that it will reimburse to the owner of any bond of the 4½% Series due 1967, when paid by or for account of such owner, all taxes, other than income, succession and inheritance taxes, of the State of Pennsylvania or of any county or other taxing authority therein (whether for state, county, city or municipal purposes), which may be lawfully imposed or assessed, under or by virtue of any present or future law, upon such bond or upon such owner as a resident of said State, by reason of the ownership thereof, but not exceeding in the aggregate in any one year four mills per annum for each dollar of the taxable value thereof, upon the filing of a written request for such reimbursement, stating the serial letter and number of such bond, and setting forth the fact of ownership of such bond when such tax was imposed, the place where such tax was paid and that such tax was assessed upon and paid by or for account of such owner as a resident of said State by reason of the ownership of said bond; Provided such request shall have been so received by the Company within ninety days after such tax was so paid. Each such request shall be filed by or on behalf of said holder with the Company at its office in Milwaukee or at its office or agency in the Borough of Manhattan, City of New York or at the principal office of the Trustee within the period hereinbefore specified.

WG-ANR-00081629

The Company further covenants and agrees that, in case any owner of any bond of the 4½% Series due 1967 shall become liable under any present or future law of the State of Massachusetts to pay and shall pay any income tax on account of interest received upon such bond, the Company will reimburse such owner for the tax so paid to an amount not exceeding six per cent. of the interest received and subject to tax, upon the filing of a written request for such reimbursement, stating the serial letter and number of such bond, that such owner has made a tax return to the State of Massachusetts, in which there was included interest received on such bond, giving the amount of the interest so included and the taxable period for which such return was made, that in pursuance of such return a tax (of an amount therein stated) has been assessed, directly or indirectly, upon the interest so included, and that such tax has been paid by or for account of such owner; Provided such request shall have been so received by the Company within ninety days after such taxes was so paid. Each such request shall be filed by or on behalf of said holder with the Company at its office in Milwaukee or at its office or agency in the Borough of Manhattan, City of New York or at the principal office of the Trustee within the period hereinbefore specified.

SECTION 6. So long as any of the bonds of the 4½% Series due 1967 are outstanding, said bonds and the coupons therefrom may be presented for payment, and notices, requests and demands in respect of said bonds and coupons and notices, requests and demands under this indenture may be served at the principal office of the Trustee (the Trustee hereby agreeing to promptly notify the Company at its office in Milwaukee, Wisconsin, of the service of any such notice, request or demand at the office of the Trustee); and so long as any of said bonds are outstanding the Company will also maintain an office or agency in the Borough of Manhattan in the City of New York,

WG-ANR-00081630

where said bonds and coupons may be presented for payment, and where such notices, requests and demands may be served. and from time to time will file with the Trustee notice in writing of the location of, and any change in the location of, such office or agency.

SECTION 7. As soon as may be after the execution and delivery of this indenture whether before or after the filing and recording hereof the Company may execute and deliver to the Trustee for authentication a total of $11,500,000 principal amount of bonds of the 4½% Series due 1967. Said $11,500,000 bonds may be so delivered to the Trustee in one lot or in lots from time to time, may be of such denominations and may be in the form of definitive bonds and/or temporary bonds as the Company shall elect; and at any time and from time to time after the delivery to the Trustee of any of said $11,500,000 bonds, the Trustee shall, upon the written request of the Company, signed by the President of the Company or by one of its Vice-Presidents, authenticate and deliver to or upon the written order of the officer of the Company who signed such request, such total principal amount of said bonds as is therein requested, until the whole of said $11,500,000 bonds shall have been authenticated and delivered: Provided only that with every such request there shall also be delivered to the Trustee a certificate constituting evidence of the authorization or approval of or consent to the issue of such bonds by the Railroad Commission of Wisconsin or any other governmental body at the time having jurisdiction in the premises, together with an opinion of counsel selected by the Company and acceptable to the Trustee, who may be counsel for the Company, that the same is sufficient for the purpose, or the opinion of such counsel that no such authorization, approval or consent is required. The remaining $13,500,000 principal amount of bonds of the 4½% Series due 1967 may, as provided

WG-ANR-00081631

for in Section 2 of this Article III, be authenticated and delivered by the Trustee as provided for in Articles IV and VI of this indenture.

SECTION 8. If pending the preparation of definitive bonds the Company shall elect to execute and deliver to the Trustee for authentication any bonds of the 4½% Series due 1967 in the form of temporary bonds the same may be in substantially the form following:

[TEMPORARY BOND—EXCHANGEABLE FOR DEFINITIVE BOND]

## UNITED STATES OF AMERICA

### STATE OF WISCONSIN

## MILWAUKEE GAS LIGHT COMPANY

### FIRST MORTGAGE GOLD BOND 4½% SERIES DUE 1967

No.......... $..........

MILWAUKEE GAS LIGHT COMPANY, hereinafter called the Company, a corporation of the State of Wisconsin, for value received hereby promises to pay to bearer or, if this bond be registered, to the registered holder hereof on March 1, 1967, at the principal office of the Trustee, or at the option of the bearer or registered holder, at the office or agency of the Company in the Borough of Manhattan in the City of New York, the sum of                    Dollars in gold coin of the United States of America of or equal to the standard of weight and fineness as it existed on March 1, 1927, and to pay interest thereon from March 1, 1927, at the rate of Four and one-half per cent. per annum in like gold coin at the said office of the Trustee, or at the aforesaid office or agency of the Company, on                    , 19    , (and on                    , 19    ,) but only upon presentation and surrender of the interest coupon(s) therefor hereto attached (as they severally mature), and thereafter on the first day of                    and on the first day of                    in each year until the Company's obligation with respect

WG-ANR-00081632

to the payment of said principal sum shall have been discharged, but only upon presentation of this bond for notation hereon of the payment of such interest.

This bond is a temporary bond and is one of an authorized issue known as First Mortgage Gold Bonds, issued and to be issued in one or more series under and all equally and ratably secured by an indenture of mortgage dated February 15, 1927, duly executed by the Company to The Union Trust Company of Pittsburgh, as Trustee, to which reference is hereby made for a description of the properties mortgaged, the nature and extent of the security and the rights of the holders of said bonds and of the Trustee in respect of such security. As provided in said indenture, said bonds may be for various principal sums and are issuable in series, which may mature at different times, may bear interest at different rates and may otherwise vary as therein provided; and this bond is one of a series entitled "First Mortgage Gold Bonds 4½% Series due 1967," which have been authorized for an aggregate principal amount of $25,000,000 as provided for in Article III of said indenture.

The interest on this bond is payable without deduction for any income tax imposed thereon by the United States of America, except any excess of such income tax over two per cent. per annum, which the Company or the Trustee or any paying agent may be required or authorized to pay or retain from such interest by any present or future law of the United States of America; and in Article III, Section 5 of said indenture the Company has covenanted to reimburse to owners of bonds of this series, resident in the respective states, the amounts of the following taxes paid with respect to such bonds or the interest thereon: the so-called Four Mills tax in Pennsylvania and any Massachusetts income tax not exceeding six per cent. of the interest on the bonds in any year, but in each case only upon written request made as provided therein and subject to the terms and conditions therein set forth.

This bond may at the option of the Company be redeemed at any time prior to and including March 1, 1966, upon payment of the principal and accrued interest to the date of redemption together with a premium which shall be as follows: Seven and one-half per cent. of the principal if the date of redemp-

WG-ANR-00081633

tion be on or before March 1, 1937; Five per cent. if after March 1, 1937 and on or before March 1, 1947; Two and one-half per cent. if after March 1, 1947 and on or before March 1, 1966. After March 1, 1966, this bond may at the option of the Company be redeemed at any time upon payment of the principal and accrued interest to the date of redemption without any premium. Any such redemption shall be upon sixty days' prior notice and as fully set forth in Article III, Section 3 of said indenture which also sets out the manner, terms and conditions of redemption.

In case an event of default as defined in said indenture shall occur, the principal of this bond may become or be declared due and payable in the manner, with the effect and subject to the conditions provided in said indenture.

This bond is transferable by delivery, unless registered as to principal at the principal office of the Trustee or at the office or agency of the Company in the Borough of Manhattan, in the City of New York, on books of the Company to be kept thereat for that purpose and such registry noted hereon. After such registration no transfer shall be valid unless made upon said books by the registered holder in person, or by attorney duly authorized, and similarly noted hereon; but this bond may be discharged from registration by being in like manner transferred to bearer, and thereupon transferability by delivery shall be restored, after which this bond may again from time to time be registered or made transferable to bearer as before. Such registration however shall not affect the negotiability of the coupon(s) for interest hereto attached, which shall always be payable to bearer and transferable by delivery merely, and payment to the bearer thereof shall fully discharge the Company in respect of the interest therein mentioned, whether the principal of this bond be registered or not. The Company and the Trustee may deem and treat the bearer of this bond, or, if this bond be registered as to principal as herein authorized, the person in whose name the same is registered, as the absolute owner hereof for the purpose of receiving payment hereof and on account hereof and for all other purposes.

In the manner and upon payment of the charges prescribed in said indenture definitive coupon bonds of the $4\frac{1}{2}\%$ Series

WG-ANR-00081634

due 1967 upon surrender thereof to the Trustee with all unmatured coupons attached are exchangeable for a like aggregate principal amount of definitive coupon bonds of the same series in any other authorized denominations with all unmatured coupons attached or for a like aggregate principal amount of definitive registered bonds without coupons of the same series of any authorized denominations; and in like manner definitive registered bonds without coupons of the $4\frac{1}{2}\%$ Series due 1967 upon surrender thereof to the Trustee together with a written instrument of transfer in form approved by the Company, duly executed by the registered holder are exchangeable for a like aggregate principal amount of definitive registered bonds of the same series of any other authorized denominations or for a like aggregate principal amount of definitive coupon bonds of the same series of any authorized denominations with all unmatured coupons attached.

No recourse shall be had for the payment of the principal of or interest on this bond or for any claim based hereon or otherwise in respect hereof, or for any claim based on said indenture, against any incorporator, or any past, present or future subscriber to capital stock, stockholder, director or officer of the Company, or of any predecessor or successor corporation, whether for amounts unpaid on stock subscriptions or by virtue of any constitution, statute or rule of law, or by the enforcement of any assessment or penalty or otherwise howsoever; all such liability being, by the acceptance hereof and as a part of the consideration of the issue hereof, expressly waived and released by every holder hereof, as more fully provided in said indenture.

As provided in said indenture, this temporary bond is exchangeable for a definitive bond or bonds of the same series of a like aggregate principal amount when such definitive bonds are prepared and ready for delivery.

This bond shall not become obligatory until the Trustee under said indenture, or its successor thereunder, shall have signed the form of certificate endorsed hereon.

IN WITNESS WHEREOF, MILWAUKEE GAS LIGHT COMPANY has caused this bond to be signed in its name by its President or one of its Vice-Presidents, and its corporate seal to be here-

WG-ANR-00081635

unto affixed and attested by its Secretary or one of its Assistant Secretaries, and coupon(s) for said interest due (and ) bearing the facsimile signature of its Treasurer to be hereunto attached, as of March 1, 1927.

MILWAUKEE GAS LIGHT COMPANY,

By ........................
President

Attest:

........................
Secretary.

[FORM OF INTEREST COUPON]

No. .......... $..........

On the day of , 19 , upon surrender of this coupon, MILWAUKEE GAS LIGHT COMPANY will pay to bearer, at the principal office of the Trustee, or at the option of the holder, at the office or agency of the Company in the Borough of Manhattan, City of New York,
Dollars in gold coin of the United States of America of the standard of weight and fineness as it existed on March 1, 1927, without deduction for any income tax imposed thereon by the United States of America up to but not in excess of two per cent. of said sum, being six months' interest then due on its temporary First Mortgage Gold Bond $4\frac{1}{2}\%$ Series due 1967, Number , unless said bond shall have been called for previous redemption and payment duly provided therefor.

........................
Treasurer.

WG-ANR-00081636

57

[FORM OF TRUSTEE'S CERTIFICATE]

This bond is one of the temporary bonds of the series designated therein, described in the within mentioned indenture.

THE UNION TRUST COMPANY OF PITTSBURGH,
as Trustee

By ........................

Temporary bonds of the $4\frac{1}{2}\%$ Series due 1967 may be in such denominations and with or without one or more coupons as the Company shall from time to time determine.

If any such temporary bonds of said series shall at any time be so delivered to the Trustee for authentication and be authenticated, the Company shall without unreasonable delay at its own expense prepare, execute and deliver to the Trustee and thereupon, upon the presentation and surrender of temporary bonds, the Trustee shall authenticate and deliver in exchange therefor definitive bonds of the same series for the same principal sum in the aggregate as the temporary bonds surrendered. All temporary bonds so surrendered shall be forthwith canceled by the Trustee and delivered to or upon the order of the Company. Until exchanged for definitive bonds the temporary bonds shall in all respects be entitled to the lien and security of this indenture.

## ARTICLE IV.

### BETTERMENT BONDS.

SECTION 1. In addition to authenticating and delivering bonds under any other provision of this indenture, the Trustee may authenticate and deliver bonds issuable under this indenture for an aggregate principal amount equal to but not exceeding Eighty per centum of the net amount (as defined in Section 3 of this Article IV) of additional property (as defined in Section

WG-ANR-00081637

2 of this Article IV) which the Company may purchase, construct or otherwise acquire subsequent to January 1, 1928, and such bonds so to be authenticated and delivered are hereafter in this indenture sometimes called Betterment bonds.

Betterment bonds may be bonds of the 4½% Series due 1967, if any thereof are then available for issue, and/or of any other series of bonds then issuable under this indenture.

Betterment bonds shall be authenticated and delivered by the Trustee as provided for in Section 4 of this Article IV.

SECTION 2. The term "additional property" shall, for all purposes of this indenture, mean and comprise only physical property (including in this term plants and systems) of a permanent nature, and permanent physical betterments, extensions, improvements and additions (including in these terms equipment and appliances) of, upon and to the property of the Company, purchased, constructed or otherwise acquired by the Company subsequent to January 1, 1928 and subject to the lien of this indenture, and used or useful by or to the Company in the business of generating, manufacturing, distributing and/or supplying light, heat and/or power to the public by means of gas and/or electricity or otherwise.

Additional property

(a) need not consist of a specific or completed development, plant, extension, addition, betterment or improvement, but may include additional construction work or partially completed construction work, or any such work as conforms to the provisions hereof, whether capable of specific description or not, such as is ordinarily carried in plant or plant addition accounts by companies carrying on a business similar to that of the Company;

(b) may include property purchased, constructed or otherwise acquired to renew, replace, or in substitution

WG-ANR-00081638

for, property worn-out, discontinued or abandoned, but only to the extent that the expenditures for such renewals, replacements or substitutions shall exceed the original cost to the Company of the property so renewed, replaced or substituted and shall not include any expenditures for maintenance or repairs or other expenses which, in the ordinary practice of companies carrying on a business similar to that of the Company, are charged to operating expenses or any expenditures which under such practice are not charged to plant or plant addition accounts;

(*c*) may include acquired plants and systems. The term "acquired plant or system," wherever used in this indenture, means a plant or system purchased or acquired and owned by the Company, but not originally constructed or installed by the Company;

(*d*) shall not include stocks, bonds or other securities;

(*e*) may include property and/or acquired plants or systems at the time subject to liens prior to the lien of this indenture and betterments, extensions and improvements thereof and additions thereto.

SECTION 3. (1) The gross amount of additional property shall be the actual cost thereof to the Company or the fair value thereof to the Company, whichever shall be the less amount.

The actual cost to the Company of any acquired plant or system shall be deemed to include the cost of any franchises or other rights acquired simultaneously therewith for which no separate or distinct consideration shall have been paid or apportioned.

The actual cost to the Company of any property part of which constitutes additional property and part does not, and all

WG-ANR-00081639

of which is acquired for a consideration not divided between the two such parts thereof, shall in all cases be properly allocated by the Company.

The actual cost to the Company of additional property which is at the time subject to any liens prior to the lien of this indenture shall be determined, for all purposes of this indenture, by adding the amount of such liens to the price paid by the Company for such additional property.

The fair value to the company of additional property shall in each case be determined as of the date of the Certificate of Additional Property hereinafter provided for, except that the fair value of any additional property of the character specified in sub-divisions *a, b,* and *c* of sub-division 2 of this section 3 shall be determined as of the date on which such additional property became additional property of the character specified in such sub-divisions respectively.

The fair value to the Company of any acquired plant or system shall be determined by giving consideration only to the value to the Company of the physical property acquired.

The fair value to the Company of any property part of which constitutes additional property and part does not, shall in all cases be properly allocated by the Company.

The fair value to the Company of additional property which is, at the time of the determination of such fair value, subject to any liens prior to the lien of this indenture, shall be determined as if such property were free from liens.

