# EXHIBIT 12

SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D. C.


FORM 10-K

ANNUAL REPORT

Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934


For the Fiscal Year Ended December 31, 1950


MILWAUKEE GAS LIGHT COMPANY
(Exact name of registrant as specified in charter)


626 East Wisconsin Avenue, Milwaukee 1, Wisconsin
(Address of principal executive office)

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 2 of 48   Document 50-23

WG-ANR-00049839



# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON 25, D. C.

DIVISION OF
CORPORATION FINANCE

RECEIVED BY F. I. I.

NOV 5 - 1951

DIRECTED TO... copies to E. G. Black
E. J. Grant
M. Anderson

NOV 2 - 1951

Milwaukee Gas Light Company
626 East Wisconsin Avenue
Milwaukee 1, Wisconsin

Re: File No. 2-8631

Gentlemen:

An examination has been made of the financial state-
ments contained in your annual report for the fiscal year ended
December 31, 1950, filed under Section 15(d) of the Securities
Exchange Act of 1934, and in connection therewith your attention
is directed to the following suggestions which should be given
consideration in the preparation of future reports.

It appears that the operations of the consolidated
subsidiary should be distributed to the appropriate items in
the consolidated statement of income, as was done in the recent
prospectus.

The amount of earnings retained in the business which
is not available for the payment of dividends should be stated
in the consolidated financial statements.

The amount of Federal income tax deducted from divi-
dend income in the registrant's statement of income should be
disclosed in the appropriate caption.

Very truly yours,

Harvey A. Thorson
Harvey A. Thorson
Assistant Director
Division of Corporation Finance

WG-ANR-00049840

## MILWAUKEE GAS LIGHT COMPANY

### 1950 Form 10-K Annual Report

#### Copies Prepared and Issued

| Copy No. | Delivered or Mailed to | Type of Copy | Date |
|---|---|---|---|
| 1 | Securities & Exchange Commission | Signed | 5/31/51 |
| 2 | do | Conformed | " |
| 3 | do | " | " |
| 4 | do | " | " |
| 5 | Arthur Andersen & Co. - Milwaukee | Signed | " |
| 6 | F. W. Sharp, V.P. & Treas. American Natural Gas Company - New York | Conformed | 6/ 1/51 |
| 7 | F. W. Sharp, V.P. & Treas. American Natural Gas Service Company - Detroit | Signed | 6/ 4/51 |
| 8 | do | Conformed | " |
| 9 | do | " | " |
| 10 | do | " | " |
| 11 | Arthur Andersen & Co. - Milwaukee * | " | 6/ 5/51 |
| 12 | do | " | " |
| 13 | do | " | " |
| 14 | do | " | " |
| 15 | Mellon National Bank and Trust Company | Signed | 6/11/51 |
| 16 | First Wisconsin Trust Company | " | 6/11/51 |
| 17 | E. G. Black | Conformed | 6/21/51 |
| 18 | P. J. Imse (Official File) | Signed | 6/21/51 |
| 19 | E. G. Frank | Conformed | 6/ 7/51 |
| 20 | | Signed | |
| 21 | | " | |
| 22 | | " | |
| 23 | | " | |
| 24 | As Authorized | Conformed | 4/28/52 |
| 25 | As Authorized | " | |
| 26 | As Authorized | " | " |
| 27 | | " | |
| 28 | | " | |
| 29 | | " | |
| 30 | | " | |
| 31 | | " | |
| 32 | | " | |

Note: * A signed copy of 1950 Form 10-K was also
retained by Arthur Andersen & Co. when the
accountants certificates were signed on May 31,
1951. (See Copy No. 5 above)

WG-ANR-00049841

# INFORMATION REQUIRED IN REPORT

## Item 1. Securities Registered on Exchanges.

(a) As to each class of securities of the registrant which is registered on a national securities exchange, or is to become so registered upon notice of issuance, furnish the information required by the following table as of the end of the fiscal year:

| Title of the class | Amount of issued securities registered | Amount of unissued securities registered upon notice of issuance | Name of each exchange on which registered |
|---|---|---|---|
| | | None | |

(b) If the registrant has no securities listed and registered on a national securities exchange, give the title of each class of registrant's securities as to which the undertaking required by section 15 (d) of the Act is operative.

First Mortgage Bonds, 3-1/8% Series due 1975
3-3/8% Sinking Fund Debentures, due November 1, 1970

## Item 2. Parents and Subsidiaries of Registrant.

Furnish a list or diagram of all parents and subsidiaries of the registrant and as to each person named indicate (a) the State or other sovereign power under the laws of which organized and (b) the percentage of voting securities owned, or other bases of control, by its immediate parent.

| Name of company | State of incorporation | Percentage of voting securities owned by the immediate parent |
|---|---|---|
| American Natural Gas Company | New Jersey | |
| Milwaukee Gas Light Company – (registrant) | Wisconsin | 99.85% |
| Milwaukee Solvay Coke Company (*) | Wisconsin | 100.00% |

Note (*) Milwaukee Solvay Coke Company is included in the respective consolidated financial statements. Separate financial statements are also filed for this subsidiary.

## Item 3. Changes in the Business.

Briefly describe any materially important changes during the fiscal year, not previously reported, in the business of the registrant and its subsidiaries.

Except as previously reported, the answer to this Item 3 is "None".

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 5 of 48   Document 50-23

WG-ANR-00049842

## Item 4. Developments in Pending Legal Proceedings.

Briefly describe any materially important developments during the fiscal year, not previously reported, in any material pending legal proceedings of a character required to be described in an application on Form 10 or in a report on Form 8-K.

None

## Item 5. Directors and Officers.

List the names and complete mailing addresses of all directors and officers of the registrant. Indicate all positions and offices with the registrant held by each person named.

| Name of director or officer | Complete mailing address | Positions and offices held |
|---|---|---|
| Glenn R. Chamberlain | 626 East Wisconsin Avenue Milwaukee 1, Wisconsin | Director and President |
| Dudley B. W. Brown | 626 East Wisconsin Avenue Milwaukee 1, Wisconsin | Director and Executive Vice President |
| William C. Buchanan | 3839 W. Burnham Street Milwaukee 4, Wisconsin | Director |
| John Dern | 11 South LaSalle Street Chicago 3, Illinois | Director |
| Henry Fink | Suite 3600, Penobscot Bldg. Detroit 26, Michigan | Director |
| Ralph T. McElvenny | Suite 3600, Penobscot Bldg. Detroit 26, Michigan | Director |
| F. W. Sharp | Suite 3600, Penobscot Bldg. Detroit 26, Michigan | Director |
| Chester O. Wanvig | 900 East Keefe Avenue Milwaukee 1, Wisconsin | Director |
| William G. Woolfolk | Suite 3600, Penobscot Bldg. Detroit 26, Michigan | Director |
| Erwin C. Brenner | 626 East Wisconsin Avenue Milwaukee 1, Wisconsin | Vice President - Operations |
| Bernard T. Franck | 626 East Wisconsin Avenue Milwaukee 1, Wisconsin | Vice President - Sales |
| Paul J. Imse | 626 East Wisconsin Avenue Milwaukee 1, Wisconsin | Vice President and Secretary |
| E. Gordon Black | 626 East Wisconsin Avenue Milwaukee 1, Wisconsin | Treasurer |

## Item 6. Business Experience of Executive Officers.

Describe briefly the business experience during the past five years of each executive officer of the registrant who has not been previously reported as such an officer.

The business experience of each executive officer has been previously reported.

-2-

Case 2:20-cv-01334-SCD    Filed 01/27/23    Page 6 of 48    Document 50-23

WG-ANR-00049843

Item 7.  Indemnification of Directors and Officers.

Describe any arrangement, not previously reported, under which any director or officer of the registrant is insured or indemnified in any manner against any liability which he may incur in his capacity as such.

Except as previously reported, the answer to this Item 7 is "None".

Item 8.  Remuneration of Directors and Officers.

(a)  Furnish the following information, in substantially the tabular form indicated, as to the aggregate remuneration directly or indirectly paid or set aside by the registrant and its subsidiaries to, or for the benefit of, the following persons for services in all capacities while acting as directors or officers of the registrant during the fiscal year:

(1)  Each person who was a director of the registrant at any time during the fiscal year and whose aggregate remuneration, exclusive of pension, retirement and similar payments, exceeded $25,000.

(2)  Each person who was one of the three highest-paid officers of the registrant during the fiscal year and whose aggregate remuneration, exclusive of pension, retirement and similar payments, exceeded $25,000.

(3)  All persons, as a group, who were directors or officers of the registrant at any time during the fiscal year.

| Name of individual or identity of group and the capacities in which remuneration was received | Fees and salaries(1) | Increase in fees and salaries over preceding year | Pension, retirement and similar payments |
|---|---|---|---|
| Glenn R. Chamberlain--Director and president of registrant and director of its subsidiary | $ 37,700 | $12,067(2) | $ 23 |
| Dudley B. W. Brown--Director and executive vice president of registrant | 26,400 | 14,342(2) | 1,893 |
| All directors or officers of registrant, as a group--Directors and officers of registrant and directors of its subsidiary | 125,772(3) | - | 18,371 |

NOTE 1.  Directors and officers of registrant did not receive commissions or bonuses from, nor did they share in profits of, registrant and its subsidiary.  Among the directors and officers of registrant only Messrs. Chamberlain and Brown received remuneration which, in the aggregate, exceeded $25,000.

2.  The amount of the increase over the previous year (1949) is due primarily to the fact that this individual was not employed by registrant throughout the year 1949.

