# EXHIBIT 15

SECURITIES AND EXCHANGE COMMISSION
WASHINGTON 25, D. C.


FORM 10-K

ANNUAL REPORT

Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934


For the Fiscal Year Ended December 31, 1954


MILWAUKEE GAS LIGHT COMPANY (WISCONSIN)
(Exact name of registrant, as specified in charter, and State of incorporation)


626 East Wisconsin Avenue, Milwaukee 1, Wisconsin
(Address of principal executive office)

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 2 of 47   Document 50-26

WG-ANR-00049677

INFORMATION REQUIRED IN REPORT

Item 1. Securities Registered on Exchanges.

    As to each class of securities of the registrant which is registered on a national securities exchange, furnish the information required by the following table:

        Registrant has no securities registered on a national securities exchange.

Item 2. Number of Stockholders.

    State, in substantially the tabular form indicated below, the approximate number of holders of record of each class of stock of the registrant.

As of January 31, 1955

| Title of Class | Number of Holders |
|---|---|
| Common Stock, Par Value $12 Per Share | 1 |

Item 3. Parents and Subsidiaries of Registrant.

    Furnish a list or diagram of all parents and subsidiaries of the registrant and as to each person named indicate the percentage of voting securities owned, or other bases of control, by its immediate parent.

As of January 31, 1955

| Name of Company | Percentage of voting securities owned by the immediate parent |
|---|---|
| American Natural Gas Company | |
| Milwaukee Gas Light Company (registrant) | 100% |
| Milwaukee Solvay Coke Company (*) | 100% |

    Note (*)  Milwaukee Solvay Coke Company is included in the respective consolidated financial statements. Separate financial statements are also filed for this subsidiary.

Item 4. Changes in the Business.

    Briefly describe any materially important changes during the fiscal year, not previously reported, in the business of the registrant and its subsidiaries.

        None.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 3 of 47   Document 50-26

WG-ANR-00049678

## Item 5. Principal Holders of Voting Securities.

If any person owns of record, or is known by the registrant to own beneficially, more than 10% of the outstanding voting securities of the registrant, name each such person, state the approximate amount of such securities owned of record but not owned beneficially, the approximate amount owned beneficially and the percentage of outstanding voting securities represented by the amount owned by him in each such manner.

At January 31, 1955 American Natural Gas Company owned of record and beneficially all of the outstanding voting securities of registrant.

## Item 6. Directors of Registrant.

Furnish the following information, in tabular form to the extent practicable, with respect to each director of the registrant:

(a)  Name each such director, state the date on which his present term of office will expire (Note 1) and list all other positions and offices with the registrant presently held by him.

(b)  State his present principal occupation or employment and give the name and principal business of any corporation or other organization in which such employment is carried on.  If not previously reported, furnish similar information as to all of his principal occupations or employments during the last five years.

(c)  State, as of the most recent practicable date, the approximate amount of each class of equity securities of the registrant or any of its parents or subsidiaries, other than directors' qualifying shares, beneficially owned directly or indirectly by him.  If he is not the beneficial owner of any such securities, make a statement to that effect (Note 2).

(d)  If more than 10% of any class of securities of the registrant or any of its parents or subsidiaries are beneficially owned by him and his associates, state the approximate amount of each class of such securities beneficially owned by such associates, naming each associate whose holdings are substantial (Note 2).

| Names and principal occupations or employments, employer and employer's business (Note 3) | Common stock of parent (shares) |
| --- | --- |
| E. Gordon Black<br>Vice President and Treasurer of registrant | -0- |
| Dudley B. W. Brown<br>President of registrant | 665(4) |
| William C. Buchanan<br>Vice President - Consultant of The Babcock & Wilcox Company, a manufacturer of boilers, refractories and tubular products | -0- |
| John Dern<br>General Counsel of American Natural Gas Company and American Natural Gas Service Company and partner in law firm of Sidley, Austin, Burgess & Smith | 110 |
| Henry Fink<br>President of American Louisiana Pipe Line Company, American Natural Gas Service Company and Michigan Wisconsin Pipe Line Company | 1,200 |

-2-

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 4 of 47   Document 50-26

WG-ANR-00049679

| Names and principal occupations or employments, employer and employer's business (Note 3) | Common stock of parent (shares) |
|---|---|
| Ralph T. McElvenny<br>    President of American Natural Gas Company; Chairman of American Louisiana Pipe Line Company, American Natural Gas Service Company, Michigan Wisconsin Pipe Line Company and Michigan Consolidated Gas Company | 957 |
| F. Wayne Sharp<br>    Vice President, Secretary and Treasurer of American Natural Gas Company; Vice President and Treasurer of American Louisiana Pipe Line Company, American Natural Gas Service Company and Michigan Wisconsin Pipe Line Company | 199 |
| Chester O. Wanvig<br>    President of Globe-Union Inc., a manufacturer of storage batteries, radio parts, roller skates and other products | -0- |

———

Note 1.  The persons named above constituted the entire board of directors of registrant as of December 31, 1954, and the term of office of each expired on February 15, 1955, the date of the Annual Meeting of Stockholders of registrant.  At such meeting, however, the persons named were re-elected to severally serve until the next annual meeting of stockholders and until such time as their respective successors are duly elected and qualify.

2.  The beneficial ownership of equity securities of American Natural Gas Company as of December 31, 1954, is as reported by the persons named in the table.  Such persons did not own beneficially, directly or indirectly, any equity securities of registrant or its subsidiary; nor did such persons and their associates own beneficially more than 10% of any class of securities of the registrant or its subsidiary or its parent.

3.  Of the companies named above, American Natural Gas Company is the parent registered holding company of American Natural Gas Service Company, a subsidiary service company, Michigan Wisconsin Pipe Line Company, a natural gas pipe line company, and Michigan Consolidated Gas Company and registrant, gas utility companies.  American Louisiana Pipe Line Company, a subsidiary of American Natural Gas Company, on October 1, 1954 obtained authority from the Federal Power Commission to construct and operate a natural gas pipe line originating in southern Louisiana to serve Michigan Consolidated Gas Company and Michigan Wisconsin Pipe Line Company.

4.  Mr. Brown also has a beneficial interest in a personal holding corporation which owns 1,220 shares of common stock of American Natural Gas Company.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 5 of 47   Document 50-26

WG-ANR-00049680

Item 7. Remuneration of Directors and Officers.

(a) Furnish the following information in substantially the tabular form indicated below as to all direct remuneration paid by the registrant and its subsidiaries during the registrant's last fiscal year to the following persons for services in all capacities:

(1) Each director, and each of the three highest paid officers, of the registrant whose aggregate direct remuneration exceeded $30,000, naming each such person.

(2) All directors and officers of the registrant as a group, without naming them.

(b) Furnish the following information, in substantially the tabular form indicated below, as to all pension or retirement benefits proposed to be paid under any existing plan in event of retirement at normal retirement date, directly or indirectly, by the registrant or any of its subsidiaries to each director or officer named in answer to paragraph (a)(1) above:

| Name of individual or identity of group, and capacities in which remuneration was received | Aggregate remuneration | Estimated annual benefits upon retirement |
|---|---|---|
| Dudley B. W. Brown, director and president of registrant and director of its subsidiary | $ 42,600 | $ 11,350 (1) |
| All directors and officers of registrant as a group—remuneration received as directors or officers of registrant and as directors of its subsidiary | $162,333 (2) | |

------

Note 1. The amount of $11,350 set forth above represents the estimated annual benefit proposed to be paid to the officer named above, at age 65, under an employee annuity plan of registrant. Directors, as such, may not participate in employee plans.

2. See answer to Item 7(c), infra.

(c) Describe briefly all remuneration payments (other than direct remuneration for services and pension or retirement benefits) proposed to be made in the future directly or indirectly by the registrant or any of its subsidiaries pursuant to any existing plan or arrangement to (i) each director or officer named in answer to paragraph (a)(1), naming each such person, and (ii) all directors and officers of the registrant as a group, without naming them.

During 1954, certain persons who were officers or directors of registrant and who were also officers or employees of American Natural Gas Service Company performed services for registrant and its subsidiary. The salary of each such person was paid initially by the Service Company and, based on the extent of his service performed for registrant and its subsidiary, a part of his salary was apportioned to and paid by registrant and its subsidiary. The amount of $162,333 set forth in answer to Item 7(a) does not include the amount of $8,159 apportioned to and paid by registrant and its subsidiary for the services of such persons. It is expected that this arrangement will continue in future years but the extent of the services requested

-4-

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 6 of 47   Document 50-26

WG-ANR-00049681

by registrant and its subsidiary and the resultant amounts of
payments in future years cannot be predetermined. The arrange-
ment between registrant and its subsidiary and American Natural
Gas Service Company is described in answer to Item 9.


## Item 8.  Options to Purchase Securities.

Furnish the following information as to all options to purchase se-
curities, from the registrant or any of its subsidiaries, which were
granted to or exercised by the following persons since the beginning of
the registrant's last fiscal year: (i) each director or officer named in
answer to paragraph (a)(1) of Item 7 naming each such person and (ii) all
directors and officers of the registrant as a group, without naming them.

(a)  As to options granted, state (i) the title and amount of securi-
ties called for; (ii) the prices, expiration dates and other material pro-
visions; (iii) the consideration received for the granting thereof; and
(iv) the market value of the securities called for on the granting date.

(b)  As to options exercised, state (i) the title and amount of se-
curities purchased; (ii) the purchase price; and (iii) the market value
of the securities purchased on the date of purchase.

None.


## Item 9.  Interest of Management and Others in Certain Transactions.

Describe briefly, and where practicable state the approximate amount
of, any material interest, direct or indirect, of any of the following
persons in any material transactions since the beginning of the regis-
trant's last fiscal year to which the registrant or any of its subsidi-
aries was a party:

(a)  Any director or officer of the registrant;

(b)  Any security holder named in answer to Item 5; or

(c)  Any associate of any of the foregoing persons.

American Natural Gas Service Company, a wholly-owned sub-
sidiary of American Natural Gas Company, is also an associate
of certain directors or officers of registrant who are also
officers of the Service Company.  Pursuant to contractual ar-
rangement, services are being rendered to registrant and its
subsidiary by the Service Company at cost in accordance with
the authorization of the Securities and Exchange Commission.
For such services during 1954, registrant paid $62,351 and its
subsidiary paid $10,653 to Service Company, such amounts in-
cluding the amount of $8,159 set forth in the answer to Item 7(c).


## Item 10.  Financial Statements and Exhibits.

List below all financial statements and exhibits filed as a part of
the annual report:

(a)  Financial statements.

(b)  Exhibits.

