# EXHIBIT 18



# MILWAUKEE SOLVAY COKE COMPANY
### MILWAUKEE 1, WIS.

RECEIVED BY D.B. W

MAY 29 1953

REFERRED TO File

ANSWERED

May 28, 1953

NOTED
JUN 10 1953
E. G. B.

NOTED
JUN 1 1953
D. B. W.

Mr. Ralph T. McElvenny
Executive Vice President
American Natural Gas Service Company
Suite 3600 – Penobscot Building
Detroit 26, Michigan

Dear Mr. McElvenny:

    In response to your letter dated May 5, 1953, it is very apparent that the Staff recommendations were preconceived, making little of obvious advantages for retention and conversely exaggerated every feature that could be misconstrued to be adverse to the Milwaukee Solvay – Milwaukee Gas Light relationship, and adverse to the public interest.

    In reality there are only two points to be decided — whether or not retention is legal and whether or not it is in the public interest.

<u>Statutory Standards</u> (copied from Pages 5 and 6 of the report)

    Section II (b) (1) of the Act, insofar as here relevant, provides that the operations of a holding company system be limited "to a single integrated public utility system," and to:

> "such other businesses as are reasonably incidental, or economically necessary or appropriate to the operations of such integrated public utility system...."

The Section further provides:

> "The Commission may permit as reasonably incidental or economically necessary or appropriate to the operations of one or more integrated public-utility systems the retention of an interest in any business (other than the business of a public-utility company as such) which the Commission shall find necessary or appropriate in the public interest or for the protection of investors or consumers and not detrimental to the protection of investors or consumers and not detrimental to the proper functioning of such system or systems."

    A careful study of the wording of the above reveals that the Commission has wide powers of judgment and decision. It follows that in the event retention is found to be in the public interest, the Commission would have no right to order divestment.

C O P Y

cc: Mr. Brown
    Mr. Burdick
    Mr. Dern
    Mr. Fink

WG-ANR-00077055

Geographically, the two companies are a unit and ever since Solvay commenced operations forty-nine years ago it has been closely associated with Milwaukee Gas. The facilities, which at times supplied the entire amount of gas distributed by Milwaukee Gas, are intact and ready to supply emergency gas if needed. There would be no economic gains or advantages in divestment or disassociation, but rather both companies would be injured and a divestment order would therefore be against the public interest.

The American Light and Traction Company wisely acquired the Solvay property in the year 1928 to properly serve the customers in the Milwaukee area. Subsequently, a Producer Plant and a Liquid Petroleum Plant were constructed at Milwaukee Solvay to adequately satisfy the increased demand for gas. There should be no doubt that Solvay was and is operated as an important segment of the Milwaukee Gas Light Company. It is also a reasonable assumption that were it not for this close relationship the Gas Company would of necessity have constructed other manufacturing facilities, such as carburetted water gas, liquid petroleum, or others, which would have been retained in the rate base by the Gas Company following the advent of natural gas for standby service. In this day and age, experience has established the need for standby service and, further, the gas customers are entitled to this protection whenever a utility property is converted to natural gas.

Separation of the two companies could result in a discontinuation of the Solvay standby service which would not be in the public interest. As an example, the Interlake Iron Corporation plant in Duluth, Minnesota, recently advised the City of Duluth Water and Light Department that after May 1, 1955, it will operate its coke plant to balance coke requirements in its blast furnace instead of meeting certain gas requirements of the Duluth utility.

It is my humble opinion that the public will be best served and in direct proportion with the percentage of coke oven gas component in its mixture of substitute gases. This is true with respect to cost, utilization, and availability.

Following the advent of natural gas, coke oven gas and gas sewerage contracts were consummated with the understanding that the close relationship between Solvay and Milwaukee Gas would continue as in the past. It is a certainty that the minimum delivery of 60,000 therms per day would not have been agreed upon by Solvay if the Company had been or expected to be separated from the American Natural Gas System.

In view of the circumstances as above related and to best promote the public interest, we should make every effort to obtain a favorable permanent decision for retention.

If the Commission does not agree to permanent retention, the least that we should agree to is to continue the present status until September 1960, which parallels the duration of existing contracts between Solvay and Milwaukee Gas and Milwaukee Gas and the Sewerage Commission.

Yours very truly,

LGM/amw  
President

COPY