# EXHIBIT 27

BEFORE THE SECURITIES AND EXCHANGE COMMISSION

In the matter of

UNITED LIGHT AND RAILWAYS COMPANY
AMERICAN LIGHT & TRACTION COMPANY
(NOW AMERICAN NATURAL GAS COMPANY)

File Nos. 59-11, 59-17 and 54-25

BRIEF FOR AMERICAN NATURAL GAS COMPANY

Donald Richberg
John Dern
Robert L. Foote
Rickard H. Lauritzen

Attorneys for
American Natural Gas Company

Sidley, Austin, Burgess & Smith
Chicago, Illinois

Of Counsel

Dated at Chicago, Illinois

March 19, 1953.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 2 of 42   Document 50-38

WG-ANR-00006338

## INDEX

|  | Page |
|---|---|
| The Question before the Commission | 1 |
| Position of American Natural | 1 |
| The Background of the Instant Proceeding | 2 |
| Role of Milwaukee Solvay in the American Natural System | 5 |
| Milwaukee Solvay Furnishes Approximately 11% of the Gas Light Company's Firm Gas Supply | 5 |
| Limitations on Natural Gas Supply would prohibit the Gas Light Company Meeting its Commitments without the Coke Oven Gas Furnished by Milwaukee Solvay | 6 |
| Milwaukee Solvay Provides Necessary Stand-By Facilities | 9 |
| Prior Decisions of the Commission | 10 |
| General Principles | 10 |
| Criteria Cited by the Commission | 14 |
| The Functional and Operating Relationship between Milwaukee Solvay and the Gas Light Company indicates Milwaukee Solvay is Retainable | 14 |
| Milwaukee Solvay is Economically Necessary or Appropriate to the American Natural System | 16 |

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 3 of 42   Document 50-38

WG-ANR-00006339

                                                                  <u>Page</u>

Consideration of the Public Interest
    Indicates Milwaukee Solvay is
    Retainable                                                      18
Milwaukee Solvay is Appropriate to the
    Proper Functioning of the System                               21
Consideration of the Interests of Investors
    Indicates that Milwaukee Solvay is
    Retainable                                                      29
Milwaukee Solvay is a Relatively Small Portion
    of the American Natural System                                 30
The Advantages and Economies to the Gas Light
    Company, the Public, and Investors and
    Consumers Could Not be Retained by Contrac-
    tual Arrangements despite Divestment                           31
Recapitulation                                                     35

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 4 of 42   Document 50-38

WG-ANR-00006340

# TABLE OF CASES

Pages

In re Cities Service Company

    15 SEC 962 (1944)                    23

    In re Arkansas Natural Gas Corp.
      154 Fed. 2d 597 (1946)
      cert. den. 67 S. Ct. 67      24

In the Matter of Engineer's Public Service Company
      12 SEC 41   9/16/42 No.138 F 2d 936
      (1943)            14

In the Matter of the North American Company
      11 SEC 194 (1942) Aff'd. 133 F 2d
      148 (1943) Aff'd, 327 U.S. 686 (1946)  23

      13 SEC 98 (1943)          13

      Holding Company Act Release
      No. 8626  11/5/48      26

      Holding Company Act Release
      No. 9190  6/24/49    23, 25, 26

      Holding Company Act Release
      10,320,  12/28/50     14

In re the United Light and Railways Company
      Holding Company Act Release
      No. 7951  12/31/47    4, 28, 31

## BRIEF FOR AMERICAN NATURAL GAS COMPANY

### The Question before the Commission.

The only matter at issue in the instant proceeding is whether the American Natural Gas Company (American Natural) system may retain its interest in Milwaukee Solvay Coke Company (Milwaukee Solvay), a non-utility currently supplying approximately 11% of the firm gas sold by one of the system's principal distributing subsidiaries, and owning facilities accounting for approximately a third of the emergency protection available to the distributing utility.

### Position of American Natural.

It is the position of American Natural that Milwaukee Solvay is clearly retainable under the standards of Section 11(b)(1) of the Public Utility Holding Company Act of 1935 (the Act) for three basic reasons which have been demonstrated during the course of the hearings. These reasons are:

1. Milwaukee Solvay is the source of approximately 11 percent of the firm gas sold annually by the Milwaukee Gas Light Company (the Gas Light Company).

2. Under current supply limitations gas now obtained from Milwaukee Solvay cannot be replaced with natural gas from the Gas Light Company's natural gas supplier.

WG-ANR-00006342

3. Milwaukee Solvay provides one-third, and the most readily available and useful portion, of the stand-by facilities which are required by the Gas Light Company to protect the City of Milwaukee from the personal and economic hardships which would result in the event of a natural gas supply line break.

## The Background of the Instant Proceeding.

American Natural is the top company in an integrated gas utility holding company system which was a part of the former United Light and Power Company system.

American Natural owns, (a) substantially all (over 99%) of the outstanding common stock of the Gas Light Company, the gas utility serving the City of Milwaukee, Wisconsin, (b) all the outstanding common stock of Michigan Consolidated Gas Company, the gas utility serving the City of Detroit and other Michigan communities, and (c) all the outstanding common stock of Michigan-Wisconsin Pipe Line Company (Michigan-Wisconsin), which owns an interstate pipe line extending from Texas to Wisconsin and Michigan, and serves the Gas Light Company and Michigan Consolidated with natural gas.

Prior to 1947 American Natural (then American Light and Traction Company) owned all of the outstanding securities of Milwaukee Solvay, which owns approximately a third

WG-ANR-00006343

of the gas manufacturing capacity available to the Gas
Light Company. Milwaukee Solvay has been owned by Ameri-
can Natural since 1928. It owns and operates a gas and
coke plant in the City of Milwaukee near the Gas Light
Company.

