# EXHIBIT 33

# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, D. C.

# FORM U-13-1

*PUBLIC SERVICE COMM. OF WISCONSIN*
*1949 NOV 4 AM 8 14*
*RECEIVED*

Declaration with Respect to Organization and Conduct of Business of Subsidiary Service Company Pursuant to Rule U-88

## AMERICAN NATURAL GAS SERVICE COMPANY

WG-ANR-00006020

# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, D. C.

# FORM U-13-1

Declaration with Respect to Organization and Conduct of
Business of Subsidiary Service Company Pursuant to
Rule U-88

1. **Exact name of company.**

    American Natural Gas Service Company (herein called "declarant" or the "Service Company").

2. **Address of principal executive offices.**

    At the present time declarant has no business office.

    It is contemplated that early in January, 1950, declarant will establish its principal executive office in the Penobscot Building, Detroit 26, Michigan.

3. **Name and address of person authorized to receive notices and communications from the Securities and Exchange Commission.**

    Ralph T. McElvenny, Financial Vice President
    c/o Suite 2200
    105 West Adams Street
    Chicago 3, Illinois

4. (a) **Form of organization (corporation, business, trust, etc.)**

    Corporation.

    (b) **State or other sovereign power under the laws of which the Company was or is to be organized.**

    Declarant was organized October 20, 1949 under the laws of the State of Michigan.

5. **Business, if any, other than performing services or construction or selling goods to public utility companies.**

    Declarant expects to perform services only for associate companies. A description of these companies and the type of business performed by each is set forth in the response to Item 6 below.

6. **State as to each existing or proposed member company or regular associate company customer.**

    (a) **Name.**

    (b) **Principal business (whether an electric or gas utility, water company, pipe line, industrial company, etc.)**

    (c) **Holding company system of which it is an associate.**

    (d) **Gross operating revenue for the last available twelve-month period, showing separately transactions between companies in the same holding company system.**

    Declarant is a member of the holding company system of American Natural Gas Company. American Natural is a registered holding company, owning all the common stock of Michigan Consolidated Gas Company and Michigan-Wisconsin Pipe Line Company and 99.77% of the common stock of Milwaukee Gas Light Company. As set forth later herein, American Natural will also own all of the common stock of declarant.

1

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 3 of 15   Document 50-46

WG-ANR-00006021

Michigan Consolidated Gas Company, a Michigan corporation, is engaged in the distribution of natural gas in Detroit, Ann Arbor, Grand Rapids, Muskegon and other communities in Michigan. It owns all of the common stock of Austin Field Pipe Line Company, a Michigan corporation, which constructed and owns the natural gas pipe line from Detroit to the Austin Field, a large underground storage field in West-Central Michigan.

Milwaukee Gas Light Company, a Wisconsin corporation, produces and distributes manufactured gas in Milwaukee, Wisconsin, and adjoining communities. It recently started the conversion of customers' appliances to permit consumption of natural gas. Milwaukee Gas Light owns all of the common stock of Milwaukee Solvay Coke Company, which is engaged in the manufacture of coke, gas and other by-products in Milwaukee, Wisconsin. The Coke Company sells its entire production of gas to Milwaukee Gas Light Company, representing approximately 65% of the gas supply of that company.

Michigan-Wisconsin Pipe Line Company, a Delaware corporation, is engaged in the construction of a natural gas pipe line from the Hugoton Field in Texas and Oklahoma, to serve Michigan Consolidated, Milwaukee Gas Light and other customers. It is expected that the line will start delivering gas from the Hugoton Field by November 1, 1949.

In proceedings under Section 11 of the Holding Company Act, (Holding Company Act Release No. 7951, December 30, 1947) the Commission found that, upon construction of the natural gas pipe line from Texas, the properties of Milwaukee Gas Light, Michigan Consolidated, Michigan-Wisconsin and Austin Field Pipe Line Company could be retained as part of the American Natural holding company system under the integration standards of Section 11.

