# EXHIBIT 37

## MILWAUKEE GAS LIGHT COMPANY

Regular Meeting of the

Board of Directors

---

Milwaukee, Wis., November 20-1939
4:00 P.M.

The regular monthly meeting of the Board of Directors of the Milwaukee Gas Light Company was held at the office of the company, 626 East Wisconsin Avenue, Milwaukee, Wisconsin, on Monday, November 20, 1939, at 4:00 o'clock P.M.

DIRECTORS PRESENT: Messrs. A. Anger, W. Davidson, H. Lindsay, B. Rahn, G. T. Shoemaker and L. T. Smith.

DIRECTORS ABSENT: Messrs. E. Haase, C. R. Messinger and F. Rogers.

PRESIDING OFFICER: Mr. B. Rahn, President of the company, presided at the meeting.

SECRETARY: Mr. L. T. Smith, Secretary of the company, was Secretary of the meeting.

APPROVAL OF MINUTES: The Secretary presented the minutes of the last meeting of the Board of Directors held on October 16, 1939, which were read and approved.

REPORT: The financial and operating report of the company for the month of October was submitted and after discussion ordered filed.

PREFERRED STOCK DIVIDEND: Upon motion of Mr. Anger, duly seconded, it was unanimously

> RESOLVED, that there be and hereby is declared from the surplus profits of the corporation a dividend of One and Three Quarters Percent (1-3/4%) on the 7% Cumulative Preferred Stock, Series "A", of the corporation, amounting to Thirty-five Thousand Dollars ($35,000), payable on the 1st day of December, 1939, to stockholders of record at the close of business on the 25th day of November, 1939, and the Treasurer is directed and authorized to cause the same to be paid on the date specified.

SERVICE CONTRACT WITH THE UNITED LIGHT AND POWER SERVICE CO.: The President reported that a proposed form of contract had been negotiated with The United Light and Power Service Company for the furnishing by the latter of certain service and information to this corporation, and that an application had been made to the Public Service Commission of Wisconsin for its approval of said contract pursuant to the provisions of Section 196.52, and that the Commission had approved such a contract in an order

## MILWAUKEE GAS LIGHT COMPANY

-2- Regular Meeting of the Board of Directors - 11/20/39 (Cont.)

dated the 25th day of October, 1939.

Thereupon the President presented to the meeting such order of the Public Service Commission of Wisconsin, and also the proposed contract in the form in which it was presented to the Public Service Commission of Wisconsin.

Thereupon, upon motion of Mr. Lindsay, duly seconded, the following resolution was unanimously adopted:

> WHEREAS, there has been presented to this meeting a proposed contract with The United Light and Power Service Company relating to the furnishing by said Service Company to this corporation of certain service therein more specifically referred to; and
>
> WHEREAS, it appears to be in the interests of this corporation and to be for the benefit of this corporation and advantageous to it to enter into such contract; and
>
> WHEREAS, the Public Service Commission of Wisconsin did, on the 25th day of October, 1939, issue its order approving said contract upon certain conditions therein stipulated:
>
> RESOLVED, that the President or a Vice President, together with the Secretary or an Assistant Secretary of this corporation be and they are hereby authorized to make and enter into a contract with The United Light and Power Service Company in the form submitted to this meeting, which is the same form as has heretofore been submitted to and approved by the Public Service Commission of Wisconsin.

A copy of the contract referred to above is appended to these minutes as Pages 40 to 53, both Incl.

### LEASES OF DOCKS AT WEST SIDE STATION TO MILWAUKEE-WESTERN FUEL CO. AND WAUWATOSA FUEL AND SUPPLY CO.:

The President submitted two leases made and entered into by this company, one lease, dated November 13, 1939, leasing to the Milwaukee-Western Fuel Company certain coal dock property, and the other, dated July 10, 1939, leasing to the Wauwatosa Fuel & Supply Company certain coke dock property, both docks being located at our West Side Station at North Twenty-fifth Street and West St. Paul Avenue, and more fully described in the two leases which were presented to the meeting for examination.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 3 of 18   Document 50-50

WG-ANR-00011223

-3- Regular Meeting of the Board of Directors - 11/20/39 (Cont.)