Such fair value shall for all purposes of this indenture be determined and established in every case by an affidavit signed and verified by the President, or a Vice-President, of the Company and by an engineer selected by the Company and acceptable to the Trustee, who may be in the employ of or under retainer from the Company, stating their opinion of such fair value.

WG-ANR-00081640

61

(2) The net amount of additional property for any period stated in a certificate of additional property pursuant to Section 4 of this Article IV, shall be the gross amount thereof less the following deductions: (*a*) The actual cost or fair value, whichever is more, of all additional property as defined in Section 2 of this Article IV, and of all property subject to the lien of this indenture on January 1, 1928, renewed, replaced, permanently discontinued or abandoned by the Company during such period, (*b*) the actual cost or fair value, whichever is more, of all such property taken in exercise of the power of eminent domain or of a governmental power to purchase, or sold, exchanged or otherwise disposed of, during such period free from the lien of this indenture, and (*c*) the actual cost or fair value, whichever is more, of all other items of such property, if any, which, in the ordinary practice of companies carrying on a business similar to that of the Company, are credited to plant or plant addition accounts during such period. As respects any property owned at the date of this indenture "original cost" means the cost or value at which the same is carried on the books of account of the Company at the date of this indenture. In case the cost or value of any such property is not separately carried on such books of account, the same shall be determined by the Company in accordance with the ordinary practice of companies carrying on a business similar to that of the Company.

SECTION 4. Betterment bonds of such aggregate principal amount as shall be requested by the Company shall, from time to time, be authenticated and delivered by the Trustee whenever there shall have been furnished to the Trustee the writings, or such thereof as shall in any instance be applicable and appropriate, and cash, if any, hereinafter in this Section 4 mentioned and described as (1) Certificate of additional property, (2) Resolution of directors, (3) Application for bonds, (4) Supple-

WG-ANR-00081641

mental Certificate, (5) Certificate of authority, (6) Conveyances of additional property, (7) Opinion on titles, and (8) Cash to provide for prior liens.

### (1) CERTIFICATE OF ADDITIONAL PROPERTY.

A certificate, signed and verified by the President, or a Vice-President, and the Treasurer, or an Assistant Treasurer, of the Company, and by an engineer selected by the Company and acceptable to the Trustee, who may be in the employ of or under retainer from the Company, setting out and/or stating and/or certifying as follows:

(*a*) An initial date and a terminal date of a period during which the Company has purchased, constructed or otherwise acquired additional property, as additional property is defined in Section 2 of this Article IV.

(*b*) The gross amount of additional property so purchased, constructed or otherwise acquired by the Company during such period:

Such gross amount shall, as provided in Section 3 of this Article IV, be the actual cost thereof to the Company or the fair value thereof to the Company, whichever shall be the lesser amount; and the certificate shall state whether the gross amount set out therein is such actual cost or is such fair value, and if such gross amount shall be such fair value there shall be attached to the certificate an affidavit establishing such fair value as provided for in said Section 3 of this Article IV; and

In case such gross amount shall be the actual cost to the Company of such additional property it shall be stated in the certificate as one single sum: but there shall also be attached to the certificate a schedule of accounts which shall set out (1) the titles of the accounts to which such actual cost has been debited on the Company's books of account in the regular course

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 27 of 111   Document 50-11

WG-ANR-00081642

of business in accordance with its accustomed accounting practice, and (2) the total amount so debited to each such account during said period, the sum of which amounts so debited shall equal the one single sum stated in the certificate; and

In case such gross amount shall be the fair value to the Company of such additional property, instead of the actual cost thereof, it shall be stated in the certificate as one single sum; but, in addition to the affidavit establishing such fair value as provided for in said Section 3 of this Article IV, there shall also be attached to the certificate a schedule of accounts made up, as nearly as may be, in the same form as the schedule hereinbefore provided for in the case of actual cost, and showing the amount of such fair value as if distributed over and/or debited to the appropriate accounts in the schedule, the sum of which amounts so distributed and/or debited shall equal the one single sum stated in the certificate; and

If in either case such gross amount shall include any acquired plant or system it shall be set out in the schedule as a separate item under an appropriate title, and there shall also be attached to the certificate a general description of such acquired plant or system, and if any such acquired plant or system shall be subject to any liens prior to the lien of this indenture the principal amounts thereof shall also be stated in the schedule, and there shall be attached to the certificate copies of the instruments evidencing such liens which shall be certified as correct by one of the officers signing the certificate; and

If in either case such gross amount shall include any property, other than an acquired plant or system, at the time subject to liens prior to the lien of this indenture such property shall be set out in the schedule as a separate item under an appropriate title, and the principal amount of such liens shall be set out in the schedule, and there shall be attached to the certificate copies of the instruments evidencing such liens which shall be certified as correct by one of the officers signing the certificate; and

WG-ANR-00081643

In any certificate and in the schedule attached thereto such gross amount of additional property may be stated, set out and shown in part as the actual cost thereof to the Company and in part as the fair value thereof to the Company.

(c) The deductions from such gross amount which are provided for in said Section 3 of this Article IV.

The total of such deductions shall be stated in the certificate in one single sum; but in the schedule attached to the certificate as hereinbefore provided for, said deductions shall be shown as the total of the amounts which, during said period, have been, in the Company's regular course of business and according to its accustomed accounting practice, credited on its books of account to any one or more of the accounts shown in said schedule, the sum of which amounts so credited shall equal the one single sum stated in the certificate.

(d) The net amount of such additional property which, as provided for in said Section 3 of this Article IV, shall be the gross amount thereof less the aforesaid deductions.

Said net amount shall be stated in the certificate as one single sum; but in the schedule attached to the certificate as hereinbefore provided for, there shall be set out the differences between the amounts there shown as debited and the amounts there shown as credited, and the sum of such differences shall equal the one single sum stated in the certificate.

(e) That to the knowledge of the signers of the certificate the Company owns and has good title to the additional property included in the net amount stated in the certificate and schedule; that the same is subject to the lien of this indenture; that the same is not subject to any lien prior to the lien of this indenture other than

WG-ANR-00081644

65

such liens as are stated in the certificate or schedule or in previous certificates or schedules, and other than undetermined liens or charges, if any, incidental to construction, and liens, if any, for current taxes.

(*f*) That the additional property included in the net amount stated in the certificate and schedule is used or useful by or to the Company in the business of manufacturing, distributing and/or supplying light, heat and/or power to the public by gas and/or electricity or otherwise, and that no part of the cost thereof or the expenditures made therefor, included in the certificate and schedule, was properly chargeable to maintenance or repairs or other expense which, in the ordinary practice of companies carrying on a business similar to that of the Company, was chargeable to operating expense, and that no expenditures are included in the certificate and schedule which under like practice are not chargeable to plant or plant addition accounts.

(*g*) That the additional property included in the net amount stated in the certificate and schedule includes no leased plant or system or any betterments, extensions, improvements or additions of, upon or to any such leased plant or system.

### (2) RESOLUTION OF DIRECTORS.

A copy of a resolution of the Board of Directors of the Company, certified under its corporate seal by its Secretary or an Assistant Secretary, authorizing the authentication and delivery of Betterment bonds of an aggregate principal amount not exceeding 80% of any unused balance of the net amount of additional property shown by the current Certificate of additional property and all preceding certificates. The resolution shall also specify the particular series or the several series

WG-ANR-00081645

of the bonds to be so authenticated and delivered, and shall designate an officer or officers of the Company to whom or upon whose order such bonds are to be delivered. The authograph signature of such officer or officers shall be appended to the certified copy of the resolution furnished to the Trustee, and shall be certified by the officer certifying the resolution.

### (3) APPLICATION FOR BONDS.

An application, signed by the officer or officers designated in the Resolution of Directors, requesting the authentication and delivery of an aggregate principal amount of bonds not exceeding the amount authorized by the resolution, and specifying the series or series and the denominations of the bonds so requested. Such bonds may be requested as coupon bonds and/or registered bonds without coupons, if such bonds are provided for with respect to the particular series requested. One or more applications may be made under any such resolution, provided the total amount of bonds applied for does not exceed the amount authorized by the resolution.

### (4) SUPPLEMENTAL CERTIFICATE.

Each application shall be accompanied by a certificate signed and verified by the President or a Vice-President and the Treasurer or an Assistant Treasurer of the Company stating that no part of the net amount of additional property made the basis of the application has been previously used as the basis for the authentication and delivery of bonds hereunder or the payment of cash deposited with and held by the Trustee under any provision of this indenture (other than the payment of cash representing the proceeds of insurance or release of or other disposition of property purchased, constructed or otherwise acquired subsequently to January 1, 1928, but not used prior to such release or other disposition or the event which

WG-ANR-00081646

67

resulted in the payment of insurance as the basis for the authentication and delivery of bonds or withdrawal of cash or release of property under any of the provisions hereof).

### (5) CERTIFICATE OF AUTHORITY.

A certificate constituting evidence of the authorization of, approval of or consent to the issue and sale of the bonds applied for by the Railroad Commission of Wisconsin or any other governmental body at the time having jurisdiction in the premises, together with an opinion of counsel selected by the Company and acceptable to the Trustee, who may be counsel for the Company that the same is sufficient for the purpose, or the opinion of such counsel that no such authorization, approval or consent is required.

### (6) CONVEYANCES OF ADDITIONAL PROPERTY.

All such deeds, conveyances, transfers or instruments of further assurance as may be necessary for the purpose of effectually subjecting to the lien of this indenture the additional property described in the Certificate of Additional Property and in the schedule thereto attached and included in the net amount, together with an opinion of counsel selected by the Company and acceptable to the Trustee, who may be counsel for the Company, that the same are sufficient for the purpose, or the opinion of such counsel that no such deeds, conveyances, transfers or instruments are necessary.

### (7) OPINION ON TITLES.

An opinion of counsel selected by the Company and acceptable to the Trustee, who may be counsel for the Company, stating: (1) that the Company has acquired good title to any acquired plant or system or real estate mentioned and described in the Certificate of Additional Property and in the schedule

WG-ANR-00081647

thereto attached; (2) that the additional property mentioned and described in said certificate and schedule and included in the net amount is subject to the lien of this indenture and free and clear of liens prior to the lien of this indenture other than prior liens mentioned in said certificate and schedule; and (3) that the Company has corporate power and all necessary permission from governmental authorities to own and operate the same.

### (8) CASH TO PROVIDE FOR PRIOR LIENS.

An amount in cash equal to the principal amount of all prior liens, if any, mentioned in said certificates and opinion, such cash to be held by the Trustee subject to the provisions of Article V hereof.

SECTION 5. Betterment bonds shall from time to time be authenticated and delivered by the Trustee in advance of the purchase, construction or other acquisition of additional property and/or of the filing of the writings provided for in Section 4 of this Article IV, upon the deposit with the Trustee of cash equal to the aggregate principal amount of the bonds to be authenticated and delivered. Pending such authentication and delivery of bonds, any cash so deposited with the Trustee shall be held by the Trustee as part of the trust estate.

Whenever the Company shall thereafter be or become entitled to the authentication and delivery of bonds under the provisions of said Section 4 of this Article IV, the Trustee shall pay over to the Company, or upon its order, in lieu of the bonds to the authentication and delivery of which the Company may then be so entitled, cash so deposited to an amount equal to the aggregate principal amount of such bonds, upon compliance by the Company with the provisions of said Section 4 of this Article IV, (provided that the application for bonds, referred to in said Section 4, shall be in the form of an application for cash instead of for bonds) and upon receipt of an opinion of counsel selected

WG-ANR-00081648

by the Company and acceptable to the Trustee, who may be counsel for the Company, that the writings to be furnished or previously furnished the Trustee conform to the requirements of this indenture and constitute sufficient authority under this indenture to the Trustee to pay over the cash applied for.

## ARTICLE V.

### DEPOSITS OF CASH TO PROVIDE FOR PRIOR LIENS ON ADDITIONAL PROPERTY.

SECTION 1. All cash paid to the Trustee under the provisions of subdivision 8 of Section 4 of Article IV hereof shall be applied by the Trustee to the payment of the prior lien or liens with respect to which the same shall have been deposited with the Trustee and on the cancellation of such prior lien or liens the cash so deposited, or, on the satisfaction thereof from the cash so deposited any balance that may remain therefrom, shall be repaid by the Trustee to the Company.

## ARTICLE VI.

### BONDS TO REFUND OR REPLACE BONDS ISSUED HEREUNDER.

SECTION 1. Bonds issuable under and secured by this indenture shall, from time to time, be authenticated and delivered by the Trustee to refund or replace bonds theretofore authenticated and delivered by the Trustee and secured hereby. Such bonds are hereinafter called Refunding Bonds and shall be so authenticated and delivered only as provided for in this Article VI.

SECTION 2. If at any time, or from time to time, before, at or after the maturity of any bonds secured by this indenture theretofore authenticated and delivered by the Trustee, the Company shall deliver or cause to be delivered to the Trustee any of such bonds, either in negotiable form or cancelled,

WG-ANR-00081649

together with all unmatured (if any) coupons thereto appertaining, the Trustee shall authenticate and deliver in exchange therefor an equal principal amount of Refunding Bonds, which shall be of such series then issuable under this indenture as the Company shall request:

Provided only that whenever any such bonds shall be so delivered to the Trustee for exchange for Refunding Bonds, there shall also be delivered to the Trustee, (1) either a certificate constituting evidence of the authorization or approval of or consent to the issue of such Refunding Bonds by the Railroad Commission of Wisconsin or any other governmental body at the time having jurisdiction in the premises, together with an opinion of counsel selected by the Company and acceptable to the Trustee, who may be counsel for the Company, that the same is sufficient, or the opinion of such counsel that no such authorization, approval or consent is required, and (2) a duly certified copy of a resolution of the Board of Directors of the Company requesting the Trustee to so authenticate and deliver such Refunding Bonds and specifying the series of the same.

Any bonds delivered to the Trustee in exchange for Refunding Bonds under this Section 2 shall, if cancelled when so delivered, be redelivered to the Company by the Trustee; and if not cancelled when so delivered, shall be cancelled by the Trustee and be delivered to the Company.

SECTION 3. If at any time, or from time to time, before, at or after the maturity or date of redemption of any bonds secured by this indenture theretofore authenticated and delivered by the Trustee the Company shall deposit or cause to be deposited with the Trustee an amount of cash equal to the principal (and premium, if any) of any of such bonds and the interest thereon to maturity or date of redemption, as the case may be, the Trustee shall authenticate and deliver Refunding Bonds of a principal amount equal to the principal amount of

WG-ANR-00081650

71

the bonds in respect whereof such cash was so deposited, which Refunding Bonds shall be of such series then issuable under this indenture as the Company shall request;

Provided only that whenever any cash shall be so deposited with the Trustee for the authentication and delivery of Refunding Bonds, there shall also be furnished to the Trustee, (1) either a certificate constituting evidence of the authorization or approval of or the consent to the issue of such Refunding Bonds by the Railroad Commission of Wisconsin or any other governmental body then having jurisdiction in the premises, together with an opinion of counsel selected by the Company and acceptable to the Trustee, who may be counsel for the Company, that the same is sufficient, or the opinion of such counsel that no such authorization, approval or consent is required, and (2) a duly certified copy of a resolution of the Board of Directors of the Company requesting the Trustee to so authenticate and deliver such Refunding Bonds and specifying the series of the same.

If any cash shall be deposited with the Trustee as provided for in this Section 3, the bonds in respect whereof the same shall be so deposited shall cease to be obligations of the Company and shall no longer be entitled to the benefit of the lien of this indenture, and the holders thereof shall look only to the Trustee for the payment of the principal thereof and the interest thereon; and if any cash so deposited shall be in respect of any bond of which the principal shall not have become due, or redeemable, the holder thereof shall have the right at his option to demand and receive payment of the principal of his bond (and premium, if any) at any time before the same is due or redeemable, together with interest thereon to the date of payment of the principal, at the rate specified in the bond, and any balance of cash deposited in respect of interest shall be forthwith returned to the Company by the Trustee.

WG-ANR-00081651

All bonds paid by the Trustee out of cash deposited under Section 3 shall be cancelled by the Trustee and delivered to the Company.

## ARTICLE VII.

### REDEMPTION OR PURCHASE OF BONDS.

SECTION 1. In case the Company shall desire to redeem and pay off all or any part of the bonds of the $4\frac{1}{2}\%$ Series due 1967, it shall proceed as provided for in Article III Section 3 of this indenture.

SECTION 2. In case the Company shall desire to exercise the right to redeem and pay off all or any part of the bonds of any series other than the $4\frac{1}{2}\%$ Series due 1967, in accordance with the right so to do reserved in the indenture supplemental to this indenture by which such series of bonds was created, the Company shall proceed as provided for in such supplemental indenture.