3.  A director of registrant during parts of each of the years 1949 and 1950 is a partner in a law firm of counsel to registrant in various matters.  For legal services rendered during the year 1950, the law firm was paid $20,300 by registrant, which amount is $19,300 in excess of the amount paid in 1949.  The foregoing amounts are not included in the tabulation above.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 7 of 48   Document 50-23

WG-ANR-00049844

<u>Item 8. Remuneration of Directors and Officers (Continued)</u>.

(b) State the annual benefits estimated to be payable in the event of retirement at normal retirement date to each individual director or officer named in answer to paragraph (a)(1) or (2) pursuant to any pension or retirement plan.

| | |
|---|---|
| Glenn R. Chamberlain | None |
| Dudley B. W. Brown | $7,403 |

(c) Describe all transactions since the beginning of the fiscal year in which any person who was a director or officer of the registrant at any time during such period received remuneration, directly or indirectly, from the registrant or its subsidiaries in the form of securities, options, warrants, rights or other property, or through the exercise or disposition thereof. As to options, warrants or rights granted or extended, give (1) the title and amount of securities called for; (2) the prices, expiration dates and other material provisions; (3) the consideration received for the granting thereof; and (4) the market value of the securities called for on the granting or extension date. As to options, warrants or rights exercised state (1) the title and amount of securities purchased; (2) the purchase price; and (3) the market value of the securities purchased on the date of purchase.

None

<u>Item 9. Remuneration of Certain Other Persons</u>.

State in tabular form the name of each of the following persons whose aggregate remuneration from the registrant and its subsidiaries for services during the fiscal year exceeded $25,000, the amount of such remuneration, and the capacities in which it was received.

(a) Each affiliate of the registrant (other than its majority-owned subsidiaries);

(b) Each voting trustee of securities of the registrant;

(c) Each security holder named in answer to Item 11(a); and

(d) Each associate of any such voting trustee or security holder, or of any director or officer of the registrant.

| Name of person | Capacities in which remuneration was received | Amount of remuneration |
|---|---|---|
| American Natural Gas Service Company | Service company | $37,561 |

Note: American Natural Gas Service Company is a wholly-owned subsidiary of American Natural Gas Company, registrant's parent company. The organization and conduct of business of American Natural Gas Service Company at cost fairly and equitably allocated has been approved by the Securities and Exchange Commission under Section 13 of the Public Utility Holding Company Act of 1935. The amount stated above includes $27,903 paid by registrant and $9,658 paid by its subsidiary.

-4-

WG-ANR-00049845

Item 10. Interest of Management and Others in Certain Transactions.

Describe briefly any material interest, direct or indirect, of any of the following persons in any material transactions occurring since the beginning of the fiscal year to which the registrant or any of its subsidiaries and any one or more of such persons were parties:

(a) Any director or officer of the registrant.
(b) Any security holder named in answer to Item 11(a).
(c) Any voting trustee of securities of the registrant.
(d) Any associate of any such director, officer, voting trustee or security holder.
(e) Any affiliate of the registrant (other than its majority-owned subsidiaries).

If any such transaction involved the purchase or sale of assets by or to the registrant or any subsidiary, otherwise than in the ordinary course of business, state the cost of the assets to the purchaser and the cost thereof to the seller if acquired by the seller within two years prior to the transaction.

Pursuant to contractual arrangement, services are being rendered to registrant and its subsidiary by American Natural Gas Service Company at cost in accordance with the authorization of the Securities and Exchange Commission.

Item 11. Principal Holders of Equity Securities.

Furnish the following information, in substantially the tabular form indicated, as to all equity securities of the registrant owned by the following persons as of a specified date within 120 days prior to the date of filing:

(a) Each person who owns of record more than 10 percent of any class of such securities.

(b) All directors and officers of the registrant, as a group, without naming them.

As of April 1, 1951

| Name and address | Title of class | Type of ownership | Amount owned | Percent of class |
|---|---|---|---|---|
| American Natural Gas Company 165 Broadway, Suite 1730 New York 6, New York | Common Stock, Par Value $12 Per Share | Record and beneficial | 1,610,942-5/6 Shares | 99.85% |
| All directors and officers of the registrant, as a group | Common Stock, Par Value $12 Per Share | None | None | |

Item 12. Number of Holders of Equity Securities.

State, in substantially the tabular form indicated, as of a specified date within 90 days prior to the date of filing, the approximate number of holders of record of each class of equity securities of the registrant.

As of April 1, 1951

| Title of class | Number of holders |
|---|---|
| Common Stock, Par Value $12 Per Share | 18 |

-5-

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 9 of 48   Document 50-23

WG-ANR-00049846

<u>Item 13.  Options, Warrants and Rights.</u>

Furnish the following information as to any options, warrants or rights, outstanding at the end of the fiscal year, to purchase securities of the registrant or any of its subsidiaries from the registrant or any of its subsidiaries:

(a) The title and amount of securities called for by the options, warrants or rights.

(b) A brief outline of the prices, expiration dates, and other material conditions on which the options, warrants or rights may be exercised.

(c) The amount called for by the options, warrants or rights held by (1) each person named in answer to Item 5 or 11, (2) each associate of each such person and (3) each person who held options, warrants or rights calling for 5 percent or more of the total amount subject to options, warrants or rights, naming each such person.

None

<u>Item 14.  Financial Statements and Exhibits.</u>

List below all financial statements and exhibits filed as a part of the annual report.

(a) Financial statements.

(b) Exhibits.

<u>Financial Statements:</u>

Certificate of Independent Public Accountants

Milwaukee Gas Light Company
  Balance Sheet -- December 31, 1950
  Statement of Income -- Year Ended December 31, 1950
  Statement of Earnings Retained in the Business -- Year Ended
    December 31, 1950

Milwaukee Solvay Coke Company
  Balance Sheet -- December 31, 1950
  Statement of Income -- Year Ended December 31, 1950
  Statement of Earnings Retained in the Business -- Year Ended
    December 31, 1950

Consolidated
  Balance Sheet -- December 31, 1950
  Statement of Income -- Year Ended December 31, 1950
  Statement of Earnings Retained in the Business -- Year Ended
    December 31, 1950

Notes to Financial Statements

<u>Exhibits</u>

1-B  Milwaukee Gas Light Company Charter (Articles of Incorporation)
       as amended through December 26, 1950

2-A  By-Laws of Milwaukee Gas Light Company effective December 19, 1950

15-O  Service Agreement between Michigan-Wisconsin Pipe Line Company and
        Milwaukee Gas Light Company dated November 7, 1950, effective
        January 1, 1951

-6-

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 10 of 48   Document 50-23

WG-ANR-00049847

<u>SIGNATURE</u>

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this annual report to be signed on its behalf by the undersigned thereunto duly authorized.

<u>Milwaukee Gas Light Company</u>
(Registrant)

Date   <u>May 29, 1951</u>

By ~~Dudley B. W. Brown~~
Dudley B. W. Brown
Executive Vice President

WG-ANR-00049848

<u>MILWAUKEE GAS LIGHT COMPANY</u>

<u>FINANCIAL STATEMENTS AND SCHEDULES</u>

<u>(Submitted in Accordance with Instructions in Form 10-K)</u>

<u>(Securities and Exchange Commission, Washington, D. C.)</u>

<u>INDEX TO FINANCIAL STATEMENTS</u>

Certificate of Independent Public Accountants

Milwaukee Gas Light Company
  Balance Sheet -- December 31, 1950
  Statement of Income -- Year Ended December 31, 1950
  Statement of Earnings Retained in the Business -- Year Ended
    December 31, 1950

Milwaukee Solvay Coke Company
  Balance Sheet -- December 31, 1950
  Statement of Income -- Year Ended December 31, 1950
  Statement of Earnings Retained in the Business -- Year Ended
    December 31, 1950

Consolidated
  Balance Sheet -- December 31, 1950
  Statement of Income -- Year Ended December 31, 1950
  Statement of Earnings Retained in the Business -- Year Ended
    December 31, 1950

Notes to Financial Statements

<u>SCHEDULES</u>

The information required to be submitted in Schedules V, VI, VII, IX, XII, XIII, XVI and XVII has been included in the balance sheets and statements of income.

The following schedules are omitted as not applicable or not required under the rules of Regulations S-X:

I, II, III, IV, VIII, X, XI, XIV and XV

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 12 of 48   Document 50-23

WG-ANR-00049849

## CERTIFICATE OF INDEPENDENT PUBLIC ACCOUNTANTS

To the Board of Directors,

    Milwaukee Gas Light Company:

        We have examined the balance sheets as of December 31, 1950, of MILWAUKEE GAS LIGHT COMPANY (a Wisconsin corporation, hereinafter referred to as the Company), and of the Company's subsidiary, Milwaukee Solvay Coke Company (a Wisconsin corporation), the consolidated balance sheet of those companies as of the same date, and the related statements of income and earnings retained in the business for the year then ended. Our examination was made in accordance with generally accepted auditing standards, and accordingly included such tests of the accounting records and such other auditing procedures as we considered necessary in the circumstances.

        In our opinion, the accompanying balance sheets and statements of income and earnings retained in the business were prepared in conformity with generally accepted accounting principles applied on a basis consistent with that of the preceding year and present fairly the financial positions of the Company and its subsidiary as of December 31, 1950, and the results of their operations for the year then ended.