-5-

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 7 of 47   Document 50-26

WG-ANR-00049682

Financial Statements:

Certificate of Independent Public Accountants

Milwaukee Gas Light Company
    Statement of Financial Position—December 31, 1954
    Statement of Income—Year Ended December 31, 1954
    Statement of Earnings Retained in the Business—Year Ended
       December 31, 1954

Milwaukee Solvay Coke Company
    Statement of Financial Position—December 31, 1954
    Statement of Income—Year Ended December 31, 1954
    Statement of Earnings Retained in the Business—Year Ended
       December 31, 1954

Consolidated
    Statement of Financial Position—December 31, 1954
    Statement of Income—Year Ended December 31, 1954
    Statement of Earnings Retained in the Business—Year Ended
       December 31, 1954

Notes to Financial Statements

## Exhibits

Exhibit 7-I    Credit Agreement dated August 2, 1954, between
Milwaukee Gas Light Company and The National City
Bank of New York, The Hanover Bank - New York,
Mellon National Bank and Trust Company - Pittsburgh,
Pennsylvania, First Wisconsin National Bank of Mil-
waukee, Marine National Exchange Bank of Milwaukee,
and Marshall & Ilsley Bank - Milwaukee. (Proposed
Credit Agreement, including proposed Form of Note
and Form of Request for Loan to be issued under the
Credit Agreement, filed with the Securities and
Exchange Commission as Exhibit A-1 to registrant's
Application - Declaration on Form U-1, File No. 70-
3267, is incorporated by reference herein for the
purpose of this report.)

Exhibit 15-E-4    Copy of booklet describing registrant's Pension Plan
for Non-union Employees effective January 1, 1954.

Exhibit 15-M-9    Substitute First Revised Sheet No. 5 to Michigan
Wisconsin Pipe Line Company's F.P.C. Gas Tariff,
Original Volume No. 1, superseding Original Sheet
No. 5 of such Gas Tariff which was incorporated
in registrant's registration statement (Form S-1,
File No. 2-8631) as Exhibit 15-M by reference to
Exhibit 15-M to Michigan Consolidated Gas Company's
registration statement (Form S-1, File No. 2-8641).

Note:    Substitute First Revised Sheet No. 5 is
substituted for First Revised Sheet No. 5
which was filed as Exhibit 15-M-1 of regis-
trant's Form 8-K Current Report for December
1952.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 8 of 47   Document 50-26

WG-ANR-00049683

Exhibit 15-M-10  Substitute Second Revised Sheet No. 5 to Michigan
Wisconsin Pipe Line Company's F.P.C. Gas Tariff,
Original Volume No. 1, superseding Substitute First
Revised Sheet No. 5 of such Gas Tariff which is
filed herewith as Exhibit 15-M-9.

Note:  Substitute Second Revised Sheet No. 5 is
substituted for Second Revised Sheet No. 5
which was filed as Exhibit 15-M-2 of regis-
trant's Form 8-K Current Report for December
1952.

Exhibit 15-M-11  Fourth Revised Sheet No. 16B to Michigan Wisconsin
Pipe Line Company's F.P.C. Gas Tariff, Original
Volume No. 1, superseding Third Revised Sheet No. 16B
which was filed as Exhibit 15-M-8 of registrant's
Form 10K Annual Report for the year ended December 31,
1953.

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934,
the registrant has duly caused this annual report to be signed on its be-
half by the undersigned thereunto duly authorized.

Milwaukee Gas Light Company
(Registrant)

Date:  April 29, 1955                    By  *E. G. Black*
                                             E. G. Black
                                             Vice President and Treasurer

-7-

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 9 of 47   Document 50-26

WG-ANR-00049684

# SECURITIES AND EXCHANGE COMMISSION

Washington, D. C.

FORM 10-K

For Corporations

## ANNUAL REPORT
## FOR FISCAL YEAR ENDED

DECEMBER 31, 1954
(Date)

MILWAUKEE GAS LIGHT COMPANY

(NAME OF REGISTRANT)

## FINANCIAL STATEMENTS
## AND AUDITORS' CERTIFICATE

WG-ANR-00049685

# ARTHUR ANDERSEN & CO.

## ACCOUNTANTS AND AUDITORS

231 WEST WISCONSIN AVENUE
MILWAUKEE 3

To the Board of Directors,

    Milwaukee Gas Light Company:

       We have examined the statements of financial position as of December 31, 1954, of MILWAUKEE GAS LIGHT COMPANY (a Wisconsin corporation, hereinafter referred to as the Company), and of the Company's subsidiary, Milwaukee Solvay Coke Company (a Wisconsin corporation), the consolidated statement of financial position of those companies as of the same date, and the related statements of income and earnings retained in the business for the year then ended. Our examination was made in accordance with generally accepted auditing standards, and accordingly included such tests of the accounting records and such other auditing procedures as we considered necessary in the circumstances.

       In our opinion, subject to the effect of a refund by Milwaukee Gas Light Company to its customers as finally determined and the adjustments to reflect the reduction in the wholesale cost of gas referred to in the notes to the financial statements, the accompanying statements of financial position and statements of income and earnings retained in the business were prepared in conformity with generally accepted accounting principles applied on a basis consistent with that of the preceding year, and present fairly the financial positions of the Company and its subsidiary as of December 31, 1954, and the results of their operations for the year then ended.

*Arthur Andersen & Co.*

Milwaukee, Wisconsin

March 2, 1955

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 11 of 47   Document 50-26

WG-ANR-00049686

MILWAUKEE GAS LIGHT COMPANY AND SUBSIDIARY

FINANCIAL STATEMENTS AND SCHEDULES

(Submitted in Accordance with Instructions in Form 10-K)

(Securities and Exchange Commission, Washington, D.C.)


INDEX TO FINANCIAL STATEMENTS

Certificate of Independent Public Accountants

Milwaukee Gas Light Company
    Statement of Financial Position--December 31, 1954
    Statement of Income--Year Ended December 31, 1954
    Statement of Earnings Retained in the Business--Year Ended
        December 31, 1954

Milwaukee Solvay Coke Company
    Statement of Financial Position--December 31, 1954
    Statement of Income--Year Ended December 31, 1954
    Statement of Earnings Retained in the Business--Year Ended
        December 31, 1954

Consolidated
    Statement of Financial Position--December 31, 1954
    Statement of Income--Year Ended December 31, 1954
    Statement of Earnings Retained in the Business--Year Ended
        December 31, 1954

Notes to Financial Statements

SCHEDULES

The information required to be submitted in
Schedules V, VI, VII, IX, XII, XVI and XVII has been included
in the statements of financial position and statements of
income.

The following schedules are omitted as not applicable
or not required under the rules of Regulation S-X:

I, II, III, IV, VIII, X, XI, XIII, XIV and XV

WG-ANR-00049687

## MILWAUKEE GAS LIGHT COMPANY

### STATEMENT OF FINANCIAL POSITION--DECEMBER 31, 1954

#### PROPERTY AND OTHER ASSETS

| | | | |
|---|---:|---:|---|
| PROPERTY, PLANT AND EQUIPMENT, at original cost | | $66,326,784 | STOCKHOLI |
| Less- Reserve for depreciation | | 12,032,393 | Common |
| | | ----------- | 2,000 |
| | | $54,294,391 | Earning |
| | | | restr |
| | | | cash |
| | | | |
| INVESTMENT in Milwaukee Solvay Coke Company, | | | LONG-TERM |
| 100% common stock interest, at cost | | 4,372,472 | First r |
| | | | Sinking |
| | | | |
| | | | CURRENT I |
| | | | Current |
| CURRENT ASSETS: | | | Notes p |
| Cash | $1,699,684 | | Accoun |
| Accounts receivable, less reserve of $50,405 | 3,302,418 | | Due to |
| Refund receivable from pipe line supplier | 1,695,108 | | Dividen |
| Materials and supplies, at cost (including | | | Custome |
| $311,727 of fuels and residuals) | 1,648,230 | | Accrued |
| Prepayments | 68,375 | 8,413,815 | Federal |
| | | | Accrued |
| | | | Accrued |
| | | | Other |
| | | | |
| DEFERRED CHARGES: | | | REFUND FI |
| Natural gas conversion costs and related | | | |
| expenses, being amortized | $2,686,391 | | RESERVES- |
| Debt discount, redemption premium and expense, | | | Injurie |
| applicable to refunded issue, being amortized | 124,146 | | Mainter |
| Other | 95,200 | 2,905,737 | CONTRIBUT |
| | | ----------- | |
| | | $69,986,415 | |
| | | =========== | |

The notes to the financial statements are
an integral part of this statement.

WG-ANR-00049688

ι, 1954

## STOCKHOLDERS' EQUITY AND LIABILITIES

| | | | | |
|---|---|---|---|---|
| $66,326,784 | | STOCKHOLDERS' EQUITY: | | |
| 12,032,393 | | Common stock, par value $12 per share--authorized | | |
| ----------- | | 2,000,000 shares, outstanding 1,613,408 shares | | $19,360,896 |
| $54,294,391 | | Earnings retained in the business ($1,185,723 | | |
| | | restricted by indenture provisions against | | |
| | | cash dividends on common stock) | | 3,967,049 |
| | | | | ----------- |
| | | Total stockholders' equity | | $23,327,945 |
| | | | | |
| 4,372,472 | | LONG-TERM DEBT: | | |
| | | First mortgage bonds, 3-1/8% series due 1975 | $26,056,000 | |
| | | Sinking fund debentures, 3-3/8% due 1970 | 5,520,000 | 31,576,000 |
| | | | | ----------- |
| | | Total capitalization | | $54,903,945 |
| | | | | |
| | | CURRENT LIABILITIES: | | |
| | | Current maturities of long-term debt | $ 192,000 | |
| | | Notes payable to banks, 3% due August 1, 1955 | 7,500,000 | |
| $1,699,684 | | Accounts payable | 358,559 | |
| 3,302,418 | | Due to affiliated companies | 946,515 | |
| 1,695,108 | | Dividends declared | 403,352 | |
| | | Customers' deposits | 57,253 | |
| 1,648,230 | | Accrued general taxes | 46,222 | |
| 68,375 | 8,413,815 | Federal and state income taxes | 2,937,735 | |
| | | Accrued interest | 220,773 | |
| | | Accrued payroll | 155,974 | |
| | | Other | 155,935 | 12,974,318 |
| | | | | |
| | | REFUND FROM PIPE LINE SUPPLIER | | 1,695,108 |
| | | | | |
| | | RESERVES: | | |
| $2,686,391 | | Injuries and damages | $ 105,915 | |
| | | Maintenance | 40,000 | 145,915 |
| 124,146 | | | | |
| 95,200 | 2,905,737 | CONTRIBUTIONS IN AID OF CONSTRUCTION | | 267,129 |
| | ----------- | | | ----------- |
| | $69,986,415 | | | $69,986,415 |
| | =========== | | | =========== |

are

WG-ANR-00049689

## MILWAUKEE GAS LIGHT COMPANY

### STATEMENT OF INCOME

### YEAR ENDED DECEMBER 31, 1954

| | | |
|---|---:|---:|
| OPERATING REVENUES | | $25,200,856 |
| OPERATING EXPENSES: | | |
| Natural gas purchased | | $ 8,370,162 |
| Operation- | | |
| Distribution | $1,762,883 | |
| Customers' accounting and sales promotion | 1,816,072 | |
| Administrative and general | 2,121,727 | |
| Other operation expense | 576,278 | |
| Total operation | | 6,276,960 |
| Maintenance | | 1,762,969 |
| Amortization of natural gas conversion costs and related expenses | | 488,431 |
| Depreciation | | 1,195,092 |
| Taxes- | | |
| State, local and miscellaneous Federal | | 1,181,687 |
| State income | | 293,100 |
| Federal income | | 2,234,000 |
| Total operating expenses | | $21,802,401 |
| Operating income | | $ 3,398,455 |
| OTHER INCOME (net) | | 89,461 |
| Gross income | | $ 3,487,916 |
| INCOME DEDUCTIONS: | | |
| Interest on long-term debt | | $ 1,015,364 |
| Amortization of debt discount, premium and expense | | 106,262 |
| General interest | | 202,063 |
| Interest charged to construction--credit* | | 468* |
| Other | | 35,111 |
| Total income deductions | | $ 1,358,332 |
| NET INCOME | | $ 2,129,584 |