During early 1947 in connection with a program
then contemplating the liquidation of American Natural,
and with the approval of the Commission, all of the common
stock of Milwaukee Solvay was transferred to the Gas Light
Company in exchange for shares of that Company.

The transfer was made to assure the Gas Light Com-
pany of the continuing availability of Milwaukee Solvay as
a source of gas.

Subsequent to the Commission's approval of the
transfer of Milwaukee Solvay to the Gas Light Company, the
increased probability that the Michigan-Wisconsin pipeline
could be built led to abandonment of the plan for dissolu-
tion of American Natural. American Natural then proposed
that it become the holding company for its present inte-
grated gas system. However, the transfer of Milwaukee
Solvay to the Gas Light Company was never reversed, and
today American Natural owns Milwaukee Solvay through its
ownership of the Gas Light Company.

At the time the Commission approved the Plan for
the continuation of American Natural as the parent company

WG-ANR-00006344

of an integrated natural gas system (<u>Holding Company Act Release No. 7951</u>, December 31, 1947, CCH Par. 75,912), it was anticipated that a supply of natural gas would become available to the Gas Light Company when the pipeline being constructed by Michigan-Wisconsin was completed.

When the matter was before the Commission in 1947, a question was raised, whether the production of Milwaukee Solvay would be necessary or useful to the Gas Light Company following the introduction of natural gas, or, whether the operations of Milwaukee Solvay would become completely disengaged from those of the Gas Light Company. At that time the Commission concluded that although Milwaukee Solvay was then "closely related to the operations of Milwaukee" jurisdiction should be reserved to determine at an appropriate time after the introduction of natural gas at Milwaukee whether in the light of the developed relationship of Milwaukee Solvay to the system, its production facilities were a properly retainable "other business."

Natural gas was introduced in Milwaukee in late 1949 and hearings on the reserved question were ordered in the fall of 1952.

As matters have eventuated the introduction of natural gas has not fundamentally changed Milwaukee Solvay's role in the system.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 9 of 42   Document 50-38

WG-ANR-00006345

Role of the Milwaukee Solvay in the American Natural System.

Milwaukee Solvay supplies approximately 11% of the firm gas sold annually by the Gas Light Company (Tr. 31-3403; 31-3435A; 31-3437). A substitute for this amount of gas cannot at this time be obtained from Michigan-Wisconsin, the sole source of supply for natural gas to the Gas Light Company. (Tr. 31-3435A; 31-3439; 31-3403). Furthermore, Milwaukee Solvay affords approximately a third, and the most useful and useable portion, of the necessary stand-by facilities which protect the Gas Light Company, and the City of Milwaukee from the hardships which might be expected in the event of a break or curtailment in the supply of natural gas. (Tr. 3229-3235)

Milwaukee Solvay Furnishes Approximately 11% of the Gas Light Company's Firm Gas Supply.

The possible disengagement of the operations of Milwaukee Solvay from those of the Gas Light Company has not occurred. Milwaukee Solvay is today supplying the Gas Light Company with more than half the amount of gas it was supplying when the Commission found it clearly economically necessary and appropriate to the operations of the Gas Light Company. Milwaukee Solvay today stands ready and able, when required, to supply, on short notice, the full amount of gas it was then supplying.

The principal change which has occurred since the

WG-ANR-00006346

Commission's order of December 31, 1947, is that the introduction of natural gas has permitted the Gas Light Company to expand its gas sales. At the same time the Gas Light Company has been able to reduce its requirements for coke oven gas to the economic full capacity of Milwaukee Solvay. It has become unnecessary to require Milwaukee Solvay to use expensive substitute gases to release additional coke oven gas, as was necessary to meet demands prior to the introduction of natural gas.

Milwaukee Solvay currently supplies virtually 100% of the Gas Light Company's manufactured gas, or approximately 11% of its total firm gas. Except for the change in the percentage of the Gas Light Company's load which Milwaukee Solvay supplies, the Commission's finding in 1947 might have been written currently. The Commission found:

> "Milwaukee Solvay is at present closely related to the operations of Milwaukee, supplying 68.23% of Milwaukee's manufactured gas. All of Milwaukee Solvay's production is devoted to Milwaukee, while its by-products are sold through usual trade channels. It is clear that Milwaukee Solvay is now economically necessary and appropriate to the operations of Milwaukee."

Limitations on Natural Gas Supply would prohibit the Gas Light Company Meeting its Commitments without the Coke Oven Gas Furnished by Milwaukee Solvay.

Milwaukee Solvay is able to serve the Gas Light Company in the dual capacities of a necessary gas source,

WG-ANR-00006347

and an important stand-by facility, because the Gas Light Company was fortunately able to work out a special arrangement with a very large consumer, the Sewerage Commission of the City of Milwaukee. Under this arrangement the customer agreed to take its requirement in coke oven gas, to the extent coke oven gas is available, and to permit interruptions of its supply in emergencies when the Gas Light Company's natural gas supply is curtailed or interrupted.

In order to obtain the necessary agreement of the Sewerage Commission, it was necessary for the Gas Light Company to commit itself to supply the Sewerage Commission with gas, (which could be natural gas, coke oven gas or other gas) for a period of ten years, except during emergencies caused by a break in, or curtailment of, natural gas supply. (Applicant's Exhibits 72 and 73)

As pointed out by Mr. Brenner, Vice President in charge of operations of the Gas Light Company, in the course of his testimony (Tr. 31-3435A; 31-3439) the supply of natural gas available to the Gas Light Company is limited by the tariff of Michigan-Wisconsin, effective under authorization of the Federal Power Commission, and is insufficient to meet the requests for additional service being made by customers of the Gas Light Company. The use of natural gas for industrial purposes is restricted, and no space heating customers may be added, after December 31,

WG-ANR-00006348

1952, by any company receiving gas from Michigan-Wisconsin. Comparable restrictions affecting the Gas Light Company exist pursuant to order of the Public Service Commission of Wisconsin.