The gross operating revenues of the system companies for the 12 months ended September 30, 1949, together with intercompany sales, are shown in the following table:

| Name | Twelve Months Ended September 30, 1949 | |
|---|---|---|
| | Gross Operating Revenues | Inter-Company Sales |
| American Natural Gas Company.................................... | $ — | $ — |
| Michigan Consolidated Gas Company............................ | 43,031,216 | — |
| Austin Field Pipe Line Company.................................. | 496,450 | 496,450 |
| Michigan-Wisconsin Pipe Line Company..................... | — | — |
| Milwaukee Gas Light Company..................................... | 11,947,010 | — |
| Milwaukee Solvay Coke Company................................ | 10,983,972 | 1,925,344 |

7. **Methods, if any, followed or to be followed in allocating control among members or associate companies and the provisions, if any, for reallocation of such control from time to time to conform to changed conditions.**

Following approval by the Commission of this declaration, all of the outstanding shares of capital stock of declarant will be owned by American Natural Gas Company. There is no provision for allocating or reallocating control of declarant among the associate companies.

8. **Proposed method of allocating cost of doing business among member or associate companies.**

All services of declarant will be rendered at cost fairly and equitably allocated among its associate companies, as hereinafter described. Such cost will be classified into three principal types of charges (1) Direct, (2) Group, and (3) Overhead, each of which will be billed monthly to associate companies in the manner set forth below:

### (1) Direct Charges

Costs of services which can be identified with a specific transaction or service rendered to a particular company shall be charged to such associate company on the basis of:

(a) Time sheets maintained by officers and employees which will show by hours the work performed, the nature of the services and the company benefitted.

(b) Expense vouchers, which shall describe the expense in reasonable detail.

(c) Invoices, which shall describe the particular item or items involved in reasonable detail.

2

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 4 of 15   Document 50-46

WG-ANR-00006022

It is estimated that direct charges will constitute [illegible] three fourths of the total costs allocated to associate companies. The salaries of officers of declarant who are also officers of American Natural shall be paid by declarant and charged to American Natural. The secretaries of such officers and the portion of all rent and other overhead expenses attributable to the officers and their secretaries shall be paid and charged in like manner. No officer or employee of the declarant who may also be an officer or employee of an associate company shall receive any salary from such associate company but shall be compensated as set forth herein.

### (2) Group Charges

Certain services to be rendered may be for the benefit of two or more associate operating companies, the cost to be allocated in the following manner:

All charges applicable to the operating companies having the benefit of the services shall be allocated among such companies in the proportion that the gross operating revenues of each company bear to the aggregate gross operating revenues of all companies included in the group having the benefit of the services.

Initially, the allocation will be made on the basis of revenues for the preceding month but the preceding calendar year will be used when Michigan-Wisconsin has been in operation for a full calendar year.

### (3) Overheads

Costs of doing business which cannot be identified as applicable to any specific transaction or associate company or groups of companies shall be allocated monthly among the associate companies in the proportion that the salaries charged directly or allocated to each company during the month bear to the salaries charged directly or allocated to all companies during such month.

No charge will be made for any return on the capital of declarant.

Reference is made to Exhibit D for the form of service contract which declarant proposes to enter into with associate companies.

9. State whether company may perform services or construction for, or sell goods to, persons with whom transactions at prices not limited to cost are permitted under Rule 13-31. If so, explain means of insuring against losses on such business being borne by member companies or by associate companies with which transactions are required by the rules of the Commission to be at not more than cost.

Declarant does not intend to render services other than to associated companies and all services are to be rendered at cost.

10. The following information relative to the capitalization of the Company:

(a) **The authorized capital stock.**

The authorized capital stock is $250,000, consisting of 2,500 shares of $100 par value common stock.

(b) **The number, classes and par value of shares into which it is divided.**

See response to preceding item.

(c) **The amount of such shares subscribed for and outstanding, naming each direct or indirect beneficial owner who owns 10% or more of any class or is an associate or member company, and the amount owned by each.**

At present ten shares have been subscribed for in cash at par by Mr. Henry Fink. Upon approval by the Commission of this declaration, these shares will be acquired by American Natural for cash at par and 1,990 additional shares will be purchased by Ameri-

3

WG-ANR-00006023

can Natural from declarant for cash at par. Am[...]ural hereby requests such authorization of the Commission as may be necessary to permit it to make these acquisitions.

(d) **The consideration paid or to be paid therefor.**

$100 cash for each share of capital stock.

(e) **Existing indebtedness (other than incurred in current operations), naming each direct or indirect beneficial owner who owns 10% or more of any class or is an associate or member company, and the amount owned by each.**

None.

11. **The method the company proposes to follow for raising additional capital.**

The $200,000 cash to be received upon the sale of 2,000 shares of capital stock will provide adequate capital for a reasonable period of time. If additional capital should become necessary, it may be obtained as required by selling to American Natural additional shares of authorized but unissued capital stock at its par value in cash.