The leases were read and discussed and on motion of Mr. Davidson, duly seconded, the following resolution was unanimously adopted:

> RESOLVED, that the action of the officers in making and entering into the two leases referred to above, be, and the same is hereby approved, ratified and confirmed.

MEMBERSHIP IN THE MILWAUKEE ASSOCIATION OF COMMERCE: The President recommended that we renew our membership in the Milwaukee Association of Commerce for the year ending February 1, 1941, and that our subscription be the same as that made for the past year. After discussion, and upon motion of Mr. Anger, duly seconded, it was unanimously

> RESOLVED, that the proper officers be, and they are hereby authorized to make a subscription of Five Hundred Dollars ($500.00) to the Milwaukee Association of Commerce for the year ending February 1, 1941, and that this subscription be divided into ten (10) memberships of Fifty Dollars ($50.00) each.

SUBSCRIPTION TO THE WISCONSIN CITIZENS' MILITARY TRAINING CAMP ASSOCIATION:

The President then presented the appeal of the Wisconsin Citizens' Military Training Camp Association for the continuation of our contribution of $100.00 for the coming year in support of their work. Upon motion of Mr. Davidson, duly seconded, it was unanimously

> RESOLVED, that the proper officers be, and they are hereby authorized to make a subscription of One Hundred Dollars ($100.00) for the support of the Wisconsin Citizens' Military Training Camp Association.

ADJOURNMENT: There being no further business, on motion duly made and seconded, the meeting adjourned.

*[signature]*
Secretary.

Case 2:20-cv-01334-SCD    Filed 01/27/23    Page 4 of 18    Document 50-50

WG-ANR-00011224

AGREEMENT, Made and entered into as of the 1st day of July, 1938, by and between THE UNITED LIGHT AND POWER SERVICE COMPANY, a Maryland corporation (hereinafter referred to as the Service Company), and MILWAUKEE GAS LIGHT COMPANY a Wisconsin corporation (hereinafter referred to as the Company).

WHEREAS, experience has shown that public utility companies, holding companies, and their affiliates, are enabled to maintain smaller and less expensive staffs of officers and employees if they are able to obtain the services of an organization which is equipped to augment and supplement the activities of their own staffs of officers and employees;

WHEREAS, the Service Company represents that it has developed and maintains a complete organization for the rendition of various types of managerial, operating, financial, accounting, purchasing, valuation, engineering, contracting, construction and other services, and by reason of the diversity involved in the rendition of such services to a group of companies provides more stable employment for its various experts in public utility operations and services, with resultant efficiency and economy therefrom;

WHEREAS, the Service Company proposes to render such services to various companies in The United Light and Power Company system at the cost to it of rendering such services; and

WHEREAS, the Company desires to supplement the services of its own organization with those of the Service Company's to the extent the Company may from time to time require and request and the Service Company may be able to perform;

NOW, THEREFORE, it is agreed by and between said parties as follows:

## ARTICLE I.

Section 1: The Service Company shall, through its executive officers, to the extent requested by the Company from time to time, keep in touch with the affairs of the Company and advise and assist in matters relating to the management, operations and construction of the Company, and shall, whenever requested by the Company:

    (a) Through its executive officers, engineers and other specialists, advise the Company respecting the operation of power plants, gas works, transmission systems, distribution systems, water systems, heating systems, railway systems and/or other facilities of the Company; check the results of operations; advise the Company respecting improvement of methods of operation and character of equipment, the utilization of by-products, interconnection of the properties of the Company with the properties of other companies, the purchase of electrical energy or gas and the sale of the services of the Company to other public utility companies or large consumers; and assist the Company in promoting operating economies.