SECTION 3. The Company may publish notice at such times and at such place or places as the Board of Directors of the Company may determine, inviting sealed proposals to be made to the Trustee on or before a date therein designated for the sale to the Company of bonds of any particular series or of such one or more series as shall be therein specified, on a date thereir specified, at prices not to exceed the respective redemption prices of the bonds to be purchased, or if not by their terms redeemable, at not to exceed one hundred and ten per cent. of the principal amount thereof and accrued interest, or not to exceed any lower price or prices which may be designated in such notice, and upon such other terms, if any, as may be specified in such notice. Such notice shall state either the principal amount of bonds to be retired or the amount of funds to be applied to such purpose. From the bonds so offered in response to such notice,

WG-ANR-00081652

and upon the terms set forth in such notice, the Trustee shall accept such bonds as are offered at the lowest prices, to the amount to be retired or to an amount sufficient to exhaust the funds so available for such purpose as nearly as may be, and shall forthwith send notice of such acceptance to all bond-holders whose offerings have been accepted. Any offer shall be deemed to be of all or any of the bonds so offered whether so expressed or not. The bonds so accepted shall thereupon become payable at the date of purchase specified in such notice at the respective prices offered to and accepted by the Trustee, provided sufficient funds for the payment thereof shall have been deposited with the Trustee on or before said date. The Company may direct the Trustee to apply to such purpose any moneys theretofore deposited with or held by the Trustee and available for such purpose. The Trustee, if authorized by the Company, may also apply any such funds or any other funds which the Company may deposit with the Trustee for such purpose, to the purchase of bonds issued hereunder in the market, at public or private sale, without notice, at a price or prices not exceeding the limitations hereinabove provided.

SECTION 4. All bonds redeemed or purchased under this Article VII shall be cancelled by the Trustee and shall be delivered to or upon the written order of the Company.

## ARTICLE VIII.

### COVENANTS.

SECTION 1. The Company covenants and agrees that it will promptly pay the interest on and principal of all bonds issued hereunder at the dates and places and in the manner and upon the terms specified in the bonds and the coupons thereto annexed, according to the true intent and meaning thereof; that it will not issue or permit to be issued any bonds hereunder in any

WG-ANR-00081653

manner other than in accordance with the provisions of this indenture and that it will faithfully observe and perform all the conditions, covenants and requirements of this indenture and of all indentures supplemental hereto and of the bonds issued hereunder; and the Company further covenants and agrees that if any additional property, as defined in Article IV, Section 2, which the Company may acquire subsequent to January 1, 1928, shall when so acquired be subject to any liens which will be prior to the lien of this indenture, the Company will not permit any default under any such prior lien to occur and continue for the period of grace, if any, specified in the instrument securing such prior lien.

SECTION 2. The Company covenants that it will keep an office or agency, while any of the bonds issued hereunder are outstanding, at any and all places in which the principal or interest of any of said bonds shall be payable, where notices, presentations and demands to or upon the Company in respect of such bonds or coupons as may be payable at such places or in respect of this indenture may be given or made, and for the payment of the principal thereof and interest thereon. The Company will from time to time give the Trustee written notice of the location of such office or offices or agency or agencies, and in case the Company shall fail to maintain such office or offices or agency or agencies or to give the Trustee written notice of the location thereof, any such notice, presentation or demand in respect of said bonds or coupons or of this indenture may be given or made, unless other provision is expressly made herein, to or upon the Trustee at its principal office, and the Company hereby authorizes such presentation and demand to be made to and such notice to be served on the Trustee in either of such events, and the principal of and interest on said bonds shall in such event be payable at said office of the Trustee.

WG-ANR-00081654

75

SECTION 3. The Company covenants that books of record and account will be kept in which full, true and correct entries will be made of all dealings or transactions of or in relation to the plants, properties, business and affairs of the Company and that all books, documents and vouchers relating to the plants, properties, business and affairs of the Company shall at all reasonable times be open to the inspection of such reputable accountants or other agent of recognized standing as the Trustee may from time to time designate. The Trustee shall be under no obligation to cause any such inspection to be made unless requested so to do by the holders of not less than twenty-five per centum (25%) in principal amount of the bonds then outstanding hereunder.

SECTION 4. The Company covenants and agrees that it is lawfully seized and possessed of the trust estate, free and clear of liens or encumbrances except taxes for the current year; that it has a good right and lawful authority to sell, convey and mortgage the trust estate; and that it will warrant and defend the trust estate, and the lien of the Trustee thereon and the interest of the Trustee therein, unto the Trustee, its successors and assigns, for the benefit of the holders of the bonds issued hereunder, against all claims and demands of any persons whomsoever; provided, however, that nothing in this indenture contained shall prevent the Company from hereafter acquiring any property subject to an existing mortgage or other encumbrance thereon and holding the same subject to such mortgage or other encumbrance.

SECTION 5. The Company covenants and agrees that it will hereafter, from time to time, whenever reasonably requested by the Trustee, make, do, execute, acknowledge and deliver, or cause to be made, done, executed, acknowledged and delivered, any and all such further and other acts, deeds, conveyances, transfers and assurances as may be necessary or proper for the

WG-ANR-00081655

better assuring and confirming unto the Trustee all or any part of the trust estate, whether now or hereafter owned or acquired by the Company, or to facilitate the execution of this trust or to secure the rights and remedies of the holders of the bonds issued hereunder.

SECTION 6. The Company covenants and agrees that it will cause this indenture and every additional instrument which shall be executed pursuant to the provisions hereof, to be recorded, registered, and/or filed and to be re-recorded, re-registered and/or re-filed both as a mortgage of real estate and of personal property, in such manner, in such places and at such times, as may be required by law and as may be necessary to preserve and to protect the security of the bonds issued here-under, the lien hereof on the trust estate, and the rights and remedies of the Trustee and of the bondholders; and that it will pay any and all recording taxes and charges and any mort-gage or other tax legally due upon the recording hereof, and will pay any further mortgage or other tax legally due at any time hereafter upon the issue of any bonds, and will comply with the requirements of any and every mortgage recording tax law or similar law affecting the due record of this indenture.

SECTION 7. The Company covenants and agrees that, except as in this indenture otherwise permitted, it will, at its own cost and expense, do or cause to be done all things necessary to pre-serve, extend and renew its corporate existence and to preserve and to keep in full force and effect, all its rights, franchises and privileges, and that it will diligently preserve all rights, franchises and privileges to it granted and on it conferred by law or otherwise, and will take all practicable means to procure extensions or renewals of all franchises, the continuance of which shall be deemed advantageous by the Company, and will

WG-ANR-00081656

comply with laws of any State wherein the Company may conduct its business and with the laws of the United States of America.

SECTION 8. The Company covenants and agrees that it will not create or suffer to be created or to accrue, any lien or charge of equal rank with or having priority to or preference over the lien of this indenture upon the trust estate or any part thereof, or upon the income and profits thereof, except any mortgage or other lien on any property hereafter acquired by the Company which may exist at the date of the acquisition of such property by the Company; that it will not do or omit to do, or suffer to be done or omitted to be done, any matter or thing whatsoever whereby the lien of this indenture might or could be lost or impaired; and that it will pay, or cause to be paid, or will make adequate provision for the satisfaction and discharge of, all lawful claims and demands for labor, materials, supplies or other objects which, if unpaid, might by law be given precedence to or an equality with this indenture as a lien or charge upon the trust estate or any part thereof or the income and profits thereof; provided, however, that nothing in this indenture shall require the Company to pay, discharge or make provision for any such lien, charge, claim or demand so long as the Company shall in good faith contest the validity thereof.

SECTION 9. The Company covenants and agrees that it will, from time to time, promptly pay and discharge all taxes, assessments and other governmental charges, the lien whereof would be prior to the lien hereof, lawfully imposed upon the trust estate or any part thereof, or upon the income and profits thereof; and also all taxes, assessments and other governmental charges lawfully imposed upon the lien or interest of the Trustee under this indenture or of the holders of the bonds issued hereunder in respect of the trust estate, so that the lien of this

WG-ANR-00081657

indenture shall at all times be wholly preserved at the cost of the Company and without expense to the Trustee or to the bond-holders; all provided, however, that nothing contained in this indenture shall require the Company to pay or discharge any such tax, assessment or governmental charge, so long as the Company shall in good faith contest the validity thereof.

SECTION 10. (1) The Company covenants and agrees that it will at all times insure and keep insured against destruction or damage by fire that part of the trust estate which is of a character customarily so insured by other companies operating like properties similarly situated. Unless otherwise required by the provisions of any mortgage or other instrument consti-tuting a lien prior to this indenture upon any part of the trust estate, all policies for such insurance shall be so drawn as to make any loss in excess of $10,000 under any policy payable to the Trustee as its interest shall appear.

In case of any loss covered by any policy of insurance, any appraisement or adjustment of such loss and settlement and payment of indemnity therefor which may be agreed upon be-tween the Company and any insurance company, may be con-sented to and accepted by the Trustee in its discretion without any investigation or inquiry whatever. The Trustee shall in no way be liable or responsible for the collection of any insurance in case of any loss.

(2) The Company shall be at liberty, however, by an inden-ture supplemental hereto. to adopt, in lieu of or supplementing such insurance, such other plan or method of protection against loss or damage by fire, whether by the establishment of an insurance reserve to be held and applied to make good fire losses, or otherwise, and upon such terms and conditions, but conform-ing to the ordinary practice of companies conducting business similar to that of the Company, as may be determined by the Board of Directors of the Company. The Company covenants

WG-ANR-00081658

that, if it shall adopt such other plan or method, it will, except as to any loss less than $10,000, pay to the Trustee an amount in cash equal to the loss sustained by reason of the destruction by fire of the property constituting part of the trust estate less any amounts paid (by any insurance company under any policies then in force on account of such loss) to the Trustee or to the trustee under any instrument constituting a prior lien, if required by the terms thereof.

The Company, if so requested in writing by the Trustee, will, subject to the requirements of any instrument securing a prior lien, once in each year cause policies for such insurance to be delivered to the Trustee for examination or inspection, which policies shall be returned to the Company within sixty (60) days from the date of the delivery to the Trustee, unless the Company shall then be in default to the knowledge of the Trustee under any of the provisions of this indenture.

There shall be deposited with the Trustee, at such times as the Trustee may demand, a detailed statement signed by the Treasurer or an Assistant Treasurer of the Company of the insurance policies then outstanding and in force upon the trust estate or any part thereof including the names of the insurance companies which have issued the policies, the amounts thereof, and the property covered thereby, together with a detailed statement signed by a Treasurer or an Assistant Treasurer of the Company of such other plan or method, if any.

All moneys which shall be received by the Trustee, pursuant to this Section 10, shall be paid or applied by the Trustee as provided in Article XII, Section 6 of this indenture.

SECTION 11. The Company covenants and agrees that it will, at all times, maintain, preserve and keep its plants, systems, buildings, fixtures, machinery, appliances, appurtenances and other property comprising the trust estate, in good repair, working order and condition, and will from time to time, make all

WG-ANR-00081659

needful and proper repairs, renewals, replacements, substitutions and alterations, so that at all times the efficiency of its plants and systems shall be fully maintained; and that it will use and apply for that purpose so much of the revenue of the trust estate as may be reasonably necessary for such maintenance.

SECTION 12. The Company covenants and agrees that in case it shall hereafter create any mortgage, other than indentures supplemental hereto, upon the trust estate or any part thereof, such mortgage shall be and shall be therein expressed to be subject to the prior lien of this indenture.

SECTION 13. If the Company shall fail to perform any of the covenants contained in Sections 7, 8, 9, 10, 11 of this Article VIII, the Trustee may make advances to perform the same on its behalf, but shall be under no obligation so to do unless requested so to do by the holders of not less than twenty-five per centum (25%) in principal amount of the bonds then outstanding hereunder and if furnished with funds for the purpose and all sums so advanced shall be at once repayable by the Company and shall bear interest at six per centum (6%) per annum until paid and shall be secured hereby, having the benefit of the lien hereby created in priority to the indebtedness evidenced by the bonds and coupons issued hereunder, but no such advance shall be deemed to relieve the Company from any default hereunder.

SECTION 14. The Company covenants that it will not go into voluntary bankruptcy or insolvency, or apply for or consent to the appointment of a receiver of itself or of its property, or make any general assignment for the benefit of its creditors or suffer to be made and remain unvacated for a period of ninety days any order for the appointment of a receiver of itself or of its property in any proceeding instituted by a creditor, or any final order for the appointment of such receiver in any other proceeding, or adjudicating it to be bankrupt or insolvent.

WG-ANR-00081660

81

## ARTICLE IX.

### REMEDIES.

SECTION 1. No coupon belonging to any bond issued hereunder, which in any way before, at or after maturity shall have been transferred or pledged separate and apart from the bond to which it relates, shall, unless accompanied by such bond, be entitled, in case of default hereunder, to any benefit of or from this indenture, except after the prior payment in full of the principal of all bonds issued hereunder and of all coupons not so transferred or pledged. No purchase or sale of coupons nor any advance or loan thereon, made by or on behalf of or at the request of or with the privity of the Company, and no redemption of coupons or any of them by any guarantor of the payment of same, shall be taken or shall operate as keeping such coupons alive or in force as a lien upon the trust estate or under this indenture as against the holders of the bonds or of the remaining coupons. In case the time for the payment of any coupon issued hereunder shall be extended, whether or not such extension be by or with the consent of the Company, such coupon so extended shall not be entitled in case of default hereunder to the benefit or security of this indenture, except subject to the prior payment in full of the principal of all bonds issued hereunder and then outstanding and of all coupons, the time for the payment of which shall not have been extended. In case bonds registered as to both principal and interest shall be issued hereunder, the provisions of this section shall apply to all claims for interest on such bonds.

SECTION 2. In case any one or more of the following events —elsewhere in this indenture sometimes termed "events of default"—shall happen and be continuing, that is to say:

(*a*) Default shall be made in the due and punctual payment of any installment of interest on any of the

WG-ANR-00081661

bonds issued hereunder when and as the same shall become due and payable as therein and herein expressed, and such default shall continue for a period of sixty (60) days;

(*b*) Default shall be made in the due and punctual payment of the principal of any of the bonds issued hereunder when and as the same shall become due and payable as therein and herein expressed or by declaration or otherwise as herein provided;

(*c*) Default shall be made in the payment of any interest upon or principal of any lien prior to the lien of this indenture existing on any additional property as defined in Article IV, Section 2, and such default shall continue for the period of grace, if any, specified in the instrument securing such prior lien.

(*d*) Default shall be made in the covenants of the Company with respect to bankruptcy or insolvency contained in section 14 of Article VIII hereof.

(*e*) Default shall be made in the covenants of the Company with respect to receivership contained in Section 14 of Article VIII hereof, and such default, at any time during the continuance thereof, shall be declared an event of default by seventy-five per centum (75%) in principal amount of the bonds issued hereunder at the time outstanding, by a writing or writings filed with the Trustee.

(*f*) Default shall be made in any other of the covenants, agreements or conditions on the part of the Company to be kept, observed and performed as provided in this indenture or in any indenture supplemental hereto, or in any of the bonds issued hereunder, and such default

WG-ANR-00081662

shall continue for a period of ninety (90) days after written notice shall have been given to the Company by the Trustee or the holders of twenty-five per cent. (25%) in principal amount of the bonds issued hereunder at the time outstanding, specifying such default and requiring the same to be remedied;

then and in each and every such case the Trustee may, and upon the request in writing of the holders of twenty-five per cent. (25%) in principal amount of the bonds issued hereunder at the time outstanding shall, by notice in writing delivered to the Company, declare the principal of all bonds issued hereunder and then outstanding, together with all accrued and unpaid interest thereon, if not already due, to be due and payable immediately; and upon any such declaration the same shall become and be due and payable immediately, anything in this indenture or in any of the bonds contained to the contrary notwithstanding.

SECTION 3. In case any one or more of the events of default enumerated in Section 2 of this Article IX shall happen and shall be continuing, then and in each and every such case the Trustee, personally or by its attorneys or agents,

I. May enter into and upon and take possession of all the trust estate and each and every part thereof, and exclude the Company, its successors or assigns, its or their agents. servants and employees wholly therefrom, and have, hold, use, operate, manage and control the same and each and every part thereof and, in the name of the Company or otherwise as it shall deem best, conduct the business thereof and exercise the franchises pertaining thereto and all the rights and powers of the Company, and use all of the then existing property, materials, current supplies, stores and other assets for that purpose, and at the expense of the trust estate, from time to time, maintain,

WG-ANR-00081663

395

restore, insure and keep insured the properties, plants, equipment and apparatus provided or required for use in connection with such business, and likewise, from time to time, at the expense of the trust estate, make all such necessary or proper repairs, renewals and replacements, and all such useful alterations, additions, betterments and improvements as to it may seem judicious, and collect and receive all tolls, earnings, income, rents, issues, profits and revenues of the same and of every part thereof, and after deducting therefrom the expenses of operation and all expenses incurred hereunder and all other proper outlays herein authorized, and all payments which may be made for taxes, assessments and other prior liens and charges upon the trust estate or any part thereof, as well as just and reasonable compensation for its own services and for the services of such attorneys, agents and assistants as it may in the exercise of its discretion employ for any of the purposes aforesaid, the Trustee shall apply the rest and residue of the moneys received by it as follows:

(a) In case the principal of any of the bonds issued hereunder shall not have become due, to the payment of the interest in default, in order of the maturity of the installments of such interest, with interest on the overdue installments thereof at the same rates, respectively, as were borne by the bonds on which such interest shall be in default; such payments to be made ratably to the parties entitled thereto, without discrimination or preference; subject, however, to the provisions of Section 1 of this Article IX.