*Arthur Andersen & Co.*

Milwaukee, Wisconsin
February 24, 1951

WG-ANR-00049850

## MILWAUKEE GAS LIGHT COMPANY

### BALANCE SHEET

#### DECEMBER 31, 1950

### PROPERTY AND OTHER ASSETS

| | | |
|---|---:|---:|
| PROPERTY, PLANT AND EQUIPMENT, at original cost | $44,039,226 | |
| Less- Reserve for depreciation | 10,019,816 | $34,019,410 |
| | | |
| INVESTMENT in Milwaukee Solvay Coke Company, 100% common stock interest, at cost | | 4,372,472 |
| | | |
| CURRENT ASSETS: | | |
| Cash | $ 2,502,052 | |
| Deposit with trustee--withdrawable in accordance with provisions of bond indenture | 5,000,000 | |
| United States Government obligations, at cost | 1,993,475 | |
| Accounts receivable, less reserve of $29,017 | 2,026,190 | |
| Materials and supplies, at cost (including $289,607 of fuels and residuals) | 1,936,731 | |
| Prepayments | 42,638 | 13,501,086 |
| | | |
| DEFERRED CHARGES: | | |
| Natural gas conversion costs and related expenses, being amortized within a ten year period beginning July 1, 1950 | $ 4,535,896 | |
| Debt discount, redemption premium and expense, applicable to refunded issue, being amortized | 951,746 | |
| Other | 113,594 | 5,601,236 |
| | | |
| | | $57,494,204 |

### STOCKHOLDERS' EQUITY AND LIABILITIES

| | | |
|---|---:|---:|
| STOCKHOLDERS' EQUITY: | | |
| Common stock, par value $12 per share--authorized 2,000,000 shares, outstanding 1,613,408 shares | $19,360,896 | |
| Earnings retained in the business ($1,100,326 restricted by indenture provisions against cash dividends on common stock) | 2,398,536 | |
| | | |
| Total stockholders' equity | | $21,759,432 |
| | | |
| LONG-TERM DEBT: | | |
| First mortgage bonds, 3-1/8% series due 1975 | $27,000,000 | |
| 3-3/8% sinking fund debentures due 1970 | 6,000,000 | 33,000,000 |
| | | |
| Total capitalization | | $54,759,432 |
| | | |
| CURRENT LIABILITIES: | | |
| Accounts payable | $ 413,880 | |
| Due to affiliated companies | 660,884 | |
| Customers' deposits | 80,634 | |
| Accrued general taxes | 146,210 | |
| Federal income taxes | 598,055 | |
| Accrued interest | 187,465 | |
| Accrued payroll | 190,674 | |
| Other | 125,457 | 2,403,259 |
| | | |
| DEFERRED CREDITS | | 20,339 |
| | | |
| RESERVES: | | |
| Maintenance | $ 32,259 | |
| Injuries and damages | 54,163 | 86,422 |
| | | |
| CONTRIBUTIONS IN AID OF CONSTRUCTION | | 224,752 |
| | | |
| | | $57,494,204 |

The accompanying notes to financial statements are an integral part

**MILWAUKEE GAS LIGHT COMPANY**

STATEMENT OF INCOME

YEAR ENDED DECEMBER 31, 1950

| | | |
|---|---:|---:|
| OPERATING REVENUE | | $13,511,011 |
| OPERATING EXPENSES: | | |
| Natural gas purchased | $3,128,470 | |
| Operation- | | |
| Distribution | 1,297,833 | |
| Customers' accounting and sales promotion | 1,495,594 | |
| General and administrative | 1,114,597 | |
| Other operation expense | 1,105,395 | |
| Maintenance | 793,549 | |
| Amortization of natural gas conversion | | |
| costs and related expenses | 237,172 | |
| Depreciation | 703,095 | |
| Taxes- | | |
| State, local and miscellaneous Federal | 747,519 | |
| State income | 99,601 | |
| Federal income | 589,000 | |
| Total operating expenses | | 11,311,825 |
| Operating income | | $ 2,199,186 |
| OTHER INCOME: | | |
| Dividend income from Milwaukee Solvay Coke | | |
| Company, less Federal income tax | $ 329,000 | |
| Other (net) | 34,365 | 363,365 |
| Gross income | | $ 2,562,551 |
| INCOME DEDUCTIONS: | | |
| Interest on long-term debt | $ 859,469 | |
| Amortization of debt discount and expense | 91,331 | |
| General interest | 18,792 | |
| Other (net) | 9,967 | 979,559 |
| NET INCOME | | $ 1,582,992 |

The accompanying notes to financial statements
are an integral part of this statement.

WG-ANR-00049852

MILWAUKEE GAS LIGHT COMPANY

STATEMENT OF EARNINGS RETAINED IN THE BUSINESS

YEAR ENDED DECEMBER 31, 1950

| | | |
|---|---|---|
| BALANCE--DECEMBER 31, 1949 | | $1,950,784 |
| NET INCOME | | 1,582,992 |
| | | $3,533,776 |
| DEDUCT: | | |
| Cash dividends on- | | |
| Preferred stock, at rate of 7% | $128,333 | |
| Common stock, $.60 per share | 817,871 | |
| Redemption premium and expenses on securities | 189,036 | 1,135,240 |
| BALANCE--DECEMBER 31, 1950 ($1,100,326 restricted by indenture provisions against cash dividends on common stock) | | $2,398,536 |

The accompanying notes to financial statements
are an integral part of this statement.

WG-ANR-00049853

## MILWAUKEE SOLVAY COKE COMPANY

### BALANCE SHEET

### DECEMBER 31, 1950

| PROPERTY AND OTHER ASSETS | | |
|---|---|---|
| COKE AND BY-PRODUCTS PLANT AND EQUIPMENT, | | |
| at cost | $9,515,560 | |
| Less- Reserve for depreciation | 7,973,980 | $1,541,580 |
| | | |
| CURRENT ASSETS: | | |
| Cash | $ 306,995 | |
| Accounts receivable, less reserve of $3,785 | 894,809 | |
| Due from Milwaukee Gas Light Company | 148,489 | |
| Materials and supplies, at cost (including | | |
| $2,970,846 of fuels and residuals) | 3,190,029 | |
| Prepayments | 31,044 | 4,571,366 |
| | | |
| | | $6,112,946 |

| STOCKHOLDERS' EQUITY AND LIABILITIES | | |
|---|---|---|
| STOCKHOLDERS' EQUITY: | | |
| Common stock, par value $100 per share—authorized and | | |
| outstanding, 35,000 shares | $3,500,000 | |
| Earnings retained in the business | 1,371,694 | $4,871,694 |
| | | |
| Total stockholders' equity | | |
| | | |
| CURRENT LIABILITIES: | | |
| Accounts payable | $ 50,961 | |
| Due to affiliated companies | 1,476 | |
| Accrued general taxes | 292,151 | |
| Federal income taxes | 546,083 | |
| Accrued payroll | 36,959 | |
| Other | 61,769 | 989,399 |
| | | |
| RESERVES: | | |
| Maintenance | $ 235,013 | |
| Injuries and damages | 16,840 | 251,853 |
| | | $6,112,946 |

The accompanying notes to financial statements are an integral part
of this balance sheet.

WG-ANR-00049854

## MILWAUKEE SOLVAY COKE COMPANY

### STATEMENT OF INCOME

### YEAR ENDED DECEMBER 31, 1950

| | | |
|---|---|---|
| OPERATING REVENUES: | | |
| Coke and by-products | $10,261,178 | |
| Gas | 889,526 | $11,150,704 |
| | | |
| OPERATING EXPENSES: | | |
| Operation | $ 9,074,127 | |
| Maintenance | 557,010 | |
| Depreciation | 74,067 | |
| Taxes- | | |
| State, local and miscellaneous Federal | 253,989 | |
| State income | 62,709 | |
| Federal income | 453,522 | |
| Federal excess profits | 48,000 | |
| Total operating expenses | | 10,523,424 |
| Operating income | | $ 627,280 |
| OTHER INCOME (Net) | | 21,619 |
| Gross income | | $ 648,899 |
| INCOME DEDUCTIONS | | 1,341 |
| NET INCOME | | $ 647,558 |

The accompanying notes to financial statements
are an integral part of this statement.

MILWAUKEE SOLVAY COKE COMPANY

STATEMENT OF EARNINGS RETAINED IN THE BUSINESS

YEAR ENDED DECEMBER 31, 1950

| | |
|---|---|
| BALANCE—DECEMBER 31, 1949 | $1,074,136 |
| NET INCOME | 647,558 |
| | $1,721,694 |
| CASH DIVIDENDS ON COMMON STOCK, $10 per share | 350,000 |
| BALANCE—DECEMBER 31, 1950 | $1,371,694 |

The accompanying notes to financial statements
are an integral part of this statement.