The notes to the financial statements are
an integral part of this statement.

WG-ANR-00049690

MILWAUKEE GAS LIGHT COMPANY

STATEMENT OF EARNINGS RETAINED IN THE BUSINESS

YEAR ENDED DECEMBER 31, 1954

| | |
|---|---:|
| BALANCE--DECEMBER 31, 1953 | $3,450,873 |
| NET INCOME | 2,129,584 |
| | ---------- |
| | $5,580,457 |
| CASH DIVIDENDS ON COMMON STOCK, $1.00 per share | 1,613,408 |
| | ---------- |
| BALANCE--DECEMBER 31, 1954 ($1,185,723 restricted by indenture provisions against cash dividends on common stock) | $3,967,049 |
| | ========= |

The notes to the financial statements are
an integral part of this statement.

WG-ANR-00049691

MILWAUKEE SOLVAY COKE COMPANY

STATEMENT OF FINANCIAL POSITION--DECEMBER 31, 1954

PROPERTY AND OTHER ASSETS

| | | |
|---|---:|---:|
| PROPERTY, PLANT AND EQUIPMENT, at cost | $11,285,785 | |
| Less- Reserve for depreciation | 8,276,305 | |
| | ----------- | |
| | $ 3,009,480 | |

CURRENT ASSETS:

| | | |
|---|---:|---:|
| Cash | $ 461,231 | |
| United States Government securities, at cost | 698,368 | |
| Accounts receivable, less reserve of $3,785 | 520,548 | |
| Due from affiliated companies | 11,950 | |
| Materials and supplies, at cost (including | | |
| $2,051,038 of fuels and residuals) | 2,215,382 | |
| Prepayments | 33,009 | 3,940,488 |

|  |  |
|---|---:|
| | ----------- |
| | $ 6,949,968 |
| | =========== |

The notes to the financial statements are
an integral part of this statement.

STOCKHOLDERS'
  Common stock
    authorized
  Earnings ret
    restricted
    cash divid

NOTES PAYABLE
  serially to

CURRENT LIABI
  Current matu
  Accounts pay
  Due to affil
  Accrued gene
  Federal and
  Accrued inte
  Accrued payr
  Other

RESERVES:
  Maintenance
  Deferred inc
  Injuries and

WG-ANR-00049692

., 1954

### STOCKHOLDERS' EQUITY AND LIABILITIES

| | | |
|---|---|---|
| $11,285,785 | STOCKHOLDERS' EQUITY: | |
| 8,276,305 | Common stock, par value $100 per share-- authorized and outstanding, 35,000 shares | $3,500,000 |
| ----------- | Earnings retained in the business ($1,238,985 | |
| $ 3,009,480 | restricted by bank loan agreement against cash dividends on common stock) | 1,838,902 |
| | | ---------- |
| | Total stockholders' equity | $5,338,902 |
| | NOTES PAYABLE TO BANKS, 3-1/4%, maturing serially to 1956 | 300,000 |
| | | ---------- |
| | Total capitalization | $5,638,902 |
| $ 461,231 | CURRENT LIABILITIES: | |
| 698,368 | Current maturities of notes payable | $300,000 |
| 520,548 | Accounts payable | 17,422 |
| 11,950 | Due to affiliated companies | 3,139 |
| | Accrued general taxes | 322,449 |
| 2,215,382 | Federal and state income taxes | 132,240 |
| 33,009   3,940,488 | Accrued interest | 1,625 |
| | Accrued payroll | 55,565 |
| | Other | 131,953   964,393 |
| | RESERVES: | |
| | Maintenance | $ 77,494 |
| | Deferred income taxes | 228,374 |
| | Injuries and damages | 40,805   346,673 |
| ----------- | | ---------- |
| $ 6,949,968 | | $6,949,968 |
| =========== | | ========== |

.re

MILWAUKEE SOLVAY COKE COMPANY

STATEMENT OF INCOME

YEAR ENDED DECEMBER 31, 1954

| | |
|---|---:|
| OPERATING REVENUES: | |
| Coke and coal chemicals | $5,911,765 |
| Gas | 423,485 |
| Total operating revenues | $6,335,250 |
| OPERATING EXPENSES: | |
| Operation | $5,609,253 |
| Maintenance | 608,442 |
| Depreciation | 134,763 |
| State, local and miscellaneous Federal taxes | 358,229 |
| Total operating expenses | $6,710,687 |
| Operating loss | $ 375,437 |
| OTHER INCOME (net) | 29,134 |
| Gross loss | $ 346,303 |
| INTEREST DEDUCTIONS | 21,000 |
| NET LOSS | $ 367,303 |

The notes to the financial statements are
an integral part of this statement.

WG-ANR-00049694

MILWAUKEE SOLVAY COKE COMPANY

STATEMENT OF EARNINGS RETAINED IN THE BUSINESS

YEAR ENDED DECEMBER 31, 1954

| | |
|---|---:|
| BALANCE--DECEMBER 31, 1953 | $2,206,205 |
| NET LOSS | 367,303 |
| | ---------- |
| BALANCE--DECEMBER 31, 1954 ($1,238,985 restricted by bank loan agreement against cash dividends on common stock) | $1,838,902 |
| | ========== |

The notes to the financial statements are
an integral part of this statement.

WG-ANR-00049695

## MILWAUKEE GAS LIGHT COMPANY AND SUBSIDIARY

### CONSOLIDATED STATEMENT OF FINANCIAL POSITION--DECEMBER 31, 1954

#### PROPERTY AND OTHER ASSETS

**PROPERTY, PLANT AND EQUIPMENT:**

| | | |
|---|---:|---:|
| Gas distribution, storage and production facilities, at original cost | $66,326,784 | |
| Less- Reserve for depreciation | 12,032,393 | $54,294,391 |
| Coke and by-products plant and equipment, at cost | $11,285,785 | |
| Less- Reserve for depreciation | 8,276,305 | 3,009,480 |
| | | $57,303,871 |

**CURRENT ASSETS:**

| | | |
|---|---:|---:|
| Cash | $ 2,160,915 | |
| United States Government securities, at cost | 698,368 | |
| Accounts receivable, less reserve of $54,190 | 3,823,118 | |
| Refund receivable from pipe line supplier | 1,695,108 | |
| Materials and supplies, at cost (including $2,362,765 of fuels and residuals) | 3,863,612 | |
| Prepayments | 101,384 | 12,342,505 |

**DEFERRED CHARGES:**

| | | |
|---|---:|---:|
| Natural gas conversion costs and related expenses, being amortized | $ 2,686,391 | |
| Debt discount, redemption premium and expense, applicable to refunded issue, being amortized | 124,146 | |
| Other | 95,200 | 2,905,737 |
| | | $72,552,113 |

The notes to the financial statements are
an integral part of this statement.

IARY

CEMBER 31, 1954

## STOCKHOLDERS' EQUITY AND LIABILITIES

| | | | | |
|---|---|---|---|---|
| | | STOCKHOLDERS' EQUITY: | | |
| $66,326,784 | | Common stock, par value $12 per share--authorized 2,000,000 shares, outstanding 1,613,408 shares | | $19,360,896 |
| 12,032,393 | $54,294,391 | Other paid-in capital | | 70,534 |
| | | Earnings retained in the business ($1,518,887 restricted by indenture provisions against | | |
| $11,285,785 | | cash dividends on common stock) | | 4,862,945 |
| 8,276,305 | 3,009,480 | | | ---------- |
| | ------------ | Total stockholders' equity | | $24,294,375 |
| | $57,303,871 | LONG-TERM DEBT: | | |
| | | First mortgage bonds, 3-1/8% series due 1975 | $26,056,000 | |
| | | Sinking fund debentures, 3-3/8% due 1970 | 5,520,000 | |
| | | Notes payable to banks, 3-1/4%, maturing serially to 1956 | 300,000 | 31,876,000 |
| | | | | ---------- |
| | | Total capitalization | | $56,170,375 |
| $ 2,160,915 | | CURRENT LIABILITIES: | | |
| 698,368 | | Current maturities of long-term debt | $ 492,000 | |
| 3,823,118 | | Notes payable to banks, 3% due August 1, 1955 | 7,500,000 | |
| 1,695,108 | | Accounts payable | 375,981 | |
| | | Due to affiliated companies | 937,856 | |
| 3,863,612 | | Dividends declared | 403,352 | |
| 101,384 | 12,342,505 | Customers' deposits | 57,253 | |
| | | Accrued general taxes | 368,671 | |
| | | Federal and state income taxes | 3,069,975 | |
| | | Accrued interest | 222,398 | |
| | | Accrued payroll | 211,539 | |
| | | Other | 287,888 | 13,926,913 |
| | | REFUND FROM PIPE LINE SUPPLIER | | 1,695,108 |
| $ 2,686,391 | | RESERVES: | | |
| | | Maintenance | $ 117,494 | |
| | | Deferred income taxes | 228,374 | |
| 124,146 | | Injuries and damages | 146,720 | 492,588 |
| 95,200 | 2,905,737 | CONTRIBUTIONS IN AID OF CONSTRUCTION | | 267,129 |
| | ------------ | | | ---------- |
| | $72,552,113 | | | $72,552,113 |
| | ============ | | | ========== |

are

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 22 of 47   Document 50-26

WG-ANR-00049697

MILWAUKEE GAS LIGHT COMPANY AND SUBSIDIARY

CONSOLIDATED STATEMENT OF INCOME

YEAR ENDED DECEMBER 31, 1954

OPERATING REVENUES:
| | | |
|---|---:|---:|
| Gas | | $24,986,152 |
| Coke and coal chemicals | | 5,911,765 |
| Total operating revenues | | $30,897,917 |