It is not known when these restrictions may be released or removed, but the present inadequacy of the gas supply in relation to the pressing demand may be expected to continue until the Gas Light Company can obtain a major increase in the amount of natural gas available to it. The Gas Light Company has, therefore, suspended acceptance of additional space heating customers, and is otherwise complying with the applicable limitations.

Under its contract with the Sewerage Commission, the Gas Light Company is required to supply the Sewerage Commission with gas, whether or not it can obtain gas from Milwaukee Solvay. If coke oven gas were not available from Milwaukee Solvay, this could only be done by reducing the natural gas available to residents of the Milwaukee area by the equivalent of the gas now supplied by Milwaukee Solvay. Therefore, the coke oven gas now being supplied by Milwaukee Solvay daily, represents the release of an equivalent amount of natural gas for use in the Milwaukee area at a time when all available natural gas is less than sufficient to give service to all who desire it.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 13 of 42   Document 50-38

WG-ANR-00006349

## Milwaukee Solvay Provides Necessary Stand-By Facilities.

Milwaukee Solvay has not been relegated to the role of inactive and unnecessary stand-by capacity. Milwaukee Solvay is a necessary integrated part of the Gas Light Company's daily operations, and the great growth in demand for gas service has emphasized the need for a maximum of stand-by capacity to afford reasonable protection for the Milwaukee area in emergencies such as those discussed by Mr. Brenner. (Tr. 3231 et seq. and 31-3388 et seq. and described in Applicant's Exhibits 94 and 95)

The testimony reveals that full stand-by protection was afforded on 44 more days in the 12 months ended June 30, 1952 than would have been possible without Milwaukee Solvay, and that on 180 days in that period the availability of Milwaukee Solvay's gas would have increased the area in which service could have been maintained in an emergency by approximately one third. (Tr. 31-3386-7)

Milwaukee Solvay's value as stand-by is enhanced by

1. The rapidity with which it can be brought into service in an emergency;

2. Its ability to increase its output of coke oven gas substantially by LPG and producer gas underfiring;

3. The excellent mixing qualities of the coke oven gas produced.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 14 of 42   Document 50-38

WG-ANR-00006350

Against the foregoing background it seems clear
that Milwaukee Solvay remains "reasonably incidental or
economically necessary or appropriate to the operations of"
the American Natural system and is therefore retainable in
the system as an "other business."

Prior Decisions of the Commission.

General Principles.

A review of the published decisions of the Commis-
sion with respect to the retainability by integrated
utility holding company systems of interests in "other
businesses", reveals no decision which indicates Milwaukee
Solvay may not be retained as an "other business."    The
rationale of pertinent decisions, and the theory of the
Act, indicates that Milwaukee Solvay is retainable in the
American Natural system.

The Act makes it the duty of the Commission

> "to require that each registered holding com-
> pany, and each subsidiary company thereof,
> shall take such action as the Commission
> shall find necessary to limit the operations
> of the holding company system of which such
> company is a part to a single integrated
> public-utility system, and to such other
> businesses as are reasonably incidental, or
> economically necessary or appropriate to the
> operations of such integrated public-utility
> system:  .  .  .  .. The Commission may permit
> as reasonably incidental, or economically
> necessary or appropriate to the operations
> of one or more integrated public utility
> systems the retention of an interest in any
> businesses (other than the business of a
> public utility company as such) which the

WG-ANR-00006351

> Commission shall find necessary or appro-
> priate in the  public interest or for the
> protection of investors or consumers and
> not detrimental to the proper functioning
> of such system or systems." (Emphasis sup-
> plied)   (Act Sec. 11(b)(1)

The Commission has applied the statutory standard to a large number of holding company systems.  In each case the Commission has directed its attention primarily to two questions:

1.  Is the "other business" so useful in the utility operations of the system that retention is desirable?

2.  Is the "other business" operationally or functionally so related to the system operations that retention is desirable?

The Commission has uniformly approved the retention of other businesses which were either so useful to the utility operations of the system or functionally so closely related as to make divestment economically or operationally undesirable.  Thus, for example, retention of coal mining operations has been approved in numerous cases where the output of the mines was used by system companies, even though there is no functional or operating relationship between coal mining as such, and the utility business. Similarly, retention of steam and hot water heating facilities has been uniformly approved where exhaust steam from electric operations is used to supply the heat.  These

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 16 of 42   Document 50-38

WG-ANR-00006352

principles are illustrated by the series of cases relating to The North American Company and to Engineers Public Service Company hereinafter discussed.

Milwaukee Solvay is clearly retainable in accord with the decisions of the Commission in such cases. Retention is appropriate when either of the primary questions set forth above may be answered in the affirmative. In the case of Milwaukee Solvay, both questions are answered affirmatively, and Milwaukee Solvay is retainable under two theories either of which would be sufficient.

The testimony (Tr. 3238) has shown that all of the gas output of Milwaukee Solvay is required to meet the Gas Light Company's commitments. Under these circumstances consistency with the cases approving retention of coal mines currently or prospectively supplying utility operations would require that retention of Milwaukee Solvay be permitted.