12. **An explanation of the relationship between present and proposed capitalization of the company and the amount of capital needed for the performance of service or construction for or the selling of goods to, only those companies with which transactions are required by the rules of the Commission to be at not more than cost.**

Declarant considers the contemplated capitalization sufficient to meet its anticipated capital needs, including the purchase of necessary furniture and equipment, the remodeling of its offices, and approximately two months' operating expenses.

13. **A general schedule in summary form of the property of the company used or to be used in its business of performing services or construction or selling goods not produced by it, with the book value thereof before and after depreciation and an explanation of the difference between book value and cost, if any; and of property proposed to be acquired for such use.**

At present declarant owns no property. Upon approval of this declaration by the Commission, declarant expects to acquire such furniture and equipment as is necessary in the performance of its services. Tentative plans have been made for the acquisition of office furniture and equipment presently located in the Chicago and New York offices of The United Light and Railways Service Company. It is proposed to purchase this property at present depreciated original cost of approximately $20,000. It is estimated that the cost of additional furniture and equipment will not exceed $30,000.

14. **A statement of the nature of, and amount payable under, all contracts relating to the company's business of performing services or construction or selling goods not produced by it, which extend beyond April 1, 1936, and involve, or may reasonably be expected to involve, annual payments of over $5,000 except contracts of employment with officers and employees and service, sales or construction contracts with member or associate companies.**

After approval of this declaration by the Commission, it is contemplated that declarant will lease approximately 11,370 square feet of office space in the Penobscot Building, Detroit, Michigan. This space will provide appropriate facilities for the operation of applicant at an annual rental of $45,840. To utilize this space most efficiently, considerable remodeling is necessary, at a cost estimated not to exceed $50,000.

15. (a) **In the case of a company in operation prior to date of filing the following information for the latest available twelve-month period, or for such portion thereof as the company has been in operation:**

(i) A list of the officers and directors of the company and, with respect to each, a statement of his connection with any other company which is an affiliate or associate of the company or to which it sells goods, or from which it makes purchases or leases property, and the total compensation of whatsoever character paid to him,

4

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 6 of 15   Document 50-46

WG-ANR-00006024

directly or indirectly, by the company or any such company — separately stated as to each company involved; to which shall be added, in the case of part-time officers, the approximate time devoted to each company.

Applicant has not yet commenced operation.

(ii) Similar information as to each permanent employee (other than officers or directors) whose aggregate compensation from all sources mentioned in (i) above exceeded an annual rate of ten thousand dollars.

Applicant has not yet commenced operation.

(iii) A statement of the total annual compensation paid by the company to other employees and the average number of such employees.

Applicant has not yet commenced operation.

(b) In the case of a company not in operation prior to the date of filing, information with respect to officers, directors and employees as specified in (i) and (ii) to the extent at present available, together with the proposed budget of operating expenses for the first fiscal year detailed with respect to major items, including (i), (ii) and (iii): Compensation to be paid by other companies mentioned in (i) should be included as supplemental information.

See page 6 for response to item 15(b)(i).

Response to Item 15(b)(i)

| Name | Proposed Officers and Directors of Declarant and Estimated Annual Rate of Compensation from Declarant | | American Natural Gas Company | | Michigan Consolidated Gas Company | | Michigan-Wisconsin Pipe Line Company | | Milwaukee Gas Light Company | | Austin Field Pipe Line Company | | Milwaukee Solvay Coke Company | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| William G. Woolfolk | Chairman<br>Director | $ —<br>— | Chairman<br>Director | $ 67,500<br>(1) | Chairman<br>Director | $ —<br>(2) | Chairman<br>Director | $ —<br>(3) | Director | $ (4) | Director | $ — | — | $ — |
| Henry Fink | President<br>Director | —<br>— | President<br>Director | 60,000<br>(1) | President<br>Director | —<br>(2) | President<br>Director | —<br>(3) | Director | (4) | Vice President<br>Director | — | Director | (5) |
| Ralph T. McElvenny | Financial Vice President and Assistant to Chairman<br>Director | —<br>— | Financial Vice President and Assistant to Chairman<br>Director | 35,000<br>(1) | Vice President<br>Director | —<br>(2) | Vice President<br>Director | —<br>(3) | Director | (4) | — | — | Director | (5) |
| P. W. Sharp | Vice President and Treasurer<br>Director | —<br>— | Vice President and Treasurer | 25,000<br>— | — | — | Vice President and First Assistant Treasurer<br>Director | —<br>(3) | Director | (4) | — | — | — | — |
| T. W. Weigele | Vice President and Engineer | 25,000 | — | — | Vice President and Engineer | — | — | — | — | — | — | — | — | — |
| S. S. Faville | Secretary and General Attorney<br>Director | —<br>— | Secretary and General Attorney | 18,000 | — | — | Secretary and General Counsel | — | — | — | — | — | — | — |
| Carl Claussen | Assistant Secretary | 9,000 | — | — | — | — | Assistant Secretary and Assistant Treasurer | — | — | — | — | — | — | — |
| E. M. Tallmadge | Assistant Secretary | 7,500 | — | — | — | — | Assistant Secretary | — | — | — | — | — | — | — |