- 1 -

(b) Supervise the preparation of and/or prepare property records of the Company for use in connection with the issuance of securities, taxation, valuation and other purposes.

(c) Examine and make tests at the factory, mines and elsewhere of fuel and other materials, equipment and supplies to be acquired by the Company for operating purposes.

(d) Assist the Company in the formulation of its financial program, the establishment of credits, the securing of loans and the preparation of annual and supplemental budgets providing for extensions and improvements of the Company's plants and properties and setting forth the financial requirements of the Company.

(e) Advise and serve the Company in connection with the issue and sale of its stocks, bonds, notes and other securities, the printing of mortgages and the engraving or printing of bonds, stock certificates and other securities; arrange for the appointment of trustees, registrars, transfer agents and dividend paying agents, and assist in matters which may arise with respect to their services, or act itself in such capacity for the Company; advise and assist the Company in connection with the authorization or approval of the issue and sale of stocks, bonds and other securities by lawfully constituted authorities having jurisdiction thereover, the authentication or certification of bonds by the trustee or trustees under the mortgage or mortgages securing the same, the calling of bonds and the release or discharge of mortgages; negotiate for the sale of the Company's bonds at wholesale and submit drafts of contracts for such sale; prepare material for bond circulars; supervise the listing of securities upon stock exchanges; furnish data for manuals; and assist in connection with complying with Blue Sky Laws. The Service Company shall not be interested directly or indirectly in any contract for the purchase from the Company of its bonds or other securities, or receive or accept any commission, discount, draw back or any other compensation or reward in connection therewith.

(f) Supervise the accounting methods and procedure of the Company to conform to the requirements, rules and regulations of any commission or commissions having jurisdiction over the accounting of the Company; audit the books of the Company from time to time; supervise and assist in the preparation of its annual and other reports to stockholders; furnish the Company with statements and analyses; and advise and assist in the standardization of accounting methods in the interest of uniform classification of accounts.

(g) Advise and assist the Company in regard to corporate matters, including stockholders' and directors' meetings and the minutes of their proceedings.

(h) Assist in the preparation and filing of the Company's tax returns and, when necessary, cause its representatives, on behalf of the Company, personally to appear before taxing authorities with respect to such returns and the tax or taxes to be levied or assessed on account thereof; and advise and assist the Company in the preparation of State, County and Municipal reports.

(i) Keep the Company advised with respect to insurance; under the Company's direction negotiate contracts for insuring the Company's property against fire, explosion and other risks, and for indemnity, group and other insurance, at the lowest possible cost; and, in case of loss to the company, supervise the preparation of proofs and perform such services as may be required with respect to the collection of insurance.

(j) Formulate rate schedules for the Company's properties; advise and assist the Company in their application; keep the Company informed on ratemaking developments; and advise and assist in connection with the handling of rate matters before State, Municipal and other authorities. The rate experts of the Service Company shall spend such time at the office and on the properties of the Company as may be necessary. The Service Company shall keep available its records and files of rates in force on public utility properties throughout the country and make studies and comparisons of these rates and keep generally informed of decisions, practices and policies in connection with ratemaking, and shall, upon request, furnish the Company with any and all such data and information.

(k) Advise and assist the Company in the organization and administration of its New Business, Merchandise and Jobbing departments and in regard to the systematic and economical conduct thereof and advise and assist the Company respecting the attraction of new industry to the territory served by the Company. The New Business and Commercial experts of the Service Company shall spend such time at the office and on the properties of the Company as may be necessary. In connection with these matters, the Service Company shall keep informed of the methods, experiments and policies of various operating companies and in touch with manufacturers of electric and gas appliances and apparatus, and shall, upon request, make data and information respecting such matters available to the Company.

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 7 of 18   Document 50-50

WG-ANR-00011227

(l) Compile and make available to the Company comparative tables and charts of financial, business and operating statistics of companies similar to the Company.