(b) In case the principal of any of the bonds issued hereunder shall have become due, by declaration or otherwise, first to the payment of the interest in default in the order of the maturity of the installments thereof with interest on the overdue installments thereof at the same

WG-ANR-00081664

rates, respectively, as were borne by the bonds on which such interest shall be in default, and next to the payment of the principal of all bonds then due, issued hereunder with accrued interest thereon at the same rates as were borne by such bonds; such payments to be made ratably to the parties entitled thereto without discrimination or preference, subject, however, to the provisions of Section 1 of this Article IX.

In case all of such payments, and the payment of whatever may be payable for any other purpose required by any provision of this indenture, shall have been made in full, and no suit to foreclose or enforce this indenture shall have been begun or sale made as hereinafter provided, and upon compliance with all other provisions of this indenture as to which the Company shall be in default, the Trustee, after making such provision as to it may seem advisable for the payment of the next maturing installment of interest upon the bonds issued hereunder and then outstanding, shall restore the possession of the trust estate (other than any cash or securities at the time required to be held by the Trustee hereunder) to the Company or whosoever shall be entitled thereto.

II. May, with or without entry, sell, subject to the then prior liens, if any, existing thereon or free from such of said liens as it, in its discretion, may elect to discharge, to the highest and best bidder all and singular the trust estate and the entire right, title, interest, claim and demand of the Company therein and thereto, and the right of redemption thereof, at public auction, at such place, at such time and upon such terms as the Trustee may fix and briefly specify in the notice of sale to be given as herein provided, or as may be required by law.

III. May proceed to protect and enforce its rights and the rights of the bondholders under this indenture by a suit or suits

WG-ANR-00081665

in equity or at law, whether for the specific performance of any covenant or agreement contained herein or in any indenture supplemental hereto, or in aid of the execution of any power herein granted, or for the foreclosure of this indenture, or for the enforcement of any other appropriate legal or equitable remedy, as the Trustee shall deem most effectual to protect and enforce any of its duties or its or their rights hereunder.

SECTION 4. In case the Trustee shall proceed by suit or suits at law or in equity after default as above provided, the Trustee shall be entitled to have the trust estate sold by judicial sale under the order, judgment or decree of a court or courts of competent jurisdiction for or toward the satisfaction of the principal and interest then due or owing on the bonds issued hereunder then outstanding, and for the enforcement of the rights, liens and securities of the Trustee and the bondholders, and shall be entitled pending any such suit or proceedings, as a matter of right, to the appointment of a receiver of all the franchises and properties and of the rents, earnings, revenues, issues, profits and income of the Company, with such powers as the Court making such appointment may confer, whether the trust estate shall or shall not be adequate and sufficient to pay and satisfy the bonds then outstanding; but notwithstanding the appointment of any receiver, the Trustee shall be entitled as pledgee to continue to retain possession and control of any securities and cash at the time held by the Trustee.

Without in any way intending hereby to limit, restrict or circumscribe the lawful exercise of the discretion or authority of the court in the premises, the court wherein any action for the foreclosure of this indenture or for the enforcement of any right or remedy hereunder shall be pending may, in its discretion, authorize such receiver to prosecute and conduct the Company's corporate enterprise in whole or in part; and/or may in its discretion authorize such receiver to make, issue and sell his

WG-ANR-00081666

interest-bearing receiver's certificates, paramount to and displacing the lien of the bonds and coupons outstanding hereunder, in such form and on such terms as the court shall prescribe, for the purpose of supplying working capital, of paying and/or redeeming taxes or tax liens and/or other liens, of effecting and maintaining insurance, of protecting, maintaining and operating the mortgaged premises, property and enterprise, and for such other purposes as shall in the discretion of the court serve to the better protection and security of the bonds, coupons and other obligations hereby secured; and the consent of the Trustee, in its discretion, to any order authorizing the making, issuing and selling of such receiver's certificates shall be the sufficient consent thereto of all owners and holders of bonds and coupons outstanding hereunder.

SECTION 5. In the event of any sale, whether made under the power of sale herein granted or by virtue of judicial proceedings, the whole of the trust estate (including securities, if any, then held hereunder by the Trustee), shall be sold in one parcel and as an entirety, unless such sale as an entirety, in the judgment of the Trustee, shall be impracticable by reason of some statute or other cause, or unless the holders of sixty-five per cent. (65%) in principal amount of the bonds issued hereunder at the time outstanding, shall in writing request the Trustee to cause the trust estate to be sold in parcels, in which case the sale shall be made in such parcels and in such order as may be specified in such request, but, if not so specified, as the Trustee in its discretion shall deem most expedient in the interest of the bondholders. The Company, for itself, its successors and assigns, and for all persons and corporations hereafter claiming through or under it or them or who may at any time hereafter become holders of liens junior to the lien of this indenture, hereby expressly waives and releases all right to have the trust estate, or any part thereof, marshalled upon any fore-

WG-ANR-00081667

closure, sale or other enforcement hereof, and the Trustee, or any court in which the foreclosure of this indenture or the administration of the trusts hereby created is sought, shall have the right as aforesaid to sell the entire trust estate as a whole in a single parcel.

SECTION 6. Notice of any sale pursuant to any provision of this indenture shall state the time and place when and where the same is to be made, shall contain a brief general description of the property to be sold and shall briefly state the terms of the sale, and shall be sufficiently given if published once in each week for four successive calendar weeks prior to such sale in one daily newspaper published and in general circulation in Milwaukee, Wisconsin, together with such further and other notice, if any, as may be required by law in the State of Wisconsin.

SECTION 7. The Trustee may adjourn from time to time any sale to be made by it under the provisions of this indenture, by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and without further notice or publication (unless otherwise required by law), it may make such sale at the time and place to which the same may be adjourned.

SECTION 8. The receipt or receipts of the Trustee for the purchase money paid at any such sale, shall be a sufficient discharge therefor to any purchaser of the property or any part thereof sold as aforesaid; and no such purchaser, or his representatives, grantees or assigns, after paying such purchase money and receiving such receipt, shall be bound to see to the application of such purchase money upon or for any trust or purpose of this indenture, or in any manner whatsoever be answerable for any loss, misapplication or non-application of

WG-ANR-00081668

any such purchase money or any part thereof, or be bound to inquire as to the authorization, necessity, expediency or regularity of any such sale.

SECTION 9. Upon any sale as aforesaid, any purchaser, for the purpose of making settlement or payment for the property purchased, shall be entitled to use and apply any bonds issued hereunder and then outstanding, and any matured and unpaid interest coupons appertaining thereto, by presenting the same so that there may be credited, as paid thereon, the sums payable out of the net proceeds of such sale to the holders of such bonds and coupons as their ratable share of such net proceeds, after allowing for the proportion of the total purchase price required to be paid in cash for the cost and expenses of the sale, compensation and other charges; and thereupon such purchaser shall be credited on account of such purchase price payable by him, with the portion of such net proceeds that shall be applicable to the payment of, and that shall have been credited upon the bonds and coupons so presented; and at any such sale any bondholder or the Trustee may bid for and purchase such property, and make payment on account thereof as aforesaid, and upon compliance with the terms of sale, may hold, retain and dispose of such property without further accountability therefor. The provisions of this Section are subject to the provisions of Section 1 of this Article IX.

SECTION 10. Upon the completion of any sale or sales under or by virtue of this indenture, the Trustee shall execute and deliver to the purchaser a good and sufficient deed or other instruments conveying, assigning and transferring the property sold. The Trustee is hereby appointed the true and lawful attorney irrevocable of the Company, in its name and stead, to make all necessary conveyances, assignments and transfers of property thus sold; and for that purpose it may execute all

WG-ANR-00081669

necessary deeds and instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power; the Company hereby ratifying and confirming all that its said attorney, or such substitute or substitutes, shall lawfully do by virtue hereof. Nevertheless, the Company, if so requested by the Trustee, shall ratify and confirm any such sale or sales by executing and delivering to the Trustee or to such purchaser or purchasers all such instruments as may be necessary or in the judgment of the Trustee proper for the purpose and as may be designated in such request.

SECTION 11. Any such sale or sales made under or by virtue of this indenture, whether under the power of sale herein granted or by virtue of judicial proceedings, shall operate to divest all right, title, interest, claim and demand whatsoever, either at law or in equity, of the Company, in and to the property sold, and shall be a perpetual bar both at law and in equity, against the Company, its successors and assigns, and against any and all persons claiming or to claim the premises sold or any part thereof from, through or under the Company or its successors or assigns.

SECTION 12. The purchase money, proceeds and avails of any sale whether made under the power of sale herein granted or pursuant to judicial proceedings, together with any other sums which then may be held by the Trustee under any provision of this indenture as part of the trust estate or the proceeds thereof, shall be applied as follows:

> *First.* To the payment of the costs and expenses of such sale, including a reasonable compensation to the Trustee, its agents, attorneys and counsel, and of all necessary or proper expenses, liabilities and advances made or incurred by the Trustee under this indenture, and to the payment of all taxes, assessments or liens superior to the lien of this indenture, except any taxes,

WG-ANR-00081670

91

assessments or other superior liens subject to which such sale may have been made.

*Second.* To the payment of the whole amount then owing or unpaid upon the bonds issued hereunder and then outstanding for principal and interest, with interest on overdue principal and overdue installments of interest at the same rates, respectively, as were borne by the bonds whereof the principal or installments of interest may be overdue, and, in case such proceeds shall be insufficient to pay in full the whole amount so due and unpaid upon the bonds, then to the payment of such principal and interest, without preference or priority of principal over interest, or of interest over principal, or of any installment of interest over any other installment of interest, or of any series over any other series, ratably to the aggregate of such principal and the accrued and unpaid interest, subject, however, to the provisions of Section 1 of this Article IX. Such payments shall be made on the date fixed therefor by the Trustee, and notice of the date so fixed shall be published by the Trustee once in each week for four successive calendar weeks prior to such date in one daily newspaper published and in general circulation in the Borough of Manhattan, City and State of New York, and in one like newspaper in Pittsburgh, Pennsylvania, and in one like newspaper in Milwaukee, Wisconsin; Provided, however, that no such payments shall be made except upon the presentation to the Trustee of the several bonds and coupons, and upon the stamping thereon the amount paid if such bonds and coupons be only partly paid, and upon surrender and cancellation thereof if fully paid.

*Third.* To the payment of the surplus, if any, to the Company, its successors or assigns, or to whosoever may

WG-ANR-00081671

be lawfully entitled to receive the same, or as a court of competent jurisdiction may direct.

SECTION 13. In case of any sale, whether made under the power of sale herein granted or pursuant to judicial proceedings, the principal of all the bonds issued hereunder, if not previously due, immediately thereupon shall become due and payable, anything in said bonds or in this indenture contained to the contrary notwithstanding.

SECTION 14. In case any one or more of the events of default enumerated in Section 2 of this Article IX shall happen and shall be continuing, the Company will, upon demand of the Trustee, pay to the Trustee for the benefit of the holders of the bonds and coupons issued hereunder and then outstanding, the whole amount then due and payable on all such bonds and coupons then outstanding, for interest or principal, or both, as the case may be, with interest upon the overdue principal and overdue installments of interest at the same rates, respectively, as were borne by the bonds whereof the principal or installments of interest shall be overdue; and, in case the Company shall fail to pay the same forthwith upon such demand, the Trustee, in its own name and as trustee of an express trust, shall be entitled to recover judgment against the Company for the whole amount so due and unpaid.

The Trustee shall be entitled to recover judgment as aforesaid, either before or after or during the pendency of any proceedings for the enforcement of the lien of this indenture, and the right of the Trustee to recover such judgment shall not be affected by any entry or sale hereunder, or by the exercise of any other right, power or remedy for the enforcement of the provisions of this indenture or the foreclosure of the lien thereof, and in the case of a sale of the trust estate, and of the application of the proceeds of sale to the payment of the indebt-

WG-ANR-00081672

edness hereby secured, the Trustee, in its own name and as trustee of an express trust, shall be entitled to enforce payment of and to receive all amounts then remaining due and unpaid upon any and all of the bonds and coupons issued hereunder then outstanding, for the benefit of the holders thereof, and shall be entitled to recover judgment for any portion of the indebtedness remaining unpaid, with interest, as aforesaid. No recovery of any such judgment nor attachment nor levy of execution thereunder upon the trust estate or any part thereof, or upon any other property, shall in any manner or to any extent affect the lien of this indenture upon the trust estate or any part thereof, or any lien, rights, powers or remedies of the Trustee or of the holders of the bonds issued hereunder, but such lien, rights, powers and remedies shall continue unimpaired as before.

Any moneys collected by the Trustee under this Section 14, shall be applied by the Trustee first to the payment of its expenses, disbursements and compensation and the expenses, disbursements and compensation of its agents and attorneys and then towards payment of the amounts then due and unpaid upon such bonds and coupons in respect whereof such moneys shall have been collected, ratably and without any preference or priority of any kind (except as provided in Section 1 of this Article IX), according to the amounts due and payable upon such bonds and coupons, respectively, at the date fixed by the Trustee for the distribution of such moneys, upon presentation of the several bonds and coupons and stamping such payment thereon, if partly paid, and upon surrender and cancellation thereof, if fully paid.

SECTION 15. The Trustee shall have power to institute and to maintain such suits and proceedings as it may deem necessary or expedient to prevent any impairment of the security hereunder by any acts of the Company, or of others, in violation of this indenture, or as the Trustee may be advised shall be neces-

WG-ANR-00081673

sary or expedient to preserve and to protect its interests and the interests of the bondholders in respect of the trust estate and the income, earnings, issues and profits arising therefrom, including power to institute and to maintain suits or proceedings to restrain the enforcement of, or compliance with, or the observance of, any legislative or other governmental enactment, rule or order that may be by it deemed unconstitutional or otherwise invalid, if the enforcement of, compliance with or observance of such enactment, rule or order would impair the security hereunder or be prejudicial to the interests of the bondholders or of the Trustee.

SECTION 16. The Company will not at any time insist upon or plead, or in any manner whatever claim or take the benefit or advantage of any stay or extension law now or at any time hereafter in force; nor will it claim, take or insist on any benefit or advantage from any law now or at any time hereafter in force providing for the valuation or appraisement of the trust estate or any part thereof prior to any sale or sales thereof to be made pursuant to any provisions herein contained or pursuant to the decree, judgment or order of any court of competent jurisdiction; nor after any such sale or sales will it claim or exercise any right under or conferred by any law now or at any time hereafter in force, to redeem the property sold or any part thereof; and it hereby expressly waives and relinquishes all benefit and advantage of any and all such stay, extension, valuation, appraisement and redemption law or laws; and it hereby covenants that it will not hinder, delay or impede the execution of any power herein granted and delegated to the Trustee, but that it will suffer and permit the execution of every such power as though no such law or laws had been made or enacted.

SECTION 17. Upon the written request of the holders of twenty-five per cent. (25%) in principal amount of the bonds

WG-ANR-00081674

issued hereunder and then outstanding, in case one or more of the events of default shall happen and shall be continuing, it shall be the duty of the Trustee, upon being indemnified as hereinafter provided, to take all steps needful for the protection and enforcement of its rights and the rights of the holders of the bonds issued hereunder and to exercise the powers of entry or sale herein conferred, or both, or to take appropriate judicial proceedings by action, suit or otherwise, as the Trustee shall deem most expedient in the interest of the holders of the bonds issued hereunder; but, anything in this indenture to the contrary notwithstanding, the holders of sixty-five per cent. (65%) in principal amount of the bonds issued hereunder then outstanding, from time to time, shall have the right to direct and control the action of the Trustee in any proceedings under this Article IX, the Trustee having been indemnified as aforesaid.