WG-ANR-00049856

## MILWAUKEE GAS LIGHT COMPANY AND SUBSIDIARY

### CONSOLIDATED BALANCE SHEET

#### DECEMBER 31, 1950

### PROPERTY AND OTHER ASSETS

PROPERTY, PLANT AND EQUIPMENT:
Gas distribution, storage and production

| | | | |
|---|---|---|---|
| facilities, at original cost | $44,039,226 | | |
| Less- Reserve for depreciation | 10,019,816 | $34,019,410 | |
| Coke and by-products plant and equipment, at cost | $ 9,515,560 | | |
| Less- Reserve for depreciation | 7,973,980 | 1,541,580 | $35,560,990 |

CURRENT ASSETS:

| | | |
|---|---|---|
| Cash | $ 2,809,047 | |
| Deposit with trustee—withdrawable in accordance with provisions of bond indenture | 5,000,000 | |
| United States Government obligations, at cost | 1,993,475 | |
| Accounts receivable, less reserve of $32,802 | 2,920,999 | |
| Materials and supplies, at cost (including $3,260,453 of fuels and residuals) | 5,126,760 | |
| Prepayments | 73,682 | 17,923,963 |

DEFERRED CHARGES:

| | | |
|---|---|---|
| Natural gas conversion costs and related expenses, being amortized within a ten year period beginning July 1, 1950 | $ 4,535,896 | |
| Debt discount, redemption premium and expense, applicable to refunded issue, being amortized | 951,746 | |
| Other | 113,594 | 5,601,236 |

|  |  |
|---|---|
| | ---------- |
| | $59,086,189 |
| | ========== |

### STOCKHOLDERS' EQUITY AND LIABILITIES

STOCKHOLDERS' EQUITY:

| | | |
|---|---|---|
| Common stock, par value $12 per share—authorized 2,000,000 shares, outstanding 1,613,408 shares | $19,360,896 | |
| Other paid-in capital | 66,127 | |
| Earnings retained in the business | 2,831,631 | |
| Total stockholders' equity | | $22,258,654 |

LONG-TERM DEBT:

| | | |
|---|---|---|
| First mortgage bonds, 3-1/8% series due 1975 | $27,000,000 | |
| 3-3/8% sinking fund debentures due 1970 | 6,000,000 | 33,000,000 |
| Total capitalization | | $55,258,654 |

CURRENT LIABILITIES:

| | | |
|---|---|---|
| Accounts payable | $ 464,841 | |
| Due to affiliated companies | 513,871 | |
| Customers' deposits | 80,634 | |
| Accrued general taxes | 438,361 | |
| Federal income taxes | 1,144,138 | |
| Accrued interest | 187,465 | |
| Accrued payroll | 227,633 | |
| Other | 187,226 | 3,244,169 |

| | | |
|---|---|---|
| DEFERRED CREDITS | | 20,339 |

RESERVES:

| | | |
|---|---|---|
| Maintenance | $ 267,272 | |
| Injuries and damages | 71,003 | 338,275 |

| | | |
|---|---|---|
| CONTRIBUTIONS IN AID OF CONSTRUCTION | | 224,752 |

|  |  |
|---|---|
| | ---------- |
| | $59,086,189 |
| | ========== |

The accompanying notes to financial statements are an integral part
of this balance sheet.

WG-ANR-00049857

MILWAUKEE GAS LIGHT COMPANY AND SUBSIDIARY

CONSOLIDATED STATEMENT OF INCOME

YEAR ENDED DECEMBER 31, 1950

| | | |
|---|---:|---:|
| OPERATING REVENUE | | $13,511,011 |
| **OPERATING EXPENSES:** | | |
| Natural gas purchased | $3,128,470 | |
| Operation- | | |
|   Distribution | 1,297,833 | |
|   Customers' accounting and sales promotion | 1,495,594 | |
|   General and administrative | 1,114,597 | |
|   Other operation expense | 1,105,395 | |
| Maintenance | 793,549 | |
| Amortization of natural gas conversion costs and related expenses | 237,172 | |
| Depreciation | 703,095 | |
| Taxes- | | |
|   State, local and miscellaneous Federal | 747,519 | |
|   State income | 99,601 | |
|   Federal income | 610,000 | |
|     Total operating expenses | | 11,332,825 |
|     Operating income | | $ 2,178,186 |
| **OTHER INCOME (Net):** | | |
| Coke and by-products | $ 647,558 | |
| Other | 34,365 | 681,923 |
|     Gross income | | $ 2,860,109 |
| **INCOME DEDUCTIONS:** | | |
| Interest on long-term debt | $ 859,469 | |
| Amortization of debt discount and expense | 91,331 | |
| General interest | 18,792 | |
| Other (net) | 9,967 | 979,559 |
| **NET INCOME** | | $ 1,880,550 |

The accompanying notes to financial statements
are an integral part of this statement.

WG-ANR-00049858

MILWAUKEE GAS LIGHT COMPANY AND SUBSIDIARY

CONSOLIDATED STATEMENT OF EARNINGS

RETAINED IN THE BUSINESS

YEAR ENDED DECEMBER 31, 1950

| | | |
|---|---|---|
| BALANCE--DECEMBER 31, 1949 | | $2,086,321 |
| NET INCOME | | 1,880,550 |
| | | $3,966,871 |
| DEDUCT: | | |
| Cash dividends on- | | |
| Preferred stock, at rate of 7% | $128,333 | |
| Common stock, $.60 per share | 817,871 | |
| Redemption premium and expenses | | |
| on securities | 189,036 | $1,135,240 |
| BALANCE--DECEMBER 31, 1950 | | $2,831,631 |

The accompanying notes to financial statements
are an integral part of this statement.

WG-ANR-00049859

MILWAUKEE GAS LIGHT COMPANY AND SUBSIDIARY

NOTES TO FINANCIAL STATEMENTS

PROPERTY, PLANT AND EQUIPMENT

Changes in Property, Plant and Equipment during the year ended
December 31, 1950, are set forth as follows:

| Classification | Balance December 31, 1949 | Additions at Original Cost | Retirements at Original Cost | Balance December 31, 1950 |
|---|---|---|---|---|
| Milwaukee Gas Light Company- | | | | |
| In Service- | | | | |
| Intangible- | | | | |
| Organization | $ 29,718 | $ - | $ - | $ 29,718 |
| Tangible- | | | | |
| Production | 4,844,115 | 70,275 | 83,113 | 4,831,277 |
| Storage | 2,129,161 | 291,619 | 124,104 | 2,296,676 |
| Distribution | 27,777,004 | 4,516,852 | 319,714 | 31,974,142 |
| General | 4,107,280 | 422,545 | 122,345 | 4,407,480 |
| Construction work in progress | 420,216 | 79,717 | - | 499,933 |
| T o t a l | $39,307,494 | $5,381,008 | $ 649,276 | $44,039,226 |
| Milwaukee Solvay Coke Company- | | | | |
| Coke and by-products plant and equipment | | | | |
| (including intangibles of $205) | 9,454,264 | 64,136 | 2,840 | 9,515,560 |
| Consolidated property, plant and equipment, including intangibles | $48,761,758 | $5,445,144 | $ 652,116 | $53,554,786 |

The Company and its subsidiary represent that they had no significant and unusual
additions, abandonments, or retirements, or any significant and unusual changes
in the general character and locations of principal plants or other important
units which occurred during the fiscal year.

WG-ANR-00049860

## RESERVES FOR DEPRECIATION

Changes in Reserves for Depreciation during the period are summarized as follows:

| Description | Balance December 31, 1949 | Provision Charged to | | Deductions from Reserves | | | Balance December 31, 1950 |
|---|---|---|---|---|---|---|---|
| | | Income (Note 1) | Clearing and Other Accounts (Note 1) | Retirements at Original Cost | Removal Cost, Less Salvage | Other | |
| Milwaukee Gas Light Company- Unclassified | $ 9,454,416 | $703,095 | $ - | $594,746 | $55,190 | ($ 17,358*(2)) ( 1,838 ) | $ 9,523,095 |
| Transportation, tools and work equipment | 408,883 | - | 128,819 | 54,530 | 11,711* | 1,838* | 496,721 |
| T o t a l | $ 9,863,299 | $703,095 | $ 128,819 | $649,276 | $43,479 | $ 17,358* | $10,019,816 |
| Milwaukee Solvay Coke Company- Unclassified | 7,798,250 | 74,067 | - | 2,840 | 941* | 94,040*(3) | 7,964,458 |
| Transportation | 7,086 | - | 2,436 | - | - | - | 9,522 |
| Consolidated reserves for depreciation | $17,668,635 | $777,162 | $ 131,255 | $652,116 | $42,538 | $111,398* | $17,993,796 |

*Denotes red figure.

NOTES:
(1) Reference is made to note under "Maintenance and Depreciation" with respect to basis of provision for depreciation.
(2) Represents accrued depreciation at date of acquisition applicable to property acquired which was charged to property, plant and equipment.
(3) Represents reserve acquired by Milwaukee Solvay Coke Company from Milwaukee Gas Light Company in accordance with gas supply contract for portion of amortization of special facilities.

WG-ANR-00049861

## MISCELLANEOUS RESERVES

Changes in other reserves during the period are summarized as follows:

| Description | Balance December 31, 1949 | Provision Charged to | | Deductions from Reserves for Purposes for Which Reserves Were Provided | Balance December 31, 1950 |
|---|---|---|---|---|---|
| | | Income | Other Accounts | | |
| **Reserves deducted from assets in balance sheets-** | | | | | |
| Reserve for uncollectible accounts- | | | | | |
| Milwaukee Gas Light Company | $ 22,393 | $15,145(1) | $ - | $ 8,521 | $ 29,017 |
| Milwaukee Solvay Coke Company | 3,791 | - | - | 6 | 3,785 |
| | $ 26,184 | $15,145 | $ - | $ 8,527 | $ 32,802 |
| **Reserves under reserve caption in balance sheets-** | | | | | |
| Maintenance reserve- | | | | | |
| Milwaukee Gas Light Company | $ 78,459 | $35,722 | $ - | $ 81,922 | $ 32,259 |
| Milwaukee Solvay Coke Company | 195,045 | 60,000 | - | 20,032 | 235,013 |
| | $ 273,504 | $95,722 | $ - | $101,954 | $267,272 |
| Injuries and damages reserve- | | | | | |
| Milwaukee Gas Light Company | $ 57,987 | $46,000 | $ - | $ 49,824 | $ 54,163 |
| Milwaukee Solvay Coke Company | 27,375 | - | - | 10,535 | 16,840 |
| | $ 85,362 | $46,000 | $ - | $ 60,359 | $ 71,003 |
| Reserve for amortization of special facilities- | | | | | |
| Milwaukee Gas Light Company | $ 91,200 | $ 2,840 | $ - | $ 94,040(2) | $ - |

NOTES:
(1) Includes provision of $3,145 for uncollectible merchandise accounts, charged to merchandise and jobbing operations included in other income.
(2) Represents reserve acquired by Milwaukee Solvay Coke Company from Milwaukee Gas Light Company in accordance with gas supply contract for portion of amortization of special facilities.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 25 of 48   Document 50-23

WG-ANR-00049862

## CHANGES IN CAPITALIZATION

During the year the Company issued and sold 500,580 shares of common stock, at the par value of $12 per share, for $6,006,960, of which 500,000 shares were sold to the Company's parent, American Natural Gas Company, and 580 shares were sold to minority stockholders. The Company also issued and sold $27,000,000 principal amount of 3-1/8% series first mortgage bonds, and $6,000,000 principal amount of 3-3/8% sinking fund debentures. The amount of such first mortgage bonds authorized by the indenture is unlimited and additional bonds may be issued under the mortgage upon compliance with provisions thereof. The amount of debentures authorized by the indenture is $6,000,000. From the proceeds of the sale of these securities the Company redeemed the outstanding $13,334,000 principal amount of 4-1/2% series first mortgage bonds and the $2,000,000 principal amount of 7% preferred stock and repaid temporary bank borrowings of $10,150,000.