OPERATING EXPENSES:
| | | |
|---|---:|---:|
| Natural gas purchased | | $ 8,370,162 |
| Operation- | | |
| Distribution | $1,762,883 | |
| Customers' accounting and sales promotion | 2,077,214 | |
| Administrative and general | 2,334,078 | |
| Other operation expense | 5,073,849 | |
| Total operation | | 11,248,024 |
| Maintenance | | 2,371,411 |
| Amortization of natural gas conversion costs and related expenses | | 488,431 |
| Depreciation | | 1,329,855 |
| Taxes- | | |
| State, local and miscellaneous Federal | | 1,539,916 |
| State income | | 293,100 |
| Federal income | | 2,234,000 |
| Total operating expenses | | $27,874,899 |
| Operating income | | $ 3,023,018 |

| | | |
|---|---:|---:|
| OTHER INCOME (net) | | 118,595 |
| Gross income | | $ 3,141,613 |

INCOME DEDUCTIONS:
| | | |
|---|---:|---:|
| Interest on long-term debt | | $ 1,036,364 |
| Amortization of debt discount, premium and expense | | 106,262 |
| General interest | | 202,063 |
| Interest charged to construction--credit* | | 468* |
| Other | | 35,111 |
| Total income deductions | | $ 1,379,332 |
| NET INCOME | | $ 1,762,281 |

The notes to the financial statements are an
integral part of this statement.

WG-ANR-00049698

MILWAUKEE GAS LIGHT COMPANY AND SUBSIDIARY

CONSOLIDATED STATEMENT OF EARNINGS

RETAINED IN THE BUSINESS

YEAR ENDED DECEMBER 31, 1954

| | |
|---|---:|
| BALANCE--DECEMBER 31, 1953 | $4,714,072 |
| NET INCOME | 1,762,281 |
| | ---------- |
| | $6,476,353 |
| CASH DIVIDENDS ON COMMON STOCK, $1.00 per share | 1,613,408 |
| | ---------- |
| BALANCE--DECEMBER 31, 1954 ($1,518,887 restricted by indenture provisions against cash dividends on common stock) | $4,862,945 |
| | ========== |

The notes to the financial statements are
an integral part of this statement.

WG-ANR-00049699

MILWAUKEE GAS LIGHT COMPANY AND SUBSIDIARY

NOTES TO FINANCIAL STATEMENTS

PROPERTY, PLANT AND EQUIPMENT

Changes in Property, Plant and Equipment during the
year ended December 31, 1954, are set forth as follows:

| Major Classification | Balance Dec. 31, 1953 | Additions at Cost | Retirements or Sales at Cost | Reclassi of Pric Addi |
|---|---|---|---|---|
| Milwaukee Gas Light Company- | | | | |
| Gas Utility Plant, at original cost: | | | | |
| In service- | | | | |
| Intangible- | | | | |
| Organization | $    29,718 | $    - | $    - | $ |
| Tangible- | | | | |
| Production | 3,852,434 | 21,689 | 198,457 | 2, |
| Storage | 2,584,671 | - | - | |
| Distribution | 48,373,827 | 4,324,676 | 338,246 | 2, |
| General | 6,507,085 | 323,390 | 64,363 | |
| Construction work in progress | 641,777 | 268,583 | - | |
| T o t a l | $61,989,512 | $4,938,338 | $601,066 | $ |
| Milwaukee Solvay Coke Company- | | | | |
| Other Plant, at cost: | | | | |
| In service- | | | | |
| Coke and by-products plant and equipment | $11,228,138 | $    63,107 | $  6,272 | $ |
| Construction work in progress | 5,258 | 4,446* | - | |
| T o t a l | $11,233,396 | $   58,661 | $  6,272 | $ |
| Consolidated property, plant and equipment | $73,222,908 | $4,996,999 | $607,338 | $ |

* Denotes red figure.

NOTE:  The Company and its subsidiary represent that they
had no unusual additions, abandonments, or retire-
ments, or any other significant and unusual changes
in the general character and locations of principal
plants or other important units which occured during
the fiscal year.

WG-ANR-00049700

ILWAUKEE GAS LIGHT COMPANY AND SUBSIDIARY

NOTES TO FINANCIAL STATEMENTS

PROPERTY, PLANT AND EQUIPMENT

anges in Property, Plant and Equipment during the
ecember 31, 1954, are set forth as follows:

| Major Classification | Balance Dec. 31, 1953 | Additions at Cost | Retirements or Sales at Cost | Reclassifications of Prior Years' Additions | Balance Dec. 31, 1954 |
|---|---|---|---|---|---|
| Light Company- |  |  |  |  |  |
| Plant, at original cost: |  |  |  |  |  |
| e- |  |  |  |  |  |
| ble- |  |  |  |  |  |
| ization | $ 29,718 | $ - | $ - | $ - | $ 29,718 |
| e- |  |  |  |  |  |
| ction | 3,852,434 | 21,689 | 198,457 | 2,581* | 3,673,085 |
| ge | 2,584,671 | - | - | - | 2,584,671 |
| ibution | 48,373,827 | 4,324,676 | 338,246 | 2,291 | 52,362,548 |
| al | 6,507,085 | 323,390 | 64,363 | 290 | 6,766,402 |
| ion work in progress | 641,777 | 268,583 | - | - | 910,360 |
| t a l | $61,989,512 | $4,938,338 | $601,066 | $ - | $66,326,784 |
| vay Coke Company- |  |  |  |  |  |
| , at cost: |  |  |  |  |  |
| e- |  |  |  |  |  |
| d by-products plant and |  |  |  |  |  |
| ment | $11,228,138 | $ 63,107 | $ 6,272 | $ - | $11,284,973 |
| ion work in progress | 5,258 | 4,446* | - | - | 812 |
| t a l | $11,233,396 | $ 58,661 | $ 6,272 | $ - | $11,285,785 |
| solidated property, |  |  |  |  |  |
| lant and equipment | $73,222,908 | $4,996,999 | $607,338 | $ - | $77,612,569 |

* Denotes red figure.

he Company and its subsidiary represent that they
had no unusual additions, abandonments, or retire-
ments, or any other significant and unusual changes
in the general character and locations of principal
plants or other important units which occured during
the fiscal year.

WG-ANR-00049701

# RESERVES FOR DEPRECIATION

Changes in Reserves for Depreciation during the period are summarized as follows:

| Description | Balance Dec. 31, 1953 | Provision Charged to Income (See Note) | Provision Charged to Clearing and Other Accounts (See Note) | Deduc... from Re... Retirements or Sales at Cost |
|---|---|---|---|---|
| Milwaukee Gas Light Company- | | | | |
| Unclassified | $10,477,975 | $1,195,092 | $ - | $552,276 |
| Transportation, tools and work equipment | 910,840 | - | 177,560 | 48,790 |
| T o t a l | $11,388,815 | $1,195,092 | $177,560 | $601,066 |
| Milwaukee Solvay Coke Company- | | | | |
| Unclassified | $ 8,133,027 | $ 134,763 | $ - | $ 2,613 |
| Transportation | 10,485 | - | 1,849 | 3,659 |
| T o t a l | $ 8,143,512 | $ 134,763 | $ 1,849 | $ 6,272 |
| Consolidated reserves for depreciation | $19,532,327 | $1,329,855 | $179,409 | $607,338 |

\* Denotes red figure.

NOTE: Reference is made to note under "Maintenance and Depreciation" with respect to basis of provision for depreciation.

# MISCELLANEOUS RESERVES

Changes in other reserves during the period are summarized as follows:

| Description | Balance Dec. 31, 1953 | Additions Provision Charged to Income | Additions Provision Charged to Plant | Deduc... Res... Pur... Whic... Were... |
|---|---|---|---|---|
| Reserves deducted from assets in statements of financial position- | | | | |
| Reserve for uncollectible accounts- | | | | |
| Milwaukee Gas Light Company | $ 37,375 | $ 50,600 | $ - | $ |
| Milwaukee Solvay Coke Company | 3,785 | - | - | |
| | $ 41,160 | $ 50,600 | $ - | $ |
| Reserves under reserve caption in statements of financial position- | | | | |
| Maintenance reserve- | | | | |
| Milwaukee Gas Light Company | $ -- | $ 40,000 | $ - | $ |
| Milwaukee Solvay Coke Company | 87,304 | -- | - | |
| | $ 87,304 | $ 40,000 | $ - | $ |
| Injuries and damages reserve- | | | | |
| Milwaukee Gas Light Company | $ 67,835 | $105,000 | $15,151 | $ |
| Milwaukee Solvay Coke Company | 57,233 | - | - | |
| | $125,068 | $105,000 | $15,151 | $ |
| Deferred income tax reserve- | | | | |
| Milwaukee Solvay Coke Company | $228,374 | $ - | $ - | $ |

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 27 of 47   Document 50-26

WG-ANR-00049702

nges in Reserves for Depreciation during the period
ed as follows:

| scription | Balance Dec. 31, 1953 | Provision Charged to | | Deductions from Reserves | | Balance Dec. 31, 1954 |
|---|---|---|---|---|---|---|
| | | Income (See Note) | Clearing and Other Accounts (See Note) | Retirements or Sales at Cost | Removal Cost, Less Salvage | |
| s Light Company- | | | | | | |
| :d | $10,477,975 | $1,195,092 | $ - | $552,276 | $136,479 | $10,984,312 |
| ion, tools and work | 910,840 | - | 177,560 | 48,790 | 8,471* | 1,048,081 |
| o t a l | $11,388,815 | $1,195,092 | $177,560 | $601,066 | $128,008 | $12,032,393 |
| vay Coke Company- | | | | | | |
| :d | $ 8,133,027 | $ 134,763 | $ - | $ 2,613 | $ 1,563* | $ 8,266,740 |
| ion | 10,485 | - | 1,849 | 3,659 | 890* | 9,565 |
| o t a l | $ 8,143,512 | $ 134,763 | $ 1,849 | $ 6,272 | $ 2,453* | $ 8,276,305 |
| solidated reserves or depreciation | $19,532,327 | $1,329,855 | $179,409 | $607,338 | $125,555 | $20,308,698 |

* Denotes red figure.