The testimony has also shown that operational integration between Milwaukee Solvay and the Gas Light Company is, and must be, close. Milwaukee Solvay's gas output requires mains and holders to conduct it to the point of sale, and the necessary mains and holders belong to the Gas Light Company (Tr. 3240 and Applicant's Exhibit 76.) This relationship is analogous to that of the steam and hot water heat companies which use exhaust steam from electric utility boilers in their operations, and which

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 17 of 42   Document 50-38

WG-ANR-00006353

are retainable because of the waste and additional costs which would be involved in requiring them to set up their own facilities. It would be equally wasteful to require Milwaukee Solvay to attempt to develop another market for its gas and to require that it lay its own mains, particularly when it is so clear that Milwaukee Solvay operates effectively and economically as a production branch of the Gas Light Company.

Where businesses are divisible, the Commission has refused to permit retention of an entire "other business" merely because retention of a part of it was appropriate, but the Commission has never refused to permit retention of an indivisible business such as Milwaukee Solvay which supplies a necessary part of the output of the utility and is operationally integrated with it. Nor has the Commission denied retention of an "other business" which required the use of facilities jointly with the utility to dispose of its product, and which was operationally closely related to the utility. (See In the Matter of The North American Company, 13 Sec. 98 (1943))

The use required to be made of the mains and holders of the Gas Light Company in carrying coke oven gas to the consumer is quite different from the mere use by an "other business" of separable property located on the utility premises or having a party wall in common with the utility.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 18 of 42   Document 50-38

WG-ANR-00006354

## Criteria Cited by the Commission.

In applying the statutory standard, the Commission has indicated that the criteria to be applied are:

> "Having in mind the protection of investors, the public interest and the proper functioning of an integrated public utility system, is the retention of a particular non utility business reasonably incidental <u>or</u> economically necessary <u>or</u> appropriate to the operations of a retainable utility system." (Emphasis supplied)  <u>Engineers Public Service Company</u> 12 SEC 41 Sept. 16, 1942.

The Commission has also taken the position that an "other business" to be retainable must have a functional or operating relationship to the integrated public utility system.  (<u>In the Matter of North American Company</u>, Holding Company Act Release 10,320 December 28, 1950, CCH '49-'50 par. 76,086.  Compare <u>Engineers Public Service Company</u> 138 F.2d 936 (1943))

Applying the criteria enunciated by the Commission and the Act to the retainability of Milwaukee Solvay in the American Natural system it is apparent that Milwaukee Solvay is retainable.

## The Functional and Operating Relationship between Milwaukee Solvay and the Gas Light Company Indicates Milwaukee Solvay is Retainable.

There is a close functional and operating relationship between Milwaukee Solvay and the Gas Light Company. The testimony brought out this functional and operating relationship clearly.  It shows that essentially Milwaukee

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 19 of 42   Document 50-38

WG-ANR-00006355

Solvay is an important production facility of the Gas Light Company. Milwaukee Solvay's only outlet for its gas product is through the facilities of the Gas Light Company, and the Gas Light Company requires Milwaukee Solvay's entire gas output to meet the Gas Light Company's own contractual commitments.

The operating relationship exists in the close tie-in of physical facilities whereby Milwaukee Solvay is able to deliver gas to the Gas Light Company, and to rely on the latter to process the gas and smooth out fluctuations in delivery through use of its storage holders. The testimony also brought out the functional and operating relationship of Milwaukee Solvay to the Gas Light Company as a stand-by facility protecting natural gas customers. In this respect Milwaukee Solvay is as closely related to the Gas Light Company as the Gas Light Company's oil gas and LPG stand-by facilities, which have been recognized with the Gas Light Company's oil gas and LPG facilities as a part of the Gas Light Company's stand-by approved by the Wisconsin Public Service Commission.

Not only is there a close functional relationship between Milwaukee Solvay and the Gas Light Company, but there is, and must be, a close operating relationship to ensure the availability of gas of the proper characteristics, and in the proper amount.

The functional relationship between the two com-

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 20 of 42   Document 50-38

WG-ANR-00006356

panies is essentially the same as it was when the Commission found Milwaukee Solvay retainable in the American Natural system, except that instead of supplying the major portion of the gas sold by the Gas Light Company, Milwaukee Solvay now supplies approximately 11% of the Gas Company's expanded firm load. But that 11% is very important to the Gas Light Company, particularly in these days of limited natural gas supplies, and Milwaukee Solvay in addition is an important stand-by facility. Milwaukee Solvay is properly retainable in each of the capacities – supplier or stand-by, and a fortiori is retainable in both capacities.

## Milwaukee Solvay is Economically Necessary or Appropriate to the American Natural System.

Milwaukee Solvay is economically necessary or appropriate to the operations of the integrated system. As already stated Milwaukee Solvay's output of gas is necessary to enable the Gas Light Company to meet its obligation. to the Milwaukee Sewerage Commission under its contract (Applicant's exhibits 72 and 73). Under the terms of this contract if the American Natural system were forced to dispose of Milwaukee Solvay and arrangements could not be made with the new owners for the purchase of Milwaukee Solvay's gas * the Gas Light Company would have

---

\* Assuming that the Commission could permit the necessary contractual relations with an "other business" which it could not permit to be retained.

WG-ANR-00006357

to choose between:

    (a)   supplying the Sewerage Commission with natural gas, which would mean reducing the capacity available to serve others,

    (b)   paying the Sewerage Commission the difference between the cost of oil burned by it and the coal equivalent cost of the heat so generated, and

    (c)   litigation with the Sewerage Commission over the contract.