NOTE: The system companies pay directors' fees for attendance at board meetings as set forth below:

| Company | Fee Per Meeting |
|---|---|
| (1) American Natural Gas Company | $ 50 |
| (2) Michigan Consolidated Gas Company | 100 |
| (3) Michigan-Wisconsin Pipe Line Company | 50 |
| (4) Milwaukee Gas Light Company | 100 |
| (5) Milwaukee Solvay Coke Company | 100 |

WG-ANR-00006026

**Response to 15 (b) (ii)**

Declarant contemplates, upon approval of this filing by the Commission, to employ an Assistant Engineer to direct, under the immediate supervision of the Engineer, all engineering services provided to associate companies. In addition it is contemplated that two staff engineers will be employed. As yet no one has been selected to fill these positions. It is proposed that the Assistant Engineer receive a salary of approximately $12,000 - $15,000 annually.

**Response to 15 (b) (iii)**

Upon approval of this filing by the Commission, declarant expects to employ, in addition to those listed in (i) and (ii) above, approximately 20 employees with a combined total annual compensation of about $80,000.

The proposed operating budget for the first fiscal year of declarant's operation, showing the amounts estimated to be chargeable to American Natural and to the other associate companies, is as follows:

|  | Total | Allocated to American Natural | Allocated to Associate Operating Companies |
|---|---|---|---|
| Salaries | $ 344,600 | $ 236,875 | $ 107,725 |
| Rent | 50,840 | 38,678 | 12,162 |
| Other expenses | 116,269 | 65,925 | 50,344 |
|  | $ 511,709 | $ 341,478 | $ 170,231 |

16. **A brief description of the extent, if any, to which the company is organized on a departmental basis, and of the functions of the various departments.**

The Service Company contemplates a small, closely knit organization with a limited staff of experienced men. It will not function on rigid departmental lines but will operate with flexibility on a coordinated and integrated basis so as to make available to the associate companies served the combined resources, knowledge and experience of the entire organization.

In the interest of efficiency and economy, the Service Company proposes to provide services to the greatest extent possible through its own personnel, rather than by employment of independent persons.

A description of the principal personnel and the functions of the Service Company along departmental lines is set forth below:

**General Executive**

Mr. William G. Woolfolk will serve as Chairman of the Service Company and will be its chief administrative officer. Mr. Woolfolk, an engineer by profession, has had many years of experience in all phases of the utility business. He has been President or Chairman of Michigan Consolidated Gas Company since 1932 and of American Natural Gas Company, The United Light and Railways Company and Continental Gas & Electric Corporation since 1939 and a director of the principal system companies for many years. He is also Chairman and director of Michigan-Wisconsin Pipe Line Company. During his period of association with the system he has been the officer ultimately responsible for system management. He is thoroughly familiar with all aspects of the properties and operations of American Natural and each of its subsidiaries.

Mr. Woolfolk will preside at all meetings of the stockholders and of the Board of Directors. Subject only to the Board of Directors, he will have general control of the affairs of the Service Company.

Mr. Henry Fink will serve as President of the Service Company and will be its chief executive officer. He is a graduate engineer with over 35 years of experience in all aspects of the gas business. In the last 15 years he has been associated in management capacities with Michigan Consolidated Gas Company, being President since 1946. He was elected President of American Natural Gas Company and Michigan-Wisconsin Pipe Line Company in May, 1948. He is a director of Michigan Consolidated, Michigan-Wisconsin, American Natural, Milwaukee Gas Light, Milwaukee Solvay Coke Company and Austin Field Pipe Line

7

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 9 of 15   Document 50-46

WG-ANR-00006027

Company. He is a former president of the Michigan Gas Association, a director of the American Gas Association and a member or an official of various engineering and technical societies.