(m) Transmit to the Company information in regard to market conditions and other matters pertaining to purchasing and advise and assist the Company in such matters. The Service Company shall in its own name, but for the account of the Company, make purchases for the Company where such purchases can be made more advantageously by it.

(n) Design, lay out and prepare engineering plans and specifications, bills of material and final cost estimates for any construction or reconstruction work required by the Company; make detailed engineering investigations and do other things necessary in connection with the design of the work; assist in comparing bids and awarding contracts for materials and equipment; advise and make recommendations as to changes in plans and specifications which in the light of the progress of the work may appear desirable; inspect and test at the factory or elsewhere materials, equipment and supplies to be used for additions and betterments; and in general maintain close contact with the progress of any construction work for the purpose of securing the best results and maximum economy in the handling of such work.

(o) Organize and direct all necessary construction operations in connection with betterments, extensions and improvements of and additions to the Company's properties; hire in the name and for the account of the Company construction superintendents, resident engineers, formen, accountants, timekeepers, workmen, laborers and other employees required in or about the construction work; furnish on construction work, when necessary, heavy construction tools, such as concrete mixers, tampers and excavators; assemble the construction force and construction equipment; secure insurance at the Company's cost; supervise the keeping of books of account and records and the preparation of reports and records of construction progress and requisite physical and cost data; and conduct final tests.

(p) In the event any construction work is to be done by a general contractor or sub-contractor, procure proposals therefor; compare bids and investigate the qualifications, facilities, and reputation of the contractor or sub-contractor; assist in making settlements with contractors and sub-contractors; supervise and inspect the work and operations of the contractor or sub-contractors in the field; purchase, in the name and for the account of the Company, materials and equipment not supplied by the contractor or sub-contractor; procure proposals for such

materials and equipment and make analyses and comparison of such proposals; and test and inspect materials and equipment.

(q) Render such services to the Company in addition to the above insofar as it shall be able to perform such services and as such services may be required by the Company.

Section 2. The executive officers of the Service Company shall, when requested by the company, hold conferences with the directors and officers of the Company in regard to matters of organization and personnel. Through its wide acquaintance in the public utility industry, and special attention given to procuring and developing men best fitted to fill any and all positions in the public utility business, the Service Company represents that it is in a position to assist in obtaining personnel, and shall, when requested by the Company, aid the Company in securing competent personnel.

Section 3. (a) All construction work shall be subject to the approval of the Company, and the Company shall have as full control as it shall desire to exercise over all matters pertaining to the work, including the making of purchases, the letting of sub-contracts and the construction methods to be employed.

(b) All resident engineers, superintendents, foremen, accountants, timekeepers, workmen, laborers and other persons, other than the members of the regular organization of the Service Company, employed in and about the construction work shall be employees of the Company. The Service Company shall not be answerable (except in cases of gross negligence in the selection of such employees) to anyone for the acts, faults, negligence or misconduct of such employees, or any of them, and the Company shall save the Service Company harmless from any loss, costs, expense, demand or liability resulting therefrom.

Section 4. Nothing in this Article I contained shall be construed to release the officers and directors of the Company from the performance of their respective duties or limit the exercise of their powers in accordance with the provisions of law or otherwise, and the Company shall maintain an organization for the management and operation of its properties; the services herein contracted for being intended to supplement and augment the services of such organization of the Company.

ARTICLE II.

Section 1. The charges to be made by the Service Company to the Company for such services (including salaries and all other expenses) shall be computed as provided in the "Amended Declaration with Respect to Organization and Conduct of Business of Subsidiary Service Company Pursuant to Rule 13-22," filed by the Service Company with the Securities and Exchange Commission on June 15, 1938, pursuant to the Public Utility Holding Company Act of 1935, and approved by said Commission on September 26, 1938, to wit.