SECTION 18. No holder of any bond or coupon issued hereunder shall have the right to institute any suit, action or proceeding in equity or at law for the foreclosure of this indenture, or for the execution of any trust or power hereof, or for the appointment of a receiver, or for the enforcement of any other remedy under or upon this indenture, unless such holder previously shall have given to the Trustee written notice of some existing default and of the continuance thereof, as hereinbefore provided; nor unless also, the holders of twenty-five per cent. (25%) in principal amount of the bonds outstanding hereunder shall have requested the Trustee in writing, after the right to exercise such powers or right of action, as the case may be, shall have accrued and then shall have afforded to the Trustee a reasonable opportunity either to proceed to exercise the powers hereinbefore granted or to institute such action, suit or proceeding in its own name; nor unless also, such holder or holders shall have offered to the Trustee security and indemnity satisfactory to it against the costs, expenses and liabilities to be

Case 2:20-cv-01334-SCD    Filed 01/27/23    Page 60 of 111    Document 50-11

WG-ANR-00081675

incurred therein or thereby, and the Trustee shall have refused or neglected to comply with such request within a period of thirty (30) days; and such notification, request and offer of indemnity are hereby declared in every such case to be conditions precedent to the execution of the powers and trusts of this indenture and to any action or cause of action for foreclosure or for the appointment of a receiver, or for any other remedy hereunder; it being understood and intended that no one or more holders of bonds or coupons issued hereunder shall have any right in any manner whatever hereunder or under the bonds or coupons by his or their action to affect, disturb or prejudice the lien of this indenture or to enforce any right hereunder, except in the manner herein provided, and that all proceedings hereunder, at law or in equity, shall be instituted, had and maintained in the manner herein provided and for the ratable benefit of all holders of such outstanding bonds and coupons.

Nothing in this Article IX contained shall either affect or impair the right of any bondholder which is absolute and unconditional to enforce the payment of the principal of and interest on his bond at and after the maturity thereof as therein expressed or the obligation of the Company which is absolute and unconditional to pay the principal of and interest on each of the bonds issued hereunder to the respective holders thereof at the time and place in said bonds and the appurtenant coupons expressed.

SECTION 19. The foregoing provisions of this Article IX, however, are subject to the condition that if, at any time after an event of default and before any sale of the trust estate shall have been made, all arrears of principal and interest, with interest upon all overdue principal and overdue installments of interest at the same rates respectively as were borne by the bonds of which the principal or installments of interest may be overdue, together with the reasonable charges and expenses of the Trus-

WG-ANR-00081676

97

tee, its agents, attorneys and counsel, shall either be paid by the Company or be collected and paid out of the trust estate, and all other defaults, if any, which shall have occurred, shall have been remedied or cured, to the reasonable satisfaction of the Trustee—then and in every such case the Trustee may, and upon the written request of the holders of a majority in principal amount of the bonds then outstanding hereunder shall, waive any such default and its consequences and rescind any declaration previously made under any section of this Article IX that the bonds issued hereunder be and become due and payable before the maturity thereof; but no such waiver or rescission shall extend to or affect any subsequent default or impair or exhaust any right or power consequent thereon.

In case the Trustee shall have proceeded to enforce any right under this indenture by foreclosure, entry or otherwise and such proceedings shall have been discontinued or abandoned because of such waiver or for any other reason, or shall have been determined adversely to the Trustee, then and in every such case, the Company and the Trustee shall severally and respectively be restored to their former positions and rights hereunder in respect of the trust estate, and all rights, remedies and powers of the Trustee shall continue as though no such proceedings had been taken.

No delay or omission of the Trustee, or of any holder of bonds issued hereunder, to exercise any right or power accruing upon or after any default continuing as aforesaid, shall impair any such right or power or shall be construed to be a waiver of any such default or an acquiescence therein; and every power and remedy given hereunder to the Trustee or to the bondholders, subject to the provisions of Section 18 of this Article IX, may be exercised from time to time and as often as may be deemed expedient by the Trustee or by the bondholders.

Except as herein expressly provided to the contrary, no remedy herein conferred upon or reserved to the Trustee or

WG-ANR-00081677

the holders of bonds issued hereunder, is intended to be exclusive of any other remedy or remedies; but each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute.

## ARTICLE X.

### CONCERNING THE BONDHOLDERS.

SECTION 1. The Company and the Trustee may deem and treat the bearer of any coupon bond outstanding hereunder, which shall not at the time be registered as to principal in the name of the owner thereof as hereinbefore authorized, and the holder of any coupon for interest on any such bond, whether such bond shall be registered or not, as the absolute owner of such bond or coupon, as the case may be, for the purpose of receiving payment thereof or on account thereof and for all other purposes, and neither the Company nor the Trustee shall be affected by any notice to the contrary.

The Company and the Trustee may deem and treat the person in whose name any registered bond without coupons outstanding hereunder shall be registered upon the books of the Company as herein authorized, as the absolute owner of such bond for the purpose of receiving payment of or on account of the principal of and interest on such bond and for all other purposes, and they may deem and treat the person in whose name any coupon bond shall be registered as to principal as the absolute owner thereof for the purpose of receiving payment of or on account of the principal thereof and for all other purposes, except to receive payment of interest represented by outstanding coupons; and all such payments so made to any such registered holder or upon his order, shall be valid and effectual to satisfy and discharge the liability upon such bond to the extent

WG-ANR-00081678

of the sum or sums so paid, and neither the Company nor the Trustee shall be affected by any notice to the contrary.

Neither the Company nor the Trustee shall be bound to recognize any person as the holder of a bond outstanding under this indenture unless and until his bond is submitted for inspection, if required, and his title thereto satisfactorily established, if disputed.

SECTION 2. Any demand, request or other instrument required by this indenture to be signed and executed by bondholders, may be in any number of concurrent writings of similar tenor, and may be signed or executed by such bondholders in person or by agent duly appointed in writing. Proof of the execution of any such demand, request or other instrument, or of the writing appointing any such agent, and of the ownership by any person of bonds issued hereunder, shall be sufficient for any purpose of this indenture, and shall be conclusive in favor of the Trustee and of the Company with regard to due action by the Trustee or the Company taken under such demand, request or other instrument, if made in the following manner:

(a) The fact and date of the execution by any person of any such demand, request or other instrument may be proved by the certificate of any notary public or other officer authorized to take acknowledgments of deeds entitled to be recorded in the State of Wisconsin or the State of New York or the State of Pennsylvania, that the person signing such demand, request or other instrument acknowledged before him the execution thereof; or by a written affidavit before any such notary public or other officer by a witness of such execution.

(b) The fact of the holding by any person of bonds transferable by delivery and the amounts, series and distinctive numbers of such bonds, and the date of his hold-

ing the same, may be proved by a certificate executed by any trust company, bank, banker or other depositary, wherever situated, if such certificate shall be deemed by the Trustee to be satisfactory, setting forth that on the date therein mentioned such person had on deposit with such depositary the bonds described in such certificate. In the absence of such certificate, or if not satisfactory to the Trustee, the bond or bonds of such person must be deposited with the Trustee, if so required by it, pending such action as the Trustee may take hereunder. For all purposes of this indenture and of any proceedings for the enforcement thereof such person shall be deemed to continue to be the holder of such bonds until the Trustee shall have received notice in writing to the contrary.

(c) The ownership of coupon bonds registered as to principal and of registered bonds without coupons shall be proved by the registers of such bonds.

SECTION 3. Neither the Trustee nor the Company shall be bound to recognize any person as a bondholder unless and until his bond is submitted for inspection and his title thereto satisfactorily established if disputed. Any action taken by the Trustee or by the Company pursuant to this indenture upon the request or authority or consent of any person who, at the time of making such request or giving such authority or consent is the holder or registered owner of any bond issued hereunder, shall be conclusive and binding upon all future holders or registered owners of the same bond and bonds issued in exchange or substitution therefor.

SECTION 4. All rights of action under this indenture may be enforced by the Trustee without the possession of any of the bonds or coupons issued hereunder or the production thereof on the trial or other proceedings relative thereto.

WG-ANR-00081680

101

## ARTICLE XI.

### IMMUNITY OF OFFICERS, DIRECTORS AND STOCKHOLDERS.

No recourse under or upon any obligation, covenant, or agreement contained in this indenture, or in any bond or coupon issued hereunder, or because of the creation of any indebtedness hereby secured, shall be had against any incorporator, or against any past, present or future subscriber to capital stock, stockholder, officer or director of the Company, or of any predecessor or successor corporation, either directly or through the Company or any such predecessor or successor corporation, or otherwise, by the enforcement of any assessment or penalty, or for the recovery of amounts unpaid on stock subscriptions, or because of any representation arising from the capitalization of the Company or of any such predecessor or successor corporation, or by any legal or equitable proceeding by virtue of any constitution, statute or law or otherwise; it being expressly agreed and understood that this indenture and the obligations issued hereunder are solely corporate obligations and that no personal liability whatever, under any circumstances or conditions, shall attach to or be incurred by the incorporators, subscribers to capital stock, stockholders, officers or directors of the Company or of any predecessor or successor corporation, or any of them, because of the incurring of the indebtedness hereby authorized, or under or by reason of any of the obligations, covenants or agreements contained in this indenture or in any of the bonds or coupons issued hereunder, or implied therefrom; and that any and all personal liability of every name and nature, and any and all rights and claims against every such incorporator, subscriber to capital stock, stockholder, officer or director, whether arising at common law or in equity, or created by statute or constitution, are hereby expressly released and waived by the Trustee and by

WG-ANR-00081681

each of the bondholders, as a condition of, and as part of the consideration for, the execution of this indenture and the issue of the bonds and coupons issued hereunder.

## ARTICLE XII.

### CONCERNING THE TRUST ESTATE.

SECTION 1. The Company, unless and until an event of default shall occur, shall be suffered and permitted to retain the actual possession and control of the trust estate (other than cash and securities, if any, at the time held by the Trustee under this indenture), and to manage, operate and use the same and every part thereof, with the rights and franchises appertaining thereto, and to collect, receive, take, retain, use and enjoy the tolls, earnings, income, rents, issues and profits thereof, as fully and to the same extent as if this indenture had not been made and entered into.

SECTION 2. (1) The Company, unless and until an event of default shall occur, shall have full power and authority in its discretion, without notice to or any action whatsoever on the part of the Trustee and without the necessity of any release from the Trustee or accountability to the Trustee for any consideration received, at any time and from time to time, to

> A. Abandon, terminate, cancel, release or make changes or alterations in, or substitutions of, any leases, grants, rights-of-ways, agreements or contracts at any time subject to this indenture, provided, that any modified, altered or substituted leases, grants, rights-of-way, agreements or contracts shall forthwith become bound by and be subject to the terms and lien of this indenture to the same extent and in the same manner as those previously existing.

WG-ANR-00081682

103

**B.** Sell, exchange or otherwise dispose of, free from the lien hereof (*a*) any of its equipment, machinery, fixtures, apparatus, appliances, tools, implements and other property of like character at any time subject to the lien hereof, which may have become worn out or unserviceable, disused, undesirable or unnecessary for use in the conduct of its business, replacing the same (if not previously replaced) by other property of the same or greater value or utility to the Company, which shall forthwith become, without further action, subject to the lien of this indenture, and (*b*) any materials, merchandise and supplies in the ordinary course and conduct of business; and no purchaser thereof shall be bound to inquire into any question of fact or law affecting the right of the Company to sell, exchange or otherwise dispose of the same free from the lien of this indenture and without any release from, action by or notice or accountability to, the Trustee.

**C.** Surrender or assent to or procure a modification of any franchise, license or permit which it may now or hereafter hold, or under which it may now or hereafter operate, provided the Company shall have authority, in the opinion of counsel selected by the Company and satisfactory to the Trustee, who may be counsel for the Company, to conduct substantially the same or an extended business in substantially the same or an extended territory during substantially the same or an extended, unlimited or indeterminate period of time, under some other franchise, license or permit, or under a new franchise, license or permit received in exchange for the surrendered franchise, license or permit, or under the modified franchise, license or permit, then subject to the lien of this indenture free from any liens prior thereto;

WG-ANR-00081683

provided, however, that the same may be subject to a prior lien if the surrendered or modified franchise, license or permit shall have been subject thereto.

D. Use and consume supplies, deal with contracts and choses in action, and remove, alter, repair, replace, change the location or position of and add to, its plants, buildings, structures, systems, machinery, equipment, apparatus and other fixtures and appurtenances.

(2) In case an event of default shall occur and be continuing, the Company, while in possession of the trust estate, may do any of the things enumerated in this Section 2 if the Trustee in its uncontrolled discretion shall in writing expressly authorize or assent to such action.

SECTION 3. (1) The Company while not in default hereunder shall have power at any time and from time to time to sell, exchange or otherwise dispose of free from the lien and operation of this indenture, any property or premises (other than any cash at the time held by the Trustee under any provision of this indenture) constituting part of the trust estate, upon the terms and conditions in this Section 3 contained, and the Trustee shall release the same from the lien and operation of this indenture upon receipt of the following:

A. A copy of a resolution duly adopted by the Board of Directors of the Company, certified under its corporate seal by its Secretary or an Assistant-Secretary, authorizing the sale or exchange of the property or premises to be released and requesting the release thereof free from the lien and operation hereof.

B. A certificate signed and verified by the President or a Vice-President of the Company, and by its Treasurer or an Assistant Treasurer, and by an engineer or other expert selected by the Company and acceptable to the Trustee, who may be in

WG-ANR-00081684

105

the employ of or under retainer from the Company showing, as the case may be, in substance, as follows:

(*a*) That the Company has sold or exchanged the property or premises (to be therein briefly described) to be released, or has contracted so to do, for a consideration representing, in the opinion of the signers of the certificate, its fair and reasonable value to the Company, which consideration may be cash or property of the character herein defined as additional property, or partly such property and partly cash, or partly obligations secured by a purchase money mortgage upon the property or premises to be released, provided, however, that if the property or premises to be released is not of the character herein defined as additional property (excluding from such definition of additional property all reference to the date and fact of acquisition thereof), any property to be received in exchange need not be of such character; the amount of cash or purchase money obligations, or the fair and reasonable value to the Company of property, representing such consideration; and a description of such purchase money obligations, if any, and of the lien securing the same; further stating whether or not the property to be released, or any portion thereof, has theretofore been made the basis for the issuance of bonds or the payment of cash or release of property under this indenture.

(*b*) A description of the property, if any, to be received as consideration in whole or in part; and that any such property is property of the character herein defined as additional property, unless the property or premises to be released is not of such character, in which case the certificate shall so recite.

WG-ANR-00081685

(*c*) That the substantial integrity and efficiency of the plants and systems of the Company will not be impaired by such release, or that the property or premises to be released are no longer necessary or advantageous in the business of the Company, or that the sale or disposition thereof has become necessary, expedient or advisable for reasons therein set forth and therein stated to be, in the opinion of the signers, adequate.

In case any property subject to a prior lien, shall be exchanged for other property, and by the terms of such lien such exchange may be made provided the property received in exchange shall be and become subject to such lien free and clear of liens prior thereto except as in the instrument securing such lien may be otherwise provided, the Company shall have the right to subject such other property, so received in exchange, to such prior lien, in which case the lien of this indenture upon such property shall be subordinate and junior in all respects to such prior lien, anything elsewhere in this indenture to the contrary notwithstanding; and the opinion provided for in Subdivision D of this Section 3 may so state.

C. In case the certificate provided for in Subdivision B of this Section 3 shall state that the consideration to the Company consists of property in whole or in part, all such deeds, conveyances, transfers or instruments of further assurance as may be necessary for the purpose of effectually subjecting such property to the lien and operation of this indenture, together with an opinion of counsel selected by the Company and acceptable to the Trustee, who may be counsel for the Company, that the same are sufficient for the purpose, or the opinion of such counsel that no such deeds, conveyances or instruments are necessary.

WG-ANR-00081686

107

D. An opinion of counsel selected by the Company and acceptable to the Trustee, who may be counsel for the Company, stating that the instruments to be furnished or previously furnished the Trustee constitute sufficient authority under this indenture for the Trustee to execute and deliver the release applied for; that any obligations included in the consideration to the Company mentioned in the certificate provided for in Subdivision B of this Section 3 are valid obligations, secured by a valid purchase money lien upon the premises to be released; and (in case said certificate states that the consideration to the Company consists of property, in whole or in part) that the Company has acquired good title to said property, and that said property is subject to the lien of this indenture and free and clear of liens prior to the lien of this indenture other than prior liens, if any, existing on the property to be released, and that the Company has corporate power to own and all necessary permission from governmental authorities to operate the same.

E. The net cash proceeds of any such sale or other disposition, and any purchase money obligation forming part of such consideration, unless some other disposition, in the opinion of counsel next hereinabove mentioned, shall be required by some lien prior to this indenture.

(2) In case a default or an event of default shall occur and be continuing, the Company, while in possession of the trust estate, may do any of the things enumerated in this Section 3 if the Trustee in its uncontrolled discretion shall in writing expressly authorize or assent to such action.

SECTION 4. In the event that any part of the trust estate shall be taken by the exercise of the power of eminent domain, or in the event that any governmental body at any time shall exercise any power which it may have to purchase any part or all of the trust estate, the Trustee may release the property so

WG-ANR-00081687

taken or purchased and shall be fully protected in so doing upon being furnished with an opinion of counsel selected by the Company and acceptable to the Trustee, who may be counsel for the Company, to the effect that such property has been taken by the exercise of the power of eminent domain or has been purchased by a governmental body in the exercise of a power which it had to purchase the same; and unless some other disposition be required (in the opinion of counsel selected by the Company and acceptable to the Trustee, who may be counsel for the Company) by some lien prior to this indenture, all moneys received as compensation for any part of the trust estate so taken or purchased shall, except as otherwise provided in Section 6 of this Article XII, be paid to the Trustee and shall be applied or paid over by the Trustee as provided in said Section 6 of this Article XII.