## SINKING FUND REQUIREMENTS

Sinking fund deposits are required annually, as follows:
(a) beginning in 1952, $120,000 for redemption of debentures, and
(b) beginning in 1954, $472,000 for redemption of first mortgage bonds.

## GAS OPERATING REVENUES

Gas operating revenues for the year are detailed as follows:

| Particulars | Amount |
|---|---|
| Residential | $ 6,621,265 |
| Space heating | 3,284,225 |
| Commercial | 985,968 |
| Industrial | 1,477,829 |
| Public authorities | 824,859 |
| Other gas revenues | 316,865 |
| T o t a l | $13,511,011 |

## MAINTENANCE AND DEPRECIATION

It is the practice of the Company and its subsidiary to charge to maintenance the cost of repairs of property and replacements and renewals of items determined to be less than units of property, except for maintenance costs of transportation, tools and other work equipment which are charged principally to clearing accounts and redistributed to various operating, construction and other accounts. Replacements and renewals of items considered to be units of property are charged to property accounts and units retired from the property accounts are charged to depreciation reserves. Dismantling or other costs and salvage applicable to units of property retired are charged or credited to such depreciation reserves.

WG-ANR-00049863

It is impracticable to indicate the specific rates of depreci-
ation applied by the Company to classified property accounts in comput-
ing the annual provisions for depreciation. The rates of depreciation
used by the Company have been approved by the Public Service Commission
of Wisconsin and are estimated to be substantially equivalent to straight-
line depreciation. The rate of depreciation as related to the average
yearly balance of depreciable property in service was approximately 1.83%
for the year 1950.

The Company's subsidiary has a 100% reserve for depreciation appli-
cable to a substantial portion of its facilities. Depreciation is pro-
vided currently at the rate of approximately 3% per annum on the balance
of the property.

## ANNUITY PENSION PLANS

The Company and its subsidiary have adopted plans, effective as
of January 1, 1950, to provide for retirement annuities for their em-
ployees at age 65. These plans are available to all employees upon com-
pletion of one year of continuous service, and may be discontinued upon
notice without liability to the companies for any future payment there-
under.

Annual payments to insurance companies during 1950 were approxi-
mately $465,000 ($255,000 for the Company and $210,000 for its subsidiary)
of which approximately $240,000 was attributable to past service costs,
reducing the unfunded past service costs to approximately $3,485,000
($2,115,000 for the Company and $1,370,000 for its subsidiary).

## SUPPLEMENTARY INFORMATION

The amounts of maintenance and depreciation which are charged to
expenses other than those shown in the statements of income are not
significant. The aggregate rental expense is not significant.

Provisions for state, local and miscellaneous Federal taxes, other
than income taxes, charged to income are summarized below; such taxes
charged to other accounts are not significant.

| P a r t i c u l a r s | Milwaukee Gas Light Company | Milwaukee Solvay Coke Company |
|---|---|---|
| Real estate and personal property | $ 645,087 | $ 223,401 |
| Social security | 87,913 | 30,588 |
| Other | 14,519 | - |
| | $ 747,519 | $ 253,989 |

During the year 1950 management and service contract fees paid by
the Company and its subsidiary to American Natural Gas Service Company,
which performed services at cost under contract, were charged principally
to expense and aggregated $37,561.

WG-ANR-00049864

## GENERAL

The equity of the Company in the net assets of its subsidiary at date of acquisition was $66,127 greater than the carrying value of the investment in such subsidiary. In consolidation such difference was credited to other paid-in capital. The undistributed earnings of the Company's subsidiary, since date of acquisition, aggregated $433,094. Intercompany accounts have been eliminated in consolidation.

The balances of Earnings Retained in the Business at December 31, 1949, for the Company and its subsidiary, have been restated to give effect to certain accounting adjustments recorded in 1950 in connection with prior years' Federal and State income taxes.

WG-ANR-00049865

EXHIBIT 1-B

# MILWAUKEE GAS LIGHT COMPANY

**CHARTER**
(ARTICLES OF INCORPORATION)

AS AMENDED THROUGH DECEMBER 26, 1950

[1]Section 1.  John Lockwood, William P. Lynde, James Kneeland, James H. Rogers, and D. P. Hull, Trustees of the Milwaukee Gas Light Company, organized under chapter fifty-one of the revised statutes, on the third day of January, 1852, and such other persons as may hereafter be associated with them as stockholders, their successors and assigns, are hereby created a body corporate and politic by the name of the Milwaukee Gas Light Company, with perpetual succession, and by that name shall have all the privileges, franchises, and immunities incident to a corporation.  They shall be capable in law of contracting and being contracted with, suing and being sued, defending and being defended, in all courts and places; they shall be capable in law of purchasing, holding, selling, leasing, and conveying estate, either real, personal, or mixed, so far as the same may be necessary and proper for the construction, extension, management, and usefulness of the works of said company, and for the good government of the same; they may have a common seal, and may alter the same at pleasure.

[2]Section 2(a)  The Capital Stock of said Company shall be Twenty-four Million Dollars ($24,000,000) divided into Two Million (2,000,000) shares of Common Stock of the par value of Twelve Dollars ($12.00) each.

[2](b)  The holders of the Common Stock shall not be entitled as a matter of right to any preemptive or subscription rights in or to the same or any other class of stock in the Company or of any other kind, nature or description whatsoever except that the Common Stock shall have preemptive rights in the event of issuance of additional shares of Common Stock for cash.

[2](c)  Holders of Common Stock shall be entitled to one vote for each share of Common Stock held, at all meetings of stockholders and at every election of directors.  All votes of stockholders may be in person or by proxy duly authorized.

---

1  As created by Chapter 159 of the Laws of the State of Wisconsin of 1852, effective March 27, 1852.

2  As amended and effective December 26, 1950.

WG-ANR-00049866

[2](d)  The affairs of the said Company shall be man-
aged by a Board of Directors of such number of members (of not less
than three, however,) as may be provided in the Company's by-laws, who
shall be chosen by vote of the holders of Common Stock.  Directors
shall be elected annually, on such date as from time to time may be
fixed by the by-laws and need not be stockholders of the Company in
order to be elected as directors.

[3]Section 3.  A majority of said board shall constitute a
quorum for the transaction of business.  They shall have power to ap-
point a Secretary and Treasurer and such other officers and agents as
may be deemed necessary; to make such covenants, contracts and agreements
with any person or persons, co-partnership, or body politic whatsoever,
as the execution and management of the works or the convenience and inter-
est of the Company may require; and they, or the holders of a majority
of the shares of stock outstanding and entitled to vote, may, from time
to time, make, prescribe or amend such by-laws, rules, orders, and regula-
tions respecting the management and control and disposition of the stock,
property and affairs of said Company as they may deem proper, not incon-
sistent with the Constitution and laws of the United States or of this
State.

[4]Section 4. The said company shall have power and full * * *
authority to manufacture, make and sell gas to be made from any and all
the substances or a combination thereof, from which inflammable gas is
obtained, for the purpose of lighting the city of Milwaukee, or the
streets thereof, or any buildings, manufactories, public places or houses
therein contained, and to erect all necessary works and apparatus, and
to lay pipes for the purpose of conducting the gas in any of the streets,
avenues, commons, lanes or alleys in said city; provided, that no permanent
injury shall be done to any street, highway, lane or alley in said city,
agreeably to the terms and conditions of a contract now existing between
the city of Milwaukee and John Lockwood, entered into on the sixth day
of June, A. D. 1851, a certified copy of which contract shall be placed
on file in the office of the secretary of state.  It being the purpose
hereof to repeal the exclusive nature of the above grant and of all
amendments thereto.[5]

---

3  As amended and effective February 11, 1948.

4  As created by Chapter 159 of the Laws of the State of Wisconsin, as
      stated to be amended by Chapter 327 of the Laws of the State of Wis-
      consin of 1911, effective June 15, 1911.  Said Chapter 327 purported
      to add the last sentence in Section 4 above, and at the place in-
      dicated by asterisks above purported to delete the words "and ex-
      clusive" which were contained in said Chapter 159.

5  The following authority was conferred upon the Company by an amendment
      to its Charter effected by Chapter 376 of the Laws of the State of
      Wisconsin of 1895, effective May 4, 1895:
    "The Milwaukee gas light company is hereby authorized to supply
      gas and extend its pipes on the continuation of National Avenue,
      in the county of Milwaukee, to the west line of section thirty-five,

WG-ANR-00049867

Section 5. (Condition stated in this Section as original-

ly created having been performed, said section as so created is no

———————————————

5 (Continued)

provided the consent of the supervisors of the town of Wauwatosa
be first obtained."