: Reference is made to note under "Maintenance
and Depreciation" with respect to basis of
provision for depreciation.

## MISCELLANEOUS RESERVES

nges in other reserves during the period are summa-
ows:

| Description | Balance Dec. 31, 1953 | Additions | | Deductions from Reserves for Purposes for Which Reserves Were Provided | Balance Dec. 31, 1954 |
|---|---|---|---|---|---|
| | | Provision Charged to | | | |
| | | Income | Plant | | |
| cted from assets in statements l position- | | | | | |
| or uncollectible accounts- | | | | | |
| ee Gas Light Company | $ 37,375 | $ 50,600 | $ - | $37,570 | $ 50,405 |
| ee Solvay Coke Company | 3,785 | - | - | - | 3,785 |
| | $ 41,160 | $ 50,600 | $ - | $37,570 | $ 54,190 |
| r reserve caption in statements l position- e reserve- | | | | | |
| ee Gas Light Company | $ .. | $ 40,000 | $ - | $ - | $ 40,000 |
| ee Solvay Coke Company | 87,304 | .. | - | 9,810 | 77,494 |
| | $ 87,304 | $ 40,000 | $ - | $ 9,810 | $117,494 |
| nd damages reserve- | | | | | |
| ee Gas Light Company | $ 67,835 | $105,000 | $15,151 | $82,071 | $105,915 |
| ee Solvay Coke Company | 57,233 | - | - | 16,428 | 40,805 |
| | $125,068 | $105,000 | $15,151 | $98,499 | $146,720 |
| income tax reserve- | | | | | |
| ee Solvay Coke Company | $228,374 | $ - | $ - | $ - | $228,374 |

-2-

WG-ANR-00049703

RATE MATTERS

On January 14, 1955, Milwaukee Gas Light Company received a refund from its natural gas supplier, Michigan Wisconsin Pipe Line Company, resulting from the acceptance by the Federal Power Commission on January 13, 1955, of revised rate schedules filed by Michigan Wisconsin to comply with the Commission's Opinion No. 275-A and accompanying order issued on November 29, 1954. Pending final disposition of this refund the Company has recorded the total amount as an account receivable and deferred credit, and the applicable portion thereof at December 31, 1954, has been so reflected in the statement of financial position with no adjustments to the statement of income for the period. The foregoing matters are discussed below.

Michigan Wisconsin increased its rate from 28 cents to 31.5 cents per Mcf, effective October 1, 1951, and effective December 12, 1952, increased its rate to 35 cents per Mcf. These rates were in effect under bonds conditioned to require the refund of any portion of such increase determined by the Federal Power Commission to be not justified. The Commission in its Opinion No. 275-A issued on November 29, 1954, ordered Michigan Wisconsin to place in effect rates of 31.25 cents per Mcf for the period from October 1, 1951, through December 11, 1952, and 31.6 cents per Mcf from and after December 12, 1952. On January 13, 1955, the Federal Power Commission accepted the revised rate schedules which were filed by Michigan Wisconsin in compliance with the Commission's opinion and order, and Michigan Wisconsin thereupon refunded to the Company $1,698,558, representing the amount which the Company had paid in excess of the revised rates and interest thereon through January 12, 1955.

The Company was authorized by the Public Service Commission of Wisconsin on February 16, 1953, to place in effect interim rates designed, in part, to cover the increased price of gas charged by Michigan Wisconsin under bond. The revenues collected under the interim rates are subject to such refunds as may be required upon the final determination of rates by the Commission. In an application for the determination of refunds and the adjustment of rates dated January 19, 1955, now pending before the Commission, the Company requested that the Commission approve a refund to its customers in the amount of $1,226,000, representing that portion of its refund from Michigan Wisconsin which is applicable to sales at the increased rates after February 16, 1953. The application also sought to maintain the interim rates in effect pending the determination of future rates reflecting increased cost of service. The Commission, on February 24, 1955, issued an opinion and order prescribing rates for the Company which are lower than the interim rates. The newly prescribed rates are designed to reduce revenues about $500,000 per year more than the reduction required to offset decreases in the cost of gas purchased from Michigan Wisconsin. The Commission also directed the Company to make refunds to its customers for the period subsequent to October 1, 1951, of amounts approximating $1,000,000 in excess of the total refund, including interest, received from Michigan Wisconsin. The Company is seeking reconsideration and modification of the order.

Michigan Wisconsin filed an application with the Federal Power Commission on January 25, 1955, requesting an increase in its rate from 31.6 cents to 32.98 cents per Mcf. The increased rates of Michigan Wisconsin will become effective, subject to refund, April 1, 1955.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 29 of 47   Document 50-26

WG-ANR-00049704

OTHER PAID-IN CAPITAL AND
EARNINGS RETAINED IN THE BUSINESS

A restatement of other paid-in capital and earnings retained in the business at December 31, 1953, gives effect to a final settlement of the Company's Federal income tax liability for the years 1950 and prior and of its subsidiary's Federal income tax liability for the years 1949 and prior.

INVESTMENT IN MILWAUKEE SOLVAY COKE COMPANY

In December, 1954, the Company obtained approval from the Securities and Exchange Commission and the Public Service Commission of Wisconsin of a plan for the distribution of all of the common stock of its subsidiary, Milwaukee Solvay Coke Company, to the Company's parent, American Natural Gas Company, by the declaration and payment of not in excess of six quarterly dividends upon the common stock of the company. The first such dividend, consisting of 3,500 shares of common stock with a cost basis of $437,247, has been declared and is payable in March, 1955.

CURRENT MATURITIES AND SINKING FUND REQUIREMENTS

The current maturities and sinking fund requirements of long-term debt for each year in the five-year period ending December 31, 1959, are as follows:

|      | Company  | Subsidiary |
|------|----------|------------|
| 1955 | $592,000 | $300,000   |
| 1956 | 592,000  | 300,000    |
| 1957 | 592,000  | -          |
| 1958 | 592,000  | -          |
| 1959 | 592,000  | -          |

The Company satisfied $400,000 of its 1955 requirement prior to December 31, 1954.

MAINTENANCE AND DEPRECIATION

It is the practice of the Company and its subsidiary to charge to maintenance the cost of repairs of property and replacements and renewals of items determined to be less than units of property, except for maintenance costs of transportation, tools and other work equipment which are charged principally to clearing accounts and redistributed to various operating, construction and

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 30 of 47   Document 50-26

WG-ANR-00049705

other accounts. Replacements and renewals of items considered to be units of property are charged to property accounts and units retired from the property accounts are charged to depreciation reserves. Dismantling or other costs and salvage applicable to units of property retired are charged or credited to such depreciation reserves.

It is impracticable to indicate the specific rates of depreciation applied by the Company to classified property accounts in computing the annual provisions for depreciation. The rates of depreciation used by the Company have been approved by the Public Service Commission of Wisconsin and are estimated to be substantially equivalent to straight-line depreciation. The provision for depreciation (exclusive of transportation, tools and work equipment) for the year 1954, based on the above rates, was equivalent to a composite annual rate of approximately 1.99%.

The Company's subsidiary has a 100% reserve for depreciation applicable to a substantial portion of its facilities. Depreciation is provided currently at the rate of approximately 3% per annum on the balance of the property.

## ANNUITY PENSION PLANS

Effective as of January 1, 1950, the Company and its subsidiary adopted plans to provide for retirement annuities for their employees at age 65.

Pension costs under the plans in 1954 which were charged to operating expenses were approximately $588,000 ($470,000 for the Company and $118,000 for its subsidiary) of which approximately $218,000 was attributable to past service costs. The estimated additional amount necessary to fund or otherwise provide for the past service costs was $2,438,000 at December 31, 1954 ($1,675,000 for the Company and $763,000 for its subsidiary).

## SUPPLEMENTARY INFORMATION

The amounts of maintenance and depreciation which are charged to expenses other than those shown in the statements of income are not significant. The aggregate rental expense is not significant.

Provisions for State, local and miscellaneous Federal taxes charged to expense and other income are summarized below; such taxes charged to other accounts are not significant.

|  | Milwaukee Gas Light Company | Milwaukee Solvay Coke Company |
|---|---|---|
| Real estate and personal property | $1,052,865 | $317,450 |
| Social security | 109,603 | 40,779 |
| Other | 23,855 | - |
|  | $1,186,323 | $358,229 |

-5-

Management and service contract fees paid to American Natural Gas Service Company, which furnishes service at cost pursuant to authorization of the Securities and Exchange Commission, amounted to $73,004 in 1954.

## GENERAL

The equity of the Company in the net assets of its subsidiary at date of acquisition was $70,534 greater than the carrying value of the investment in such subsidiary. In consolidation such difference was credited to other paid-in capital. The undistributed earnings of the Company's subsidiary, since date of acquisition, aggregated $895,896. Intercompany accounts have been eliminated in consolidation.

The net loss of Milwaukee Solvay Coke Company for the year 1954 will be included in the consolidated Federal income tax return of American Natural Gas Company and its affiliates. Such loss, for tax purposes, was approximately $600,000, including accelerated amortization of certain facilities covered by a Certificate of Necessity. This loss may be carried forward for five years; as a result, until the subsidiary realizes taxable income during that period in excess of the loss, no portion of future consolidated Federal income taxes will be payable by the subsidiary.

WG-ANR-00049707

EXHIBIT 15-E-4

MILWAUKEE GAS LIGHT COMPANY

# Pension Plan

FOR

NON-UNION EMPLOYEES

EFFECTIVE JANUARY 1, 1954

WG-ANR-00049708

### MILWAUKEE GAS LIGHT COMPANY
### MILWAUKEE, WISCONSIN

**TO EMPLOYEES WHO ARE NOT REPRESENTED BY A COLLECTIVE BARGAINING UNIT:**

Our Company has established a separate Pension Plan 3 effective January 1, 1954 for all eligible employees who are not members of a collective bargaining unit. Before that date, non-union employees who became eligible were included under the Pension Plan for employees represented by Local 18, United Gas, Coke and Chemical Workers of America, C.I.O. (herein called Plan 1), or the Pension Plan for employees represented by Local Division No. 1, United Association of Office, Sales and Technical Employees, (herein called Plan 2).

The new Plan 3 (herein called the Plan or this Plan), covers participation by two groups of non-union employees. The provisions of the Plan as they relate to Group A employees follow the provisions which were in effect in Plan 1 on January 1, 1954, whereas the provisions as they relate to Group B employees are based on those of Plan 2 at that date.

A member of Plan 1, who joined that plan as of January 1, 1950 as a non-union employee, may elect to participate in this Plan as a Group A or a Group B employee retroactive to January 1, 1950. A member of Plan 2, who joined that plan as of January 1, 1950 as a non-union employee, may participate in this Plan retroactive to such date but only as a Group B employee.