A facility which furnishes 11% of the gas sold by a utility, and which affords a third of the utility's protection under emergency conditions for the metropolitan area in which it operates and without which the utility could not meet its commitments, is certainly economically necessary or appropriate.

The economic appropriateness of Milwaukee Solvay is further demonstrated by the testimony showing estimated annual costs in excess of $250,000 for a less satisfactory LPG stand-by facility, having a short term capacity equal to Milwaukee Solvay's daily capacity. The Gas Light Company pays only $100,000 per year for the stand-by capacity afforded by Milwaukee Solvay. (Tr. 3322 and Applicant's Exhibit 86).

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 22 of 42   Document 50-38

WG-ANR-00006358

<u>Consideration of the Public Interest Indicates</u>
<u>Milwaukee Solvay Is Retainable</u>.

Considering the public interest, Milwaukee Solvay should be retainable in the American Natural system. Retention serves the public interest directly by making more natural gas available to the public in Milwaukee than would otherwise be available if the Gas Light Company were forced to serve the Sewerage Commission with natural gas because of loss of Milwaukee Solvay. Retention of Milwaukee Solvay as stand-by also affords the people of the City of Milwaukee a substantially better and greater measure of protection against the hardship and suffering which could result from a failure or other curtailment of deliveries of the natural gas pipeline serving Milwaukee. The City of Milwaukee needs more gas than it can obtain, and it would be economic waste to deprive it of the output of Milwaukee Solvay.

If it is suggested that disposition of Milwaukee Solvay would not prevent sale of its coke oven gas to the Gas Light Company, or to other gas consumers in the City of Milwaukee, it must be remembered that in the public interest it is desirable to avoid increases in rates where it is possible to do so.

If Milwaukee Solvay were to serve retail customers it would become a gas utility and as such an appropriate company to be included in the American Natural integrated

-18-

WG-ANR-00006359

gas system without reference to the "other business" tests. The fact that it sells to the Gas Light Company should not prevent retention simply because it makes Milwaukee Solvay a non-utility or "other business" under the Act.

The Gas Light Company has need of Milwaukee Solvay in a dual capacity - gas supply and stand-by - and is able to make the coke oven gas purchased available at a low figure because Milwaukee Solvay serves this dual purpose. If the American Natural system did not own Milwaukee Solvay the public service considerations that have governed the disposition of coke oven gas would be absent, and it is to be expected that the Gas Light Company would be required to pay substantially more for coke oven gas and for a stand-by fee, if any such arrangements could be made. (Tr. 3234)

Consideration must also be given the situation facing the public of the City of Milwaukee if Milwaukee Solvay were not available as an emergency source of gas.

Natural gas pipelines are always subject to the danger of breaks or malfunction causing interruptions in service. No one can tell when the natural gas supply may be interrupted or curtailed or for how long an interruption may last. Within the past few years there have been numerous instances of interruptions of various durations - usually relatively brief, but occasionally lasting as long as two weeks.

-19-

WG-ANR-00006360

Applicant's exhibits 94 and 95 are newspaper clippings from local papers describing the effects of two recent breaks that have come to American Natural's knowledge. At St. Joseph, Missouri, a break in the line which was repaired in about four hours caused a shutdown of gas heat, cooking and other services for about four days with very considerable hardship, because the company serving that city had no stand-by capacity.

In a smaller community, such as St. Joseph, the hardship may be expected to be less than would be experienced in a city such as Milwaukee, because fewer persons have to be taken care of. Stoughton, Wisconsin, a rather small community, had much the same experience as St.Joseph, when the natural gas line supplying it broke (App. Ex. 94). However, Madison, Wisconsin was able to maintain virtually uninterrupted service, because of the availability of a stand-by source of gas. (App. Ex. 95)

These recent situations demonstrate graphically the need for stand-by. St. Joseph had had no break for over 20 years, but the Gas Company was criticized for its failure to have stand-by facilities. It is difficult to believe the public interest would be served by depriving the Milwaukee public of a substantial part of its protection in the event of catastrophe. As Mr. Brenner pointed out (Tr. 31-3386 to 31-3393) Milwaukee Solvay is an important safeguard to the public of the City of Milwaukee because:

WG-ANR-00006361

(a) gas can be obtained from it quickly - which may
be vitally important if the break in the pipe line
were to occur at or near the Milwaukee city gate;

(b) because gas can be obtained from Milwaukee Solvay
over an extended period - which may be particular-
ly important in the event of an extended interrup-
tion or curtailment of the natural gas supply; and

(c) because under the worst emergency conditions the
availability of gas from Milwaukee Solvay increases
the area of Milwaukee in which full or partial ser-
vice could be maintained by approximately one-
third thereby reducing the number of people who
would be without food and housing in such an emer-
gency.

As already indicated, the public interest as well
as the interest of investors and consumers is further
served by the retention of Milwaukee Solvay because the
Gas Light Company now has stand-by facilities at an annual
cost of $100,000 which it would cost over $250,000 on an
annual basis to replace with less useful and less effective
LPG stand-by facilities. (Tr. 3322; and Applicant's
Exhibit 86)

Milwaukee Solvay is Appropriate to the
Proper Functioning of the System.

Considering the proper functioning of an integrated
public utility system, Milwaukee Solvay should be retain-

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 26 of 42   Document 50-38

WG-ANR-00006362

able in the system. The proper function of an integrated system is primarily to furnish the public with a utility service, and, to this end, the Commission has interpreted the Act to require that holding company systems confine themselves to an essentially single minded devotion to one branch of the utility business, without distraction through conflicting interests, and without unnecessarily complicated financial structure.

The American Natural system has confined itself to the gas industry, and the question is therefore whether retention of Milwaukee Solvay is appropriate to the proper functioning of an integrated gas system.