Subject only to the Board of Directors and the Chairman, Mr. Fink will direct and oversee the management and operations of the Service Company.

### Financial; Regulatory

Mr. Ralph T. McElvenny will serve as Financial Vice President and Assistant to the Chairman of the Service Company. Mr. McElvenny, a lawyer by profession, has had extensive experience in financial, securities and regulatory work. He has been Vice President and director of The United Light and Railways Company, Continental Gas & Electric Corporation and American Natural Gas Company since 1945, and, under the Chairman, has had charge of the financial and general regulatory matters of the system during this period. He is a director of Michigan-Wisconsin, Michigan Consolidated, Milwaukee Gas Light and Milwaukee Solvay Coke Company.

Mr. McElvenny, under the Chairman, will have charge of the financial and regulatory services to be furnished by declarant and will also act as Assistant to the Chairman in the conduct of that officer's administrative duties.

The Service Company will advise, supervise and assist generally in the financial and regulatory affairs of the system. The Service Company will make studies of capital requirements and recommendations as to the most feasible and practicable method of raising necessary additional capital. It will advise in the preparation and presentation of estimates of cash receipts and expenditures, construction requirements and earnings forecasts. It will supervise the preparation of registration statements under the Securities Act and the various other filings required under provisions of the Securities Exchange Act of 1934 and The Public Utility Holding Company Act of 1935, as well as filings with the Federal Power Commission, State Commissions and local bodies.

It will advise and assist in the preparation of indentures and credit agreements, annual reports to stockholders, periodic financial reports to security holders, and will supervise proceedings before the Securities and Exchange Commission and the Federal Power Commission. The Service Company will assist in the preparation of testimony for regulatory hearings and aid in negotiations, conferences and discussions with regulatory bodies, insurance companies, and banks.

Mr. Alfred Brokop will assist in the financial and regulatory services to be rendered by the Service Company. Mr. Brokop, as an employee of The United Light and Railways Service Company for twenty years, has had comprehensive experience in these matters.

### Accounting; Tax

Mr. F. W. Sharp will serve as Vice President and Treasurer of the Service Company and will directly supervise its accounting and tax services. Mr. Sharp is a Certified Public Accountant and has been actively connected with the public utility industry for the past twenty years. As senior utility manager for a national firm of independent public accountants, he has had extensive experience in tax matters, original costing, property records, rate proceedings and in the application and interpretation of the systems of accounts prescribed by Federal and State regulatory bodies. Since 1944 he has been the treasurer and chief accounting officer of American Natural and its formerly affiliated holding companies, The United Light and Railways Company and Continental Gas & Electric Corporation. He has also served as a director of certain of the operating subsidiaries.

The Service Company will advise, assist and supervise the associate companies in their accounting practices and procedures, including the standardization thereof, and in the application of the systems of accounts prescribed by regulatory bodies. Periodically, the Service Company will audit and examine the accounting records and methods of the associate companies and will advise and assist their principal accounting officers in adapting, revising or formulating accounting procedures and systems which will most advantageously and economically furnish desired information.

The Service Company will assist in the installation and simplification of budgetary procedures for the benefit of the management of the associate companies and will make available to associate companies, for comparative purposes, operating and various other statistical reports and analyses to provide a basis for evaluating the efficiency and effectiveness of management and operations.

8

Case 2:20-cv-01334-SCD Filed 01/27/23 Page 10 of 15 Document 50-46

WG-ANR-00006028

Declarant will also furnish services with respect to tax problems, and will keep associate companies informed as to current developments and forseeable trends in taxation. This will include assistance in the preparation and filing of State, local and miscellaneous Federal tax returns with related schedules and reports, and the preparation of tax protests and claims for refund. Declarant will prepare the Federal income tax returns and supporting schedules. In addition, declarant will make representatives available to appear with representatives of the associate companies before taxing authorities and will assist in conducting conferences and negotiations with respect to any additional assessments or claims for refund.

Mr. P. M. West, who as an employee of The United Light and Railways Service Company has been engaged in rendering accounting, tax and financial services to system companies for the past ten years, will assist in rendering the foregoing services.