- 5 -

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 9 of 18   Document 50-50

WG-ANR-00011229

## Proposed method of allocating cost of doing business among member or associate companies (as hereinafter defined):

All costs of doing business which, without excessive effort or expense, can be definitely identified and related to services rendered to specific associate companies shall be charged directly to such associate companies.

### Salaries

All salaries of officers and employees of the Service Company shall be classified and charged as follows:

(i) **Charges to Specific Associates**

Direct salary charges shall be made monthly to specific associate companies or to the insurance trust fund insofar as the amounts thereof can be determined without excessive effort or expense.

(ii) **Charges to Groups of Associates**

Direct salary charges for services which, because of their general and joint nature, cannot be made to specific associate companies under subsection (i) above shall be made monthly to (a) specified groups of associate operating companies and (b) specified groups of associate holding companies. Charges to associate operating companies under this classification shall be apportioned monthly among the associate operating companies in such groups on the basis set forth in subsection (v) below. Charges to associate holding companies under this classification shall be apportioned monthly among the associate holding companies on the basis set forth in subsection (vi) below.

(iii) **Charges for Administration of Specific Offices**

Salary charges in connection with administration of each of the four offices of the Service Company (New York, Chicago, Davenport or Kansas City) shall be apportioned monthly among the associate companies on the basis of the aggregate salary charges of each such office which have been (a) charged directly to specific associate companies under subsection (i) above and (b) allocated to associate companies under subsection (ii) above.

- 6 -

WG-ANR-00011230

(iv)     <u>Charges for Administration of Service Company Generally</u>

Salary charges in connection with the general administration of the Service Company shall be apportioned monthly among the associate companies on the basis of the aggregate salary charges of all offices which have been (a) charged directly to specific associate companies under subsection (i) above and (b) allocated to associate companies under subsection (ii) above.

<u>Bases for Allocating Group Salary
Charges Among Associates</u>

(v)     <u>To Groups of Associate Operating Companies</u>

(a)     Except as set forth in subdivision (b) of this subsection (v), salary charges to groups of associate operating companies (as provided for in subsection (ii) above) shall be allocated among the various companies comprising each such group using the ratio that the "base operating revenues" (as defined below) of each company included in the respective group for the twelve months ended the preceding November 30th bear to the aggregate "base operating revenues" for such period of all companies included in the respective group.

"Base operating revenues" of each operating company for any twelve month period ending November 30th shall consist of the sum of (a) 100% of the first $600,000 of operating revenue of the Company for the period, (b) 85% of the next $3,000,000 of such revenue, and (c) 30% of the balance of such revenue, except as follows:

(1)     If any company with respect to which the computation is being made has, during the period, purchased electric energy or gas from any of the associate companies named in subsection (a) of Section 3 of this Article II, or has been charged by any such companies for rental of electric or gas manufacturing or transmission facilities, before making the foregoing computation there shall be deducted from the operating revenue of the paying company an amount equal to the sum of such items.

(2)     If any company with respect to which the computation is being made has, during the period, purchased electric energy or gas from any of the associate companies named in subsection (b) of

- 7 -

Section 3 of this Article II and/or from non-associate companies, or has been charged by any such companies for rental of electric or gas manufacturing or transmission facilities, before making the foregoing computation there shall be deducted from the operating revenue of the paying company an amount equal to 50% of the sum of such items.

The various percentages referred to in subdivision (a) of this subsection (v) shall be reviewed from time to time, but, in any event, not less often than once a year, and adjusted by the Service Company when in its judgment such an adjustment is necessary in order to secure a more equitable allocation of costs.

(b) Salary charges to associate operating companies for purchasing department services shall be allocated monthly among the various companies, using the ratio that the number of "units" of work of this character performed during the month for each company bears to the total number of "units" of such work performed during the month for all companies. In determining the number of "units" of work performed, each invoice approved shall be considered as equal to one "unit," each purchase order prepared or inquiry sent to a vendor shall be considered as equal to two "units," and each claim regarding defective material, etc., or each letter written, shall be considered as equal to five "units."