SECTION 5. In case the provisions of any prior lien shall require the deposit with the trustee or mortgagee thereunder of the cash or obligations to be received in payment for any part of the trust estate released from the lien thereof or taken in the exercise of the power of eminent domain or of a governmental power to purchase, or the proceeds of any insurance, the Company shall not be required to deposit the same with the Trustee hereunder to the extent that the same may be required to be so deposited under the mortgage securing such prior lien; provided, however, that any such deposits remaining with any such trustee or mortgagee of a prior lien shall, upon the discharge and cancellation thereof be deposited with the Trustee hereunder, to be held subject to the lien of this indenture, and the same may be applied or paid out by the Trustee in the manner provided in Section 6 of this Article XII.

SECTION 6. (1) All moneys which the Trustee shall receive as consideration or otherwise for property or premises released

WG-ANR-00081688

from the lien of this indenture, including the principal of any purchase money obligation forming part of such consideration when paid, and all moneys received by the Trustee as compensation for any property subject to the lien hereof taken by the exercise of the power of eminent domain or of any governmental power to purchase or upon the termination of any grant or lease and all insurance moneys received by the Trustee, shall, at the request and election of the Company, unless some lien prior to the lien of this indenture shall (in the opinion of counsel selected by the Company and acceptable to the Trustee, who may be counsel for the Company) otherwise require,

A. Be applied by the Trustee under the direction of the Company to the payment, redemption, purchase or other retirement, as hereinbefore provided, of bonds issued hereunder at the time outstanding; and/or

B. Be paid to or upon the order of the Company whenever the Company shall be entitled to the authentication and delivery of bonds in respect of additional property under Section 4 of Article IV hereof, in lieu of such authentication and delivery; provided, however, that if payment of cash representing the proceeds of insurance or release of additional property as defined in Section 2 of Article IV hereof which has not been used prior to such release or the event which resulted in the payment of insurance, as the basis for the authentication and delivery of bonds or withdrawal of cash or release of property under any of the provisions hereof, then no deduction of the cost or fair value as the case may be of such property need be made in computing the net amount of additional property available as a basis for the withdrawal of cash pursuant to the provisions of this section, and the amount to be paid shall be the full amount of the additional property instead of 80% thereof; and/or

WG-ANR-00081689

C. Be paid to or upon the order of the Company for the purpose of repairing, restoring or replacing property damaged or destroyed by fire (to the extent that insurance moneys arising from such loss shall be in the hands of the Trustee), upon receipt of a certificate signed by the President or a Vice-President of the Company, and by its Treasurer or an Assistant Treasurer, showing expenditures made or to be made for such purpose. The Trustee, upon receipt of a certificate similarly signed to the effect that such property has been fully repaired, restored or replaced, shall pay over to the Company the balance, if any, of any insurance moneys remaining in its hands received by it on account of the loss of such property.

(2) In case the amount at any time so received by the Trustee shall not exceed $50,000, the same, upon the written request of the Company, shall forthwith be paid by the Trustee to or upon the order of the Company without prior compliance on the part of the Company with the provisions of Subsection (1) of this Section 6. The Company covenants and agrees that it will within twelve months after the receipt of every amount so paid, comply with the requirements of Subsection 1 of this Section 6 with respect to the sum so paid. In no event shall the aggregate amount of any and all sums at any one time so paid with respect to which such compliance shall not have been made, exceed the sum of $100,000.

(3) None of the powers enumerated in this Section 6 conferred upon the Company shall be exercised while the Company is in default to the knowledge of the Trustee.

SECTION 7. In no event shall any purchaser or purchasers of any property or premises sold, exchanged or disposed of under any provision of this Article XII, be bound to inquire into the

WG-ANR-00081690

111

authority of the Trustee to release the same, or into any question of law or fact affecting the power of the Trustee so to do, nor be bound to see to or be responsible for the application of the consideration therefor.

SECTION 8. In case the trust estate shall be in the possession of a receiver lawfully appointed, the powers in and by this Article XII conferred upon the Company may be exercised by such receiver with the approval of the Trustee notwithstanding the Company may be in default, and if the Trustee shall be in possession of the trust estate under any provision of this indenture, then all such powers in this Article conferred upon the Company may be exercised by the Trustee in its discretion, notwithstanding the Company may be in default.

SECTION 9. Pending the disposition thereof in the manner herein provided, the Trustee shall allow interest, at such rate as shall at the time be customary, on all sums of money from time to time in its hands under any provision of this indenture; provided, however, that the Trustee shall be under no obligation to allow interest on any sums of money at any time in its hands for paying coupons or principal.

All such sums, excepting those mentioned in or held or deposited under Section 4 of Article XVI, shall, pending the disposition thereof in the manner in this indenture provided in respect thereof, constitute and be held by the Trustee as a part of the trust estate.

SECTION 10. The resolutions, certificates, opinions and other instruments specified in this Article XII shall in every and all cases be sufficient authority to the Trustee for the action provided in this Article XII to be taken by the Trustee, and in relying thereon, without other evidence, the Trustee shall be fully protected.

WG-ANR-00081691

## ARTICLE XIII.

### THE TRUSTEE.

SECTION 1. The Trustee accepts the trusts of this indenture and agrees to execute them upon the terms and conditions herein contained, including the following, to which the parties and the holders of the bonds issued hereunder agree:

(*a*) The Trustee shall be under no obligation to see to the filing, registration or recording of this indenture or of any instrument given pursuant to the provisions of this indenture, or to the refiling, re-registration or re-recording thereof, or to procure any further or other deeds or instruments of further assurance; nor shall the Trustee be obligated, while not in possession of the trust estate, to see to the insurance of the trust estate, or to the payment of taxes and assessments thereon, or upon the income and profits thereof, or to the performance or observance of any of the covenants or agreements hereof on the part of the Company. The Trustee shall not be personally liable for any debt contracted by it, or for damages to persons or property, or for salaries or wages or non-payment of salaries or wages, or for non-fulfilment of contracts, during any period wherein the Trustee shall manage the property of the Company or any part thereof as herein authorized.

(*b*) The Trustee shall not be responsible in any manner whatever for, or in respect of, the validity, legality or sufficiency of this indenture, the due execution hereof by the Company, the lien purported or intended to be hereby created, the security intended to be afforded hereby, the validity or legality of the bonds or coupons issued hereunder, the title or value of the trust estate, nor for or in respect of the recitals contained herein or in

WG-ANR-00081692

the bonds as to the acts or powers of the Company or otherwise, all of which recitals are made by the Company solely.

(c) The Trustee may employ agents, attorneys in fact, appraisers, engineers and accountants, whose compensation and reasonable expenditures shall be deemed part of the expenses of the Trustee; and shall not be answerable or accountable for the default, neglect or misconduct of any agent or attorney appointed by it in pursuance hereof, if reasonable care has been exercised in the appointment and retention of such agent or attorney; nor shall the Trustee be responsible or liable for any error of judgment or mistake of law or fact, or for any unwise exercise of any discretion, duty, power or trust, imposed or conferred upon it hereunder, nor for anything whatever in connection with this trust except its own wilful misconduct or gross negligence.

(d) The Trustee may advise with legal counsel (who may be counsel for the Company) to be selected and employed by it at the expense of the Company, and shall be fully protected in respect of any action under this indenture taken or suffered in good faith by the Trustee in accordance with the opinion of such counsel, and such action so taken or suffered shall be conclusive on all holders of bonds issued hereunder.

(e) The Trustee shall be fully protected in acting upon or in accordance with any request, demand, order, notice, waiver, appointment, designation, consent, certificate, legal opinion, affidavit, statement, bond, coupon or other instrument, or paper believed by it to be genuine and to have been signed, made, executed, verified, or presented by the proper party or parties. The Trustee

WG-ANR-00081693

shall be under no duty to inquire into the manner in which any computation or compilation contained in any such instruments was made, nor into the accuracy thereof, but may accept the statements of fact contained in such instruments as conclusive evidence of such facts. Except when otherwise in this indenture expressly provided, any order, notice, request, consent, approval, selection, appointment, election, direction or other instrument to be delivered or furnished by the Company to the Trustee, shall be sufficiently executed, if executed in the name of the Company, under its corporate seal, by its President or a Vice-President and by its Treasurer or an Assistant Treasurer, or by such officer or officers as the Board of Directors of the Company may by resolution direct. The Trustee may accept a certificate of the Secretary or an Assistant Secretary of the Company, under its corporate seal, to the effect that a resolution in the form therein set forth has been duly adopted by the Board of Directors of the Company as conclusive evidence that such resolution has been duly adopted and is in full force and effect. The Trustee may also accept a certificate of the Secretary or an Assistant Secretary of the Company under its corporate seal, to the effect that any person named therein as an officer of the Company is such officer, and that any autograph signature of any such officer contained in or appended to such certificate is the signature of such officer.

(f) The Trustee shall be entitled to accept and rely upon a certificate of the Company, under its corporate seal, signed by its President or a Vice-President and by its Treasurer or an Assistant Treasurer, as sufficient and conclusive evidence of the existence or non-existence

WG-ANR-00081694

115

of any fact, or that any particular dealing, transaction or action is necessary or expedient, unless other evidence is specifically required herein.

( *g* ) The Trustee shall be entitled to reasonable compensation from the Company for all services rendered by it in the execution of the trusts hereby created, and shall be reimbursed by the Company for any expenditures made by the Trustee on account of any provisions or requirements hereof, and for any liability or damages which the Trustee, acting in good faith, may incur or sustain; and such compensation and expenditures, as well as all of its reasonable expenses, including the compensation and reasonable expenditures of agents, attorneys in fact, appraisers, engineers and accountants, and the fees and expenditures of legal counsel, incurred or actually disbursed, and any and all sums advanced or paid out by the Trustee out of its own funds or funds advanced by bondholders under the provisions of this indenture, shall be paid by the Company to the Trustee upon the latter's demand, with interest thereon at the rate of six per cent. (6%) per annum from the date of each such advance, and until so paid shall be secured by a lien under and by virtue of this indenture upon the trust estate, in preference to the bonds and coupons issued hereunder.

( *h* ) The Trustee shall not be under any obligation to take any action toward the execution or enforcement of any of the trusts hereby created or in respect of any default, which, in its opinion, would be likely to involve it in expense or liability, unless and until the holders of not less than twenty-five per cent. (25%) in principal amount of the bonds at the time outstanding shall in writing request it to take such action, and shall, as often as

WG-ANR-00081695

required by the Trustee, furnish it security and indemnity satisfactory to it against such expense or liability.

(*i*) The Trustee, unless and until it shall have received notice in writing of the same from the holders of twenty-five per cent. (25%) in principal amount of the bonds at the time outstanding, distinctly specifying the default or event desired to be brought to the attention of the Trustee, shall not be required to take notice of any default hereunder on the part of the Company, and may, for all purposes of this indenture, assume that the Company is not in default under this indenture, and that none of the events, hereinbefore denominated events of default, has happened.

(*j*) The Trustee shall not be accountable for the use or application by the Company of any bonds authenticated and delivered hereunder or of the proceeds of such bonds, or for the use or application of any moneys paid over by it in accordance with any provision of this indenture.

(*k*) The Trustee may acquire and be the holder of bonds issued hereunder with the same rights which it would have if it were not the Trustee hereunder.

SECTION 2. The Trustee or any successor trustee may resign and be discharged from the trusts created by this indenture by giving to the Company notice in writing, and to the bondholders notice by publication, of such resignation, specifying a date when such resignation shall take effect, which notice shall be published on a day not less than fifteen days nor more than sixty days prior to the date so specified in one daily newspaper published and in general circulation in the Borough of Manhattan, City and State of New York, and in one daily newspaper published and in general circulation in Milwau-

WG-ANR-00081696

kee, Wisconsin, and in one daily newspaper published and in general circulation in Pittsburgh, Pennsylvania. Such resignanation shall take effect on the day specified in such notice, unless previously a successor trustee shall have been appointed, either by the bondholders or by the Company, as hereinafter provided, in which event such resignation shall take effect immediately upon the appointment of such successor trustee.

SECTION 3. The Trustee, or any successor trustee, may be removed at any time by the holders of a majority in principal amount of the bonds issued hereunder and at the time outstanding, and upon payment to the trustee so removed, of all moneys then due to it hereunder, by an instrument or concurrent instruments in writing, signed in duplicate by such holders. One copy shall be filed with the Company and the other with the Trustee for the time being.

SECTION 4. In case at any time the Trustee, or any successor trustee, shall resign or shall be removed or be dissolved or otherwise shall become incapable of acting, or in case control of the Trustee, or of any successor trustee, or of its officers shall be taken over by any public officer or officers, a successor trustee may be appointed by the holders of a majority in principal amount of the bonds issued hereunder and at the time outstanding, by an instrument or concurrent instruments in writing signed in duplicate by such holders, and filed, one copy with the retiring trustee and the other with the successor trustee; but until a successor trustee shall be so appointed by the bondholders as herein authorized, the Company, by an instrument in writing executed by order of its Board of Directors, shall in any such case appoint a successor trustee. After any such appointment by the Company, it shall forthwith cause notice to be published once in each week for two consecutive calendar weeks in the City of New York, Borough of Manhat-

WG-ANR-00081697

tan, and in Milwaukee, Wisconsin, and in Pittsburgh, Pennsylvania, in one daily newspaper published and in general circulation in each of said cities, but any successor trustee appointed by the Company shall, immediately and without further act, be superseded by a successor trustee appointed by the holders of bonds issued hereunder in the manner above prescribed, provided that such appointment be made prior to the expiration of one year from the date of the first publication of such notice by the Company. Every such successor trustee appointed by the bondholders or by the Company, in succession to the party of the second part as its successor in the trust hereunder, shall always be a trust company or national bank with trust powers in good standing, having a capital and surplus aggregating not less than one million dollars, if there be such a trust company or national bank willing and able to accept the trust upon reasonable or customary terms.

SECTION 5. Any successor trustee appointed hereunder shall execute, acknowledge and deliver to the Company an appropriate instrument in writing accepting such appointment hereunder, and thereupon such successor trustee, without any further act, deed or conveyance, shall become fully vested with the obligations herein provided of the trustee ceasing to act and be entitled to the immediate delivery by the trustee ceasing to act of any part of the trust estate in the hands or under the control of such predecessor trustee and all the estate, rights, title and interest of such predecessor trustee in the trust estate shall wholly cease and determine; but the trustee ceasing to act, shall nevertheless, on the written request of the Company or of the successor trustee, and upon the payment to it of its charges and disbursements then unpaid, execute, acknowledge and deliver an appropriate instrument in writing transferring to such successor trustee, upon the trusts herein expressed, all the estates, properties, rights, powers and trusts of the predeces-

WG-ANR-00081698

sor trustee so ceasing to act, and shall duly assign, transfer and deliver all property and moneys held by such trustee to the successor trustee. Should any deed, conveyance or instrument in writing from the Company be required by the successor trustee for more fully and certainly vesting in and confirming to such successor trustee such estates, rights, powers and duties, any and all such deeds, conveyances and instruments in writing shall be executed, acknowledged and delivered by the Company to the successor trustee upon the latter's request. All instruments, deeds and conveyances executed, acknowledged and delivered in pursuance of this Section shall, so soon as may be, be recorded in all public offices where this indenture is of record.

SECTION 6. Any corporation into which the Trustee or any successor trustee may be merged or with which it or any successor trustee may be consolidated, or any corporation resulting from any merger or consolidation to which the Trustee or any successor trustee may be a party, shall be the successor of the Trustee under this indenture, without the execution or filing of any instrument or the performance of any further act on the part of the parties hereto, anything herein to the contrary notwithstanding.

SECTION 7. In case any of the bonds to be issued hereunder shall have been authenticated but not delivered, any successor trustee may adopt the certificate of authentication of the Trustee or of any successor to it, and deliver the same as so authenticated; and in case any of the bonds shall not have been authenticated, any successor trustee may authenticate such bonds in the name of the successor trustee; and in all such cases such certificate shall have the full force which it is anywhere in the bonds or in this indenture provided that the certificate of the Trustee shall have.

WG-ANR-00081699

SECTION 8. The Trustee and every successor trustee shall be exempt from giving any bond or surety in respect of the execution of the trusts or powers herein contained, or otherwise in respect of the premises.

SECTION 9. Except when the context otherwise clearly indicates, the word "Trustee" or any other equivalent term, as used in this indenture, shall be held and construed to mean the Trustee under this indenture for the time being, whether original or successor.