The following authority was conferred upon the Company by an amendment
to its Charter effected by Chapter 145 of the Laws of the State of
Wisconsin of 1883, effective April 3, 1883:

"The said Milwaukee Gas Light Company shall have the right to extend
its pipes and works into the country, contiguous to the city of Mil-
waukee, as far as one mile beyond the limits of said city, for the
purpose of manufacturing, selling and distributing gas to be used for
illumination, fuel, cooking or mechanical purposes, and within said
limits, shall have, possess and enjoy all the rights, privileges and
protection it now has and enjoys within the limits of said city,
including the use of all public streets and highways; provided, that
no street or highway shall be used for that purpose without the consent
of the board of supervisors of the town, or the corporate authorities
of the village in which such streets may be situated."

The following powers and authority were conferred upon the Company by
amendments to its Charter effected by Chapter 317 of private and local
laws of the State of Wisconsin of 1863, effective April 28, 1863, and
are still effective except to the extent that the same are superseded
by or in conflict with the above Section 4. Said Act reads as follows:

"Section 1. An act entitled "an act to incorporate the Mil-
waukee gas-light company," approved March 27th, 1852, is hereby amended,
so as to authorize, and this act does hereby authorize, said Milwaukee
gas-light company to purchase and acquire the property and franchises
of the Fifth ward gas-light company of the city of Milwaukee.

"Section 2. The said Milwaukee gas-light company are hereby
authorized to issue and sell stock of said company to an amount not
exceeding fifty thousand dollars, in addition to that already issued,
or which by its charter it is authorized to issue, such stock or the
proceeds thereof to be used in and about such purchase; and upon such
purchase being perfected, all the rights and privileges, grants,
franchises and immunities conferred by the charter of the respective
companies aforesaid, and the acts amendatory thereto, shall be and
hereby are granted to and conferred upon said Milwaukee gas-light company.

"Section 3. The Milwaukee gas-light company, after such purchase,
shall furnish gas to those portions of said city which have heretofore
been supplied with gas by said Fifth ward gas-light company, and at
the same rates as in other parts of the city, and shall have and there

WG-ANR-00049868

longer material or effective.  No new Section 5 has at any time been adopted.)

[6]Section 6.  If from any cause an election for directors shall not be held at the time specified therefor, the corporation for that reason shall not be dissolved, but it shall be lawful on any other day to hold an election for directors as shall be provided for in the by-laws of said corporation, and until such election, the directors of the preceding year shall continue to act, and all their doings shall be binding upon said corporation until their successors shall be elected.

[6]Section 7.  If any person shall willfully do or cause to be done, any act or acts whatsoever to injure any machine, pipe, or structures whatsoever, or anything appertaining to the works of said corporation, whereby the same may be stopped, obstructed, or injured, the person or persons so offending shall be considered guilty of a misdemeanor, and being thereof convicted, shall be punished by fine not exceeding three hundred dollars, or by imprisonment not exceeding two years, or both: Provided, Such criminal prosecution shall not in any wise impair the right of said company for damage, by a civil suit hereby authorized to be brought for any such injury as aforesaid, by and in the name of said corporation, in any court of the state having competent jurisdiction of the same.

---

5  (Continued)

is hereby granted to said Milwaukee gas-light company power and authority to manufacture, make and sell gas for the purposes of lighting the city of Milwaukee, or the streets thereof, or any houses, buildings, manufactories or public places therein contained, and to erect and keep in operation all necessary works and apparatus, and to lay pipe for the purpose of conducting the gas in any of the streets, avenues, commons, lanes or alleys of said city, and also across the Milwaukee river: provided that no permanent injury shall be done to any streets, highways, commons, avenues, lanes or alleys; and provided, also, that such pipe as shall be laid across the Milwaukee river shall be so laid and protected as not to interfere with the navigation of said river.

"Section 4.  Said Milwaukee gas-light company is authorized to sell and convey any real estate which it has or may acquire by such purchase, and which shall not be wanted for the purpose of carrying on its business."

6  As created by Chapter 159 of the Laws of the State of Wisconsin of 1852, effective March 27, 1852.

WG-ANR-00049869

[6]Section 8. The said corporation are hereby authorized and fully empowered in their corporate capacity, to borrow any sum or sums of money from any person or persons, corporations, or body politic of any kind, and make and execute in their corporate name, all necessary writings, notes, bonds, or other papers, and make and execute and deliver such securities in amount and kind, as may be deemed expedient by said corporation for all purposes in carrying out the objects of this company; and the official acts of said company are hereby declared binding in law and equity upon said corporation and upon all other parties to such contracts.

[6]Section 9. This act shall be favorably construed to effect the purposes thereby intended, and the same is hereby declared to be a public act, and copies thereof printed by authority of the state shall be received as evidence thereof.

[6]Section 10. This act shall take effect from and after its passage.

[7]Section 11. The purposes for which said Company is organized, in addition to but not in contravention of or in any manner altering, amending or rescinding any other purposes set forth or any other powers or authority granted in or possessed or enjoyed under or by virtue of this Charter, are the manufacture of gas from any and all substances and the acquisition, purchase, leasing, sale, distribution, transportation, transmission and disposition of artificial, manufactured or natural gas or any and all combinations thereof; the manufacture and sale of the residual products obtained in the manufacture, processing or treatment of gas, or of the by-products obtainable as a result thereof; the acquisition, ownership, leasing and operation of lines or other facilities for the transmission, distribution or transportation of any of the products referred to in this Section; the manufacture, production, purchase, lease, acquisition, sale, distribution, transportation, transmission and any other disposition of coal, coke, products of coal or coke, residual or by-products obtained in the manufacture or processing of coal or coke, and other materials or substances used for the same purposes as are coal, coke or the products or by-products or residuals of either; the purchase and sale of stocks, bonds or other securities of any business having any of the purposes, powers or authority of the Company and the purchase, sale and operation of any assets of any such business; the acquisition, purchase, designing, manufacture, leasing, holding, pledging, sale, transportation, disposition of, exchange, receiving and dealing in goods, wares, commodities and merchandise and chattels of every kind and particularly the acquisition, purchase, designing, manufacture, leasing, holding, pledging, sale, transportation, transmission, disposition of, exchange,

---

6 As created by Chapter 159 of the Laws of the State of Wisconsin of 1852, effective March 27, 1852.

7 As amended and effective January 3, 1947.

WG-ANR-00049870

receiving and dealing in: appliances, machinery and equipment relating
to any or all of the foregoing, all kinds of real and personal property
tangible or intangible and wheresoever situated and including (without
by this specification in any way limiting the generality of the foregoing)
the dealing in real property and fixtures, improvements, and chattels
real and the mortgaging, holding, buying, pledging, transporting and
disposing of the same in any manner whatsoever; the acquisition, purchase,
issue, sale, holding, pledge, disposition of, exchange, receiving and
dealing in bonds, notes, mortgages, stocks and other securities of any
kind or nature; the loaning of money on security or otherwise; the carry-
ing on, developing, and extending the business or any of the businesses
above referred to; the doing of all things necessary or incidental to
any of the foregoing; and the conduct of a gas utility business or
mercantile, manufacturing, trading, security, investment and real estate
businesses of every kind at any and all places, and each and all of said
purposes and businesses may be pursued and conducted within and without
the State of Wisconsin.

WG-ANR-00049871

EXHIBIT 2-A

MILWAUKEE GAS LIGHT COMPANY

B Y - L A W S

OF

MILWAUKEE GAS LIGHT COMPANY

ARTICLE I

STOCKHOLDERS' MEETINGS

Section 1. The fiscal and business year of the Company shall commence on the first day of January and terminate on the last day of December, both days inclusive.

Section 2. The annual meeting of the stockholders for the election of directors and the transaction of such other business as may be deemed advisable shall be held on the first Monday in February of each year at 10:00 o'clock A.M., at the Company's offices in the City of Milwaukee, Wisconsin, or at such other place in said city, or such other date or hour as shall be designated by a resolution of the board of directors and set forth in the notice of said meeting.

Section 3. Special meetings of stockholders may be called by the president, secretary or assistant secretary or by the board of directors and shall be called by the secretary on a written request to him signed by stockholders holding one-fourth in amount of the outstanding voting capital stock. None but the special business noticed in such case shall be transacted at such special meetings.

Section 4. Notice of the time and place of annual meetings and of the time, place and purpose of special meetings of stockholders shall be mailed to every stockholder of record at least ten days before the date of such meeting. Every such notice shall be deemed duly served upon the stockholder when the same shall have been deposited in the United States mail with postage thereon fully prepaid, plainly addressed to the stockholder at his, her or its last address appearing upon the records of the Company.

Notice of the time, place and purpose of any meeting of stockholders may be waived by any stockholder not present and entitled to vote thereat by telegram or other writing executed either before or after any such meeting shall have been held.

WG-ANR-00049872

Section 5. At all meetings of the stockholders, each stockholder shall be entitled to one vote, either in person or by proxy, for each share of stock standing in his name on the books of the Company and entitled to vote. Except as otherwise specifically provided by law, a majority of all shares of stock of the Company outstanding and entitled to vote shall constitute a quorum. No proxy shall be permitted to vote unless his appointment be in writing and filed with the secretary at or before the meeting. The stockholders present at any meeting, if less than a quorum, may adjourn the meeting to another hour or day.