A member of Plan 1, who joined that plan as a union employee and became a non-union employee prior to January 1, 1954, may elect to participate in this Plan as a Group A or a Group B employee retroactive to the date he started making pension contributions as a non-union employee. A member of Plan 2, who joined that plan as a union employee

WG-ANR-00049709

and became a non-union employee prior to January 1, 1954, may participate in this Plan only as a Group B employee retroactive to the date he started making pension contributions as a non-union employee.

A member of Plan 1 or Plan 2, who joined either of these plans as a union employee and becomes a non-union employee after January 1, 1954, and any other employee who enters this Plan after such date may only participate in this Plan as a Group B employee, effective on the date he starts making contributions as a non-union employee.

Any retirement income accrued for an employee in Plan 1 or Plan 2 prior to his becoming a non-union employee will remain to his credit in such plan or plans.

This Plan provides for contributions by the Company which, with your own contributions, will provide you with an income upon retirement and a greater measure of security in your old age. The retirement income provided under the Plan will be in addition to the benefits available under the Federal Social Security Act which are paid for jointly by you and the Company.

All contributions under the Plan are paid under a Group Annuity Deposit Administration Contract to The Equitable Life Assurance Society of the United States. Your retirement benefits are purchased at your retirement date and will be paid direct to you by Equitable from then on.

You are urged to study this booklet so that you will be fully acquainted with the provisions of the Plan and their effect upon you.

Sincerely,

*Dudley B. W. Brown*

*President*

December 30, 1954

Section 1. DEFINITIONS

Wherever used in this Plan:

(a) "Company" means Milwaukee Gas Light Company.

(b) The term "Plan" shall mean the Pension Plan for employees of Milwaukee Gas Light Company not represented by a collective bargaining unit. This Plan shall be known as Plan 3. The Plan as it applies to Group A employees (defined below) shall be designated as Plan 3A and the Plan as it applies to Group B employees (defined below) shall be designated as Plan 3B.

(c) The term "Plan 1" shall mean the Pension Plan for employees of Milwaukee Gas Light Company represented by Local 18, United Gas, Coke and Chemical Workers of America, C.I.O.

(d) The term "Plan 2" shall mean the Pension Plan for employees of Milwaukee Gas Light Company represented by Local Division No. 1, United Association of Office, Sales and Technical Employees.

(e) "Employee" means any person in the full time service of the Company who is not represented by a collective bargaining unit.

(f) "Group A employee" means an employee who prior to January 1, 1954 was included under Plan 1 and who elects to participate as a Group A employee.

(g) "Group B employee" means any other employee.

(h) "Member" means an employee participating in this Plan in accordance with its provisions.

(i) "Insurance Carrier" means The Equitable Life Assurance Society of the United States, or such other insurance company as may from time to time be designated by the Company.

3

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 35 of 47   Document 50-26

WG-ANR-00049710

(j) "Contract" means the Group Annuity Contract issued by the Insurance Carrier to the Company.

(k) "Basic monthly compensation" means the monthly earnings of the employee from the Company at his regular rate, exclusive of any compensation for overtime, special remuneration or bonus.

(l) "Permanently incapacitated" means total disability by bodily injury or disease so as to continuously prevent a member from engaging in any occupation or employment for remuneration or profit, for a period of six or more consecutive months and, in the opinion of a qualified physician appointed by the Company, that it will be permanent and continuous for his lifetime. This incapacity must have resulted from an unavoidable cause and will not be considered such if it was contracted, suffered or incurred while the employee was engaged in or resulted from his having engaged in a criminal enterprise, from his habitual drunkenness or addiction to narcotics or from a self-inflicted injury. Permanent incapacity resulting from such enumerated causes, or from future service in the armed forces which prevents him from returning to his employment with the Company and for which he receives a military pension, shall not entitle a member to a pension for disability.

(m) Masculine pronouns include both men and women.

## Section 2. ELIGIBILITY

Each employee who has completed one or more years of continuous service with the Company and who has attained his 18th but not his 64th birthday is eligible to participate in the Plan. Such employee is eligible on the first of the month coinciding with or next following the date on which he completes these requirements, beginning January 1, 1954.

A member of Plan 1, who joined that plan as of January 1, 1950 as a non-union employee, may elect to participate in this Plan as a Group A or a Group B employee retroactive to January 1, 1950. A member of Plan 2, who joined that plan as of January 1, 1950 as a non-union employee, may participate in this Plan retroactive to such date but only as a Group B employee.

A member of Plan 1, who joined that plan as a union employee and became a non-union employee prior to January 1, 1954, may elect to participate in this Plan as a Group A or a Group B employee retroactive to the date he started making pension contributions as a non-union employee. A member of Plan 2, who joined that plan as a union employee and became a non-union employee prior to January 1, 1954, may participate in this Plan only as a Group B employee retroactive to the date he started making pension contributions as a non-union employee.

A member of Plan 1 or Plan 2, who joined either of these plans as a union employee and becomes a non-union employee after January 1, 1954, and any other employee who enters this Plan after such date may only participate in this Plan as a Group B employee, effective on the date he starts making contributions as a non-union employee.

Any retirement income accrued for an employee in Plan 1 and/or Plan 2 prior to his becoming a non-union employee will remain to his credit in such plan or plans.

An eligible employee may become a member by signing an acceptance card which will authorize the Company to make payroll deductions for the employee's contributions to the Plan. Participation in the Plan shall be voluntary but once an employee elects to participate, he is required to continue his membership as long as he is actively employed by the Company.

## Section 3. RETIREMENT DATE

*Normal*: The normal retirement date under this Plan is the first day of the month following the member's 65th birthday. If a Group A employee has completed 35 years of con-

4

5

WG-ANR-00049711

tinuous service with the Company, he may also retire on the first day of any month prior to his normal retirement date.

*Deferred*: If a member is capable of efficiently performing his duties beyond age 65, he may continue working until the first of the month next following his 67th birthday, at which time his retirement shall be compulsory.

*Earlier*: If a Group A employee has reached his 55th birthday, has less than 35 years of continuous service with the Company and is not permanently incapacitated, he may, if the Company consents, retire at a date earlier than his normal retirement date. In this event, however, the retirement income earned while a member of Plan 1 and this Plan will be actuarially reduced on account of the earlier retirement date.

If a Group B employee has reached his 55th birthday and has at least 20 years of continuous service with the Company and a total of 10 years of membership in Plan 1, Plan 2 and this Plan and is not permanently incapacitated, he may retire on the first of any month prior to his normal retirement date. In this event, however, the retirement income earned while a member of Plan 2 and this Plan will be actuarially reduced on account of the earlier retirement date; any retirement income earned while a member of Plan 1 will also be actuarially reduced unless the employee has completed 35 years of continuous service with the Company.

If a Group B employee has to his credit retirement income accrued under Plan 1 and has completed 35 years of continuous service with the Company, he may retire on the first day of any month prior to his normal retirement date and receive, without actuarial reduction, the retirement income accrued while a member of Plan 1. Such an employee may elect one of the following options with respect to benefits based on participation in Group B of this Plan and participation in Plan 2 if any:

(a) A return of his contributions plus interest from the Company;

6

(b) An actuarially reduced retirement income provided he has reached age 55 and has completed a total of at least 10 years of participation under Plan 1, Plan 2 and this Plan.

(c) A retirement income beginning at age 65 provided he has completed a total of at least 10 years of participation under Plan 1, Plan 2 and this Plan.

*Permanently Incapacitated Members*: A member who has at least 22 years of continuous service with the Company and who shall become, through some unavoidable cause, permanently incapacitated (see Section 1 (1) ) shall be retired at that time and entitled to the disability income described in Section 5 at such retirement date.

Section 4. CONTRIBUTIONS

*By Members*

Each member of the Plan will contribute an amount equal to 2% of the first $250 of his basic monthly compensation, plus 4% of the basic monthly compensation in excess of $250. These contributions are deducted from the employee's pay and are made until the normal (or earlier) retirement date or earlier termination of service.

Each year the Company will furnish to each member of the Plan a statement showing the member's contributions plus credited interest as of the end of the preceding year for each pension plan in which the member has participated.

*By Company*

The Company will contribute under Plan 1, Plan 2 and this Plan the amounts which, when added to the members' contributions under such plans, will purchase the retirement incomes for service before January 1, 1950 (past service) and for service on and after January 1, 1950 (future service) described in Section 5 of the Plan.

7

WG-ANR-00049712

## Section 5. RETIREMENT INCOME

*Normal Income Basis*: The retirement income payable under this Plan provides for monthly payments to the member upon retirement, reduced by the amount of any unemployment compensation received by such member from the account of the Company after retirement. Where retirement is at the normal retirement date, this income will be payable for the member's lifetime and will be the sum of (a) the future service benefit and (b) any past service benefit, as hereinafter set forth.

*Future Service — Group A employee*: The monthly retirement income for each full year of contribution under this Plan amounts to ¾ of 1% of the first $250 of basic monthly compensation, plus 1½% of such compensation in excess of $250. Appropriate credit will be given for any fractional years of membership. The sum of these retirement incomes credited for each year will be the future service benefit at retirement. Any future service retirement income credited in Plan 1 to a Group A employee will be added to the retirement income credited under this Plan, and the sum will be a Group A employee's total future service retirement income.

*Future Service — Group B employee*: The monthly retirement income for each full year of contribution under this Plan amounts to ⅞ of 1% of the first $250 of basic monthly compensation, plus 1¾% of such compensation in excess of $250. Appropriate credit will be given for any fractional years of membership. The sum of these retirement incomes credited for each year will be the future service benefit at retirement. Any future service retirement income credited in Plan 1 or Plan 2 to a Group B employee will be added to the retirement income credited under this Plan and the sum will be a Group B employee's total future service retirement income.

*Past Service — Group A employee*: The monthly retirement income credited under this Plan for the past service

of a Group A employee who joined Plan 1 as of January 1, 1950 as a non-union employee is .65% of the average basic monthly compensation for the calendar year next preceding January 1, 1950, multiplied by the number of years and fractions thereof (on the basis of full months) of continuous service with the Company before January 1, 1950, less five years. Any past service retirement income credited in Plan 1 to a Group A employee who joined Plan 1 as of January 1, 1950 as a union employee will be included in his total retirement income.

*Past Service — Group B employee*: The monthly retirement income credited under this Plan for the past service of a Group B employee who joined Plan 1 or Plan 2 as of January 1, 1950 as a non-union employee is .80% of the average basic monthly compensation for the calendar year next preceding January 1, 1950, multiplied by the number of years and fractions thereof (on the basis of full months) of continuous service with the Company before January 1, 1950, less five years. Any past service retirement income credited in Plan 1 or Plan 2 to a Group B employee who joined Plan 1 or Plan 2 as of January 1, 1950 as a union employee will be included in his total retirement income.