In proceedings In the matter of the North American Company, 11 SEC 194 (1942) at p. 220, the Commission set forth its definition of the phrases public interest and proper functioning of an integrated system as follows:

> "What do the phrases 'public interest' and 'proper functioning' of an integrated system in their context in Section 11(b) (1) mean? It is our view that they refer to the stated policy of the Act to limit the activities of public utility systems to activities related 'to economy of management and operation' of the public utility system, and the 'integration and coordination of related operating properties.' Compatibility with that interest, even if that is all that need be shown, requires a showing that the public interest will be furthered by retention of a nonutility interest by reason of its relation 'to economy of management and operation' of a public utility system or systems or 'the integration and coordination of related operating properties.'"

WG-ANR-00006363

Testimony in the instant case has shown, as hereinbefore pointed out, that retention of Milwaukee Solvay is necessary in the interests of "economy of management and operation", and that there is "integration and coordination of related operating properties", and that the public interest will be served by retention of Milwaukee Solvay.

In later cases the Commission appears to have given a broader scope to the inquiry whether retention of a particular "other business" is appropriate to the proper functioning of an integrated public utility system.

The Commission has been concerned whether despite the fact that the statutory tests are met formally, there is an objection to retention of the "other business" because it includes something in addition to a retainable "other business." This concern is particularly shown in In re Cities Service Company, 15 SEC 962 (1944) and in one phase of the North American Company case In the Matter of The North American Company, Holding Company Act release 9190, June 24, 1949.

Cities Service Company sought to retain a large gasoline and oil refining and distributing business as an "other business" in conjunction with its gas utility business. The gasoline and oil business apparently overshadowed the natural gas business in size and importance, but the Company pointed out that natural gas and gasoline

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 28 of 42   Document 50-38

WG-ANR-00006364

and oil in many instances came from the same fields, and production facilities were interrelated.

The Commission agreed that the natural gas, and gasoline and oil production activities were mutually beneficial, but denied retention on the specific ground that, although the oil and gasoline properties might be related to the non utility or production part of the natural gas business, there was not sufficient relationship between the natural gas utility (distribution) business and the oil and gasoline business. The Circuit Court of Appeals for the Fifth Circuit on an appeal from the order requiring divestment apparently rejected the specific ground cited by the Commission in support of its divestment order, but affirmed the Commission on the ground that, whether or not there was an operating relationship between the natural gas distribution business, and the oil and gasoline businesses, the retention of the relatively overpoweringly large oil and gasoline business would be inconsistent with the basic purpose of the Act to require that the interests of the integrated system be the first concern of its management. (In re Arkansas Natural Gas Corp. 154 F.2d 597 (1946) cert. den. 67 S.Ct. 67.)

This principle, applied though not discussed in the Commission's decision in the Cities Service case, was enunciated by the Commission in the North American case, supra, and it would appear incompatible with the intent of the

WG-ANR-00006365

Act and detrimental to the proper functioning of an integrated utility system to permit it to retain a business whose interests would overshadow those of the integrated system. In this connection the testimony shows that the net plant of Milwaukee Solvay amounts to less than 1% of consolidated net plant of the American Natural system.

Another aspect of the "proper function" test is seen in the Commission's determination with respect to the acquisition by Union Electric Company of The North American Company's interest in West Kentucky Coal Company. (In the matter of North American Holding Company, Holding Company Act release 9190, June 24, 1949,) North American had been directed to divest itself of its interest in West Kentucky Coal Company by a 1942 order. At that time the Commission held that, since West Kentucky sold virtually its entire output to nonaffiliated interests, and had no functional relationship to the North American system, ownership of West Kentucky "did not represent ownership of a vital commodity used in the operation of the system but merely an investment in a business that bears no relation whatever to the system's permissible utility operations."

In 1948 North American suggested that West Kentucky be acquired by Union Electric, and retained as an "other business" in the integrated system to be formed around Union Electric. The Commission held that, even though Union Electric testified that it planned to use a portion

WG-ANR-00006366

of the West Kentucky output in the future, it could not permit acquisition of the entire West Kentucky properties, because West Kentucky had extensive mines and selling operations which bore no relationship to the Union Electric operations.

The Commission suggested that if West Kentucky's mines were separated, Union Electric might be able to acquire the mines which would be used to supply coal for Union Electric (Holding Company Act Release 8626). Thereafter North American proposed such a split up, and the Commission approved the acquisition and retention by Union Electric of the mines and assets of West Kentucky which would yield coal for Union Electric's foreseeable requirements. (Holding Company Act Release 9190). The Commission considered the proper functioning of the integrated Union Electric system, and gave recognition to the fact that there was no reason for the system to have a coal business not related to the system, where it was perfectly feasible to divide the coal business into a related and a nonrelated portion.

In our case the question is quite different from that before the Commission in the Cities Service and North American cases. As previously indicated, one hundred percent of the gas production of Milwaukee Solvay is required by the Gas Light Company. The rationale of the West Kentucky case, if applied to the American Natural system

WG-ANR-00006367

would permit retention of Milwaukee Solvay, because the
Commission permitted retention of that portion of West
Kentucky which was directly or potentially useful to Union
Electric. West Kentucky was divisible. Milwaukee Solvay
is not. The coking operation is part of and inseparable
from the gas production operation.

The conclusion that Milwaukee Solvay is retainable
upon the reasoning applied in the proceedings involving
Union Electric is reinforced by the 1942 North American
order above referred to where it was also held that Union
Colliery Company and a related separate railroad company
were retainable, because a substantial portion of the out-
put of Union Colliery was used by Union Electric, and be-
cause the principal business of the railroad was hauling
coal for Union Colliery Company.