### Engineering; Rates; New Business

Mr. T. W. Weigele, a professional engineer, will serve as Vice President and Engineer and will exercise direct supervision of the engineering, rate, commercial and new business activities of the Service Company. Mr. Weigele has been actively engaged in the various phases of the gas industry for the past 36 years and has been associated since 1914 with gas distribution and transmission companies in the American Natural system and since 1919 with Michigan Consolidated. He is Vice President and Engineer of Michigan Consolidated and has participated actively in all phases of the development and operation by Michigan Consolidated of the Austin Field and the other extensive underground gas storage fields in West-Central Michigan. He is also thoroughly familiar with the operations of Milwaukee Gas Light and its subsidiary. He participated actively in the proceedings before the Federal Power Commission to obtain the certificates of public convenience and necessity for Michigan-Wisconsin and Austin Field Pipe Line Company and has testified extensively in numerous rate, appraisal and engineering matters before regulatory bodies. He is a former president of the Michigan Gas Association and is a member of various engineering and technical societies.

Engineering services to be rendered by the Service Company will include advice and assistance in connection with engineering designs, and plans and studies relating to construction of additional facilities and concerning gas supply and future market requirements. The Service Company will assist in the preparation and review of the necessity for, and estimates of cost of, construction projects and will render assistance, as expansion dictates, in the acquisition of additional natural gas reserves and in the augmentation of pipe line capacity and storage facilities and will provide technical aid in the preparation and negotiation of contracts with respect thereto.

The Service Company will aid the associate companies in rate matters and will assist in the preparation and negotiation of contracts for the sale of gas to various large commercial and industrial customers. It will develop and furnish interpretive statistics with respect to rates, service and operations generally; study and formulate proposals for rate reductions, where practicable; furnish advice and assistance in the preparation of rate applications to regulatory and judicial bodies and supply expert testimony when required.

The Service Company will offer assistance in obtaining new customers and in increasing sales to existing customers. Field trips will be made when necessary. Data obtained, along with information pertaining to current thinking and trends in sales promotion programs in the industry generally, will be made available to associate companies, accompanied by analytical comment and conclusions.

### Legal; Insurance

Mr. Stanton S. Faville will serve as Secretary and General Attorney of the Service Company. He occupies similar capacities in American Natural. He will directly supervise the legal department of the Service Company, as well as the insurance services to be rendered to associate companies. Mr. Faville graduated from the University of Iowa in 1924 and in that year was admitted to the bar in Iowa. From 1924 to 1926 he was Assistant Attorney General of the State of Iowa. After 16 years of general corporate practice in Des Moines, Iowa, he joined the legal department of The United Light and Railways Service Company in 1942. He has had a broad experience in secretarial, corporate and insurance matters as well as in the wide variety of legal problems as they relate to utility companies.

9

Case 2:20-cv-01334-SCD    Filed 01/27/23    Page 11 of 15    Document 50-46

WG-ANR-00006029

The legal department of the Service Company will advise and assist the officers and employees of the Service Company in matters of a legal nature pertaining to the operations of the Service Company, and will keep associate companies informed as to the most recent views and requirements of the courts and regulatory bodies as they may have material significance to the operations of the integrated system.

The Service Company will advise and assist associate companies in connection with their insurance problems. This will include studies of the adequacy of insurance coverage presently in effect, forecasts of additional insurance requirements, and the possible economies to be realized through procurement of blanket policies on those types of insurance needed by all companies within the integrated system. These studies will be presented to associate companies for their review, and such blanket coverage as is determined to be economical and beneficial will be obtained.

Purchasing

The Service Company will have a purchasing department staffed with such personnel as may be required to advise and assist system companies in the purchasing of materials and supplies, machinery, equipment and other property, in order that full advantage may be taken of economies available through quantity and group purchases, familiarity with present and future market prices, and standardization of equipment.

17. If application is for approval as a mutual service company, submit information bearing on the question whether the company will be able to perform service, sales or construction contracts for member companies at a reasonable savings over the cost of such contracts performed by independent persons.

    Declarant will have a staff who, with but few exceptions, were formerly officers or principal personnel of either The United Light and Railways Service Company (which has performed services at cost for American Natural and its subsidiaries since 1938), American Natural, or its largest subsidiary, Michigan Consolidated. The officers and principal personnel have been performing services for companies within the integrated system for years and are thus thoroughly familiar with the operations, problems and affairs of the system companies.