The weighting of the various types of work used in determining the number of "units" of work performed, as set forth above, shall be reviewed from time to time, but, in any event, not less often than once a year, and adjusted by the Service Company when in its judgment such an adjustment is necessary in order to secure a more equitable allocation of costs.

(vi) To Groups of Associate Holding Companies

(a) Except as set forth in subdivision (b) of this subsection (vi), salary charges to groups of associate holding companies shall be allocated among such companies using ratios estimated by the Service Company as fairly and equitably measuring the relative benefits accruing to each holding company from such services. The ratios used in the allocation of these charges among companies shall be reviewed from

time to time, but, in any event, not less often than
once a year, and if, at any time, in the opinion of
the Service Company, the character and extent of the
services to groups of holding companies has become
such that the ratios then in use no longer fairly
measure the benefits accruing to the various com-
panies, appropriate adjustments of the ratios shall
be made. The ratios to be initially applied shall be
as follows:

| Holding Company | Relative Proportion |
|---|---|
| The United Light and Power Company | 40 parts |
| The United Light and Railways Company | 30 parts |
| Continental Gas & Electric Corporation | 30 parts |
| American Light & Traction Company | 30 parts |

Holding companies which are primarily operating com-
panies shall be treated as operating companies for
purposes of the salary charge allocations. Other
subsidiary holding companies of The United Light and
Power Company, being of relatively minor importance,
shall not receive any portion of charges to groups
of associate holding companies.

(b) Salary charges to groups of associate holding
companies for stock transfer services performed in the
Chicago and New York offices shall be accumulated sepa-
rately for each office and shall be allocated monthly
among the associate holding companies furnished with
stock transfer services by the respective offices.
One half of such salary charges originating in each
office shall be allocated among the companies served,
using the ratio that the number of stock certificates
issued during the month in that office for each com-
pany bears to the total number of stock certificates
issued during the month in that office for all com-
panies. The remaining one half of such salary charges
originating in each office shall be allocated among
the companies using the ratio that the number of share-
holders (of the classes of stock transferred in the
respective offices) at the beginning of the month of
each company bears to the total number of such share-
holders of all companies. The apportionment of salary
charges of the stock transfer department shall be
reviewed periodically, but, in any event, not less
often than once a year. Salary charges for stock
transfer services performed in the Davenport office
for The United Light and Railways Company shall be
made to that company as provided in subdivision (i)
above.

## Method of Computing Salary Charges

(vii)        Each officer and employee of the Service Company shall maintain daily time records on an hourly (as defined below) basis, except that certain major executives may keep such interim records as they deem feasible, in order to record and report a fair and equitable distribution of their salaries among the classes of service set forth in subdivisions (i) to (iv) above.

The salary charges to be made as set forth in said subdivisions (i) to (iv) for services rendered by any officer or employee shall be determined from the periodic reports, so maintained, which shall be submitted at not greater than monthly intervals. For convenience in computing charges, such reports shall be expressed in or converted into units (hereinafter referred to as "hours") of one-eighth (1/8) of the normal working day for the office to which the officer or employee is assigned. Salary charges to the foregoing classifications shall be computed by multiplying the number of "hours" reported as devoted to each of the classifications by the "hourly" charge of the respective officer or employee.

The "hourly" charge for each officer or employee shall be computed as of November 30th of each year (or oftener if necessary) by applying to the "hourly" rate of each officer or employee (determined by dividing the annual salary by the total standard number of working "hours," including holidays, for the year) a percentage factor (which shall be uniform for the entire personnel in each separate office) to cover an allowance for vacations, holidays and estimated nonchargeable time due to illness or other causes.