## ARTICLE XIV.

### CONSOLIDATION, MERGER, CONVEYANCE AND LEASE.

SECTION 1. Nothing contained in this indenture or in any bond issued or to be issued hereunder shall prevent any consolidation or merger of the Company with or into any other corporation lawfully entitled to acquire and operate the trust estate, or any conveyance or lease (subject to the continuing lien of this indenture and to all provisions hereof and of any and all indentures supplemental hereto) of the trust estate as a whole or substantially as a whole to any other such corporation, or shall prevent successive similar consolidations, mergers, conveyances or leases to which the Company or its successor or successors shall be a party or parties; provided, however, that every such consolidation, merger, conveyance or lease shall be upon such terms as shall fully preserve and in no respect impair the lien and security of this indenture or any of the rights and powers of the Trustee or of the bondholders hereunder; and provided, further, that any such lease shall be made expressly subject to immediate termination by the Trustee at any time upon the happening of an event of default as defined in Article IX, Section 2, and also by the purchaser of the property so leased at any sale thereof made under the power of sale herein

WG-ANR-00081700

conferred or pursuant to judicial proceedings; and provided further that upon any such consolidation, merger, conveyance or lease, the due and punctual payment of the principal and interest of all bonds issued and to be issued hereunder at the time outstanding according to their tenor, and the due and punctual performance and observance of all the covenants, terms and conditions of this indenture, and of any and all indentures supplemental hereto, to be kept and performed by the Company, shall, by an indenture supplemental hereto, executed and delivered to the Trustee, be expressly assumed by the successor corporation formed by or resulting from any such merger or consolidation, or to which any such conveyance or lease shall have been made; provided, however, that a lessee shall not be required to assume obligations to be performed after the term of the lease.

SECTION 2. In the absence of an express undertaking or grant by the successor corporation, this indenture shall not, by reason of any such consolidation, merger, conveyance or lease or otherwise, constitute or become a lien upon, and the term "trust estate" as used herein shall not include or comprise,

(1) Any property or franchise owned prior to such consolidation, merger, conveyance or lease by any corporation with or into which the Company or any successor corporation may be consolidated or merged or to which the Company or any successor corporation may make any such conveyance or lease, and which prior to such consolidation, merger, conveyance or lease, was not subject to the lien of this indenture; and

(2) Any property or franchises which may be purchased, constructed or otherwise acquired by the successor corporation after the date of any such consolidation, merger, conveyance or lease; excepting only the betterments, extensions, improvements, additions, re-

WG-ANR-00081701

pairs, renewals, replacements, substitutions, alterations, property and franchises, mentioned and referred to in clauses (*a*) and (*b*) hereinafter contained in this Section 2, which shall be and become subject to the lien and operation of this indenture, notwithstanding any such consolidation, merger, conveyance or lease.

In order to confirm of record the lien of this indenture and to preserve and protect the rights of the bondholders hereunder, the supplemental indenture provided for in Section 1 of this Article XIV, if it does not contain an express grant by the successor corporation, as provided by Section 3 of this Article XIV, as further security for all bonds issued and to be issued hereunder, of all its property and franchises then owned and which it may thereafter acquire, shall contain;

(*a*) A grant by such successor corporation confirming the lien of this indenture upon the trust estate, and subjecting to the lien and operation hereof all betterments, extensions, improvements and additions of, to and upon, and comprising and constituting appurtenances to the property and franchises subject to the lien hereof, and all repairs, renewals, replacements, substitutions and alterations of, to, upon and for such property and franchises, which may be purchased, constructed or otherwise acquired by such successor corporation from and after the date of such consolidation, merger, conveyance or lease, as the case may be.

(*b*) A covenant on the part of such successor corporation that all property and franchises thereafter acquired by it and necessary to the full and complete performance of any covenant herein contained relating to the maintenance and upkeep of the trust estate, to the making of all needful and proper renewals, replacements,

WG-ANR-00081702

substitutions and alterations, and to the preservation and keeping in full effect of all rights, franchises and privileges, subject to the lien hereof, and of any other covenant herein, shall be conclusively deemed and taken to be acquired by it in performance of such covenant and to have become subject to the lien of this indenture.

(c) A covenant by such successor corporation to keep the trust estate as far as practicable readily identifiable; and a stipulation that the Trustee shall not be taken impliedly to waive, by accepting or joining in the supplemental indenture, any rights it would otherwise have.

SECTION 3. In case the Company, or any successor corporation, shall be consolidated or merged with or into or shall make a conveyance (but not a lease) to any other corporation, pursuant to and upon the terms provided in Section 1 of this Article XIV, the corporation formed by or resulting from such consolidation or merger or to which such conveyance (but not a lease) shall have been made, upon executing and delivering to the Trustee and causing to be recorded the supplemental indenture provided for in Section 1 of this Article XIV, and upon granting and mortgaging in and by said supplemental indenture, or in and by a separate supplemental indenture then or at any time thereafter duly executed and delivered by said successor corporation to the Trustee and by said successor corporation duly recorded, as further security for all bonds issued and to be issued hereunder, all property and franchises then owned and which may be thereafter acquired by said successor corporation, shall succeed to and be substituted for the Company with the same force and effect as if it had been the party of the first part hereto and shall have and may exercise each and every power, authority and right herein reserved to or conferred upon the Company; and thereupon such succes-

WG-ANR-00081703

sor corporation may cause to be signed and may issue, either in its own name or in the name of the party of the first part, and under the corporate seal of either the party of the first part or the successor corporation, any and all bonds which shall not theretofore have been signed by the party of the first part and delivered to the Trustee; and the Trustee, upon the order of such successor corporation, in lieu of the party of the first part, and subject to all the terms, conditions and limitations in this indenture and in any and all indentures supplemental hereto prescribed, shall authenticate and deliver any and all bonds which shall have previously been signed and delivered by the party of the first part to the Trustee for authentication, and any bonds which such successor corporation shall thereafter cause to be signed and delivered to the Trustee for such purpose, and deliver the same to said successor corporation or upon its order.

Any such successor corporation shall be entitled to the authentication and delivery of bonds in respect of any property of the character herein defined as additional property owned prior to such consolidation, merger or conveyance by any corporation with or into which the Company or any successor corporation may be so consolidated or merged, or to which the Company or any successor corporation may make any such conveyance, and owned or acquired by such successor corporation; and the rights and duties of such successor corporation in respect of such property shall be the same as the rights and duties of the Company would have been had it acquired such property by purchase.

SECTION 4. In case such successor corporation described in Section 3 of this Article XIV shall not, or until it shall as aforesaid, grant and mortgage, as further security for all bonds issued and to be issued hereunder, all property and franchises then owned by it and which it may thereafter

WG-ANR-00081704

acquire, such corporation, nevertheless—upon executing and delivering to the Trustee and causing to be recorded, the supplemental indenture provided for in Section 1 of this Article XIV, containing, however, the grant, covenants and stipulation provided for in Clauses (*a*), (*b*) and (*c*) of Section 2 of this Article XIV—shall succeed to and be substituted for the Company and shall have and may exercise each and every power, authority and right herein reserved to or conferred upon the Company, including the execution, delivery and issue, and the right to the authentication and delivery, of bonds issuable hereunder.

SECTION 5. All bonds secured by this indenture issued by any such successor corporation shall in all respects have the same legal rank and security as the bonds theretofore or thereafter issued in accordance with the terms of this indenture as though all of said bonds had been actually issued at the date of the execution hereof. In case of such consolidation, merger or conveyance, such changes in phraseology and form (but not in substance) may be made in the bonds and coupons thereafter to be issued, including bonds of any series theretofore created, as consequent upon such consolidation, merger or conveyance may be appropriate. The Company covenants and agrees that if additional bonds of any particular series, of which series bonds are at the time outstanding, shall at any time be authenticated and delivered in any new name, the Company will provide for the exchange of any bonds of such series previously issued for bonds issued in any such new name, at the option of and without expense to the holder.

SECTION 6. For every purpose of this indenture, including the execution, issue and use of any and all bonds issued or issuable hereunder, the term "Company" includes and means not only the party of the first part but also any successor corpora-

WG-ANR-00081705

tion upon compliance with the provisions of this Article XIV. Any act or proceeding by any provision of this indenture authorized, required or permitted to be done or performed by any board or officer of the Company shall and may be done and performed, with like force and effect, by the like board or officer of a successor corporation.

SECTION 7. The Trustee shall be furnished with a certificate of counsel (who may be of counsel to the Company) selected by the Company and acceptable to the Trustee, which certificate the Trustee may receive as conclusive evidence that the provisions and conditions of Sections 1, 2, 3 and 4, or any of them, of this Article XIV have been complied with. Every supplemental indenture provided for in this Article XIV shall be in form approved by such counsel.

## ARTICLE XV.

### SUPPLEMENTAL INDENTURES.

SECTION 1. In addition to any supplemental indenture otherwise authorized by this indenture, the Company, when authorized by resolution of its Board of Directors, and the Trustee, from time to time and at any time, subject to the conditions, provisions and restrictions in this indenture contained, may enter into an indenture or indentures supplemental hereto and which thereafter shall form a part hereof, for any one or more of all of the following purposes:

(*a*) To add to the hereinbefore specified conditions, limitations and restrictions on the authorized amount, terms, provisions, and purposes of issue, authentication and delivery of bonds, other conditions, limitations and restrictions thereafter to be observed.

(*b*) To add to the covenants and agreements of the Company in this indenture contained other covenants

WG-ANR-00081706

127

and agreements thereafter to be observed, and/or to surrender any right or power herein reserved to or conferred upon the Company or to any successor corporation.

(c) To correct the description of any property hereby conveyed or pledged or intended so to be, or to convey, transfer and assign to the Trustee and to subject to the lien of this indenture, with the same force and effect as though included in the granting clauses hereof, additional properties and franchises hereafter acquired by the Company through consolidation or merger, or by purchase or otherwise.

(d) To make provision for and in respect of the exchangeability or convertibility of bonds issuable hereunder, at the option of the holders thereof, for or into bonds of a different series, and/or for or into shares of stock of the Company or of a successor corporation and/or other securities.

(e) To evidence the succession of another corporation to the Company, or successive successions, and the assumption by such successor corporation of the covenants, agreements and obligations of the Company under this indenture.

(f) For any other purpose not inconsistent with the terms of this indenture, or for the purpose of curing any ambiguity, or of curing, correcting or supplementing any defective or inconsistent provision contained therein or in any supplemental indenture.

(g) For the appointment of a co-trustee to act under this indenture and/or under any indenture supplemental hereto.

WG-ANR-00081707

SECTION 2. The Trustee is hereby authorized to join with the Company in the execution of any such supplemental indenture, to make the further agreements and stipulations which may be therein contained and to accept the conveyance, transfer and assignment of any such property. Any such supplemental indenture other than those provided for in clauses (*c*), (*e*) and (*f*) of Section 1 of this Article XV, may be applicable in respect of all bonds issued and to be issued hereunder or in respect of the bonds of one or more particular series thereof, or for a limited or unlimited period of time, or otherwise, in the discretion of the Company. Nothing in this Article XV shall prevent or affect the exercise, in regard to any such supplemental indenture, of the jurisdiction of the Railroad Commission of Wisconsin or of any other governmental body at the time having jurisdiction in the premises. Every such supplemental indenture shall be in form approved by counsel selected by the Company and acceptable to the Trustee, who may be counsel for the Company.

SECTION 3. Subject to the terms and provisions contained in this Section 3 and not otherwise, the holders of seventy-five per cent. in aggregate principal amount of the bonds at the time outstanding (not including any bonds excluded as hereinafter provided) shall have the right, from time to time and at any time, anything herein contained to the contrary notwithstanding, to consent to and approve the execution by the Company and the Trustee of such indenture or indentures supplemental hereto as shall be by the Company deemed necessary or desirable for the purpose of modifying, altering, amending, adding to or rescinding, in any particular, any of the terms or provisions contained in this indenture or in any supplemental indenture or in any bond.

WG-ANR-00081708

129

PROVIDED:

(*a*) that nothing herein contained shall permit or be construed as permitting the extension of the maturity of any bond issued hereunder or the reduction in the rate of interest thereon, or any other modification in the terms of payment of principal or interest, or any change in the terms of redemption prior to maturity, or any change in the covenants as to the payment or refunding of taxes without the express consent of the holder of such bond, nor as permitting the creation by the Company, after the date hereof, of any mortgage or lien in the nature of a mortgage upon the trust estate, ranking prior to or on a parity with the lien of this indenture;

(*b*) that bonds issued hereunder and owned and/or held by and/or for account and/or the benefit or interest of the Company, or of a subsidiary company or another subsidiary company of such subsidiary company, or of an affiliated company, or by and/or for the account and/or the benefit or interest of any person, firm or corporation who, at the same time, owns and/or controls directly or indirectly through any corporation and/or subsidiary and/or affiliated company 50% or more of the outstanding capital stock of the Company having voting power shall not be considered as outstanding for any of the purposes set out in this paragraph.

Each person, firm or corporation consenting to and approving the execution by the Company and the Trustee of any such supplemental indenture shall prove his or its ownership of bonds in a manner similar to that prescribed in Article X Section 2 of this indenture, and shall accompany his or its consent or approval with an affidavit specifically setting forth that such holder is not disqualified as hereinabove provided by reason of ownership of

WG-ANR-00081709

stock of the Company, as provided in this paragraph, and such proofs and affidavits shall be delivered by the Company to the Trustee together with the instruments provided for in sub-section (*d*) of this Section 3;

The term "subsidiary company" as used in this paragraph shall be construed to mean any company of which 50 per cent. or more of the outstanding capital stock having voting power is owned and/or held by and/or for account, and/or for the benefit and/or interest of the Company.

The term "affiliated company" shall be construed to mean a company which owns and/or controls directly or indirectly or through a "subsidiary company" 50 per cent. or more of the outstanding capital stock having voting power of the Company.

(*c*) If at any time the Company shall request the Trustee to enter into any supplemental indenture as permitted in this Section 3, the Trustee shall, at the expense of the Company, cause notice of the proposed execution of such supplemental indenture to be published in one daily newspaper of general circulation, published in the Borough of Manhattan, City and State of New York, and in a similar newspaper similarly published in Milwaukee, Wisconsin, and in one published in Pittsburgh, Pennsylvania, (and elsewhere if requested by the Company) once a week for four successive weeks; and, on or before the date of the first publication thereof, the Trustee shall also cause similar notice to be mailed to the holders of any registered bonds at their last known addresses. Such notice shall briefly set forth the nature of the proposed supplemental indenture, and shall give notice that a copy thereof is on file at the principal office of the Trustee for inspection by all holders of bonds.

WG-ANR-00081710

131

(*d*) Whenever, at any time after the date of the last publication of the said notice, the Company shall deliver to the Trustee an instrument or instruments executed by the holders of at least seventy-five per cent. in aggregate principal amount of the bonds then outstanding (not including any bonds excluded as herein provided), which instruments shall refer to the proposed supplemental indenture described in the said notice and shall specifically consent to and approve the execution thereof in substantially the form of the copy thereof referred to in the said notice as on file with the Trustee, accompanied by the proofs and affidavits of ownership of bonds required by the terms of sub-paragraph (*b*) of this Section 3, thereupon, but not otherwise, the Trustee shall execute the said supplemental indenture in substantially the said form, without liability or responsibility to any holder of any bond, whether or not such holder shall have consented thereto.

(*e*) If the holders of at least seventy-five per cent. in the aggregate principal amount of the bonds outstanding at the time of the execution of such supplemental indenture (not including any bonds excluded as herein provided) shall have consented to and approved the execution thereof, as herein provided, no holder of any bond shall have any right to question the execution of such supplemental indenture, or to question any of the terms or provisions therein contained, or the operation thereof, or in any manner to question the propriety of the execution thereof, or to enjoin or restrain the Trustee or the Company from executing the same or from taking any action pursuant to the provisions thereof.

(*f*) Upon the execution of any supplemental indenture or indentures, pursuant to the provisions of this

WG-ANR-00081711

Section 3, this indenture shall be and be deemed to be modified and amended in accordance therewith, and the respective rights, duties and obligations under this indenture, of the Company, the Trustee and all holders of outstanding bonds shall thereafter be determined, exercised and enforced hereunder subject, in all respects, to such modifications and amendments.

(*g*) Nothing contained in this Section 3 of Article XV shall be deemed to or construed as in any manner affecting, restricting or limiting the execution and delivery of supplemental indentures in pursuance of the provisions contained in Sections 1 and 2 of this Article XV.

SECTION 4. The Trustee shall be under no responsibility or liability to the Company or to any holder of any bond, or to anyone whomsoever, for any act or thing which it may do or decline to do in good faith, in pursuance of the provisions of this Article XV.

SECTION 5. Any supplemental indenture executed in accordance with any of the provisions of this Article XV shall thereafter form a part of this indenture; and all the terms and conditions contained in any such supplemental indenture as to any provision authorized to be contained therein shall be and be deemed to be part of the terms and conditions of this indenture for any and all purposes, and, if deemed necessary or desirable by the Trustee, any of such terms or conditions may be set forth in reasonable and customary manner in the bonds of the particular series to which such supplemental indenture shall apply.