Section 6. The board of directors are authorized to close the stock transfer books of the Company for a period not exceeding thirty days preceding the date of any meeting of stockholders, or the date for the payment of any dividend, or the date for the allotment of rights, or the date when any change or conversion or exchange of capital stock shall go into effect: Provided that in lieu of closing the stock transfer books, the directors may, in their discretion, fix a date not exceeding thirty days preceding the date of any meeting of stockholders, or the date for the payment of any dividend, or the date for the allotment of rights or the date when any change or conversion or exchange of capital stock shall go into effect, as a record date for the determination of the stockholders entitled to notice of, and to vote at, any such meeting, or entitled to receive payment of any such dividend, or to any such allotment of rights, or to exercise the rights in respect of any such change, conversion or exchange of capital stock, and in such case such stockholders and only such stockholders as shall be stockholders of record on the date so fixed shall be entitled to such notice of, and to vote at, such meeting, or to receive payment of such dividend, or to receive such allotment of rights, or to exercise such rights, as the case may be, notwithstanding any transfer of any stock on the books of the corporation or otherwise after any such record date fixed as aforesaid. In notices of annual and special meetings of stockholders, the record date so fixed or the date upon which the transfer books close shall be stated.

Section 7. The words "stockholder" or "stockholders" as used in this Article I of the by-laws (or elsewhere in these by-laws with respect to the calling, notice and voting at meetings of holders of stock) shall be understood to mean the holders of stock of the type then entitled to vote at any such meeting.

## ARTICLE II

## BOARD OF DIRECTORS

Section 1. The board of directors shall consist of nine members who need not be stockholders. Five of their number shall constitute a quorum. Directors present at any meeting, though less than a quorum, may adjourn the meeting to another day.

Section 2. The board of directors shall have the general management, control and direction of the affairs of the Company, shall

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 36 of 48   Document 50-23

WG-ANR-00049873

be elected annually at the annual meeting of the stockholders and shall severally serve until the next annual meeting and until such time as their respective successors are duly elected and qualify.

Directors shall receive compensation in the sum of One Hundred Dollars for attendance at meetings of the board at which a quorum shall be present.

By a majority vote of all directors, the board of directors may at any time remove, discharge or dismiss any officer or agent of the Company.

Any vacancy in the board of directors, howsoever occasioned, may be filled by a majority of the remaining directors. Any director so elected shall hold office for the unexpired portion of the term of the director whom he shall have succeeded and until his successor shall be elected and qualify.

Section 3. The annual meeting of the board of directors shall be held immediately after the adjournment of the meeting of stock-holders at which they were elected.

Regular monthly meetings of the board shall be held on a day to be specified from time to time by resolution of the board.

Special meetings shall be held at such times as may be specified by the president or the secretary of the Company or by any four members of the board.

Notice of the annual meeting of the board of directors need not be given.

Regular and special meetings of the board of directors shall be held at such time and place as may be stated in the notice of such meetings.

Written notice of regular and special meetings of the board of directors shall be mailed or delivered or notice given by telephone to every director at least twenty-four hours prior to the time of hold-ing such meetings and every such notice shall be deemed duly given to a director when the same shall have been deposited in the United States mail with postage fully prepaid, plainly addressed to the director at his last address as shown by the books of the Company.

Section 4. Any business may be transacted at any regular meeting of the board and the nature thereof need not be specified in the notice of such regular meeting.

At special meetings of the board only such business shall be transacted as is stated in the notice of the special meeting, except that if at any such meeting every director shall be present, whether or not without notice, or being absent shall agree, any business may be transacted at such special meeting.

-3-

WG-ANR-00049874

Section 5. Notice of the time, place and purpose of any meeting of the board of directors may be waived by telegram or other writing by any director, whether or not present, and entitled to vote thereat, either before or after the holding of such meeting.

Section 6. The board of directors shall determine the method of conducting the business of the Company and also what agents and servants shall be employed and shall fix the compensation of all officers, agents and servants. The board of directors shall determine the nature and character of the business to be conducted by the Company and shall purchase or contract or authorize any officer or agent to purchase or contract for any property and the performance of any labor or service that they may deem expedient.

Section 7. Each director, whether or not then in office, and his heirs, executors and administrators, shall be and hereby is indemnified by the Company against expenses reasonably incurred by him in connection with any claim made, or any action, suit or proceeding brought, against him by reason of any action taken or omitted to be taken by him as a director, or otherwise by reason of his being or having been a director; provided, however, that such right of indemnification shall not exist in the following cases:

(a) When the director seeking indemnification shall admit the justness of the claim made against him;

(b) When the claim made, or action, suit or proceeding brought, against the director seeking indemnification shall be settled prior to adjudication by the payment of all or a substantial portion of the amount claimed unless the Company shall consent thereto; or

(c) When the action, suit or proceeding brought against the director seeking indemnification shall result in an adjudication of liability on the part of such director or an adjudication that such director had been derelict in the performance of his duties as a director.

The right of indemnification afforded directors by this Section shall not be exclusive of other rights to which they may be entitled as a matter of law.

## ARTICLE III

### OFFICERS, THEIR POWERS AND DUTIES

Section 1. The officers of the Company shall consist of a president and an executive vice-president, both to be selected from among the directors of the Company, and one or more vice-presidents, a secretary, a treasurer and such assistant secretaries and assistant treasurers as the board shall determine. Each of said officers shall

WG-ANR-00049875

be elected by ballot of the board of directors to hold office until the
next annual meeting of the board and until his successor is elected and
qualified.

Section 2. The president shall be the chief officer of the
Company and, subject to the board of directors, shall direct and oversee
the management and operations of the Company. He shall preside at all
meetings of the stockholders and of the board of directors. It shall be
the duty of the president, unless otherwise directed by the board, to
sign all contracts, deeds, bonds, and promissory notes, and all such
other papers to which the Company is a party as may be required under
the rules adopted from time to time by the board of directors.

Section 3. The executive vice-president shall perform such
duties as the board of directors may from time to time prescribe, and all
of the duties of the president when the latter is absent.

Section 4. The vice-presidents shall perform such duties
as shall from time to time be assigned to them by the president, the
executive vice-president or the board of directors. In the absence of
the president and the executive vice-president, the vice-presidents
shall perform such of the duties of the president and of the executive
vice-president as shall be assigned to them by the president, the
executive vice-president or the board of directors.

Section 5. The secretary shall keep the minutes of all
meetings of the board of directors and the minutes of all meetings of
the stockholders in books provided for that purpose. He shall be the
custodian of the seal of the Company and shall affix the same to any in-
strument requiring it and, when so affixed, shall attest it by his sig-
nature. He shall attend to the giving and serving of all notices of the
Company. He shall have charge of the minute books, transfer books and
stock ledgers and such other books, documents and papers as the board of
directors may direct. He shall perform such other duties as may be re-
quired of him by the board of directors or the president.

In the absence of the secretary, any assistant secretary is
authorized to record the minutes of meetings of the board of directors
and of the stockholders at which such assistant secretary is present.
Any assistant secretary, upon authority of the board of directors or the
president or executive vice president, shall affix the corporate seal to
instruments in writing and attest the same and shall perform such other
duties as may be required by the board of directors, the president or
the secretary.

Section 6. The treasurer shall have charge of the books
of account. He shall receive all moneys due and payable to the Company
from whatever source and shall have custody of all funds and securities

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 39 of 48   Document 50-23

WG-ANR-00049876

belonging to the Company. He shall endorse checks, notes and other obligations and shall deposit the same to the credit of the Company in such bank or banks or depository as the board of directors may designate. He shall disburse the moneys of the Company by checks which shall be signed by the president, or the executive vice president, or a vice president, and by the treasurer or an assistant treasurer, except as otherwise provided by the board of directors. He shall perform such other duties as may be required of him by the board of directors, or the president.

The assistant treasurers shall have such powers and perform such duties as shall be assigned to them by the board of directors, the president or the treasurer.

Section 7. The board of directors may appoint such other and additional officers as they may deem proper and may modify, alter, change or supplement, in any respects deemed proper by the board, any of the duties and functions of any of the officers of the Company whether elected or appointed. Unless notified or changed by the board of directors pursuant to the foregoing, the respective officers of the Company shall have the duties and powers conferred upon them by these by-laws.

Section 8. The secretary, treasurer and such other agents or employees of the Company as may be required shall each execute a bond to the Company in such penalty and with such sureties as may be acceptable to the board of directors; conditioned for the faithful performance of their respective duties.

Section 9. Each officer, whether or not then in office, and his heirs, executors and administrators, shall be and he hereby is indemnified by the Company against expenses reasonably incurred by him in connection with any claim made, or any action, suit or proceeding brought, against him by reason of any action taken or omitted to be taken by him as an officer, or otherwise by reason of his being or having been an officer; provided, however, that such right of indemnification shall not exist in the following cases:

    (a) When the officer seeking indemnification shall admit the justness of the claim made against him;

    (b) When the claim made, or action, suit or proceeding brought, against the officer seeking indemnification shall be settled prior to adjudication by the payment of all or a substantial portion of the amount claimed unless the Company shall consent thereto; or

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 40 of 48   Document 50-23

WG-ANR-00049877

    (c)  When the action, suit or proceeding brought against the officer seeking indemnification shall result in an adjudication of liability on the part of such officer or an adjudication that such officer had been derelict in the performance of his duties as an officer.

        The right of indemnification afforded officers by this section shall not be exclusive of other rights to which they may be entitled as a matter of law or any other provisions heretofore or hereafter adopted or approved by the stockholders or directors.

## ARTICLE IV

### OFFICES

        Section 1. The principal office of the Company shall be in the City of Milwaukee, in the State of Wisconsin. The Company shall have and maintain such other offices as the board of directors may deem appropriate.

## ARTICLE V

### CERTIFICATES OF STOCK

        Section 1. All certificates of stock shall be signed by the president or a vice-president and by the secretary or an assistant secretary and shall bear the corporate seal of the Company, provided, however, that the board of directors may authorize the use of facsimile signatures and facsimile seal when deemed advisable.