*Benefit in Event of Deferred Retirement*: Where the member continues in employment beyond age 65, his retirement income will be purchased at his actual retirement date. In this event, the retirement income will be actuarially increased on account of the later retirement date.

*Benefit in Event of Permanent Incapacity*: Disability benefits for members who become permanently incapacitated shall equal 90% of the retirement income based on future and past service, as provided above, computed as though they were eligible for retirement as of the date they were determined to be permanently incapacitated, plus an additional benefit equal to 10% of the average basic monthly compensation up to but not exceeding $250 per month for service rendered during membership in the Plan. If an employee covered under this Plan has participated in Plan

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 38 of 47   Document 50-26

WG-ANR-00049713

1 and/or Plan 2 and he subsequently becomes permanently disabled, his benefits will be computed as follows: (a) the sum of 90% of the employee's retirement benefits under each of the plans computed as though the employee were eligible to retire at such time, plus (b) 10% of his average basic monthly compensation up to $250 per month since he first participated in any plan of the Company.

These disability benefits will continue until such time as benefits become payable to the employee under the provisions of the Federal Social Security Act, at which time the benefit equal to 10% of his average basic monthly compensation, up to but not exceeding $250 per month, shall cease.

The permanence of incapacity may be verified by medical examination prior to age 65. If disability benefits continue until normal retirement date, the member will thereafter only be entitled to the normal retirement income computed on the basis of the number of years of his participation prior to permanent incapacity.

Any amount payable to the member because of total and permanent disability, for which the Company is liable, whether pursuant to workmen's compensation laws or otherwise from the statutory or common law, and any such payments on account of employment by an employer other than the Company, shall be deducted from or charged against the amount of disability benefit payable under this Plan.

## Section 6.  PAYMENTS AT DEATH

*Before Retirement:* In the event of a member's death before retirement (or while receiving a disability benefit prior to normal retirement date), his designated beneficiary will receive from the Company an amount equal to the member's own contributions to this Plan, and any he may have made to Plan 1 and/or Plan 2, together with credited interest. Credited interest means 2% compounded annually and computed separately on each contribution from the January 1 following payment of the contribution to the first day of the month in which death occurs.

10

*After Retirement:* In the event of a member's (and any joint annuitant's) death after retirement, the Insurance Carrier will pay to the member's designated beneficiary an amount equal to the member's total contributions to this Plan, and any he may have made to Plan 1 and/or Plan 2, together with 2% interest to retirement date, as explained above, less the total payments (exclusive of disability benefits) made to the member and any such joint annuitant under the Plan.

Members may designate more than one person as beneficiary and may change any beneficiary by signing and filing the proper form. If there is no beneficiary designated or surviving when a death benefit becomes payable, payment will be made to the person or persons in the first of the following classes of successive preference beneficiaries then surviving: the member's (1) widow or widower; (2) children; (3) parents; (4) brothers and sisters; (5) executors or administrators. Any minor's share may be paid at the rate not exceeding $50 per month to such adult or adults as have in the opinion of the Company or the Insurance Carrier (as the case may be) assumed the custody and principal support of such minor.

## Section 7.  TERMINATION OF SERVICE BEFORE RETIREMENT

*Before 10 Years of Membership:* If a member's service with the Company is terminated for any reason other than retirement before his normal retirement date and before he has completed 10 or more years of membership in this Plan, or 10 years of membership in this Plan, Plan 1 and Plan 2 combined, he will receive from the Company an amount equal to the total of his own contributions to this Plan, and any he may have made to Plan 1 and/or Plan 2, together with credited interest. Credited interest means 2% compounded annually and computed separately on each contribution from the January 1 following payment of the contribution to the first day of the month of termination.

11

WG-ANR-00049714

*After 10 Years of Membership*: If a member's service with the Company is terminated for any reason other than retirement before his normal retirement date and after he has completed 10 or more years of membership in this Plan, or 10 years of membership in this Plan, Plan 1 and Plan 2 combined, he may elect:

(a) to receive from the Company an amount equal to the total of his own contributions to this Plan, and any he may have made to Plan 1 and/or Plan 2, with credited interest, as outlined above, or

(b) to leave his contributions in the Plan and to retain his rights to the past and future service retirement income, commencing at his normal retirement date, derived from his period of membership in this Plan, Plan 1 and/or Plan 2.

## Section 8. DETERMINATION OF SERVICE AND ABSENCES

The number of years of continuous service of an employee for determining eligibility and the amount of retirement income payable shall be determined in accordance with the then existing records of the Company.

An employee who has been retired under the Plan because of permanent incapacity and who, upon subsequent recovery and discontinuance of his disability benefit, is restored to active service shall be credited with his continuous service as of the date of his prior retirement for the purpose of calculating any subsequent retirement income benefits to which he may become entitled.

Interruption of active service due to any authorized leave of absence not constituting termination of service does not terminate membership in the Plan. The member's status in the Plan during such interruption of active service depends on whether he receives earnings from the Company during

12

such period. If he receives such earnings, his contributions under the Plan continue and his future service retirement income accumulates accordingly. If he receives no earnings from the Company, he makes no contributions and no additional future service retirement income accumulates for him; but all retirement income previously accrued for him remains to his credit unaffected. Upon resumption of earnings from the Company, his contributions and the accrual of additional future service retirement income are automatically resumed commencing with the first day of the month coinciding with or next following his return to work with the Company. If the member's service is terminated during such interruption of active service, the provisions governing termination of service before retirement will apply.

## Section 9. OPTIONAL RETIREMENT INCOME

Instead of the retirement income normally provided under this Plan, a member may choose the Joint and Survivor Annuity option which provides for reduced retirement income payments to the member and for the continuance of such payments, or any part of them specified by the member, to a designated joint annuitant, for life, after the member's death. This form may be chosen at any time before the retirement date (normal or earlier). A retirement date (normal or earlier) must be specified at the time the election is made and the election is subject to evidence of the member's good health satisfactory to the Insurance Carrier if the choice is not made at least five years before the retirement date so specified. Satisfactory proof of the joint annuitant's age must also be furnished.

If either the joint annuitant or the member dies before the member's retirement date (normal or earlier), the election will be automatically cancelled.

If the joint annuitant dies after the member's retirement date (normal or earlier), the reduced Joint and Survivor Annuity payments will nevertheless be payable to the member. If the member dies after his retirement date (normal

13

Case 2:20-cv-01334-SCD    Filed 01/27/23    Page 40 of 47    Document 50-26

WG-ANR-00049715

or earlier), the payments elected for the joint annuitant will then commence. If at the death of both the member and the joint annuitant, retirement income payments have totaled less than the sum of the member's own contributions, with credited interest, as previously described, to retirement, the Insurance Carrier will pay the balance to the member's beneficiary.

Where the Joint and Survivor option shall have been elected and the member continues in employment beyond age 65, his retirement income will be purchased at actual retirement and will be based upon the factor applicable at the member's normal retirement date. Where the member alone survives to the actual retirement date, an annuity will be purchased based on the amount which the member would have received on the Joint and Survivor basis had he retired at his normal retirement date. Similarly, if the member dies after his normal but prior to his actual retirement date and his joint annuitant survives, a purchase will be made at the member's death based on the amount which the Joint Annuitant would have received had the member retired at his normal retirement date. In each of the three situations described in this paragraph, since the annuity will be purchased after normal retirement date, the annuity will be actuarially increased.

Once the optional retirement income and a retirement date have been elected, no change of any kind can be made without the written consent of the Insurance Carrier. Such consent may be subject to evidence of the member's and/or the joint annuitant's good health.

The Joint and Survivor Annuity option will not be available with respect to disability benefits payable prior to normal retirement date because of permanent incapacity.

## Section 10. SMALL RETIREMENT INCOME

If the benefit to which any member would otherwise become entitled under this Plan should provide for monthly payments of less than $10, the payments may be made at such intervals as will make the payments amount to at least $10 each. If the monthly benefit should be less than $3.34, the member may be granted a lump sum cash payment instead of such benefit.

Any election that would result in payments to any person of less than $3.34 per month cannot be made.

## Section 11. PAYMENTS TO INCOMPETENTS

If satisfactory evidence is received that:

(a) A person entitled to receive any payment under this Plan is physically or mentally incompetent to receive such payment and to give a valid release therefore,

(b) Another person or an institution is then maintaining or has custody of such person, and

(c) No guardian, committee or other representative of the estate of such person has been duly appointed,

the Company or the Insurance Carrier, as the case may be, may make the payment to such other person or institution and the release of such other person or institution shall be a valid and complete discharge for the payment.

## Section 12. ASSIGNMENTS

Except as may be contrary to the laws of any state having jurisdiction in the premises:

(a) No member, beneficiary or joint annuitant under this Plan shall have the right to assign, transfer, hypothecate, encumber, commute or anticipate his interest in any payments, and

(b) Such payments shall not in any way be subject to any legal process to levy upon or attach the same for payment of any claim against any member, beneficiary or joint annuitant.

14

15

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 41 of 47   Document 50-26

WG-ANR-00049716

## Section 13. CERTIFICATES

Each member will receive a certificate from the Company evidencing his membership in this Plan, and upon purchase of retirement income at his retirement date, the Insurance Carrier will issue a certificate to him which describes the amount and form of retirement income and the terms of payment.

## Section 14. ADMINISTRATION

The Company and the Insurance Carrier will be responsible for the administration of the Plan. The Plan will be administered in such manner as will not be prejudicial to any employee.

## Section 15. THE GROUP ANNUITY CONTRACT

Under the Group Annuity Contract between the Company and Equitable, contributions paid to Equitable will be accumulated at interest. When a member retires, the retirement income benefits provided under the Plan will be purchased. After these purchases are made, they are guaranteed by Equitable.

Equitable guarantees the principal of the amounts paid to it and interest thereon at the rate provided in the Contract. It does not guarantee the adequacy of such amounts to provide the benefits under the Plan. However, after a member's retirement income is purchased, Equitable assumes full liability for the payment of his benefits.

## Section 16. DISCONTINUANCE OF PLAN

The Plan is for the exclusive benefit of employees and no part of the contributions of the Company or the employees, or the interest earned thereon, may in any event be used for or diverted for any purposes other than for the exclusive use of members, retired members or their joint annuitants or beneficiaries, until all the benefits provided by the Plan for such persons have been fully satisfied.

If the Contract with Equitable is discontinued because of discontinuance of the Plan, members will receive a statement evidencing their right to a paid-up retirement income (commencing at normal retirement date) provided by the total contributions then available.