Milwaukee Solvay was originally acquired by the
American Natural System to furnish the Gas Light Company
with a supply of gas, and its entire gas output is still
needed by, taken by, and sold by, the Gas Light Company.

Here we have a company which has its office and
plant in the City of Milwaukee, and which has a close func-
tional relationship with system operations, serving both
as a source of a vital commodity and as an emergency pro-
tection. The functional relationship has existed for many
years. It is not something created to meet the require-
ments of the Act.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 32 of 42   Document 50-38

WG-ANR-00006368

Milwaukee Solvay's plant was designed from the beginning to be an integral part of the Gas Light Company's gas supply, and the coke oven gas produced at the Milwaukee Solvay plant is processed at the Third Ward and West Side plants of the Gas Light Company. Any separation of Milwaukee Solvay and the Gas Light Company would leave each with facilities requiring those of the other for effective operation.

If the gas and coke operations of Milwaukee Solvay were separable it might be appropriate to suggest retention of only the gas operations, but the gas and coke operations are absolutely inseparable - gas production depends on coking operations and the way they are conducted.

Although the dollar sales of coke exceed the dollar sales of coke oven gas, that has always been the case. Viewed from the standpoint of the integrated system, the coke sales are less important than the gas sales, and coke is simply a by-product of the gas operation. The Commission recognized this fact in its 1947 findings, (Release No.7951) where it stated

> "All of Milwaukee Solvay's production is devoted to Milwaukee, while its by products are sold through the usual trade channels."

From a monetary viewpoint, the by-products, principally coke, then, as now, produced more revenue than Milwaukee Solvay's gas production, but from a system viewpoint they are incidental now, as they were then.

WG-ANR-00006369

The rationale of the Commission's decision in the West Kentucky Coal case was that Union Electric could acquire and retain as much of West Kentucky as it could show an immediate or prospective use for. This leads directly to the conclusion that Milwaukee Solvay is retainable in the American Natural system, because the system has a need for the entire gas output of Milwaukee Solvay, and is utilizing it currently as well as prospectively.

If Milwaukee Solvay had another plant in another city not served by the American Natural system, the rationale of the West Kentucky decision might require a division of Milwaukee Solvay, and divestment of the other plant. But Milwaukee Solvay has only one plant which is closely integrated with the Gas Light Company, and all of its gas output is used in the system. Hence retention is clearly indicated.

Consideration of the Interests of Investors
Indicates that Milwaukee Solvay is Retainable.

Considering the interests of investors the retention of Milwaukee Solvay should be permitted. The principal investors involved are the holders of securities of the Gas Light Company, and holders of securities of American Natural. Such investors are helped by transactions which help the system and hurt by transactions which are harmful to system earnings or operations. As has been pointed out in the record;

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 34 of 42   Document 50-38

WG-ANR-00006370

(a) the disposition of Milwaukee Solvay would be hurtful to the operations of the Gas Light Company which requires the coke oven gas produced,

(b) the loss of the Milwaukee Solvay earnings would reduce system earnings, depending on the price for which Milwaukee Solvay could be sold,

(c) and the increased cost of stand-by and gas purchase arrangements which the Gas Light Company might have to make would be hurtful to investors in the system as well as to consumers of gas in Milwaukee.

Clearly if retention of Milwaukee Solvay is permitted, the interests of investors could not be adversely affected, whereas if disposition were required a substantial detriment to their interests is indicated by the record. Of course, viewed solely from the monetary standpoint the degree of detriment would depend upon the price which might be obtained upon disposition.

Milwaukee Solvay is a Relatively Small
Portion of the American Natural System.

It has been suggested in some of the Commission's decisions, though apparently never made the basis for a decision, that despite the alternative statutory language –

> "reasonably incidental or econo-
> mically necessary or appropriate
> to the operations of such inte-
> grated public utility system"

the other businesses to be retained must be reasonably

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 35 of 42   Document 50-38

WG-ANR-00006371

incidental to the system desiring to retain it as well as economically necessary or appropriate. The record shows that Milwaukee Solvay does not bulk large in the American Natural system. It accounts for less than 1% of consolidated system net plant account (Tr. 3252-3253). Sales of coke are relatively larger in the gross revenue picture, but as pointed out in <u>Holding Company Act Release</u> 7951 such sales represent disposition of a by-product.

Approximately 90% of the coke sales are to large users of blast furnace and other mettalurgical coke. Milwaukee Solvay does not maintain any substantial sales force, but disposes of most of its by-product coke conveniently through a non-affiliated coke selling agent, and sells a relatively small amount at its plant.

<u>The Advantages and Economies to the Gas Light Company, the Public, and Investors and Consumers could not be Retained by Contractual Arrangements despite Divestment</u>.

It has been suggested that Milwaukee Solvay might be disposed of on favorable terms subject to a contractual arrangement giving the Gas Light Company the same gas purchase rights and stand-by service it now enjoys. This is both unrealistic and anomalous. It is unrealistic because, as indicated by Mr. Brenner in his testimony, any purchaser could be expected to discount the value of Milwaukee Solvay in proportion to the burden imposed by such a contract, and because no contract obligation can substitute for the

Case 2:20-cv-01334-SCD · Filed 01/27/23 Page 36 of 42 Document 50-38

WG-ANR-00006372

cooperation achieved between the Gas Light Company and Milwaukee Solvay through common ownership.