    Such officers and principal personnel are particularly adapted to performing services for declarant, as they have had wide education and experience in the utility field. Moreover, they are more familiar with the problems of each system company than any independent person. Without such intimate knowledge, independent persons could not be expected to perform comparable services except at substantially greater cost. The alternative to the organization of a service company would be to augment substantially the staff of each associate company. This would be undesirable and uneconomic when a small and compact staff of competent personnel in the service company can perform the same services more efficiently and effectively. The savings to be realized by the system companies from a service company would be at least equivalent to the profit which independent persons would demand and obtain for their services.

    It is expected that each of the associate operating companies will have financial, engineering, operating, rate, tax, legal and other problems which in a varying degree may be common to all such companies in the integrated system. A competent and compact group of experienced experts on the staff of a subsidiary service company, as proposed herein, should be far more efficient and economical in solving these problems than various independent persons.

18. **In the case of a company already in existence, a concise statement of the applicable provisions of the articles of incorporation, by-laws or similar documents, relating to the right of the person signing and filing the application or declaration to take such action on behalf of the company and a statement that all such requirements have been complied with, and that the person signing and filing the same is fully authorized to do so. If such authorization is dependent on resolutions of directors or other bodies, such resolutions shall be attached as on exhibit or the pertinent provisions thereof shall be quoted.**

    There are no applicable provisions of the Articles of Incorporation, by-laws or similar documents relating to the right of the persons signing and filing this statement to take such action on behalf of the Company. All action necessary to authorize such signing and filing has been taken.

Case 2:20-cv-01334-SCD Filed 01/27/23 Page 12 of 15 Document 50-46

WG-ANR-00000030

Pursuant to the requirements of The Public Utility Holding Company Act of 1935, each of the companies set forth below has caused this instrument to be duly executed on its behalf by its authorized officers this 20th day of October, 1949.

AMERICAN NATURAL GAS SERVICE COMPANY

(CORPORATE SEAL)

Attest:

By __RALPH T. McELVENNY__
Ralph T. McElvenny, Financial Vice President

__STANTON S. FAVILLE__
Stanton S. Faville, Secretary

AMERICAN NATURAL GAS COMPANY

(CORPORATE SEAL)

Attest:

By __RALPH T. McELVENNY__
Ralph T. McElvenny, Financial Vice President

__STANTON S. FAVILLE__
Stanton S. Faville, Secretary

11

STATE OF MICHIGAN } ss.
COUNTY OF WAYNE

The undersigned being duly sworn deposes and says that he has duly executed the attached instrument for and on behalf of AMERICAN NATURAL GAS SERVICE COMPANY: that he is Financial Vice President of such company; and that all action by stockholders, directors, and other bodies necessary to authorize deponent to execute and file such instrument has been taken. Deponent further says that he is familiar with such instrument and the transactions referred to therein, and that to the best of his knowledge, information and belief the statements made in such instrument are true.

RALPH T. McELVENNY<br>Ralph T. McElvenny

Subscribed and sworn to before me, a Notary Public, this 20th day of October, 1949.

S. V. WHEATLEY
Notary Public

My Commission Expires: March 30, 1951.

(NOTARIAL SEAL)


STATE OF MICHIGAN } ss.
COUNTY OF WAYNE

The undersigned, being duly sworn, deposes and says that he has duly executed the attached instrument for and on behalf of AMERICAN NATURAL GAS COMPANY; that he is Financial Vice President of such company; and that all action by stockholders, directors and other bodies necessary to authorize deponent to execute and file such instrument has been taken; deponent further says that he is familiar with such instrument and the transactions referred to therein, and that to the best of his knowledge, information and belief the statements made in such instrument are true.

RALPH T. McELVENNY<br>Ralph T. McElvenny

Subscribed and sworn to before me, a Notary Public, this 20th day of October, 1949.

S. V. WHEATLEY
Notary Public

My Commission Expires: March 30, 1951.

(NOTARIAL SEAL)

12

The following exhibits are filed herewith:

A  Copy of the charter and by-laws.

B  Copies of all contracts now in force or contemplated affecting allocation or re-allocation of control among member companies, as mentioned in item 7 above.—None

C  Balance sheet as of the latest available date and profit and loss statement for the year ended on that date.—Declarant has not yet commenced operations.

D  Copy of proposed service contract with associate companies.