### Reserve for Nonchargeable and Nonproductive Time

(viii)        If the aggregate amount of the salary charges each month for an officer or employee exceeds the actual salary paid to such officer or employee for the month, the excess shall be credited to an account entitled "Reserve for Nonchargeable and Nonproductive Time;" if the actual salary paid to an officer or employee exceeds the aggregate salary charges for the services of such officer or employee, the excess shall be charged to this reserve. The balance

- 10 -

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 14 of 18   Document 50-50

WG-ANR-00011234

(debit or credit) remaining in this reserve after the November salary charges have been computed in each year shall be allocated among the associate companies using the ratio that the total salary charges to each company (as determined under sub-divisions (i) to (iv) above) during the preceding twelve months (or, for the purposes of the first allocation, from July 1, 1938 to November 30, 1938) bear to the total salary charges to all associate companies during such period. Notwithstanding the above, no adjustment of the reserve balance need be made in any year in the event the balance (debit or credit) in the reserve at November 30th of said year is not in excess of $1,000.

Expenses other than Salaries

(ix) <u>Charges to Specific Associates</u>

Expenses other than salaries incurred for the benefit of specific associate companies shall be charged monthly directly to such companies.

(x) <u>Charges for General Administration of Service Company</u>

Identifiable expenses of general administration of the Service Company shall be apportioned monthly among the associate companies on the basis of the aggregate salary charges of all offices which have been (a) charged directly to specific associate companies under subdivision (i) above, and (b) allocated to associate companies under subdivision (ii) above.

(xi) <u>Apportionment of Remaining Expenses</u>

All other expenses shall be accumulated separately for each of the four offices of the Service Company and shall be apportioned monthly to the associate companies on the basis of aggregate salary charges of each such office which have been (a) charged directly to specific associate companies under subdivision (i) above, and (b) allocated to associate companies under subdivision (ii) above.

(xii) <u>Return on Capital</u>

No charge will be made for any return on capital.

- 11 -

50

(debit or credit) remaining in this reserve after the November salary charges have been computed in each year shall be allocated among the associate companies using the ratio that the total salary charges to each company (as determined under sub-divisions (i) to (iv) above) during the preceding twelve months (or, for the purposes of the first allocation, from July 1, 1938 to November 30, 1938) bear to the total salary charges to all associate companies during such period. Notwithstanding the above, no adjustment of the reserve balance need be made in any year in the event the balance (debit or credit) in the reserve at November 30th of said year is not in excess of $1,000.

Expenses other than Salaries

(ix) Charges to Specific Associates

Expenses other than salaries incurred for the benefit of specific associate companies shall be charged monthly directly to such companies.

(x) Charges for General Administration of Service Company

Identifiable expenses of general administration of the Service Company shall be apportioned monthly among the associate companies on the basis of the aggregate salary charges of all offices which have been (a) charged directly to specific associate companies under subdivision (i) above, and (b) allocated to associate companies under subdivision (ii) above.

(xi) Apportionment of Remaining Expenses

All other expenses shall be accumulated separately for each of the four offices of the Service Company and shall be apportioned monthly to the associate companies on the basis of aggregate salary charges of each such office which have been (a) charged directly to specific associate companies under subdivision (i) above, and (b) allocated to associate companies under subdivision (ii) above.

(xii) Return on Capital

No charge will be made for any return on capital.

- 11 -

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 15 of 18   Document 50-50

WG-ANR-00011235

Section 2. Bills for services rendered under this contract shall be paid by the Company to the Service Company on or before the 15th day of the month following that in which the services in question were rendered (or if the bill for such services be not received by the Company before the 8th day of such following month, then within seven days after the receipt by it of such bill).

The Service Company shall render its monthly bills for charges in such detail as may from time to time be requested by the Company.

The Service Company shall maintain adequate records so that when requested by the Company it can and will furnish complete supporting data as to the monthly charges and bills and shall also, upon request of the Company, undertake through its executive officers to substantiate before any proper governmental regulatory body the accuracy of any bills rendered to or charges made against the Company.