In case of the execution and delivery of any supplemental indenture express reference may be made thereto in the text of the bonds of any series issued thereafter, if deemed necessary or desirable by the Trustee.

WG-ANR-00081712

133

## ARTICLE XVI.

### DEFEASANCE.

SECTION 1. If, when the bonds issued hereunder shall have become due and payable, the Company shall well and truly pay or cause to be paid the whole amount of the principal moneys and interest (and premium if any) then due and payable thereon, and shall also pay or cause to be paid all other sums payable hereunder by the Company, and shall well and truly keep and perform all the covenants and conditions herein required to be kept and performed by it according to the true intent and meaning of this indenture; or if, before the bonds issued hereunder shall have become due and payable, the Company shall deposit with the Trustee the entire amount due and to become due thereon for principal and interest (and premium if any), and shall also pay or cause to be paid all other sums payable hereunder by the Company, and shall well and truly keep and perform all the covenants and conditions herein required to be kept and performed according to the true intent and meaning of this indenture, then in either case the trust estate shall revert to the Company, and the entire estate, right, title and interest of the Trustee and of the bondholders shall thereupon cease, determine and become void; and the Trustee, on demand of the Company and at its cost and expense, shall pay and deliver to the Company, or upon its written order, all moneys and securities (other than moneys deposited as hereinbefore in this Section 1 provided) then held by the Trustee under this indenture, and shall execute, acknowledge and deliver appropriate and proper instruments acknowledging satisfaction of this indenture and reconveying the trust estate to the Company; otherwise this indenture shall be, continue and remain in full force and virtue.

WG-ANR-00081713

SECTION 2. On deposit with the Trustee of the amount necessary to redeem all outstanding bonds secured by this indenture, together with proof that notice of redemption has been given by publication and by mail as in this indenture provided, or on deposit with the Trustee of the amount necessary to redeem all such bonds, together with proof that publication of such notice has been commenced and that such notice by mail has been given, and on furnishing to the Trustee sufficient funds to pay the cost of the completion of the publication of such notice; then in either such case as aforesaid, on payment to the Trustee of all costs, charges and expenses in relation thereto, the Trustee shall cancel and satisfy this indenture and shall execute and deliver to the Company such instruments as may be necessary or appropriate to release and discharge of record this indenture at all places where it shall have been recorded. The Trustee shall apply the moneys so deposited with it to the payment of said bonds with accrued interest to the date designated for redemption, together with the premium thereon, if any, at such date.

SECTION 3. All sums which may become due and payable for principal (and premium if any) upon any bond issued hereunder shall be paid to the bearer of such bond unless registered, and if registered to the registered holder thereof, but in no event shall such payment be required to be made except upon the surrender of such bond in negotiable form, or assigned in blank, accompanied by all unmatured coupons if any thereunto belonging. In case any bond registerable as to both principal and interest shall be issued as permitted by the provisions hereof, interest thereon shall be paid only to the registered holder thereof. The interest on coupon bonds shall be payable only on presentation and surrender of the several coupons for such interest as they respectively mature. All bonds and coupons as and when paid shall be forthwith cancelled by the Trustee and delivered to or upon the order of the Company.

WG-ANR-00081714

135

SECTION 4. In the event that any bond issued hereunder shall not be presented for payment when the principal thereof comes due either at maturity or otherwise, or at the date fixed for the redemption thereof, or in the event that any coupon shall not be presented for payment at the due date thereof, the Company, having deposited with the Trustee in trust for the purpose, or left with it if previously so deposited, funds sufficient to pay the principal of such bond (and premium if any), together with all interest due thereon to the date of the maturity of such bond or to the date fixed for the redemption thereof, or to pay such coupon, as the case may be, for the use and benefit of the holder thereof, then interest on said bond, or on said overdue coupon, and all liability of the Company to the holder of said bond for the payment of the principal thereof and interest thereon (and premium if any), or to the holder of said overdue coupon for the payment thereof and interest thereon, as the case may be, shall forthwith cease, determine and be completely discharged; and thereupon it shall be the duty of the Trustee to hold the funds so deposited for the benefit of the holder of such bond or overdue coupon, as the case may be, who shall thereafter be restricted exclusively to said funds for any claim of whatsoever nature on the part of such holder under this indenture or on said bond or any coupons appertaining thereto, or on said overdue coupon.

In case the holder of any such bond or coupon shall not, within ten years after such deposit claim the amount deposited as above stated, for the payment thereof, the Trustee shall, upon demand, pay over to the Company, such amount so deposited, if the Company is not at the time in default hereunder; and the Trustee shall thereupon be relieved from all responsibility to the holder hereof, and in the event of such payment to the Company the holder of any such bond or coupon shall be deemed to be an unsecured creditor of the Company for an amount equivalent to

WG-ANR-00081715

the amount deposited as above stated for the payment thereof and so paid over to the Company.

SECTION 5. Bonds issued hereunder and pledged or sold or otherwise issued by the Company, upon being released from pledge or upon being repurchased or otherwise acquired by the Company (except when acquired by call for redemption pursuant to the provisions of the bonds or of this indenture and except when acquired by purchase pursuant to the provisions of Article VII, Section 3 of this indenture) may again be sold, pledged, or otherwise issued, re-issued or disposed of by the Company as often as it may repossess or acquire the same, and thereupon shall continue to be entitled to the security of this indenture as upon their original issue.

## ARTICLE XVII.

### MISCELLANEOUS PROVISIONS.

SECTION 1. All of the covenants, stipulations, promises and agreements in this indenture contained by or on behalf of the Company shall, except as herein otherwise provided, bind its successors and assigns, whether so expressed or not; and all rights and powers herein reserved to the Company shall be reserved to its successors whether so expressed or not.

SECTION 2. Except as otherwise expressly provided herein, nothing in this indenture expressed or implied is intended or shall be construed to confer upon or give to any person, firm or corporation, other than the parties hereto and the holders from time to time of the bonds issued under this indenture, any security, rights, remedies or claims, legal or equitable, under or by reason of this indenture, or under or by reason of any covenant, condition or stipulation herein contained; and this

WG-ANR-00081716

indenture and all the covenants, conditions and provisions herein contained are and shall be held to be for the sole and exclusive benefit of the parties hereto and the holders from time to time of the bonds and coupons issued hereunder.

SECTION 3. Nothing in this indenture or in any bond issued and to be issued hereunder, expressed or implied, is intended or shall be construed to prevent any bond issued hereunder from having any independent security or guaranty or the benefit of any covenants, agreements or rights outside this indenture, concerning which a notation may or may not be endorsed thereon, and the references herein or in the bonds to the equal security hereunder of all bonds issued hereunder shall not be deemed applicable to any such independent security, guaranty, covenants, agreements or rights.

SECTION 4. The same officer or officers of the Company, or the same engineer or counsel or other person, as the case may be, need not certify to all the matters required to be certified under the provisions of any Article or Section hereof, but different officers, engineers, counsel or other persons may certify to different facts respectively.

SECTION 5. In order to provide for and not to prevent or delay the cremation or other destruction of cancelled bonds issued hereunder, and of paid coupons detached from any bonds issued hereunder, the Trustee and the Company may adopt such method for keeping a record of the same, or for evidencing the rights and powers hereunder of the Company and the duties of the Trustee in respect thereof, as they may from time to time determine upon.

SECTION 6. Nothing in this indenture shall be construed or is intended to prescribe or affect the methods and practices of

the Company in keeping its books and accounts, or to limit the power of the Company to fix and determine the price or consideration at which the bonds authenticated and delivered hereunder may be sold or otherwise disposed of. Any and all said bonds may be sold or otherwise disposed of upon such terms and for such consideration as the Company may deem fit, subject to any provisions of law in respect thereof.

SECTION 7. In case the Company shall have or acquire any property, constructed, maintained or operated under or in connection with any franchise, license or permit which reserves to or vests in a public authority the right to purchase or acquire such property, or any franchise, license or permit having a limited duration, such rights or limited duration shall not for any of the purposes of this indenture be deemed liens, charges or encumbrances prior to the lien of this indenture. If any such franchise, license or permit reserves to or vests in any public authority the right to demand and collect from the Company any earnings tax, or other compensation to such public authority for the use of streets, alleys, ways or any public places, such earnings tax or other compensation shall not for any of the purposes of this indenture be deemed liens, charges or encumbrances prior to the lien of this indenture.

SECTION 8. In case the principal of any of the bonds secured by this indenture shall not be punctually paid when due at maturity, whether by declaration or lapse of time, and/or in case any installment of interest thereon shall not be punctually paid when due, then upon deposit with or receipt by the Trustee of moneys sufficient to pay such overdue principal and/or such overdue installment or installments of interest (together with moneys sufficient to pay interest due and to become due thereon up to the date when interest upon such overdue principal and/or

WG-ANR-00081718

139

installment or installments of interest shall cease as herein provided), interest on such overdue principal and/or installment or installments of interest shall cease to accrue four weeks after the date of the publication by the Company of a notice stating that said moneys have been so deposited with or received by the Trustee, in a daily newspaper of general circulation published in New York, New York, and in a like newspaper in Milwaukee, Wisconsin, and in a like newspaper in Pittsburgh, Pennsylvania. A copy of such notice shall be delivered by the Company to the Trustee prior to the publication thereof, and the Company shall cause a copy of such notice to be mailed to the registered owners of bonds.

SECTION 9. The descriptive headings of the various articles of this indenture were formulated, used and inserted in this indenture for convenience only and shall not be deemed to affect the meaning or construction of any of the provisions hereof.

SECTION 10. This indenture may be simultaneously executed in several counterparts, each of which when so executed shall be deemed to be an original; but such counterparts shall together constitute but one and the same instrument.

SECTION 11. This indenture is for convenience dated February 15, 1927, although not actually executed and delivered until the date of the acknowledgment hereof by the Trustee.

IN WITNESS WHEREOF, MILWAUKEE GAS LIGHT COMPANY has caused this indenture to be signed in its name and behalf by its President, or one of its Vice-Presidents, and its corporate seal to be hereunto affixed and duly attested by its Secretary, or one of its Assistant Secretaries, and THE UNION TRUST COMPANY OF PITTSBURGH, to evidence its acceptance of the

WG-ANR-00081719

trusts hereby created, has caused this indenture to be signed in its name and behalf by its President, or one of its Vice-Presidents, and its corporate seal to be hereunto affixed and duly attested by its Secretary, or one of its Assistant Secretaries, as of the date first above written.

MILWAUKEE GAS LIGHT COMPANY,

**By**

President.

Attest:

Secretary.

Signed, sealed and delivered by
Milwaukee Gas Light Company
in the presence of:

THE UNION TRUST COMPANY OF PITTSBURGH, TRUSTEE

**By**

President.

Attest:

Secretary.

Signed, sealed and delivered by
The Union Trust Company of
Pittsburgh in the presence of:

WG-ANR-00081720

141

STATE OF                          ,⎱
                    COUNTY.⎰ ss.

Personally came before me this        day of                    ,
1927,                        , to me known to be the
President, and                        , to me known to be the
Secretary of the above named MILWAUKEE
GAS LIGHT COMPANY, the corporation described in and which
executed the foregoing instrument, and to me known to be the
persons who as such officers executed the foregoing instru-
ment in the name and behalf of said corporation, and acknowl-
edged the same, and acknowledged that the seal affixed to said
instrument is the corporate seal of said corporation, and that
they signed, sealed and delivered said instrument in the name
and behalf of said corporation by authority of its Board of
Directors and stockholders, and said
and                          then and there acknowledged said
instrument to be the free act and deed of said corporation by
each of them voluntarily executed.

Given under my hand and notarial seal this        day of
                , 1927.

WG-ANR-00081721

STATE OF
               ,
         COUNTY. } ss.

     Personally came before me this     **day of**            ,
1927,                 , to me known to be the
President, and               , to me known to be the
          Secretary of the above named THE UNION TRUST
COMPANY OF PITTSBURGH, the corporation described in and
which executed the foregoing instrument, and to me known to
be the persons who as such officers executed the foregoing in-
strument in the name and behalf of said corporation, and
acknowledged the same, and acknowledged that the seal affixed
to said instrument is the corporate seal of said corporation, and
that they signed, sealed and delivered said instrument in the
name and behalf of said corporation by authority of its Board of
Directors, and said                **and**
            , then and there acknowledged said
instrument to be the free act and deed of said corporation by
each of them voluntarily executed.

     Given under my hand and notarial seal this       **day of**
         **, 1927.**

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 107 of 111   Document 50-11

WG-ANR-00081722

143

The Undersigned hereby certifies that $5,750 United States Internal Revenue stamps are affixed to a counterpart hereof in the possession of the Trustee, and duly cancelled as required by law. Dated   , 1927.

THE UNION TRUST COMPANY OF
PITTSBURGH, Trustee,
**By**     ,

President.

34677

WG-ANR-00081723

455

WG-ANR-00081724

155
456

On motion duly seconded, it was unanimously

RESOLVED, that the Mortgage and Deed of Trust to be dated February 15, 1927 from this Company to The Union Trust Company of Pittsburgh, as Trustee, in the form presented to this meeting, including the forms of bonds, forms of Trustee's certificates and the forms of coupons, be and it hereby is approved, and that the President or a Vice President and the Secretary or an Assistant Secretary of this Company be and they hereby are authorized and directed for and in behalf of this Company to sign, seal, acknowledge and deliver such Mortgage and Deed of Trust in the form presented to this meeting or with such changes therein as may be approved by the officers executing the same, such approval to be evidenced by such execution; and

FURTHER RESOLVED, that pursuant to the provisions of Sections 7 and 8 of Article III of the Mortgage and Deed of Trust to be dated February 15, 1927 from this Company to The Union Trust Company of Pittsburgh, as Trustee, approved at this meeting, the President or a Vice President and the Secretary or an Assistant Secretary of this Company be and they hereby are authorized and directed to execute under the seal of this Company and deliver to The Union Trust Company of Pittsburgh, as Trustee under said Mortgage and Deed of Trust, First Mortgage Gold Bonds 4½% Series due 1967 in the aggregate principal amount of $11,500,000, and said The Union Trust Company of Pittsburgh, as said Trustee, be and it hereby is requested to authenticate said $11,500,000 in aggregate principal amount of said bonds and deliver the same at once in accordance with the order or orders of the Company, evidenced by a writing or writings signed by the President of the Company or by one of its Vice Presidents, such bonds to be definitive coupon or registered bonds or temporary bonds with or without coupons and to be of such denominations, all as may be specified in such order or orders; and

FURTHER RESOLVED, that said $11,500,000 in aggregate principal amount of First Mortgage Gold Bonds 4½% Series due 1967, be issued for the purpose of discharging or refunding the legal obligations of the Company to wit: $9,097,000. in aggregate principal amount of its First Mortgage 25-Year Four Per Cent. Gold Bonds due May 1, 1927, and for the construction, acquisition, extension and improvement of its plant, distributing system and facilities and for the improvement of its service; and



Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 110 of 111   Document 50-11

WG-ANR-00081725


FURTHER RESOLVED, that the President
and Secretary of this Company be and they hereby are
authorized and directed for and in behalf of this
Company to make application to the Railroad Commission
of the State of Wisconsin for authority to issue and
sell said $11,500,000 in aggregate principal amount of
this Company's First Mortgage Gold Bonds 4½% Series
due 1967 for not less than 90.35% of the face value
thereof and to that end to make, execute, acknowledge
and file with the said Railroad Commission the state-
ment required by Section 184.09 of the Wisconsin
Statutes, to make, execute, acknowledge and file such
other instruments and to do such acts or things as to
them may seem necessary or desirable in order to
obtain from said Railroad Commission a certificate
evidencing such authority to issue said bonds; and

FURTHER RESOLVED, that upon the issuance
of said certificate by the Railroad Commission of the
State of Wisconsin the same shall be recorded upon
the books of this Company; and

FURTHER RESOLVED, that Messrs. Miller,
Mack & Fairchild be and they hereby are appointed
counsel to give the opinion required by Section 7 of
Article III of the Mortgage and Deed of Trust made
by this Company to The Union Trust Company of Pittsburgh,
as Trustee, that the certificate or other documents
evidencing the authorization, approval or consent of
the Railroad Commission of the State of Wisconsin to
the issuance of said $11,500,000 in aggregate principal
amount of the First Mortgage Gold Bonds 4½% Series
due 1967, is sufficient authorization for the issuance
and sale of said bonds; and

FURTHER RESOLVED, that the officers of
this Company be and they hereby are authorized to
negotiate a contract in such form as may be approved
by the officers executing the same, such approval to
be evidenced by their execution thereof, for the sale,
subject to the issuance of said bonds being approved
by the Railroad Commission of the State of Wisconsin,
of said $11,500,000 in aggregate principal amount of
First Mortgage Gold Bonds 4½% Series due 1967 for cash
at not less than 90.35% of the face value thereof.

There being no further business to come before

the Board, on motion duly seconded and carried, the meeting

adjourned.

Secretary.

WG-ANR-00081726