        Section 2. No transfers of stock shall be valid except as between the parties thereto until the same shall have been so entered upon the corporate books as to show the name of the parties to the transfer, the number and designation of the shares and the date of the transfer.

## ARTICLE VI

### CORPORATE FUNDS

        Section 1. All moneys belonging to the Company shall be deposited from day to day to the credit of the Company with such bank or banks as the directors shall direct and shall only be drawn from such bank or banks by check signed by such officer or officers as the board of directors may authorize.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 41 of 48   Document 50-23

WG-ANR-00049878

## MILWAUKEE GAS LIGHT COMPANY

### ARTICLE VII

#### CORPORATE SEAL

Section 1.  The corporate seal of the Company shall have inscribed on it the following:  "MILWAUKEE GAS LIGHT COMPANY INCORPORATED MARCH 27, 1852, MILWAUKEE  WIS."

### ARTICLE VIII

#### AMENDMENTS

Section 1.  These by-laws may be amended or repealed by the affirmative vote of a majority of the common stock of the Company present in person or by proxy at any regular or special meeting of the common stockholders at which a quorum is present; but if such amendment or repeal shall be made at a special meeting of the common stockholders, the proposed amendment or repeal shall be set forth in the notice of such special meeting.  These by-laws may also be amended or repealed by the affirmative vote of a majority of the entire number of directors present at any meeting of the board of directors held pursuant to notice setting forth the proposed amendment or repeal and notifying the directors that action thereon will be taken at the meeting.


Effective December 19, 1950.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 42 of 48   Document 50-23

WG-ANR-00049879

EXHIBIT 15-0

C O P Y

SERVICE AGREEMENT

Between

MICHIGAN-WISCONSIN PIPE LINE COMPANY

and

MILWAUKEE GAS LIGHT COMPANY

Effective

January 1, 1951

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 43 of 48   Document 50-23

WG-ANR-00049880

## SERVICE AGREEMENT

This agreement is made as of the __7th__ day of __November__,
1950, by and between Michigan-Wisconsin Pipe Line Company, a Delaware
corporation, (hereinafter referred to as "Seller"), and Milwaukee Gas
Light Company, a Wisconsin corporation, (hereinafter referred to as
"Buyer").

In consideration of the premises and of the mutual covenants and
agreements included herein, the parties do covenant and agree as fol-
lows:

1. __Gas to be Sold and Purchased.__  Seller agrees to sell and
deliver, and Buyer agrees to purchase, receive and pay for, under
the conditions hereinafter recited, natural gas in such amounts as
shall be required by Buyer in its operations, except as provided
under Seller's applicable Rate Schedule and the General Terms and
Conditions attached to and made part thereof, in the territory com-
posed of the Counties of Milwaukee, Ozaukee, Washington and Waukesha,
in the State of Wisconsin, in which Buyer shall from time to time
lawfully engage in the business of distributing gas to the public
generally as a public utility:  Provided, that Buyer may continue to
produce water gas and liquefied petroleum gas, and to purchase coke
oven gas produced by Milwaukee Solvay Coke Company, a Wisconsin cor-
poration (herein referred to as the Coke Company), or, if the proper-
ties of the Coke Company shall be acquired by Buyer as an entirety,
Buyer may produce coke oven gas in the operation of such properties,
and Buyer may distribute and sell such coke oven gas and other types
of gas to its retail customers, but except as provided below the
amount of such gas which Buyer may distribute and sell to its retail
customers as provided in this Section shall not exceed 10,000 MCF in
any one day.  This agreement, including the foregoing provisions of
this Section, shall not be deemed to prohibit Buyer from distributing
and selling any type of gas which Buyer is able to produce or purchase
from any source whatsoever (a) to the extent required by Buyer in
its operations during any period of time when Seller shall fail or
shall be unable to supply all the gas required by Buyer in its oper-
ations as defined in this agreement, or (b) to any other public
utility for resale when Seller shall fail to supply gas for such
purpose, or (c) for resale to any customer whose monthly use of gas
would exceed 10,000 MCF, and when Seller shall fail to supply gas
for such purpose, or (d) for use in any municipally-owned sewage
disposal plant when Seller shall fail to supply gas for such purpose.

The large volume customers of Buyer whose service Seller
has approved are shown in Exhibit A to this Service Agreement.

WG-ANR-00049881

SERVICE AGREEMENT
(Continued)

2. <u>Delivery Points and Pressures</u>. The place or places of delivery, the delivery pressures and the assumed atmospheric pressures are agreed upon as follows:

| Places of Delivery | Delivery Pressures (Minima) | Assumed Atmospheric Pressures |
|---|---|---|
| Milwaukee Measuring Station. (Located in the Southeast Quarter of the Northeast Quarter of Section 12, Township 6 North, Range 20 East, Waukesha County, Wisconsin.) | 150 psig | 14.4 psia |
| Jackson Measuring Station. (Located in the Southeast Quarter of the Southwest Quarter of Section 17, Township 10 North, Range 20 East, Washington County, Wisconsin.) | 150 psig | 14.4 psia |

3. <u>Applicable Rate Schedule</u>. The natural gas delivered hereunder shall be paid for under the Company's Rate Schedule G-1, on file with the Federal Power Commission, or under any other applicable rate schedule or rate schedules of Seller as from time to time shall be in effect in accordance with the provisions of the Natural Gas Act.

This agreement in all respects shall be subject to the provisions of the aforementioned Rate Schedule, and to the applicable provisions of the General Terms and Conditions attached to the Rate Schedule filed with the Federal Power Commission, all of which are by reference made a part hereof.

4. <u>Term</u>. This agreement shall take effect on January 1, 1951 and shall be and remain in force and effect for a primary period of twenty years, and from year to year thereafter until terminated on eighteen months' notice in writing, given by either party to the other. If either party shall desire to terminate this agreement at the expiration of the primary period, it shall give written notice thereof to the other party at least eighteen months prior to the expiration of the primary period.

WG-ANR-00049882

SERVICE AGREEMENT
(Continued)

5. <u>Agreement Being Superseded</u>. This agreement supersedes the following contract between the parties hereto, which is hereby terminated as of the effective date hereof:

> Gas Contract between Michigan-Wisconsin
> Pipe Line Company and Milwaukee Gas Light
> Company, dated August 31, 1948, as amended.

6. <u>Notices</u>. Notices to Seller under this contract shall be addressed to it at 500 Griswold Street, Detroit 26, Michigan, and notices to Buyer shall be addressed to it at 626 East Wisconsin Avenue, Milwaukee, Wisconsin. Either party may change its address specified in this section at any time, on written notice.

7. <u>Non-Waiver of Future Defaults</u>. No waiver by either party of any one or more defaults by the other in the performance of any provision of this agreement shall operate or be construed as a waiver of any future default or defaults, whether of a like or of a different character.

8. <u>Assignment</u>. Neither party hereto shall asign this agreement or any of its rights or obligations hereunder without the consent in writing of the other party; provided that Seller may, without such consent, assign this agreement and all its rights and obligations hereunder to any party which shall acquire all the assets of Seller, and Buyer may, without such consent, assign this agreement and all its rights and obligations hereunder to any party which shall acquire all the distribution system and assets of Buyer. The provisions of this Section 8 shall not be construed to prohibit either party, without the consent of the other party, from mortgaging or pledging this agreement or its rights hereunder to secure the payment of any bonds, or other indebtedness of such party.

9. <u>Successors</u>. This agreement shall be binding on any company which shall succeed by purchase, merger or consolidation to the properties of Seller or Buyer, as the case may be.

10. <u>Statutory Regulation</u>. This agreement and the respective obligations of the parties hereunder are subject to present and future valid laws, orders, rates, rules and regulations of duly constituted authorities having jurisdiction.

WG-ANR-00049883

SERVICE AGREEMENT
(Continued)

In witness whereof the parties hereto have caused this contract to be duly executed in several counterparts by their several duly authorized officers.

MICHIGAN-WISCONSIN PIPE LINE COMPANY

Attest:

/s/ Stanton S. Faville
Secretary

By    /s/ Henry Fink
President

MILWAUKEE GAS LIGHT COMPANY

Attest

/s/ P. J. Imse
Secretary

By    /s/ Glenn R. Chamberlain
President

WG-ANR-00049884

EXHIBIT A TO
SERVICE AGREEMENT

Dated    November 7, 1950

Effective Date  January 1, 1951

Supersedes Exhibit A Effective  -----


LARGE VOLUME CUSTOMERS OF BUYER APPROVED FOR SERVICE
BY SELLER AND AUTHORIZED VOLUMES

| Name of Large Volume Customer | Maximum Monthly Requirement Authorized by Seller |
|---|---|
| Milwaukee, Wisconsin | |
| A. O. Smith Corporation | 33,833 MCF |
| Ampco Metal Company | 15,336 MCF |
| Chain Belt Company | 10,240 MCF |
| Falk Corporation | 40,833 MCF |
| Froedtert Grain & Malting Company | 95,417 MCF |
| Globe Steel Tubes Company | 46,109 MCF |
| Harley-Davidson Motor Company | 12,150 MCF |
| International Harvester Company | 42,425 MCF |
| Milwaukee Western Malt Company | 29,167 MCF |
| National Enameling & Stamping Company | 11,915 MCF |
| Nordberg Mfg. Co. | 10,496 MCF |
| Rundle Manufacturing Company | 26,425 MCF |
| Wehr Steel Company | 13,833 MCF |

Milwaukee Gas Light Company            Michigan-Wisconsin Pipe Line Company
          (Buyer)                                    (Seller)

By /s/ Dudley B. W. Brown              By   /s/ Henry Fink

Date  November 22, 1950                Date    November 20, 1950

WG-ANR-00049885