At discontinuance, the available funds will be allocated to participants as of the discontinuance date in proportion to the value of benefits earned on service and compensation to discontinuance date. Such allocations will be 100% vested in the participants and not subject to forfeiture thereafter.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 42 of 47   Document 50-26

WG-ANR-00049717

## ILLUSTRATIVE EXAMPLES OF
## RETIREMENT INCOME

---

### EXAMPLE I — (See Note*)

Age of Male Employee: 51 years on December 31, 1949
Length of Employment: 28 years on December 31, 1949
Date Eligible for Membership in this Plan: January 1, 1950
Average Basic Monthly Compensation from January 1, 1950:
  $450 to retirement at age 65 or 67
Average Basic Monthly Compensation in 1949: $350

*Monthly Retirement Income if*
*Employee Retires at Age 65*

Retirement income for past service:

$350 x 8/10 of 1% = $2.80
$2.80 x 23 years (28 years less 5) = ..................$ 64.40

Retirement income for future service:

$250 x ⅞ of 1% = $2.1875
$200 x 1¾% = 3.5000

$5.6875 x 14 years = .......... 79.63

Total monthly retirement income payable for life
  from Company Plan starting at age 65 ................$144.03
Estimated social security payment to employee ...... 108.50**
Total estimated monthly income to employee ........$252.53
Add estimated social security payment to wife
  after she reaches age 65 .......................................... 54.30**
Estimated total monthly income to employee and
  his wife after both reach age 65 ..........................$306.83

18

### EXAMPLE I — Continued

*Monthly Retirement Income if*
*Employee Retires at Age 67*

Retirement income from Company Plan at age 65....$144.03
Amount of increase resulting from later retire-
  ment at age 67 (12%) .............................................. 17.28
Monthly retirement income payable for life from
  Company Plan starting at age 67 ...........................$161.31
Estimated social security payments to employee
  beginning at age 67 ................................................. 108.50**
Total estimated monthly income to employee at
  age 67 ...................................................................$269.81
Add estimated social security payment to wife if
  she is 65 years of age when employee retires ...... 54.30**
Estimated total monthly income to employee and
  his wife ................................................................$324.11

Note*: This example assumes that the employee was a super-
  visor on January 1, 1950 and joined Plan 2 as of that
  date. This example would apply also if this same
  employee had joined Plan 1 instead of Plan 2 at Jan-
  uary 1, 1950, provided he elected as of January 1,
  1954 to participate in this Plan as a Group B em-
  ployee.

**: Represents the maximum social security payments
  provided in the Social Security Law as amended in
  1954. The estimated payments are based on the
  assumption that the employee's earnings will not be
  less than $4,200 in any year after 1954.

19

WG-ANR-00049718

## ILLUSTRATIVE EXAMPLES OF
## RETIREMENT INCOME

### EXAMPLE II — (See Note*)

Age of Male Employee: 26 years at December 31, 1949
Length of Employment: 4 years at December 31, 1949
Date Eligible for Membership in this Plan: January 1, 1953
Average Basic Monthly Compensation from January 1, 1950:
$300 to January 1, 1953; $450 thereafter to retirement at
age 65 or 67.

*Monthly Retirement Income if*
*Employee Retires at Age 65*

Retirement income for past service: ..........................$ 0

Retirement income for future service:
  Accrued under Plan 1 to January 1, 1953:
  $250 x ¾ of 1% = $1.875
  $ 50 x 1½% = .750
  —————
  $2.625 x 3 years = .......... 7.88

  Accrued under this Plan:
  $250 x ⅞ of 1% = $2.1875
  $200 x 1¾% = 3.5000
  —————
  $5.6875 x 36 years = ........ 204.75

Total monthly retirement income payable for life
  from Company Plan starting at age 65 ................$212.63

Estimated social security payment to employee .......108.50**

Total estimated monthly income to employee .......$321.13

Add estimated social security payment to wife
  after she reaches age 65 ..........................................
  54.30**

Estimated total monthly income to employee and
  his wife after both reach age 65 ..........................$375.43

20

### EXAMPLE II — Continued

*Monthly Retirement Income if*
*Employee Retires at Age 67*

Retirement income from Company Plan at age 65 $212.63
Amount of increase resulting from later retire-
  ment at age 67 (12%) ...............................................  25.52

Monthly retirement income payable for life from
  Company Plan starting at age 67 ...........................$238.15
Estimated social security payments to employee
  beginning at age 67 ...............................................  108.50**

Total estimated monthly income to employee at
  age 67 ......................................................................$346.65
Add estimated social security payment to wife if
  she is 65 years of age when employee retires ......  54.30**

Estimated total monthly income to employee and
  his wife ....................................................................$400.95

Note*: This example assumes that the employee joined Plan
1 at January 1, 1950 as a union employee and that he
elected as of January 1, 1954 to participate in this
Plan as a Group B employee. The example also
assumes that his first pension contribution as a super-
visor became effective January 1, 1953.
  Had this employee joined Plan 2 instead of Plan 1
as a union employee his retirement income would
be calculated in the same way as above with one ex-
ception. His retirement income for future service
accrued to January 1, 1953 would be $9.19 instead of
$7.88 computed as follows:
  Retirement income for future service:
  Accrued under Plan 2 to January 1, 1953:
  $250 x ⅞ of 1% = $2.1875
  $ 50 x 1¾% = .8750
  —————
  $3.0625 x 3 years = .......$9.19

**: Represents the maximum social security payments
provided in the Social Security Law as amended in
1954. The estimated payments are based on the
assumption that the employee's earnings will not be
less than $4,200 in any year after 1954.

21

Case 2:20-cv-01334-SCD    Filed 01/27/23    Page 44 of 47    Document 50-26

WG-ANR-00049719

EXHIBIT 15-M-9

MICHIGAN WISCONSIN PIPE LINE COMPANY
F.P.C. Gas Tariff
Original Volume No. 1

Substitute First Revised Sheet No. 5
Superseding Original Sheet No. 5

## RATE SCHEDULE G-1

### General Service

1. **AVAILABILITY:**

   This rate schedule is available to any gas distribution utility
   (hereinafter called "Buyer"), which has executed a service agree-
   ment with Michigan Wisconsin Pipe Line Company (hereinafter called
   "Seller"), for the purchase of natural gas.

2. **APPLICABILITY AND CHARACTER OF SERVICE:**

   This rate schedule shall apply to all natural gas delivered by
   Seller to Buyer. Service under this rate schedule, within the
   limits of the natural gas supply and capacity of the facilities
   of Seller, up to the limits prescribed by the service agreement
   shall be firm and shall not be subject to curtailment or inter-
   ruption except as provided in Section 9 of the General Terms and
   Conditions.

3. **RATE:**

   For natural gas delivered by Seller to Buyer, Buyer shall pay
   for such gas at the rate of thirty-one and twenty-five one-
   hundredths (31.25) cents per thousand cubic feet.

4. **MINIMUM BILL:**

   None.

5. **HEAT CONTENT:**

   Refer to Section 5.3 of the General Terms and Conditions.

6. **MEASUREMENT UNIT:**

   Refer to Section 3.1 of the General Terms and Conditions.

7. **GENERAL TERMS AND CONDITIONS:**

   All the General Terms and Conditions are hereby made a part of
   this rate schedule.

Issued by: Frank W. Thompson, Vice President          Effective: October 1, 1951.
Issued on: December 29, 1954

Issued to comply with orders of the Federal Power Commission,
Docket No. G-1678, issued July 30, 1954 and November 29, 1954.

WG-ANR-00049720

EXHIBIT 15-M-10

MICHIGAN WISCONSIN PIPE LINE COMPANY
F.P.C. Gas Tariff                    Substitute Second Revised Sheet No. 5
Original Volume No. 1         Superseding Substitute First Revised Sheet No. 5

RATE SCHEDULE G-1

General Service

1. AVAILIBILITY:

   This rate schedule is available to any gas distribution utility
   (hereinafter called "Buyer"), which has executed a service agree-
   ment with Michigan Wisconsin Pipe Line Company (hereinafter called
   "Seller"), for the purchase of natural gas.

2. APPLICABILITY AND CHARACTER OF SERVICE:

   This rate schedule shall apply to all natural gas delivered by
   Seller to Buyer. Service under this rate schedule, within the
   limits of the natural gas supply and capacity of the facilities
   of Seller, up to the limits prescribed by the service agreement
   shall be firm and shall not be subject to curtailment or inter-
   ruption except as provided in Section 9 of the General Terms and
   Conditions.

3. RATE:

   For natural gas delivered by Seller to Buyer, Buyer shall pay
   for such gas at the rate of thirty-one and sixty one-hundredths
   (31.60) cents per thousand cubic feet.

4. MINIMUM BILL:

   None.

5. HEAT CONTENT:

   Refer to Section 5.3 of the General Terms and Conditions.

6. MEASUREMENT UNIT:

   Refer to Section 3.1 of the General Terms and Conditions.

7. GENERAL TERMS AND CONDITIONS:

   All the General Terms and Conditions are hereby made a part of
   this rate schedule.

Issued by: Frank W. Thompson, Vice President    Effective: December 12, 1952.
Issued on: December 29, 1954.

Issued to comply with orders of the Federal Power Commission,
Docket No. G-1996, issued July 30, 1954 and November 29, 1954.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 46 of 47   Document 50-26

EXHIBIT 15-M-11

MICHIGAN WISCONSIN PIPE LINE COMPANY
F.P.C. Gas Tariff
Original Volume No. 1

Fourth Revised Sheet No. 16B
Superseding Third Revised Sheet No. 16B

GENERAL TERMS AND CONDITIONS
(Continued)

|  | Total Space Heating Consumers |
|---|---|
| **MICHIGAN** | |
| Michigan Consolidated Gas Company | 318,060 |
| Michigan Gas and Electric Company | 7,199 |
| Michigan Gas Utilities Company | 3,969 |
| **WISCONSIN** | |
| Milwaukee Gas Light Company | 63,274 |
| Wisconsin Natural Gas Company | 15,662 |
| Madison Gas and Electric Company | 5,973 |
| Wisconsin Power and Light Company | 7,000 |
| Wisconsin Public Service Corporation | 12,346 |
| Wisconsin Michigan Power Company | 2,144 |
| Wisconsin Fuel and Light Company | 1,210 |
| Stoughton Light & Fuel Company | 201 |
| **IOWA AND MISSOURI** | |
| Iowa Southern Utilities Company | 3,949 |
| Keokuk Gas Service Company | 1,208 |
| Fort Madison Gas Company | 968 |
| Iowa Electric Light and Power Company | 947 |
| St. Joseph Light & Power Company | 846 |

Issued by: Wilbur H. Mack, Secretary
Issued on: August 4, 1954

Effective: September 4, 1954.

WG-ANR-00049722