Mr. Brenner has pointed out a number of the problems that could be expected to arise in operations of the Gas Light Company and Milwaukee Solvay in attempting to carry on relations with Milwaukee Solvay under independent ownership. As he explained the Gas Light Company would expect to pay substantially more for its gas and stand-by service through a discount in the price received for Milwaukee Solvay, or through negotiation of a new contract at higher prices.

The fact that it would cost the consumers of gas in Milwaukee more for stand-by protection and gas, if Milwaukee Solvay were not in the American Natural system, may not be a controlling reason for permitting retention, though it would seem to be in the public interest, and in the interest of consumers to keep costs to them as low as possible. However, any suggestion that the same benefits obtained because of the ownership of Milwaukee Solvay could be obtained through contractual arrangements without ownership necessarily assumes as a basic premise that Milwaukee Solvay is economically necessary or appropriate to the operations of the system, and that retention of the benefits of ownership is necessary or appropriate in the public interest or for the protection of investors or consumers and not detrimental to the proper functioning of the Ameri-

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 37 of 42   Document 50-38

WG-ANR-00006373

can Natural system.

It would be anomalous indeed for the Commission to
find that Milwaukee Solvay was not retainable, but that
Milwaukee Solvay was so necessary or appropriate to the
Gas Light Company that the benefits of ownership should be
retained by contract. Such an argument is not only anoma-
lous – it is novel and dangerous. The same argument could
be extended to the coal mine and other retention cases. It
could be said that a utility system may not retain a coal
mine serving system companies because a contract for all
or a part of the output of the coal mine could be used to
give the utility the same benefits that could be obtained
from ownership of the mine. The Commission has not
reached any such result and to do so would vitiate the Act.

The framers of the Act clearly intended that where
a non utility business was economically necessary or appro-
priate to the operation of an integrated utility system,
and its retention was appropriate in the public interest,
and not detrimental to the proper functioning of the
utility system, as is the case with Milwaukee Solvay in the
American Natural system, such non utility business should
be retainable in the system.

To suggest that even though the statutory criteria
are met, the non utility business is not retainable because
some of the benefits of retention might be obtained by con-
tractual arrangements is to ignore the clear intent of the
statute.

WG-ANR-00006374

It is clear on the record that the continuing availability of Milwaukee Solvay's gas and stand-by capacity are important to the Gas Light Company at this time. It is further clear on the record that ownership of Milwaukee Solvay is the most effective way to assure continuation of the benefits obtainable.

Undoubtedly no serious question would be raised as to the retainability of Milwaukee Solvay if it were not for the fact that it sells substantial amounts of coke which have a dollar value in excess of the sales price of the gas produced and sold.

The number of dollars involved in coke sales should not obscure the fact that such sales merely represent the resale of the residue of the raw material, coal, used to produce gas and by-products.

If Milwaukee Solvay maintained a substantial sales force, or numerous retail outlets, so that a large portion of its personnel was engaged in non utility operations this point might have more significance. But as shown by the record, almost the entire coke output of Milwaukee Solvay is sold for metallurgical purposes in large lots. Such sales are made by an independent sales agency.

As has been pointed out, the dollar value of coke sold by Milwaukee Solvay exceeded the price of the gas sold by that Company when the question of the retainability of Milwaukee Solvay in the American Natural system was

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 39 of 42   Document 50-38

WG-ANR-00006375

first decided. That condition has continued. The amount of coke oven gas produced has remained substantially constant and the amount of coke produced has declined somewhat. However, the dollar spread between the two has increased somewhat because a portion of the coke oven gas is used in the internal operations of Milwaukee Solvay except during emergencies, and the market price of coke has increased. Such shifts in use and market prices do not fundamentally change the situation existing in 1947 when there was no serious question as to the retainability of Milwaukee Solvay in the system.

The test of retainability is not the magnitude in dollars of outside sales, but the degree of interrelation of the other business with the system, and the proportion of time and effort which is devoted to non utility activities. It is not disputed that the Milwaukee Solvay plant is closely integrated with the Gas Light Company's plant - to the same extent in fact as the oil gas and LPG plants of the Gas Light Company, and the portion of the effort of Milwaukee Solvay devoted to coke sales is relatively small.

Recapitulation.

Milwaukee Solvay meets the standards of the Act and is retainable in the American Natural system because

1. Milwaukee Solvay is the generating source for approximately 11% of the firm gas sold annually by the Gas

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 40 of 42   Document 50-38

WG-ANR-00006376

Light Company.

2. Under present conditions of limited natural gas supply, the gas supplied by Milwaukee Solvay could not be replaced.

3. The gas supplied to the American Natural system by Milwaukee Solvay is necessary to enable the Gas Light Company to meet its contractual commitment to the Sewerage Commission of the City of Milwaukee.

4. Milwaukee Solvay represents a third of the stand-by capacity protecting the Gas Light Company and the City of Milwaukee in the event of curtailment or failure of the natural gas supply.

5. Decisions of the Commission in retention cases set forth criteria for determining retainability which are easily met by Milwaukee Solvay.

6. The suggestion that the benefits of retention could be obtained by an appropriate contractual relationship despite divestment recognizes that the criteria for retention are met.

7. If Milwaukee Solvay were to sell gas at retail it would appear to be a gas utility under The Act, and properly includable in the American Natural system.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 41 of 42   Document 50-38

WG-ANR-00006377

A fortiori it should be retainable when its entire output is sold.

Respectfully submitted

DONALD RICHBERG
JOHN DERN
ROBERT L. FOOTE
RICKARD H. LAURITZEN
    Attorneys for
American Natural Gas Company.


Sidley, Austin, Burgess & Smith,
Chicago, Illinois

Of Counsel

Dated at Chicago, Illinois
March 19, 1953

WG-ANR-00006378