Section 3. In addition to the following-named corporations, the term "associate companies" shall include any other corporation (including an association, joint-stock company, business trust and organized group of persons whether incorporated or not, and any receiver, trustee, or other liquidating agent of any of the foregoing in his capacity as such) which shall be a member of The United Light and Power Holding Company System and shall enter into an agreement with the Service Company for the performance of services by the Service Company for such corporation on a basis substantially similar to that herein provided:

(a) American Light & Traction Company
American Michigan Pipe Line Company
American Production Company
Cedar Rapids Gas Company
Chattanooga Gas Company
Cimarron Utilities Company
Cleveland Gas Company
Clinton, Davenport & Muscatine Railway Company
Columbus and Southern Ohio Electric Company
Continental Gas & Electric Corporation
Fayetteville Natural Gas Company
Fort Dodge Gas and Electric Company
Guymon Gas Company
Hillsboro Ice and Coal Company, The
Iowa City Light and Power Company
Iowa-Nebraska Light and Power Company
Kansas City Power & Light Company
Kansas Power Transmission Company, Inc.
Lakeshore Gas Company
LaPorte Gas and Electric Company
Lincoln Traction Company, The
Madison Gas and Electric Company
Maryville Electric Light and Power Company
Mason City and Clear Lake Railroad Company
Michigan Consolidated Gas Company
Milwaukee Coke & Gas Company, The

        Milwaukee Gas Light Company  
        Moline-Rock Island Manufacturing Company  
        Ottumwa Gas Company  
        Panhandle Power & Light Company  
        Peoples' Gas & Electric Company  
        Peoples Light Company  
        Peoples Power Company  
        Point Pleasant Water & Light Co.  
        San Antonio Public Service Company  
        South Texas Ice Company  
        Tri-City Railway Company (Illinois)  
        Tri-City Railway Company (Iowa)  
        United American Company  
        United Light and Power Company, The  
        United Light and Power Industrials, Inc., The  
        United Light and Railways Company, The  
        United Power Manufacturing Company  
        Wauwatosa Gas Company  
        Waverly Company  
        West Allis Gas Company  
        Wisconsin Eastern Gas Company  

(b)    American Coal Company  
        Argus Pipe Line Company, The  
        Consolidated Building Company  
        Garden City Gas Company, The  
        Hume-Sinclair Coal Mining Company  
        Huntsville-Sinclair Mining Company  
        Iowa-Illinois Light and Power Company  
        Mason City Brick and Tile Company  
        Mason City Development Company  
        Milwaukee Solvay Coke Company  
        Minnesota Northern Natural Gas Company  
        Northern Natural Gas Company  
        Peoples Natural Gas Company  
        Rolfe Products Company  
        Southern Producing Company, The  
        Southern Light and Traction Company  
        Tri-City Railway and Light Company, The  
        United Pipe Line Company, The  
        United Power Securities Company, The  

### ARTICLE III.

    <u>Section 1.</u> This contract is subject to all such orders, rules and regulations as may be made by the Securities and Exchange Commission or by any other proper governmental authority.

### ARTICLE IV.

    <u>Section 1</u> This contract shall be in full force and effect for the period beginning July 1, 1938, and ending December 31, 1938, and shall

Case 2:20-cv-01334-SCD   Filed 01/27/23   Page 17 of 18   Document 50-50

WG-ANR-00011237

continue from year to year thereafter without further action on the part of either of the contracting parties hereto; provided, however, that either party shall have the right to terminate this contract at its election by giving to the other party written notice of its intention so to do not less than ninety days prior to the first day of any calendar year.

Section 2. The covenants and agreements herein contained shall inure to and be binding upon the respective parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, each of the parties hereto has caused these presents to be executed in its behalf by its officers thereunto duly authorized as of the day and year first above written.

THE UNITED LIGHT AND POWER SERVICE COMPANY

BY _____
President

ATTEST:

_____
Secretary

MILWAUKEE GAS LIGHT COMPANY

BY _____
President

ATTEST:

_____
Secretary

- 14 -

WG-ANR-00011238